IN THE CIRCUIT COURT OF HARRISON COUNTY, WEST VIRGINIA

| | |
|---|---|
| GERALD W. CORDER | Civil Action No. 17-C-382-2<br>Honorable Bedell |
| MARLYN C. SIGMON | Civil Action No. _____<br>Honorable _____ |
| GARNET C. COTTRILL | Civil Action No. _____<br>Honorable _____ |
| RANDALL M. CORDER | Civil Action No. _____<br>Honorable _____ |
| JANET C. PACKARD AND LEROY PACKARD | Civil Action No. _____<br>Honorable _____ |
| LORENA KRAFFT | Civil Action No. _____<br>Honorable _____ |
| CHERYL MORRIS | Civil Action No. _____<br>Honorable _____ |
| TRACY BRIDGE | Civil Action No. _____<br>Honorable _____ |
| ANGELA NICHOLSON | Civil Action No. _____<br>Honorable _____ |
| KEVIN MCCALL | Civil Action No. _____<br>Honorable _____ |
| BRIAN MCCALL | Civil Action No. _____<br>Honorable _____ |

        Plaintiffs,

v.

ANTERO RESOURCES CORPORATION, a Delaware corporation; ANTERO MIDSTREAM PARTNERS LP, a Delaware corporation; ANTERO RESOURCES PIPELINE LLC, a Delaware Corporation; and ANTERO RESOURCES INVESTMENT LLC, a Delaware corporation;

        Defendants.

*FILED IN 15TH CIRCUIT COURT 2017 DEC -6 P 1:55*

**EXHIBIT A**

## COMPLAINT

Now come the plaintiffs and for their Complaint against the defendant allege and aver as follows:

1. Plaintiff Gerald W. Corder is a resident of West Virginia.

2. Plaintiff Marlyn Sigmon is a resident of Virginia.

3. Plaintiff Garnet Cotrill is a resident of Florida.

4. Plaintiff Randall M. Corder is a resident of West Virginia.

5. Plaintiffs Janet C. Packard and Leroy Packard are residents of Florida.

6. Plaintiff Lorena Krafft is a resident of Ohio.

7. Plaintiff Cheryl Morris is a resident of of Tennessee.

8. Plaintiff Tracy Bridge is a resident of Ohio.

9. Plaintiff Angela Nicholson is a resident of Virginia.

10. Plaintiff Kevin McCall is a resident of Ohio.

11. Plaintiff Brian McCall is a resident of Ohio.

12. Defendant Antero Resources Corporation (hereinafter "Antero,") is an independent oil and natural gas company which acquires, explores, produces, and develops natural gas, natural gas liquids, and oil properties in the United States. The company was formerly known as Antero Resources Appalachian Corporation and changed its name to Antero Resources Corporation in June 2013.

13. Plaintiffs are the owners of oil and gas interests which were leased, assigned or otherwise acquired by and presently held by Antero.

14. Antero had duties and responsibilities to plaintiffs and each of them for the

2

development of oil and gas wells on their property pursuant to the following leases:

(A) a tract of land containing 48.69 acres, more or less situated on the waters of Turtle Tree Fork of Ten Mile, in Union District, County of Harrison, State of West Virginia, **48.69 acres**, being the same as Deed dated October 10, 1928, Book 393, Page 399, and being bounded now or formerly substantially as follows, to wit:

| | |
|---|---|
| On the North by lands of: | County Road 30/5 |
| On the East by lands of: | Franklin D. Riffee |
| On the South by lands of: | James Corder |
| On the West by lands of: | Bill Devericks |

(i) The plaintiffs and Antero entered into the lease which provided for Antero to pay royalties as follows:

(a) on oil, One-Eighth (12.5%) (amended to be 15%) of that produced and saved and delivered at the wells or into the pipeline to which the wells may be connected; and

(b) on gas, including casinghead gas or other gaseous substance, produced from said land and sold or used beyond the well or for the extraction of gasoline or other product, an amount equal to One-Eighth (12.5%)(amended to be 15%) of the net amount realized by Lessee computed at the wellhead from the sale of such substances.

(ii) And further it was agreed that:

all oil, gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements. However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.

(iii) The leases with attachments are as follows:

(a) Garnet C. Cottrill; lease dated July 24, 2012, recorded in the Harrison County Clerk's office in Book 1496, page 1203;

(b) Marlyn C. Sigmon; Lease dated July 24, 2012, Book 1498, Page 865, being same as acquired by Affidavit of Heirship dated August 8, 2012, and recorded on August 13, 2012, Book 393, Page 986, containing 48.69 acres;

3

(c)   Janet C. Packard and Leroy Packard; Lease dated July 24, 2012, Book 1499, Page 147, being same as acquired by Lessor on October 10, 1928, Book 393, Page 399, containing 48.69 acres;

(d)   Lorena Krafft; Lease dated September 20, 2012, Book 1499, Page 135, being same as acquired by Lessor on October 10, 1928, Book 393, Page 399, containing 48.69 acres;

   (i)   AMENDMENT:   Dated August 14, 2015.  Book 1562, Page 1120. Parcel no. 20-361-3, p/o 5; acquired by Lessor in Fiduciary Order Book dated July 5, 2000, and recorded in the Clerk's Office in and for Harrison County State of West Virginia, filed in Fiduciary Order Book 100 at Page 347. For all purposes of this lease, including determining the amount of delay rentals, royalties and shut-in royalties hereunder, said land shall be deemed to contain 32.45 gross acres whether it actually contains more or less.

(e)   Gerald W. Corder; Lease dated June 29, 2012, Book 1496, Page 587, being same as acquired by Lessor on October 10, 1928, Book 393, Page 399, containing 48.69 acres;

   (i)   AMENDMENT:   Dated August 14, 2015.  Book 1562, Page 1110. Parcel no. 20-361-3, p/o 5; acquired by Lessor in Fiduciary Order Book dated November 24, 1987, and recorded in the Clerk's Office in and for Harrison County State of West Virginia, filed in Fiduciary Order Book 85 at Page 677. For all purposes of this lease, including determining the amount of delay rentals, royalties and shut-in royalties hereunder, said land shall be deemed to contain 32.45 gross acres whether it actually contains more or less.

(f)   Randall M. Corder; Lease dated June 29, 2012, Book 1495, Page 350, being same as acquired by Lessor on October 10, 1928, Book 393, Page 399, containing 48.69 acres.

   (1)   AMENDMENT:   Dated August 14, 2015.  Book 1562, Page 1128. Parcel no. 20-361-3, p/o 5; acquired by Lessor in Fiduciary Order Book dated November 24, 1987, and recorded in the Clerk's Office in and for Harrison County State of West Virginia, filed in Fiduciary Order Book 85 at Page 677. For all purposes of this lease, including determining the amount of delay rentals, royalties and shut-in royalties hereunder, said land shall be deemed to contain 32.45 gross acres whether it actually contains more or less.

(g)   Tracy Bridge; Memorandum of Oil and Gas Lease dated August 14, 2015.  Book 1562, Page 1126.  Parcel no. 20-361-3, p/o 5; acquired by Lessor in Fiduciary

Order Book dated July 5, 2000, and recorded in the Clerk's Office in and for Harrison County State of West Virginia, filed in Fiduciary Order Book 100 at Page 347. For all purposes of this lease, including determining the amount of delay rentals, royalties and shut-in royalties hereunder, said land shall be deemed to contain 32.45 gross acres whether it actually contains more or less;

(h) Cheryl Morris; Memorandum of Oil and Gas Lease dated August 14, 2015. Book 1562, Page 1114. Parcel no. 20-361-3, p/o 5; acquired by Lessor in Fiduciary Order Book dated July 5, 2000, and recorded in the Clerk's Office in and for Harrison County State of West Virginia, filed in Fiduciary Order Book 100 at Page 347. For all purposes of this lease, including determining the amount of delay rentals, royalties and shut-in royalties hereunder, said land shall be deemed to contain 32.45 gross acres whether it actually contains more or less;

(i) Angela Nicholson; Memorandum of Oil and Gas Lease dated August 14, 2015. Book 1562, Page 1118. Parcel no. 20-361-3, p/o 5; acquired by Lessor in Fiduciary Order Book dated October 15, 2013, and recorded in the Clerk's Office in and for Harrison County State of West Virginia, filed in Deed Book 1521 at Page 950. For all purposes of this lease, including determining the amount of delay rentals, royalties and shut-in royalties hereunder, said land shall be deemed to contain 32.45 gross acres whether it actually contains more or less;

(j) Kevin McCall; Memorandum of Oil and Gas Lease dated August 14, 2015. Book 1562, Page 1116. Parcel no. 20-361-3, p/o 5; acquired by Lessor in Fiduciary Order Book dated October 15, 2013, and recorded in the Clerk's Office in and for Harrison County State of West Virginia, filed in Deed Book 1521 at Page 950. For all purposes of this lease, including determining the amount of delay rentals, royalties and shut-in royalties hereunder, said land shall be deemed to contain 32.45 gross acres whether it actually contains more or less;

(k) Brian McCall; Memorandum of Oil and Gas Lease dated August 14, 2015. Book 1562, Page 1108. Parcel no. 20-361-3, p/o 5; acquired by Lessor in Fiduciary Order Book dated October 15, 2013, and recorded in the Clerk's Office in and for Harrison County State of West Virginia, filed in Deed Book 1521 at Page 950. For all purposes of this lease, including determining the amount of delay rentals, royalties and shut-in royalties hereunder, said land shall be deemed to contain 32.45 gross acres whether it actually contains more or less.

(B) A tract of land containing 50.82 acres lying in Turtletree Fork, bounded and described as follows, containing **50.82** acres, conveying to lessor by M.D. Corder by deed dated June 30, 1760 recorded in Deed Book 839, Page 23.

| | |
|---|---|
| On the North by lands of: | Waitman L. Day and J.B. Day |
| On the East by lands of: | G. W. Brohard and Anne Matthey |
| On the South by lands of: | William M. Ward |
| On the West by lands of: | J. M. Bailey |

    (i)    The lessees and Antero were required to pay plaintiffs, pursuant to the above lease as follows:

        (a)    Lessor to pay the equal one-eighth (1/8) part of all oil produced and saved from the leased premises and second to pay one-eighth (1/8) of the value at the well of gas from each and every gas well from which is marketed and used off the premises... later amended to 1/8 of the value of the gas from each well.

(C)    A tract of land containing **54.18** acres lying in Union District of Harrison County by lease which was conveyed from James Corder and Pearl Corder and Maggie Corder, Widow to Clarence W. Mutschelknaus, dated June 29, 1979, recorded in the office of the Clerk of Harrison County, West Virginia, in Deed Book 1082, Page 1656, said lease providing for payment of royalties of one-eighth of the value at the well of the gas from each and every well.

(D)    A tract of land containing **104.75** acres and **6.5** acres, more or less, respectively, lying at Turtletree Fork, Union District, Harrison County, West Virginia, leased by James Corder and Pearl Corder to J. Robert Horner, by lease dated May 15, 1981 and recorded in the office of the Clerk of Harrison County, West Virginia, in Deed Book 1103, page 733, said lease providing for Antero to pay 1/8 of the price received by the lessee from the sale of such gas.

(E)    A tract of land containing **59** acres, more or less, lying on the waters of Turtletree Creek, Union District, Harrison County, West Virginia leased by Howard D. Nicholson, et al. to Doran Associates, Inc. by lease dated August 20, 29179, and recorded in the office of the Clerk of Harrison County, West Virginia, in Deed Book 1193, page 361, royalty to be paid to plaintiffs as 1/8 of the gross proceeds received from each and every well drilled on said properties providing natural gas, an amount equal to one-eighth (1/8) of the gross proceeds received from the sale of same at the prevailing price for gas at the well, for all natural gas saved and marketed from the said properties... .

(F)    A tract of land containing **105** acres, more or less, lying on the waters of Turtletree Creek of Ten Mile Fork, Union District, Harrison County, West Virginia, leased by Howard D. Nicholson to Doran Associates, Inc. by deed dated August 20, 1979, and recorded in the office of the Clerk of Harrison County, West Virginia, in Deed Book 1193, page 197, royalty to be paid to plaintiffs pursuant thereto to be as 1/8 of the gross proceeds received from each and every well drilled on said properties providing natural gas, an amount equal to one-eighth (1/8) of the gross proceeds received from the sale of same at the prevailing price for gas at the well, for all natural gas saved and marketed from the said properties... .

(G)    A tract of land lying on the waters of Stutler Fork, Union District, Harrison County, West Virginia, lease from Oma Corder to James Scott, dated January 28, 1981, said lease containing **65** acres, more or less, recorded in Deed Book 1104, page 647, said lease providing for royalty to be paid to plaintiffs as 1/8 of the proceeds of the oil and gas or both of them, subject to modification by Garnet Cottrill and Marlyn Sigmon, to pricing by DTI index (see Deed Book 1443, page 1134, etc.)

(H)     A tract of land containing 44 acres, more or less, in Union District, Harrison County, West Virginia, by lease from Oma Corder to Scott Oil Company, lease dated March 28, 1986 and recorded in the office of the Clerk of Harrison County in Deed Book 1159, page 364, said lease providing for royalties to be paid as 1/8 of the wellhead price received from the sale of the oil and gas or both of them.

(I)     A tract of land containing 44.4 (50) acres, more or less, in Harrison County, West Virginia, lease from J.A. Day and Sarah Day to R.A. Garnett, dated April 8, 1896 and recorded in the office of the Clerk of Harrison County, West Virginia, Deed Book 99.

(J)     A tract containing 50 acres, more or less, lying in Greenbrier District, Doddridge County, West Virginia, on the water of Big Camp Creek, leased by Oma Corder to Clarence Mutschelknaus, dated October 3, 1985, recorded in Deed Book 143, Page 291, which lease provided for the payment of royalty to be 1/8 of the value at the well of the gas from each and every gas well drilled on the premises.

The aforesaid lessor's rights and remedies were transferred by heirship, purchase or otherwise, to plaintiffs who hold individual partial ownership of the rights thereto and the lessees' rights and duties and responsibilities of each lease was previously acquired by Antero by leases and modifications of leases and by assignment of the leases or by Antero's acquisition of leases and rights thereto from previous lessors who held the assignor's rights, duties and privileges, all as set forth therein.

15.     Antero owns and operates various companies and businesses (subsidiaries) which provide for production, gathering systems for transporting of natural gas from gas wells owned and operated by defendants on leases in West Virginia to the point of sale, including Antero Midstream Partners LP (hereinafter "Midstream,") and Antero Resources Pipeline, LLC (hereinafter "Pipeline") which Antero is the general partner.

16.     Midstream is a limited partnership which does business in West Virginia.

17.     Pipeline is a partnership company which does business in West Virginia.

18.     At all times complained of herein, Antero was a Delaware corporation with its

principal place of business in Denver, Colorado and Antero managed Pipeline and Midstream.

19. Midstream was formed by Antero to create a seamless and highly effective system of gathering pipelines and compressor stations in the Marcellus and Utica Shales in the United States, including West Virginia. The system is comprised of gathering pipelines and compressor stations processing and fractionation plants and water handling and treatment infrastructures.

20. Pipeline was created by Antero to provide pipeline services from natural gas wells in the United States and West Virginia, including to transport natural gas from natural gas wells in West Virginia to the point of sale on interstate pipelines, as well as for other purposes, including to transport natural gas liquids to processing plants like MarkWest.

21. Antero is the general partner of the respective affiliates, including Midstream, Pipeline and Antero Antero Resources Investment LLC (hereinafter "Investment,") which owns Antero, the general partner, have conflicts of interests with same and Antero and Investment may favor their own interests over Midstream and Pipeline and their other common unitholders. Antero Investment owns and controls their general partner and appoints all of the officers and directors of their general partner. A majority of the officers and directors of their general partner are officers or directors of Investment and Midstream. Similarly, a majority of the officers and directors of their general partner are also officers of directors of Antero. Although their general partner has a duty to manage them in a manner that is beneficial to them and their unitholders, the directors and officers of their general partners have a fiduciary duty to manage their general partner in a manner that is beneficial to its owner, Investment. Further, their general partner's directors and officers who are also directors and officers of Antero claim to have a fiduciary duty to manage subsidiaries in a manner that is beneficial to Antero. Conflicts of interest will arise

between Antero, Investment, Midstream and Pipeline and their general partner. In resolving these conflicts of interest, the general partner, Antero, may favor its own interests and the interests of Investment or Antero over the other unitholders.

22. Antero, by and through their predecessors, subsidiaries and/or partners, leased properties and acquired the leases of properties in West Virginia and prior to and during the times complained of herein said corporations acquired the leases and rights as lessee of plaintiffs' mineral interests in oil and gas on the property as described above.

23. Antero and Investment owns, operates and controls its subsidiaries, including Midstream and Pipeline. Its business segments and subsidiaries follow Antero's and Investment's directions and its subsidiary officers and employees cannot act independently but must coordinate their activities to satisfy Antero.

24. Antero and Investment, at all times complained of herein, is so organized, managed and operated by and through its subsidiaries, including the defendant subsidiaries, as well as the Midstream and Pipeline companies and so controls its subsidiaries and partnerships that defendants are mere instrumentalities and agents, divisions, departments, groups and segments of Antero and each other.

25. At all times complained of herein, Antero and Investment were acting for and on their own behalf and by and through their agents, servants and employees and also by and through its agents, Midstream and Pipeline.

26. At all times complained of herein, Antero subsidiaries, Midstream and Pipeline were acting for and on behalf of Antero and on behalf of themselves, and Antero was the alter ego of same, and Antero is responsible for the acts and conduct of subsidiaries and the partnerships which is complained of in this complaint including, but not limited to, Midstream

9

and Pipeline, the same as if Antero did the acts complained of.

27. At all times complained of herein, each of defendants undertook to join together and as required to do by Investment and Antero and individually for the purpose of producing, transporting, marketing and selling oil and natural gas and to that end, they combined their property, money, employees, effects, skill and knowledge in order to do all things directly and indirectly by and through each of defendants and their agents, servants and employees.

28. At all times complained of herein, Antero and all its subsidiaries and the partnerships were engaged in a joint venture with its subsidiaries, including Investment, Midstream, Pipeline and Antero for the venture to lease, explore for, develop, produce, market, transport and hedge and to sell oil and gas from West Virginia properties, including plaintiffs' properties.

29. The aforesaid joint venture required the defendants and each of them to participate in the acts and conduct of the plan and scheme to not pay plaintiffs for all of the royalty which they were entitled to and to keep the plaintiffs' royalty or parts thereof for themselves.

30. Upon information and belief, during the times complained of herein:

a. Investment owned Antero and Antero owned Midstream and Pipeline and/or was the general partner of same and Investment controlled Antero as if Antero was a division or department of Investment and Antero and Investment owned, operated and controlled Midstream and Pipeline as if they were departments of Investment and Antero;

b. Defendants had common and/or overlapping officers and directors with each other;

    c.    Investment financed and/or controlled the finances of Antero, including its loans;

    d.    Investment, acting by and through its departments' other subsidiaries, which it owns, operates and controls, including Antero, arranges for payment of or security for Antero's and Midstream's indebtedness, salaries, expenses and losses through shared revenues of all of its subsidiaries;

    e.    Except for sale of oil and gas and its by-products, Midstream and Pipeline does business primarily with Antero and its other subsidiaries;

    f.    Antero's subsidiaries' assets are under the control of Antero and/or Investment;

    g.    Upon information and belief, the officers and/or directors of Investment and Antero take direction from Investment and Antero for the interest of Investment and Antero;

    h.    Investment's assets consist primarily of the assets of its subsidiaries; and

    i.    Investment and Antero finances its subsidiaries and guarantees repayment of its subsidiaries' debt.

31.    At all times complained of herein, Antero was the lessee of oil and gas leases and are liable for performing the duties and responsibilities of West Virginia lessors for leases throughout West Virginia, including the plaintiffs' interests above, and each defendant was and is obligated by their duties under said leases as agent, servant, employee, joint venture and/or alter ego to, among other duties, to pay plaintiffs the amounts required pursuant to the laws of the State of West Virginia under the terms and conditions of said lease.

32.    All defendants, therefore, are liable to plaintiffs for the damages are set forth below and for the acts and conduct of each and all of defendants in participating in the aforesaid scheme.

33. Antero Investment, hereinafter "Investment," has, pursuant to its own authority and the authority over Antero and Midstream and Pipeline, owns Antero and is the alter ego of Antero, Midstream and Pipeline.

34. Defendants and each of them receives benefits by sharing in the moneys recovered from taking deductions from plaintiffs and thereby increasing their share of the sales price, proceeds and/or market value of the oil, natural gas and/or the liquid hydrocarbons contained in the natural gas.

35. At all times complained of herein, Investment was acting for and on its own behalf and on behalf of Antero and the subsidiaries, Midstream and Pipeline, and Antero were acting for and on behalf of themselves and for and on behalf of Investment.

36. Contrary to their contractual, legal, statutory and common law duties and responsibilities, Investment and Antero and/or defendants' subsidiaries, Midstream and Pipeline, and/or defendants' other subsidiaries have and continue to take deductions, reduce plaintiffs' royalty payments, overcharge plaintiffs for the deductions that they do charge plaintiffs, and otherwise reduce and not pay for plaintiffs' royalty on volume and/or price and/or by taking the liquid hydrocarbons which are part of the natural gas extracted from the said gas and subtracting unauthorized deductions therefrom.

37. Upon information and belief, defendants, directly and/or indirectly, sold plaintiffs' natural gas liquids for money without compensating plaintiffs for same and/or without paying plaintiffs for all of said liquids, which was part of the gas extracted and deducted moneys from said gas without authority to do so.

38. Antero and the defendants' subsidiaries and other subsidiaries undertook a design and plan to continue to avoid payment to plaintiff lessors, of all the royalty due them by charging

off to lessors' certain expenses and monies which the law of West Virginia does not permit unless the lease specifically provides for the same and then only when the amounts deducted are reasonable and actually incurred.

39. Antero and the other defendants, contrary to their duty and responsibility, intentionally and in violation of West Virginia state law, directly or indirectly paid or allotted to Antero and Midstream, Pipeline and Investment and other subsidiaries, moneys for gathering and other charges including taxes and deductions, which were not permitted to be taken from plaintiffs' royalty, all for the purpose of not paying plaintiffs the true and exact royalty that the law of West Virginia requires that they are entitled to and for the express purpose of increasing the defendants' own share of royalty.

40. Defendants have not paid to plaintiffs the royalties for the value of natural gas including all parts therein, which were extracted from their property, as required pursuant to said leases, and defendants continue to not pay plaintiffs the royalty to which they are entitled.

41. While not having the right to charge plaintiffs with the described above costs and unilaterally deducting same from their payments, defendants charged plaintiffs with costs and charges which were unreasonably excessive and not actual.

42. Defendants had and have an affirmative duty to pay to plaintiffs the true and correct royalty due them, either by virtue of the lease agreement, by virtue of W. Va. Code Ann. § 22-6-8, and/or by virtue of the contractual duty of good faith and fair dealing in all contracts and the implied covenants included in the plaintiffs' oil and gas contracts, and by virtue of the fiduciary duty and responsibility of the lessee in any oil and gas lease who assumes the duty of handling the "sales and accounting" functions of the parties.

43. As part of the legal responsibilities of Antero and the other defendants, it agreed

to and/or had the duty to account for all of the sales of gas extracted and/or produced from said wells and to accurately account for all gas, volumes and sales of same from said wells and to act as a fiduciary for plaintiffs' moneys owed to plaintiffs as a result of royalties due to plaintiffs.

44. Defendants violated said fiduciary responsibility.

45. Defendants intentionally violated their contractual duty to plaintiffs.

46. Defendants concealed, suppressed, and omitted material facts with intent that plaintiffs would rely upon same in connection with the bases for charging plaintiffs for specific services for marketing, transporting and processing and for other service charges associated with the calculation of plaintiffs' royalties and deductions therefrom.

47. Defendants, acting in concert as agents, servants and employees, each of the other, and as alter egos and joint venturers, provided plaintiffs with statements alleging disclosure of specifics as to the amount of gas extracted from their land, the amount that was received by Antero for the gas and the accurate deductions which were truly actual and reasonable and allowable to be taken from plaintiffs' royalty.

48. Plaintiffs relied upon defendants to truly, accurately, and properly carry out its contractual and fiduciary duties and responsibilities and to account honestly to plaintiffs for payments due to plaintiffs and for any material deductions or reductions, volume or otherwise, in royalty.

49. As a result of the aforesaid conduct of defendants, plaintiffs were damaged in that they were deprived of and are owed royalty payments from defendants and are owed interest from said deficiencies in said royalty payments.

50. The acts and conduct of defendants were willful and wanton and in utter disregard of plaintiffs' rights and West Virginia law.

14

51. At all times complained of herein, defendants were acting for and on their own behalf and as agents, ostensible agents, servants and/or employees of others in the course and scope of their employment, agency and/or ostensible agency.

52. At all times complained of herein, defendants were acting as conspirators with unnamed persons, firms, and corporations in common goals, schemes, and designs for the goals and purposes as herein alleged and complained of.

53. As a proximate result of defendants' and each of their acts, omissions, misrepresentations and conduct complained of herein, plaintiffs were damaged as follows:

   a. Defendants did not pay plaintiffs for all the gas extracted from the plaintiffs' wells;

   b. Defendants wrongfully reduced plaintiffs' royalty by giving itself credits for costs and expenses when defendants were not authorized to;

   c. Defendants did not pay for liquid hydrocarbons which was part of the gas which was extracted;

   d. The deductions defendants did take from plaintiffs were not reasonable and actual as required by West Virginia law;

   e. Defendants' wrongfully deducted costs and volume from plaintiffs' royalty;

   f. Plaintiffs lost the use of their money;

   g. Plaintiffs have been annoyed, inconvenienced and incurred unnecessary costs, expenses and taxation as a consequence of defendants' acts and conduct;

   h. Plaintiffs are entitled to an accounting for the oil and gas and products sold therefrom;

   i. Plaintiffs were not paid for all money sold through storage and hedging contracts; and

   j. Defendants' acts and conduct were intentional and amounted to a violation of plaintiffs' contractual and common law rights to their royalty, were reckless, willful and wanton and with total disregard for the plaintiffs' rights and plaintiffs' are entitled to punitive damages against the defendants.

## COUNT I

Plaintiffs incorporate all allegations above, the same as if fully restated and re-alleged herein.

54. Defendants violated and intentionally and tortuously breached their contractual duties and responsibilities to plaintiffs, and each of them, for each and every lease identified above, including the duty of good faith and fair dealing, and plaintiffs were damaged as set out above.

55. Plaintiffs are entitled to recover compensatory and punitive damages be provided, an accounting for all the rents and royalties and other damages as described above which they have been deprived by defendants' breach of contract and as set forth above.

## COUNT II

Plaintiffs incorporate all allegations above, the same as if fully restated and re-alleged herein.

56. Defendants violated their fiduciary duties and responsibilities to plaintiffs as aforesaid, and plaintiffs were damaged as described above.

57. Plaintiffs are entitled to be paid their rents and royalties and for all other damages as described above.

## COUNT III

Plaintiffs incorporate all allegations above, the same as if fully restated and re-alleged herein.

58. Defendants misrepresented to plaintiffs that defendants were entitled to take deductions from plaintiffs' royalty, that they had the right to take the amount of deductions they

took, reduced plaintiffs' royalty payments, misrepresented the amount of volume that was taken from plaintiffs' property, overcharged plaintiffs for services, and/or wrongfully claimed plaintiffs' royalty due was less than the amount actually due, and failed to report to plaintiffs that they were extracting and selling liquids from plaintiffs' natural gas, thereby denying plaintiffs the rents and royalties to which they were due.

59. Plaintiffs relied and are required to rely on the defendants for the honest accounting and lawful payments to plaintiffs of royalty owed to them on an ongoing basis.

60. Plaintiffs were damaged as a result of defendants' knowing and unlawful acts and omissions in continuing to take deductions, both costs and volume, from plaintiffs' royalties, failing to pay plaintiffs the fair value of money owed to them for the gas at the point of sale, not reporting or paying plaintiffs for said liquids and by defendants taking their money and using it for themselves.

61. As a proximate result of the wrongful, knowing and fraudulent acts and omissions of defendants, plaintiffs were damaged as aforesaid and plaintiffs are entitled to compensatory and punitive damages and for an accounting as set forth below.

## COUNT IV

Plaintiffs incorporate all allegations above and incorporate this allegation in each Count above, the same as if fully restated and re-alleged herein.

62. The actions of defendants as set forth herein above were done intentionally and with a reckless disregard for the rights of the plaintiffs, entitling the plaintiffs to punitive damages for all causes of action alleged herein. In particular, defendants entered into a plan, scheme, design and conspiracy to take portions of plaintiffs' royalties, to which defendants were not entitled, and use them for their own business purposes, including the sale of plaintiffs' gas to

17

a subsidiary at less than the value at the point of sale, deducting from plaintiffs' royalty amounts paid to defendants' subsidiaries for transporting and processing the gas to the "point of sale," and for failure to pay plaintiffs for the volume and for portions of their gas which were sold separately for liquids without compensating plaintiffs.

### PRAYER FOR ALL COUNTS

WHEREFORE, plaintiffs demand that they be awarded damages and equitable and affirmative relief against defendants, jointly and/or severally, as follows:

a. Compensatory damages and punitive damages in an amount to be determined by the Court and jury;

c. The costs and disbursements of this action, including attorney fees;

d. Prejudgment and post-judgment interest;

e. Equitable and injunctive relief, including requiring an accounting and order requiring plaintiffs to be properly paid; and

f. For such other further and general relief, compensatory, punitive, equitable, or injunctive, as the Court deems just and proper.

PLAINTIFFS DEMAND A TRIAL BY JURY.

> GERALD W. CORDER; MARLYN C. SIGMON; GARNET C. COTTRILL; RANDALL M. CORDER; JANET C. PACKARD AND LEROY PACKARD; LORENA KRAFFT; CHERYL MORRIS; TRACY BRIDGE; ANGELA NICHOLSON; KEVIN MCCALL; BRIAN MCCALL,
>
> By Counsel

_____
Marvin W. Masters
West Virginia State Bar No. 2359
The Masters Law Firm lc
181 Summers Street
Charleston, West Virginia 25301
Counsel for Plaintiffs
F:\MARY\Cotterll - Anterio - Leases\Cottrill - Antero\p001.docx

19