IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

GERALD W. CORDER,

      Plaintiff,

v.

                                                  Civil Action No. 1:18-00030

ANTERO RESOURCES CORPORATION,                    Hon. Irene M. Keeley
a Delaware corporation; ANTERO MIDSTREAM
PARTNERS, LP, a Delaware corporation; ANTERO
RESOURCES PIPELINE LLC, a Delaware corporation;
and ANTERO RESOURCES INVESTMENT LLC,

      Defendants.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
<u>DEFENDANTS' MOTION TO DISMISS</u>**

      As set forth in detail below, Plaintiff's breach of contract claim is adequately pled, Defendants owe Plaintiff a fiduciary duty in accounting for the royalties owed to her, Plaintiffs fraud claim is adequately pled, and Plaintiff has stated a claim for punitive damages.  Therefore, Defendants' motion to dismiss should be denied.

**Statement of The Case**

      The Plaintiff owns oil, natural gas, and other mineral deposits lying under land located in Harrison and Doddridge Counties in West Virginia.  These oil, natural gas, and mineral interests are the subject of and are described in leases that are identified in Paragraph 14 of Plaintiffs' Complaint. (Doc. Id. 1-1, ¶ 14.)   Specifically pled and identified are the Parties to the lease agreements (*See* Id., ¶¶ 1-32); Defendants' acquiring of the leases (*See* Id., ¶¶ 13-14, 26-28, 31-32); statement and description of the involved property (Id., ¶ 14); the acreage and location of the mineral interests (Id., ¶ 14); the royalty provisions (Id., ¶ 14); the duties owed under the lease agreements (Id., ¶¶ 14, 31, 36-43, 48); Plaintiff's entitlement to royalties under the lease

agreements (Id., ¶¶ 14, 29, 31, 38, 39, 40, 42-43, 48-49; Defendants' breaches of these agreements and of the duties owed to Plaintiffs (Id. ¶¶ 29, 36-41, 44-47, 54); and that Plaintiffs have been damaged ( Id., ¶¶ 36-41, 49-50, 53, 54). Plaintiffs assert claims for breach of contract (Count I); breach of fiduciary duty (Count II); fraud (Count III); and punitive damages under each cause of action (Count IV). Id.

Before addressing Defendants' arguments, it is also important to note that Plaintiffs must rely upon Defendants' truthfulness and honesty in accounting for Plaintiffs' royalties. (Id., ¶ 48.) Plaintiffs have no means of tracking Defendants' transactions or checking Defendants' accounting. It is understood that Defendants will perform those functions, and with that duty, Defendants have the duty to perform such functions fairly and accurately. All of the information is in Defendants' control and possession. Plaintiff sees only the check and royalty statements prepared by Defendants. Therefore, Plaintiffs also demand an accounting as part of their prayer for relief. (*See also,* Id., at ¶¶ 55, 61.)

### Standard of Review

Addressing the proper standard of review, the United States Supreme Court has explained:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.*; *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see*, *e.g.*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*,

416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (citations and footnote omitted).

*See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

>"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). But a complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To that end, Federal Rule of Civil Procedure 8 articulates a pleading standard which "does not require detailed factual allegations, but ... demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).

*NY @ Route 9 Limited Partnership v. Essroc Cement Corp.*, No. 3:16-CV-63, 2016 WL 4014703, at * 2 (N.D.W.Va. July 26, 2016) (Groh, J.).

>With regard to plausibility,

>The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the plaintiff's allegations. *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955.

*Nalco Co. v. Chem-Mod, LLC*, No. 2017-1036, 2018 WL 1055851, at *8 (Fed. Cir. Feb. 27, 2018).

>"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). This standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955.

*Solo v. United Parcel Serv. Co.,* 819 F.3d 788, 793–94 (6th Cir. 2016).

Further, "[t]he Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met." *Id.* (citation omitted).

> Rule 12(b)(6)'s pleading standard is "not meant to impose a great burden upon a plaintiff," *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005), as a count will survive so long as there is a " 'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Dura Pharm.*, 544 U.S. at 347, 125 S.Ct. 1627).

*Graves v. Callahan*, 253 F. Supp. 3d 330, 332 (D.D.C. 2017).  A complaint need not establish a *prima facie* case in order to survive a motion to dismiss:

> A *prima facie* case is "an evidentiary standard, not a pleading requirement," *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), and hence is "not a proper measure of whether a complaint fails to state a claim." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 213 (3d Cir.2009). As we have previously noted about pleading in a context such as this,
>
> > [a] determination whether a *prima facie* case has been made ... is an evidentiary inquiry—... Even post-*Twombly,* it has been noted that a plaintiff is not required to establish the elements of a *prima facie* case....
>
> *Id.* at 213 (citation omitted). Instead of requiring a *prima facie* case, the post-*Twombly* pleading standard " 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element[s]." *Phillips v. Cty. of Allegheny,* 515 F.3d 224, 234 (3d Cir.2008) (quoting *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955).

*Connelly v. Lane Const. Corp.,* 809 F.3d 780, 788–89 (3d Cir. 2016) (footnotes omitted).

Finally, "the pleading standard under Rule 12(b)(6) contemplates that plaintiffs will often be unable to prove definitively the elements of the claim before discovery, particularly in cases where the necessary information is within the control of the defendants." *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 961–62 (8th Cir. 2015).

### Plaintiffs' Breach of Contract Claim Is Adequately Pled

"In West Virginia, the elements of a breach of contract are (a) a contract exists between the parties; (2) a defendant failed to comply with a term in the contract, and (3) damage arose from the breach." *Patrick v. PHH Mortgage*

*Corp.,* 937 F.Supp.2d 773, 792 (N.D.W.Va. 2013) (citing *Wince v. Easterbrooke Cellular, Corp.,* 681 F.Supp.2d 688, 693 (N.D.W.Va. 2010)).

*See also,* Syl. Pt. 1, *State ex rel. Thornhill Group, Inc. v. King,* 759 S.E.2d 795 (W.Va. 2014) (A claim for breach of contract requires proof of the formation of a contract, a breach of the terms of that contract, and resulting damages); *Wetzel County Savings & Loan Co. v. Stern Bros., Inc.,* 195 S.E.2d 732, 736 (W.Va. 1973); *Sneberger v. Morrison,* 776 S.E.2d 156, 171 (W.Va. 2015).

In the Complaint, it is alleged that plaintiff owned oil and gas interests that were leased, assigned or otherwise transferred to Antero. (Doc. Id. 1-1, ¶13.)  Plaintiff alleged the date, book and page number of the lease and county where it was recorded. (Doc. Id. 1-1, ¶14.)  Plaintiff alleged the lease was assigned to the Defendants.  Plaintiff alleged the specific royalty provisions. (Doc. Id. 1-1, ¶14.)  Plaintiff alleged factual details regarding alter ego and that Defendants joined (Doc. Id. 1-1, ¶¶15-35) to produce, transport, market, sell, transport and hedge Plaintiff's oil and gas and then breached their duties and responsibilities under the contract by entering in to a plan and scheme to not pay Plaintiff (Doc. Id. 1-1,  ¶¶36-43) the royalty to which Plaintiff was entitled to under the contract and by failing to properly account and pay Plaintiff for royalties due to plaintiff under the contract.   (Doc. Id. 1-1, ¶¶ 29, 31, 38-39, 42-43, 48-49, 58.) Plaintiff further alleged that Plaintiff was damaged. (Doc. Id. 1-1, ¶¶ 15-35.)  In sum, Plaintiff entered into a contract leasing Plaintiff's oil and gas in exchange for royalty payments from Defendants.  Defendants took Plaintiff's oil and gas under the contract.  Plaintiff was entitled to be paid according to the contract and Defendants wrongfully failed and refused to pay Plaintiff the amounts due to Plaintiff under the contract, damaging Plaintiff.

Plaintiff has alleged facts that allow the Court to draw the reasonable inference that the Defendants are liable for the misconduct alleged.  Plaintiff is not required to prove the case in the pleadings.  Furthermore, Plaintiff's allegations are not akin to the allegations in *Rodgers v.*

*Southwestern Energy Co.,* No. 5:16-CV-54, 2016 WL 3248437 (N.D.W.Va.  June 13, 2016),

*KBS Preowned Vehicles, LLC v. Revia, Inc.,* No. 1:13CV138, 2014 WL 12591890 (N.D.W.Va.

Mar. 26, 2014) or *Cather v. Seneca-Upshur Petroleum, Inc.,* No. 1:09-CV-139, 2010 WL

3271965 (N.D.W.Va. Aug. 18, 2010).  Plaintiff alleged and identified the property and lease at

issue, royalty provisions, connection between Defendants and the lease, and specific details

regarding the Parties' agreement entitling Plaintiff to royalties.  The Plaintiff has also alleged

that Defendants are agents, alter egos and joint venturers, thus making all of them liable for

Plaintiff's damages. Plaintiff does not baldy assert that there is a contractual duty to pay royalties

without any factual support. While Plaintiff has not alleged the specific amounts underpaid, that

information is solely within the knowledge of the Defendants.  The 12(b)(6) standard

contemplates that a plaintiff will often be unable to prove definitively the elements of the claim

before discovery, particularly in cases where the necessary information is solely within the

control of the defendants.  Plaintiff does not have to establish a *prima facie* case in order to

survive a motion to dismiss.  A *prima facie* case is an evidentiary standard, not a pleading

requirement, and it is not a proper measure of whether Plaintiff has stated a claim.

Plaintiff acknowledges that a modification to a lease not involved in this action was

mistakenly referenced in the Complaint and there were a few other typographical errors, as

pointed out by Defendants. (Doc. Id. 5, pp. 8-9.)  Nonetheless, this error should be considered

harmless since Plaintiff has placed Defendants on fair notice of the breach of contact claim and

Defendants are aware of and have acknowledged that the modification and its "market

enhancement clause" are not applicable to the leases at issue here (Doc. Id. 5, p. 9.)

Furthermore, West Virginia law is not silent with respect to post-production deductions

associated with natural gas liquids.  Defendants mistakenly attempt to separate natural gas from

the constituents that make up the gas taken from Plaintiff's mineral estate.  Gas is hydrocarbons

which are also in liquid form, and the law in West Virginia is settled on the deductions a

defendant seeks to take from a plaintiff's gas royalties.  The law in West Virginia provides:

> 1. "If an oil and gas lease provides for a royalty based on proceeds received by the lessee,
> unless the lease provides otherwise, the lessee must bear all costs incurred in exploring
> for, producing, marketing, and transporting the product to the point of sale." Syllabus
> Point 4, *Wellman v. Energy Resources, Inc.,* 210 W.Va. 200, 557 S.E.2d 254 (2001).

> 2. "If an oil and gas lease provides that the lessor shall bear some part of the costs
> incurred between the wellhead and the point of sale, the lessee shall be entitled to credit
> for those costs to the extent that they were actually incurred and they were reasonable.
> Before being entitled to such credit, however, the lessee must prove, by evidence of the
> type normally developed in legal proceedings requiring an accounting, that he, the lessee,
> actually incurred such costs and that they were reasonable." Syllabus Point 5, *Wellman v.
> Energy Resources, Inc.,* 210 W.Va. 200, 557 S.E.2d 254 (2001).
> * * *
> 10. Language in an oil and gas lease that is intended to allocate between the lessor and
> lessee the costs of marketing the product and transporting it to the point of sale must
> expressly provide that the lessor shall bear some part of the costs incurred between the
> wellhead and the point of sale, identify with particularity the specific deductions the
> lessee intends to take from the lessor's royalty (usually 1/8), and indicate the method of
> calculating the amount to be deducted from the royalty for such post-production costs.

> 11. Language in an oil and gas lease that provides that the lessor's 1/8 royalty (as in this
> case) is to be calculated "at the well," "at the wellhead," or similar language, or that the
> royalty is "an amount equal to 1/8 of the price, net all costs beyond the wellhead," or
> "less all taxes, assessments, and adjustments" is ambiguous and, accordingly, is not
> effective to permit the lessee to deduct from the lessor's 1/8 royalty any portion of the
> costs incurred between the wellhead and the point of sale.

*Estate of Tawney v. Columbia Nat. Res., L.L.C.*, Syllabus, 633 S.E.2d 22 (W.Va. 2006).  Further,

there is nothing in *Leggett v. EQT Production Co.,* 800 S.E.2d 850 (W.Va. 2017) that "counsels

against extending the first marketable product doctrine in *Wellman* and *Tawney* to the

manufacturing of residue gas and NGLs through processing and fractionization of wet gas."  *See*

Doc # 6, P. 10.

Moreover, Plaintiff's reliance on West Virginia Code § 22-6-8 is not misplaced.  Under

West Virginia Code § 22-6-8 *if* a lessee is permitted to deduct post-production expenses, those

expenses must be "reasonable" and "actually incurred by the lessee." *Leggett,* at 868. Defendants must comply with the law regardless of the method they use to calculate royalties.

Finally, Defendants' argument that Plaintiff's failure to plead an adequate breach of contract claim is fatal to Plaintiff's allegations with respect to the implied covenant of good faith and fair dealing is without merit since Plaintiff has adequately pled a breach of contract claim. Thus, this Court should deny Defendants' motion to dismiss Count I of Plaintiff's Complaint. Alternatively, the Complaint does contain some clerical errors, and in the event this Court finds that the Complaint does not sufficiently allege a breach of contract, the Plaintiff requests leave to file the amended complaint, as set forth in plaintiff's motion to amend and memorandum filed contemporaneously herewith.  *See* Fed. R. Civ. P. 15(a) (leave to amend should "be freely given when justice so requires"); *United States v. Pittman,* 209 F.3d 314, 317 (4th Cir. 2000) (generally, courts should grant leave to amend in the absence of "bad faith, undue prejudice to the opposing party, or futility of amendment") (internal citations omitted); *Garvin v. Southern States Ins. Exchange Co.*, 329 F. Supp. 2d 756, 761-62 (N.D. W. Va. 2004) (the district court granted plaintiff leave to amend its complaint to meet the heightened pleading requirement for its fraud claim against defendant).

### Plaintiffs' Breach of Fiduciary-Duty Claim Is Adequately Pled

As to Plaintiff's breach of fiduciary-duty claim, it is important to recognize that Defendants do not contend that plaintiffs have failed to adequately plead such claim for purposes of providing the required notice pleading, but instead contend that as a matter of law a fiduciary duty simply does not exist between lessors and lessees in an oil and gas lease.  Plaintiffs acknowledge that many courts have lumped all aspects of the oil and gas lessees' duties into one category and deny that an oil and gas lessee owes a fiduciary duty to a lessor.  Under the facts of

the present case, Plaintiff respectfully disagrees.  Plaintiff further understands that several courts within this State have held that a fiduciary relationship is not created merely because a natural gas lease has been entered into by lessors and lessees.  *See, e.g., Wellman v. Bobcat Oil & Gas, Inc.*, No. 3:10cv147, 2010 WL 2720748, at *2 (S.D.W.Va. July 8, 2010) (Goodwin, J.); *Cather v. Seneca-Upshur Petroleum, Inc.*, No. 1:09cv139, 2010 WL 3271965, at *5 (N.D.W.Va. Aug. 18, 2010) (Keeley, J.).  However, these cases fail to acknowledge that the duties and responsibilities actually assumed by a lessee as a result of a natural gas lease are much different from that seen in more typical leases and the reasonably prudent operator standard cannot be applied to all of a lessee's acts in performing its duties under an oil and gas lease.  As set forth below, this is particularly true where the lessee collects, holds, and disburses the money, and especially where the lessee is self-dealing and/or dealing with its affiliates.

Plaintiff respectfully submits that a fiduciary and agency relationship does exist between Plaintiff and Defendants, particularly when the gas company receives money for both the Plaintiff and Defendants.  Plaintiffs have alleged facts that demonstrate that (i) the activities of the parties have a reciprocal benefit; (ii) the activities impose a common interest and profit; (iii) the parties repose trust in each other; and (iv) one party, here the Defendants, has dominion and control over the other.  *See*, 37 Am.Jur.2d *Fraud and Deceit*, §494; *Baldwin v. Laurel-Ford Lincoln-Mercury, Inc.*, 32 F.Supp.2d 894 (S.D.Miss. 1998).

Rarely, but occasionally, courts overlook separate, distinct, factual differences with respect to precedent.  Plaintiffs request the Court to carefully examine the cases citd by Defendants and their rationale because nowhere in the lease does it exempt Defendants from honestly and accurately dispersing Plaintiff's royalty. For example, *Grass v. Big Creek Development Co.,* 84 S.E.750 (W.Va. 1915) dealt with the judgment of an operator of an oil and

gas lease and the diligence with which and extent to which wells should be drilled upon discovery of minerals in paying quantities.  The Court in *Grass* explained:

> "Where the object of the operations contemplated by an oil and gas lease is to obtain a benefit or profit for both lessor and lessee, neither is, in the absence of a stipulation to that effect, the arbiter of the extent to which or the diligence with which the operation shall proceed; but both are bound by the standard of what, in the circumstances, would be reasonably expected of operators of ordinary prudence, having regard to the interests of both."

*Grass,* at 753.  In *Jennings v. Southern Carbon Co.,* 80 S.E. 368 (W.Va. 1913), the issues were whether the defendant had properly tested the plaintiffs lands for oil and gas under a lease and whether the defendant failed to protect the lands for drainage.  On these issues, the Court said:

> "To the judgment of the operator, when, and where, and how many wells he shall drill, deference is justly due. But the judgment must be an honest, not an arbitrary, judgment. He must deal with the leased premises, not exclusively to serve his own peculiar and selfish interests, unmindful of his obligations to the source from which his authority is derived, but so as to promote the mutual advantage and profit of himself and the lessor"; and, to excuse the operator, his judgment "must conform to that judgment generally exercised by other operators under similar circumstances and conditions, and in view of the real purpose and intention of the parties when entering into the agreement," and not merely the opinion of those not so engaged.

*Id.*  The fiduciary duty here relates Defendants' accounting for royalties owed to the Plaintiff. Accounting for royalties is not analogous to conducting operations under a lease such as drilling wells to prevent drainage.  There should be no "mutual advantage" or promotion of profit for Defendants in accounting for Plaintiffs' royalties.  When accounting for Plaintiff's royalties Defendants should have to support Plaintiff's interests above theirs, especially where Defendants have all of the records and royalty accounting data and information in their possession, and Plaintiff must rely on them to truthfully and accurately account for Plaintiff's royalties.  A duty of "ordinary prudence" has no place under these circumstances, particularly where Plaintiff must rely and the Defendant to correctly account for the gas and royalties, and especially where Defendants are selling the gas to themselves and/or their joint venturers and affiliates.  The duty

here arises from Plaintiff's reliance on Defendants to truly, accurately, and properly account for the gas and royalties owed to the Plaintiff.  There is no question that in accounting for Plaintiffs' gas and royalties, Defendants had "[a] duty to act for someone else's benefit [the Plaintiff's], while subordinating" their "personal interests to that of the other person [Plaintiff]." *Elmore v. State Farm Mut. Automobile Insurance Co.,* 504 S.E.2d 893, 898 (W.Va. 1998).

The relationship of principal and agent comes under the equitable doctrine that any person who occupies a fiduciary relation to another is bound not to exercise to the benefit of himself and to the prejudice of the party to who he stands in such relation of any of the powers or rights or any knowledge or advantage of any description which he derives from such confidential position.[1] An agent is a fiduciary with respect to the matters within the scope of his agency, the very relation implying that the principal has reposed some trust or confidence in the agent. Therefore, the agent or employee is bound to the exercise of the utmost good faith and loyalty toward his principal or employer, and he is duty bound not to act adversely to the interest of his employer by serving or acquiring any private interest of his own in antagonism or opposition thereto.

The major principle behind fiduciary relationships is that one person has placed their trust or confidence in the integrity or fidelity of another.  Confidence is reposed by one side, and domination and influence result in the other.  These principles are applicable to the here.  Here, Plaintiff has placed her trust and confidence in the integrity and fidelity of the Defendants and

---

[1] 1A M.J., *Agency*, § 57.  *See also Horne v. Holley*, 188 S.E. 169 (Va. 1936); *Byars v. Stone*, 42 S.E.2d 847 (Va. 1947); *Redford v. Booker*, 185 S.E. 879 (Va.1936); *Sperry v. Sperry*, 92 S.E. 574 (W.Va. 1917); *Henshaw v. Globe & Rutgers Fire Ins. Co.*, 166 S.E. 15 (W.Va. 1932); *Community Counselling Service, Inc. v. Reilly*, 317 F.2d 239 (4th Cir. 1963) (An agent cannot place himself in a position where his own interests are or may become antagonistic to those of his principal.); *H-B Ltd. Partnership v. Wimmer*, 257 S.E.2d 770 (Va. 1979)(A fiduciary relationship exists in all cases when special confidence has been reposed in one who in equity and good conscience is bound to act in good faith and with due regard for the interests of the one reposing the confidence.); *Owen v. Shelton*, 277 S.E.2d 189 (Va. 1981); *Allen Realty Corp. v. Holbert*, 318 S.E. 2d 592 (Va. 1984).

confidence is reposed by the Plaintiff, and domination and influence results on the part of the Defendants.   Under these circumstances, the Defendants owe a fiduciary obligation to the Plaintiff and, therefore, Defendants' motion to dismiss Count II of Plaintiffs' Complaint should be denied.

### Plaintiffs' Fraud Claim Is Adequately Pled

In attacking the sufficiency of Plaintiff's fraud claim, Defendants fail to acknowledge that the fraudulent transactions at issue do not involve face-to-face communications between the Plaintiffs and some individual agent of the Defendants whose identity has been made known to the Plaintiff.  Moreover, as will be discussed in greater detail below, Defendants fail to note the fraud at issue here consists of fraudulent omissions and concealment that constitute a type or subspecies of fraud for which courts do not demand the same heightened pleading requirements as they do for your more typical claims of direct and active, fraudulent misrepresentations.

Among the numerous allegations of Plaintiff's Complaint, the following allegations are particularly relevant to plaintiffs' fraud claim:[2]

36.     Contrary to their contractual, legal, statutory and common law duties and responsibilities, Investment and Antero, and/or defendants' subsidiaries, Midstream and Pipeline, and/or defendants' other subsidiaries have and continue to take deductions, reduce plaintiffs' royalty payments, overcharge plaintiffs for the deductions that they do charge plaintiffs, and otherwise reduce and not pay plaintiffs' royalty on volume and/or price and/or by taking liquid hydrocarbons which are part of the natural gas extracted from the said gas and subtracting unauthorized deductions therefrom.

37.     Upon information and belief, defendants, directly and/or indirectly, sold plaintiffs' natural gas liquids for money without compensating plaintiffs for all of said

---

[2] Throughout their complaint, plaintiffs adopt and incorporate all of their prior allegations as if fully set forth in each respective count.  Courts have held that, when a party so adopts and incorporates allegations, the totality of the complaint must be examined in assessing the sufficiency of any particular count, such as a claim of fraud.  *See Polis v. American Liberty Fin., Inc.*, 237 F. Supp. 2d 681, 688 (S.D. W. Va. 2002) (denying Rule 12(b)(6) motion based upon alleged Rule 9(b) violation where, inter alia, the complaint "incorporate[d] by reference into [the fraud count] the earlier paragraphs in the Amended Complaint"); *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F. Supp. 2d 298, 314 (D. Md. 2000) ("The Fraud Counts incorporate by reference all preceding paragraphs of the Amended Complaint.  Accordingly, an examination of the entire Amended Complaint is necessary.").

liquids, which was part of the gas extracted and deducted moneys from said gas without authority to do so.

38.     Antero and the defendants' subsidiaries and other subsidiaries undertook a design and plan to continue to avoid payment to plaintiff lessors, of all the royalty due them by charging off to lessors the expenses and monies which the law of West Virginia does not permit unless the lease specifically provides for the same and then only when the amounts deducted are reasonable and actually incurred.

39.     Antero and the other defendants, contrary to their duty and responsibility, intentionally and in violation of West Virginia state law, directly or indirectly paid or allotted to Antero and Midstream, Pipeline and Investment and other subsidiaries, moneys for gathering and other charges including taxes and deductions, which were not permitted to be taken from plaintiffs' royalty, all for the purpose of not paying plaintiffs the true and exact royalty that the law of West Virginia requires that they are entitled to and for the express purpose of increasing the defendants' own share of royalty.

40.     Defendants have not paid to plaintiffs the royalties for the value of natural gas including all parts therein, which ere extracted from their property, as required pursuant to said leases, and defendants continue to not pay plaintiffs the royalty to which they are entitled.

41.     While not having the right to charge plaintiffs with the described above costs and unilaterally deducting same from their payments, defendants charged plaintiffs with costs and charges which were unreasonably excessive and not actual.

42.     Defendants had an affirmative duty to pay to plaintiffs the true and correct royalty due them, either by virtue of the lease agreement, by virtue of W. Va. Code Ann. § 22-6-8, and/or by virtue of the contractual duty of good faith and fair dealing in all contracts and the implied covenants included in the plaintiffs' oil and gas contracts, and by virtue of the fiduciary duty and responsibility of the lessee in any oil and gas lease who assumes the duty of handling the "sales and accounting" functions of the parties.

43.     As part of the legal responsibilities of Antero and the other defendants, it agreed to and/or had the duty to account for all of the sales of gas extracted and/or produced from said wells and to accurately account for all gas, volumes and sales from said wells and to act as a fiduciary for plaintiffs' moneys owed to plaintiffs as a result of royalties due to plaintiffs.

* * *

46.     *Defendants concealed, suppressed, and omitted material facts with intent that plaintiffs would rely upon same in connection with the bases for charging plaintiffs for specific services for marketing, transporting and processing and for other service charges associated with the calculation of plaintiffs' royalties and deductions therefrom.*

* * *

48.     *Plaintiffs relied upon defendants to truly, accurately, and properly carry out its contractual and fiduciary duties and responsibilities and to account to plaintiffs for payments due to plaintiffs and for any material deductions or reductions, volume or otherwise, in royalty.*

49.     As a result of the aforesaid conduct of defendants, plaintiffs were damaged in that they were deprived of and are owed royalty payments from defendants and are owed interest from said deficiencies in said royalty payments.

50.     The acts and conduct of defendants were willful and wanton and in utter disregard of plaintiffs' rights.

* * *

53.     As a result of defendants' and each of their acts, *omissions, misrepresentations,* and conduct complained of herein, plaintiffs were damaged…

* * *

58.     *Defendants misrepresented to plaintiffs that defendants were entitled to take deductions from plaintiffs' royalty, that they had the right to take the amount of deductions they took, reduced plaintiffs' royalty payments, misrepresented the amount of volume that was taken from plaintiffs' property, overcharged plaintiffs for services, and/or wrongfully claimed plaintiffs' royalty due was less than the amount actually due, and failed to report to plaintiffs that they were extracting and selling liquids from plaintiffs' natural gas, thereby denying plaintiffs the rents and royalties to which they were due.*

59.     *Plaintiffs relied and are required to rely on the defendants for the honest accounting and lawful payments to plaintiffs of royalty owed to them on an ongoing basis.*

60.     Plaintiffs were damaged as a result of defendants' knowing and unlawful acts and omissions in continuing to take deductions, both costs and volume, from plaintiffs' royalties, failing to pay plaintiffs the fair value of money owed to them for the gas at the point of sale, not reporting or paying plaintiffs for said liquids and by defendants taking their money and using it for themselves.

61.     As a proximate result of the wrongful, knowing and fraudulent acts and omissions of defendants, plaintiffs were damaged as aforesaid and plaintiffs are entitled to compensatory and punitive damages and for an accounting as set forth below.

(Doc. Id. 1-1; emphases added)

While paragraph 58 may not be artfully drafted to the extent that it suggests active or direct misrepresentations by the Defendants, Plaintiffs represents to the Court, consistent with paragraph 46, that the Defendants' fraudulent conduct consists of concealment, suppression, and omissions of material facts concerning what the proper amount of Plaintiff's royalty payments should be as well as what the proper amount of any deductions from such royalty payments should be.

14

As acknowledged by the West Virginia Supreme Court of Appeals, "'"an action for fraud can arise by the concealment of truth."' *Teter v. Old Colony Co.*, 441 S.E.2d 728, 734 (W.Va. 1994) (quoting *Thacker v. Tyree*, 297 S.E.2d 885, 888 (W.Va. 1982)).  Such a basis for a claim of fraud is possible because `[f]raud is the concealment of the truth, just as much as it is the utterance of a falsehood.' *Frazier v. Brewer*, 43 S.E. 110, 111 (W.Va. 1902)." *Kessel v. Leavitt*, 511 S.E.2d 720 (W.Va. 1998).

"The central question which arises when a complaint is attacked under 9(b) is how much detail is necessary to give adequate notice to the opposing party in order to enable that party to prepare adverse pleadings." *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F. Supp. 2d 298, 314 (D. Md. 2000) (citation and internal quotation marks omitted).  Generally speaking, it is true that Rule 9(b) of the Federal Rules of Civil Procedure requires that in all averments of fraud, the circumstances constituting fraud shall be stated with particularity.

As more specifically noted by the Court in *In Town Hotels Ltd. Partnership v. Marriott Intern., Inc.*, 246 F. Supp.2d 469, 486 (S.D.W.Va. 2003):

> Under Rule 9(b), "[I]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  The Fourth Circuit has explained that "the `circumstances' required to be pled with particularity under Rule 9(b) are `the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentations and what he obtained thereby.'" *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (*quoting* 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*:  Civil § 1297, at 590 (2d ed. 1990)).  Even so, the court cautioned that "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id.*

However, in the present case, defendants do not acknowledge that less particularity is required when a plaintiff alleges claims of fraudulent omission or concealment.  As acknowledged by the Court in *In Town Hotels Ltd. Partnership*, 246 F. Supp.2d at 487, "[a]s for

15

the allegations of material omissions, the plaintiffs correctly point out that **when the allegation of fraud relates to an omission rather than an affirmative misrepresentation, less particularity is required**." (*Citing Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 552 (D.Md. 1997)) (emphasis added).

As explained by the United States District Court for the District of Maryland in *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. at 552:

> With respect to fraud committed by affirmative statements, "[p]articularity of pleading is required with regard to the time, place, speaker and contents of the allegedly false statements, as well as the manner in which statements are supposedly false and the specific facts which raise an inference of fraud." *In re Medimmune, Inc. Securities Litigation*, 873 F. Supp. 953, 960 (D.Md. 1995). **Such particularity cannot be met in a concealment case, however, because an omission "cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation."** *Flynn v. Everything Yogurt*, 1993 WL 454355, at *9 (D.Md. Sept. 14, 1993). **Thus, this Court has recognized that these particularity requirements are less strictly applied with respect to claims of fraud by concealment**. *Id.*; *see also Bonfield v. AAMCO Transmissions, Inc.*, 708 F. Supp. 867, 875 (N.D.Ill. 1989) (stating that allegations of omissions are "really not subject to Rule 9(b) analysis").

(Emphases added).

Simply stated, an allegation of fraudulent omission "is really not subject to Rule 9(b) analysis. Like Sherlock Holmes' dog that did not bark in the night, an actionable omission obviously cannot be particularized as to `the time, place, and contents of the false representation' or `the identity of the person making the misrepresentation.'" *Bonfield v. AAMCO Transmissions, Inc.*, 708 F. Supp. at 875.

It should also be noted that a duty to disclose arises not only where a fiduciary duty exists but also under other circumstances, including, but not necessarily limited to, where a defendant provides half-truths or incomplete information or has superior knowledge and/or access to such knowledge. *See, e.g.*, *Okland Oil Company v. Conoco*, 144 F.3d 1308, 1324 (10th Cir. 1998); 26

*Willston on Contracts* §69:17 (4th ed.); 37 Am.Jur.2d, *Fraud And Deceit* § 204.  Providing this information to the Court is particularly important considering defendants are contending that no fiduciary duty exists between oil and gas lessors and lessees and are seeking dismissal of such claim as well.

As one court put the matter:  "A duty to speak arises from a fiduciary or confidential relationship or where a person is, `by force of circumstances,' under a duty to speak."  26 *Willston on Contracts* §69:17 (4th ed.), (citing *Boyd v. Boyd*, 67 S.W.3d 398 (Tex. 2002).  When one voluntarily discloses information, he has a duty to disclose the whole truth rather than making a partial disclosure that conveys a false impression, and regardless of the existence of a duty to disclose, a direct inquiry regarding a material fact requires a truthful answer.  *Id.*, (citations omitted).

Transactional circumstances other than a confidential or fiduciary relationship give rise to a duty to disclose, and one such circumstance is the disclosure of certain facts, which, absent other disclosures, will mislead.  *Id.*  In discussing such half-truths, the Supreme Court of the United States stated as follows:

> A statement in a business transaction which, while stating the truth, so far as it goes, the maker knows or believes to be materially misleading because of his failure to state qualifying matter is a fraudulent misrepresentation.

> Such a statement of a half truth is as much a misrepresentation as if the facts stated were untrue.

26 *Willston on Contracts* §69:17 (4th ed.), (citing *Equitable Life Ins. Co. of Iowa v. Hasley, Stuart & Co.*, 312 U.S. 40, 61 S.Ct. 623 (1941).  *See, also*, 37 Am.Jur.2d, *Fraud And Deceit* § 209; *Sparks v. Guaranty State Bank*, 318 P.2d 1062 (Cal. 1957); *American Petroleum Products, Inc. v. Mom and Pop Stores, Inc.*, 497 S.E.2d 616 (Ga. 1998); *Eisenschmidt v. Conway*, 155 P.2d 241 (Okla. 1944).

Additionally, numerous courts have described the duty to speak arising from circumstances where defendants possess superior information that plaintiffs are entitled to have. 26 *Willston on Contracts* §69:17 (4th ed.)  The possession of superior information coupled with a relationship involving a degree of trust and confidence, or the fact that the information was not reasonably available to the other party are circumstances that create the duty to speak.  *Id.*

In the conduct of various business dealings, commercial relations and other relationships relating to property, contracts, and miscellaneous rights, there are times and occasions when the law imposes upon a party a duty to speak rather than to remain silent with respect to certain facts within a party's knowledge, and thus to disclose information, in order to place the parties on equal footing.  37 Am.Jur.2d, *Fraud And Deceit* § 204.

In nondisclosure cases, the law does not attempt to define occasions when the duty to speak arises, but, has instead adopted the proposition that whether a duty to speak exists is determined by all of the circumstances of the case, and, by comparing the facts not disclosed with the object and end sought by the contracting parties. 37 Am.Jur.2d, *Fraud And Deceit* § 204.  Some of the circumstances that evoke the duty to speak include:

(1)   the relationship of the parties;
(2)   the relative knowledge of the parties;
(3)   the value of the particular fact;
(4)   the plaintiff's opportunity to ascertain the fact;
(5)   the customs of the trade; and
(6)   other relevant circumstances.

*Id.  See also* 37 Am.Jur.2d, *Fraud And Deceit* § 205; *Constance v. B.B.C. Development Co.*, 25 S.W.3d 571 (Mo. 2000); *Wild v. Trans World Airlines, Inc.*, 14 S.W.3d 166 (Mo. 2000).  For example, a duty to disclose arises when the parties are in a relationship that gives rise to the duty, such as a seller and buyer, an employer and prospective employee, a doctor and a patient, or parties entering into any kind of contractual agreement.  37 Am.Jur.2d, *Fraud And Deceit* § 204.

Furthermore, a party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter that the other was thus prevented from discovering.   Restatement (Second), *Torts* § 550.   Liability for fraudulent concealment occurs "[w]hen the defendant successfully prevents the plaintiff from making an investigation that he would otherwise have made, and which, if made, would have disclosed the facts; or when the defendant frustrates an investigation." Restatement (Second), *Torts* § 550, comment b - 551.   (Restatement (Second), *Contracts* § 160 (action intended or known to be likely to prevent another from learning a fact is equivalent to an assertion that the fact does not exist).

Restatement (Second), *Torts* § 551, provides:

"(1)    One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

"(2)    One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

(a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and

(b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and

(c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and

(d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and

(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts."

As noted by the Tenth Circuit in *Okland Oil Company v. Conoco*, 144 F.3d 1308 (10th Cir. 1998):

> Under Oklahoma law, " '[i]n determining **whether there is a duty to speak, consideration must be given to the situation of the parties and matters with which they are dealing.**'" *Thrifty Rent-A-Car Sys., Inc. v. Brown Flight Rental One Corp.,* 24 F.3d 1190, 1195 (10th Cir.1994) (quoting *Silk v. Phillips Petroleum Co.,* 760 P.2d 174, 179 (Okla.1988)). Those considerations may require either (1) **an absolute positive duty to speak based on a fiduciary or similar duty**, or (2) **a duty to speak arising from a partial disclosure**. *See Thrifty Rent-A-Car Sys.,* 24 F.3d at 1195. The second duty is imposed because the speaker is " 'under a duty to say nothing or to tell the whole truth. **One conveying a false impression by the disclosure of some facts and the concealment of others is guilty of fraud, even though his statement is true as far as it goes, since such concealment is in effect a false representation that what is disclosed is the whole truth.**'" *Id.* (*quoting Deardorf v. Rosenbusch,* 201 Okla. 420, 206 P.2d 996, 998 (1949)); *see also Varn v. Maloney,* 516 P.2d 1328, 1332 (Okla.1973); *Ragland v. Shattuck Nat'l Bank,* 36 F.3d 983, 991-92 (10th Cir.1994); Okla. Stat. tit. 76, § 3 (Deceit may be found, inter alia, by the "suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact."). **So even in the absence of a fiduciary or similar relationship, the duty to speak often arises**. *See Ragland,* 36 F.3d at 991-92; *Uptegraft v. Dome Petroleum Corp.,* 764 P.2d 1350, 1353-54 (Okla.1988).

*Id.* at 1324 (emphases added, footnote omitted).

Moreover, Plaintiff's fraud claim is not barred by the gist of action doctrine. Under West Virginia law, if an action in tort would arise independent of the existence of a contract, it is a viable cause of action. In other words, "'whether a tort claim can coexist with a contract claim is determined by examining whether the parties' obligations are defined by the terms of the contract.'" *Soyoola v. Oceanus Ins. Co.*, 986 F.Supp.2d 695, 707 (S.D.W.Va. 2013) (citing *Gaddy Eng'g Co. v. Bowles Rice McGraff & Love*, 231 W.Va. 577, 746 S.E.2d 568, 577 (2013). The "gist of action" doctrine under West Virginia law only bars a tort action if a party establishes one of the following:

> (1) where liability arises solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any

liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.

*Id.  See also,* Syl. Pts. 9 & 10, *Lockhart v. Airco Heating & Cooling, Inc.*, 211 W.Va. 609, 567 S.E.2d 619 (2002).  Plaintiffs' claim of fraud is an independent tort that possesses all of the essential elements of the tort and is not premised upon a mere omission to perform a contract obligation.

In light of the above, Plaintiff respectfully submits that the allegations of Plaintiff's Complaint, when read in its entirety, more than adequately satisfies the pleading requirements for claims of fraudulent concealment and omissions.  Accordingly, Plaintiff requests that the Court deny Defendants' motion to dismiss Plaintiff's fraud claim.  Alternatively, in the event this Court finds that plaintiffs' complaint does not sufficiently allege fraud, Plaintiff requests leave to amend the complaint to re-allege her fraud claims against the Defendants.  *See* Fed. R. Civ. P. 15(a); *United States v. Pittman,* 209 F.3d 314, 317 (4th Cir. 2000); *Garvin v. Southern States Ins. Exchange Co.*, 329 F. Supp. 2d 756, 761-62 (N.D. W. Va. 2004).

**Plaintiff has stated Claims for Punitive Damages in All Counts**

Plaintiff is not alleging punitive damages as a stand-alone cause of action.  Plaintiff adopted and incorporated all of their prior allegations as if fully set forth in her Count IV.  When a party so adopts and incorporates allegations, the totality of the complaint must be examined in assessing the sufficiency of any particular count. *See Polis v. American Liberty Fin., Inc.*, 237 F. Supp. 2d 681, 688 (S.D. W. Va. 2002); *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F. Supp. 2d 298, 314 (D. Md. 2000).  Accordingly, an examination of the entire Complaint is necessary, and a review of the Complaint reveals that Plaintiff has stated independent causes of action and a claim for punitive damages. *See* RST 2d of Contracts, § 355 (1981); *Goodwin v.*

*Thomas,* 403 S.E.2d 13, 16 (W.Va. 1991); *Hayseeds, Inc. v. State Farm Fire & Cas.,* 352 S.E.2d 66, 80 (W.Va. 1986); *Berry v. Nationwide Mut. Fire Ins. Co.,* 381 S.E.2d 367, 374 (W.Va. 1989); *Okland Oil Company v. Conoco Inc.,* 144 F.3d 1308 (C.A.10 1998); *Grynberg v. Citation Oil and Gas Corp.,* 573 N.W.2d 493 (S.D. 1997).

### Antero Pipeline and Investment are Proper Parties by Merger and Dissolution but Remain Liable

Defendants argue that Antero "Pipeline" and "Investment" are not proper parties; however, by a virtue of Pipeline's merger with Antero Resources, the latter is liable for Pipeline's alleged misconduct.  Since the statute of limitations for breach of contract is 10 years and fraud and fiduciary duty breach are subject to the discovery rule.  Pipeline's conduct remains an issue.  Further, Investment, while dissolved, remains liable for its misconduct for three years after dissolution which is alleged to have occurred on October 31, 2017.  Therefore, it is a proper party.

As provided in Del. Code Ann. tit. 8, § 278 (West):  "All corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued, for the term of 3 years from such expiration or dissolution or for such longer period as the Court of Chancery shall in its discretion direct, bodies corporate for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, to discharge their liabilities and to distribute to their stockholders any remaining assets, but not for the purpose of continuing the business for which the corporation was organized. With respect to any action, suit or proceeding begun by or against the corporation either prior to or within 3 years after the date of its expiration or dissolution, the action shall not abate by reason of the dissolution of the corporation; the corporation shall, solely for the purpose of such action, suit or

proceeding, be continued as a body corporate beyond the 3-year period and until any judgments, orders or decrees therein shall be fully executed, without the necessity for any special direction to that effect by the Court of Chancery.

Del. Code Ann. tit. 8, § 259 (West) provides that, following a merger of corporations, "all debts, liabilities and duties of the respective constituent corporations shall thenceforth attach to said surviving or resulting corporation, and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it."

## Conclusion

Plaintiff, therefore, respectfully requests the Court to deny the defendants' motion to dismiss or, alternatively, grant plaintiff's motion to amend the complaint.

GERALD W. CORDER,

By Counsel

/s/ Marvin W.  Masters
West Virginia State Bar No. 2359
April D. Ferrebee
West Virginia State Bar No. 8034
The Masters Law Firm lc
181 Summers Street
Charleston, West Virginia  25301
304-342-3106
mwm@themasterslawfirm.com
Counsel for Plaintiffs
F:\5\1025\b008gcorder.docx

## <u>CERTIFICATE OF SERVICE</u>

I, Marvin W. Masters, hereby certify that on March 6, 2018, I electronically filed "Plaintiff's Response in Opposition to Defendants' Motion to Dismiss" with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

> W. Henry Lawrence
> West Virginia State Bar No. 2156
> Amy M. Smith
> West Virginia State Bar No. 6454
> Shaina D. Massie
> West Virginia State Bar No. 13018
> Steptoe & Johnson PLLC
> 400 White Oaks Boulevard
> Bridgeport, West Virginia  26330
> hank.lawrence@steptoe-johnson.com
> amy.smith@steptoe-johnson.com
> shaina.massie@steptoe-johnson.com
> *Counsel for Defendants*

/s/ Marvin W. Masters
West Virginia State Bar No. 2359
The Masters Law Firm lc
181 Summers Street
Charleston, WV  25301
304-342-3106
mwm@themasterslawfirm.com