**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**GERALD W. CORDER,**

     **Plaintiff,**

**v.**

                                              **Civil Action No. 1:18-00030**

**ANTERO RESOURCES CORPORATION,**                 **Hon. Irene M. Keeley**
**a Delaware corporation; ANTERO MIDSTREAM**
**PARTNERS LP, a Delaware corporation; ANTERO**
**RESOURCES PIPELINE LLC, a Delaware corporation;**
**and ANTERO RESOURCES INVESTMENT LLC,**

     **Defendants.**

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS AMENDED COMPLAINT**

## I.    INTRODUCTION

Defendants Antero Resources Corporation ("Antero") and Antero Midstream Partners LP ("Midstream Partners") submit this memorandum in support of their motion to dismiss this action with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court should dismiss the amended complaint (ECF No. 13) filed by Plaintiff Gerald W. Corder ("Plaintiff") because it does not correct the pleading deficiencies of the original complaint and fails to set forth any claim upon which relief may be granted. Although Plaintiff attached twenty-one instruments to the amended complaint, including leases, memoranda, and amendments that apply to various named individuals, Plaintiff still does not sufficiently allege Plaintiff's, Antero's, or Midstream Partners' connection to each and every lease, memorandum, or amendment or allege either Plaintiff's obligations or performance under these instruments. Most importantly, Plaintiff cannot prove that Antero breached any contractual provision.

Additionally, Plaintiff fails to state a claim for violation of fiduciary duties because Antero and Midstream Partners do not owe Plaintiff any.  Furthermore, Plaintiff fails to state a misrepresentation claim because it is not pled with the requisite particularity, and, even if it had been, the claim is derivative of the breach of contract claim and barred by the gist of the action doctrine.  Finally, punitive damages are not a standalone claim under West Virginia law. Therefore, the Court should dismiss the amended complaint and the entire action with prejudice.

## II.   **STATEMENT OF THE CASE**

On December 6, 2017, Plaintiff Gerald W. Corder commenced this civil action against Defendants by filing a complaint in the Circuit Court of Harrison County, West Virginia. Antero removed this action to federal court on February 12, 2018. On March 6, 2018, Plaintiff filed a motion to amend/correct the complaint.  ECF No. 9.  On March 9, 2018, this Court granted the motion to amend/correct (ECF No. 12), and the amended complaint was filed thereafter.  ECF No. 13.[1]

---

[1] Antero Resources Pipeline LLC ("Pipeline") and Antero Resources Investment, LLC ("Investment") are also named as Defendants.  As discussed in the Notice of Removal, both entities have ceased to exist, and neither entity may be sued.  *See* ECF No. 1 at 1.  Pipeline was a limited liability company that merged into Antero Resources Appalachian Corporation ("Appalachian") on March 6, 2013, with Appalachian being the surviving corporation. Appalachian changed its name to Antero Resources Corporation on June 10, 2013.  Investment was a limited liability company that dissolved and wound up its business, filing a certificate of cancellation with the Delaware Secretary of State pursuant to Delaware Code Title 6, § 18-203 on October 31, 2017.  Accordingly, Pipeline and Investment do not need to join the motion to dismiss.  To the extent that their joinder is deemed necessary, they should be deemed to have joined.  In addition to the reasons discussed in this memorandum in support of Defendants' motion to dismiss, Midstream Partners should be dismissed because it was fraudulently joined.  There is no possibility of Plaintiff establishing claims for breach of contract, violation of fiduciary duties, misrepresentation, or punitive damages against Midstream Partners, and it is not a real and substantial defendant because Antero is the only defendant alleged to be a party to any of Plaintiff's leases, which are the bases for all claims.  *See, e.g.*, *4 Suns Ranch, LLC v. Buckeye Oil Prod. Co.*, No. 5:12cv110, 2014 WL 1017907, at *6–7 (N.D. W. Va. Mar. 17, 2014); *Koerber v. Wheeling Island Gaming, Inc.*, No. 5:12cv97, 2013 WL 162669, at *3–4 (N.D. W. Va. Jan. 15, 2013); *Heller v. TriEnergy, Inc.*, 877 F. Supp. 2d 414, 425 (N.D. W. Va. 2012); *Fleming v. United Teacher Assocs. Ins. Co.*, 250 F. Supp. 2d 658, 661–63 (S.D. W. Va. 2003).  In addition, there is no possibility of Plaintiff establishing a cause of action for misrepresentation against Midstream Partners because the complaint does not allege any misrepresentation allegedly made by Midstream Partners or for which Midstream Partners could otherwise be held liable.  *Davis v. EQT Prod. Co.*, No. 5:12cv52, 2012 WL 6111880, at *3–4 & n.4 (N.D. W. Va. Dec. 10, 2012); *May v. Nationstar Mortg., LLC*, No. 3:12cv43, 2012 WL 3028467, at *5–8 & n.1 (N.D. W. Va. July 25, 2012).  For these reasons, Midstream Partners should be dismissed as being fraudulently joined.

The four-count amended complaint contains the same claims for breach of contract (Count I), violation of fiduciary duties (Count II), misrepresentations (Count III), and punitive damages (Count IV) as alleged in the original complaint.  Each of Plaintiff's claims relates to Plaintiff's alleged ownership of oil and gas interests which were leased, assigned, or otherwise acquired by and presently held by Antero in Harrison County and Doddridge County, West Virginia. The amended complaint still does not allege Plaintiff's chain of title or otherwise identify Plaintiff's interest in a specific lease or leases.[2]  Plaintiff demands compensatory and punitive damages, an accounting for rents and royalties, other equitable and injunctive relief, pre- and post-judgment interest, attorneys' fees, and costs.

The amended complaint further alleges that "Defendants violated and intentionally and tortuously [sic] breached their contractual duties and responsibilities to plaintiffs, and each of them, for each and every lease identified above, including the duty of good faith and fair dealing . . . ."  *Id.* at ¶ 54.  The amended complaint alleges that Defendants violated fiduciary duties.  *Id.* at ¶ 56.  The amended complaint also alleges that Defendants made various misrepresentations with respect to Plaintiff's royalties. *Id.* at ¶¶ 46, 58.  Finally, the amended complaint alleges that Plaintiff is entitled to punitive damages.  *Id.* at ¶ 62.

## III.   ARGUMENT

### A.   Standard of Decision.

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations to state a plausible claim for relief.

---

[2] Plaintiff attaches an order entered by the Circuit Court of Harrison County on November 3, 2015, as evidence of Plaintiff's ownership.  *See* ECF No. 13-23.  This order does not identify the property to which it applies but rather generally refers to "certain tracts of real property" formerly vested in James I. Corder.  *Id.*  The order goes on to state that, "[b]y assignment effective in September 2008 and April 2010, Antero Resources Corporation ("Antero") acquired rights under leases executed by James I. Corder and his wife, Pearl Corder in 1979 and 1981." *Id.*  The order does not identify recording information for either the assignments or the leases.

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The Fourth Circuit has explained:

> The plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." It requires the plaintiff to articulate facts, when accepted as true, that "show" that the plaintiff has stated a claim entitling him to relief, i.e., the "plausibility of entitlement to relief."

*Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citations omitted).

The Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Although courts must accept a complaint's factual allegations as true, "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" do not receive the same treatment. *Iqbal*, 556 U.S. at 663. Moreover, this "tenet . . . is inapplicable to legal conclusions." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com*, 591 F.3d 250, 253 (4th Cir. 2009). "Thus, a complaint may be dismissed when the facts alleged clearly demonstrate that the plaintiff has not stated a claim and is not entitled to relief." *Garrett v. Aegis Cmty. Grp., LLC*, No. 1:13-CV-131, 2014 WL 3572046, at *2 (N.D. W. Va. July 21, 2014) (citations omitted).

**B.    The Amended Complaint Fails to State a Claim upon which Relief May Be Granted.**

**1.    Plaintiff fails to state a claim for breach of contract because the claim is not adequately pled and fails as a matter of law.**

Plaintiff fails to state a breach of contract claim. In *Rodgers v. Southwestern Energy Co.*, No. 5:16-CV-54, 2016 WL 3248437 (N.D. W. Va. June 13, 2016), this Court held that a *prima facie* breach of contract claim under West Virginia law requires a plaintiff to allege: "(1) the existence of a valid, enforceable contract; (2) that plaintiff has performed its own contractual duties; (3) that defendant has breached or violated its duties under the contract; and (4) that

plaintiff has been injured as a result of defendant's violation of contractual duty."   *Id.* at *2 (citations omitted).   As a threshold matter, Plaintiff fails to adequately plead a breach of contract claim because Plaintiff did not plead the necessary elements of the claim or other specific details regarding the alleged contracts to put Antero and Midstream Partners on fair notice of the nature of the breach of contract claim against them or the grounds on which such claim is based. Moreover, even if Plaintiff had adequately pled the elements of a breach of contract claim, the bases for Plaintiff's claim fail as a matter of law because the amended complaint attached various leases that allow for deductions or use of the "net-back" method[3] of calculating royalties.

### a.      <u>Plaintiff fails to adequately plead a breach of contract claim.</u>

Plaintiff fails to adequately plead a breach of contract claim.   In *KBS Preowned Vehicles, LLC v. Reviva, Inc.*, No. 1:13CV138, 2014 WL 12591890 (N.D. W. Va. Mar. 26, 2014), this Court held that the plaintiff's amended complaint failed to allege at least two of the necessary elements of its contract claim, reasoning as follows:

---

[3] In *Leggett v. EQT Production Co.*, 239 W. Va. 264, 800 S.E.2d 850 (2017), the West Virginia Supreme Court of Appeals noted that terminology used to describe this issue includes the "work-back" method, "net-back" method, and/or "deductions" as follows:

> We concur with the following observation with regard to these various characterizations of the issue:
>> Although the issue is commonly referred to as a "deduction of costs" issue, it is more accurately a "work-back" issue to adjust a downstream price to reflect an upstream value by subtracting (deducting) from the downstream price what it cost to put the wellhead gas in the position to fetch the downstream price.
>
> David E. Pierce, *Royalty Jurisprudence:  A Tale of Two States*, 49 Washburn L.J. 347, 377 N. 91 (2010).  Similarly, "the 'net-back' method does not 'charge' the lessor with any expenses at all, but instead is simply a method of determining what the wellhead value of the gas would have been if there had been a market for the gas at the wellhead."  Brian S. Wheeler, *Deducting Post-Production Costs When Calculating Royalty: What Does the Lease Provide?*, 8 Appalachian J.L. 1, 29 (2008).  For ease of reading, we likewise somewhat interchangeably utilize the terms "allocation" and "deduction" of costs throughout this opinion.  However, whether referred to as cost "allocation," "deduction," or use of the "net-back" method, our opinion should be read as encompassing any manner by which the lessee make allowances for its cost expenditures in calculating the lessor's royalty.

*Id.* at 856 n.8.

> First, KBS fails to allege the existence of an enforceable contract between it and Reviva. . . .  Instead, KBS baldly asserted that Reviva had "the contractual duty to provide [KBS] with a serviceable engine that would permit [KBS'] [Durastar Truck] to be on the road and put to productive use."  . . .  Without any factual support, KBS' naked conclusion that Reviva owed it a contractual duty is simply insufficient to state a facially plausible claim that an enforceable contract between KBS and Reviva existed; the Court can merely speculate that it is so.
>
> Additionally, KBS has failed to plead that it had any obligations under the purported contract or that it performed any obligations it might have had vis-à-vis Reviva.  Because this is a requisite element of a prima facie breach of contract claim, its omission from the amended complaint renders the claim defective under the applicable pleading standards.

2014 WL 12591890, at *2–3 (citations omitted).

Likewise, in *Cather v. Seneca-Upshur Petroleum, Inc.*, No. 1:09-CV-139, 2010 WL 3271965 (N.D. W. Va. Aug. 18, 2010), this Court construed Forest Oil's motion to dismiss as a motion for a more definite statement and directed the plaintiffs to file a more definite statement or to amend their complaint.  2010 WL 3271965, at *4. In that case, the amended complaint alleged that Forest Oil was a lessee or ultimate assignee of the leases at issue without alleging the connection between Forest Oil and the leases.  *Id.*  The Court concluded that to prevail on a breach of contract claim, "a plaintiff must make out a complete contract and allege a breach of its terms."  *Id.* at *2.

Similarly, in *Rodgers*, this Court required the plaintiffs to amend their complaint alleging improper deductions from gas lease royalties.  *Id.* at *3.  In that case, the Chesapeake defendants moved to dismiss the plaintiffs' breach of contract claim, arguing that the claim had not been sufficiently pled because the plaintiffs did not attach the lease at issue or identify the date, acreage, parties, any language regarding royalty provisions, the amounts paid or underpaid, or any other specific details regarding the contract.  *Id.* at * 2.

In this action, the breach of contract claim states: "Defendants violated and intentionally and tortuously [sic] breached their contractual duties and responsibilities to plaintiffs, and each of them, for each and every lease identified above, including the duty of good faith and fair dealing, and plaintiffs were damaged as set out above."  ECF No. 13 at ¶ 54.  Elsewhere in the amended complaint, Plaintiff alleges as follows:

> 40.    Defendants have not paid to plaintiffs the royalties for the value of natural gas including all parts therein, which were extracted from their property, as required pursuant to said leases, and defendants continue to not pay plaintiffs the royalty to which they are entitled.

> 41.    While not having the right to charge plaintiffs with the described above costs and unilaterally deducting same from their payments, defendants charged plaintiffs with costs and charges which were unreasonably excessive and not actual.

> 42.    Defendants had and have an affirmative duty to pay to plaintiffs the true and correct royalty due them, either by virtue of the lease agreement, by virtue of W. Va. Code Ann. § 22-6-8, and/or by virtue of the contractual duty of good faith and fair dealing in all contracts and the implied covenants included in the plaintiffs' oil and gas contracts . . . .

ECF No. 13 at ¶¶ 40–42.

The amended complaint alleges that "Plaintiffs are the owners of oil and gas interests which were leased, assigned or otherwise acquired by and presently held by Antero."  *Id.* at ¶ 13. The amended complaint goes on to generally list numerous instruments by which Antero allegedly owes various unspecified duties and responsibilities to Plaintiff.  *See id.* at ¶ 14.  The amended complaint alleges:

> [t]he aforesaid lessor's rights and remedies were transferred by heirship, purchase or otherwise, to plaintiffs who hold individual partial ownership of the rights thereto and the lessees' rights and duties and responsibilities of each lease was previously acquired by Antero by leases and modifications of leases and by assignment of the leases or by Antero's acquisition of leases and rights thereto from previous lessors who held the assignor's rights, duties and privileges, all as set forth therein.

*Id.*

In this action, as in *KBS Preowned Vehicles*, *Cather*, and *Rodgers*, the breach of contract claim is not adequately pled.  Although the amended complaint does attach various leases, modifications, and amendments, the amended complaint still fails to identify whether certain leases are subject to any modifications or other agreements that may affect their application, and, if so, the dates, parties, and other specific details needed to identify them.  Moreover, like the amended complaint in *Cather*, the amended complaint in this case alleges that Antero is a lessee or ultimate assignee of the leases at issue without alleging the connection between Antero and the leases through chain of title or otherwise.  *See* ECF No. 13 at ¶ 14 ("[T]he lessees' rights and duties and responsibilities of each lease was previously acquired by Antero by leases and modifications of leases and by assignment of the leases or by Antero's acquisition of leases and rights thereto from previous lessors who held the assignor's rights, duties and privileges, all as set forth therein.").  The amended complaint also does not identify Plaintiff's connection to all of the leases beyond the threadbare recital that Plaintiff obtained unspecified portions of the lessors' rights and interests in unspecified leases at unspecified times, supposedly supported by a circuit court order that does not include property identifiers or recording information.  *See* ECF No. 13-23.  Indeed, the entirety of Plaintiff's factual allegations in support of the breach of contract claim consists of the unsupported assertion that Plaintiff is "the owner[] of oil and gas interests which were leased, assigned or otherwise acquired by and presently held by Antero."  ECF No. 13 at ¶ 13.  This bare allegation is nothing more than a legal conclusion bereft of any supporting factual allegations, and the Court need not accept it as true.  *Twombly*, 550 U.S. at 555; *Nemet Chevrolet, Ltd.*, 591 F.3d at 253.  Accordingly, Plaintiff fails to allege a complete contract as required by *KBS Preowned Vehicles* and *Cather*.

As was the case in *KBS Preowned Vehicles*, the amended complaint fails to plead that Plaintiff has any obligations under the purported contract.  Moreover, the amended complaint fails to plead that Plaintiff performed any obligations with respect to Antero or Midstream Partners.  Accordingly, Plaintiff fails to plead these necessary elements to sustain a *prima facie* breach of contract claim.

Plaintiff's failure to adequately plead exactly what royalties were allegedly underpaid, as required by *Rodgers*, remains a fatal deficiency in the amended complaint.  Plaintiff attempts to satisfy the *Rodgers* requirement by attaching royalty statements to the amended complaint; however, Plaintiff's royalty statement excerpt shows that Antero did not take any deductions from Plaintiff's royalties during the production months referenced therein.  *See* ECF No. 13-22 at 1–5.  For these reasons, Plaintiff simply does not state a claim for breach of contract under West Virginia law, let alone put Antero or Midstream Partners on notice of a plausible claim.  Therefore, this Court should grant the motion to dismiss Count I of Plaintiff's amended complaint.

> **b.      The bases for Plaintiff's breach of contract claim fail as a matter of law.**

In any event, Plaintiff's claim for breach of contract fails to state a claim upon which relief may be granted.  For example, the amended complaint identifies an express provision in paragraph 14(A)(ii) that allows Antero to take deductions for costs associated with enhancing the value of marketable gas ("Market Enhancement Clause"):

> all oil, gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; *however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they*

> *are based on Lessee's actual cost of such enhancements*. However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.

ECF. No. 13 at ¶ 14(A)(ii) (emphasis added).  Accordingly, Antero is permitted to use the net-back method or take deductions for costs associated with enhancing the value of marketable gas, including, but not limited to, the manufacture of natural gas liquids ("NGLs") and transportation to a more profitable market, under this lease and any others that may include a similar provision.

West Virginia law does not preclude the net-back method or post-production deductions allowed by lease provisions such as the Market Enhancement Clause.  The holdings in *Wellman v. Energy Resources, Inc.*, 210 W. Va. 200, 557 S.E.2d 254 (2001), and *Tawney v. Columbia Natural Resources, L.L.C.*, 219 W. Va. 266, 633 S.E.2d 22 (2006), involved only "proceeds" leases without market enhancement provisions.  There are marked differences between the leases at issue in *Wellman* and *Tawney* and those involved in this action, which clearly allow deductions for market enhancements, including transportation to more profitable markets and the manufacture of NGLs.[4]  Moreover, even for leases without an express Market Enhancement Clause, Antero is still entitled to deduct such costs that enhance the market value of such gas.

In any event, in *Leggett v. EQT Production Co.*, 239 W. Va. 264, 800 S.E.2d 850 (2017), the West Virginia Supreme Court of Appeals went to great lengths to signal the demise of

---

[4] Other courts have recognized the substantial differences between the costs of marketing and transportation natural gas and the costs to process and manufacture NGLs, otherwise known as fractionation.  For example, in *EQT Production Co. v. Magnum Hunter Production Co.*, 266 F. Supp. 3d 961 (E.D. Ky. July 19, 2017), the court construed several farm out agreements ("FOA") that entitled EQT to royalties based on a percentage of "8/8 of the gross proceeds received by [Magnum Hunter] from the sale of oil and/or gas, without deductions of any kind, produced from wells drilled hereunder."  *Id.* at 969 (alteration in original).  The court stated that "[t]his language indicates that Magnum Hunter only owes EQT royalties from the sale of NGLs if they qualify as 'oil and/or gas,' as that term is used in the FOAs."  *Id.*  The court applied the plain meaning of the term "gas" and found that "[b]ecause NGLs are liquid in form, rather than gaseous, . . . the term 'gas,' as it is used in [the] FOAs, unambiguously excludes NGLs."  *Id.* at 971.  The court concluded that "[b]ecause the FOA definition of 'gas well' does not contemplate the production of NGL from subject wells, the royalty provisions requiring Magnum Hunter to pay a percentage of the proceeds from the sale of 'oil and/or gas' do not apply to NGLs."  *Id. See also* 2017 WL 3821674, at *4 (E.D. Ky. Aug. 31, 2017) (ordering that EQT could not seek recovery of any amounts from NGLs or any amounts not listed in complaint).

*Wellman* and *Tawney* and their iteration of the marketable product rule.  Significantly, the authorities cited in *Leggett* counsel against extending the first marketable product doctrine in *Wellman* and *Tawney* to the manufacturing of residue gas and NGLs through processing and fractionation of wet gas.[5]  *Leggett* also cites to *Bice v. Petro-Hunt, L.L.C.*, 2009 ND 124, 768

---

[5] Although the court explained that neither *Wellman* nor *Tawney* is applicable to an analysis of the "at the wellhead" language in West Virginia Code § 22-6-8(e), it soundly criticized the holdings in *Wellman* and *Tawney* as follows:

> Before leaving our discussion of *Wellman* and *Tawney*, however, we are compelled to further illustrate the faulty legs upon which this precedent and its iteration of the marketable product rule purports to stand. Commentators have noted that *Wellman* failed to "recognize the variations in the first marketable product doctrine from state to state" and "whether intentionally (as a result of its apparent antagonism against oil and gas producers) or unintentionally (as a result of its cursory review of the case law) . . . adopted yet another version of the first marketable product doctrine[.]" Byron C. Keeling & Karolyn King Gillespie, *The First Marketable Product Doctrine: Just What Is the "Product"*?, 37 St. Mary's L.J. 1, 77, 79 (2005). Moreover, *Wellman's*
>
> > "point of sale" approach results in an even bigger windfall for lessors than the "marketable product" approach. Under the "point of sale" approach, a lessor will not only receive a royalty valued upon the gas in its natural state at the wellhead or when the gas becomes marketable, but will receive a royalty valued upon the gas in its processed state at the point of sale after the gas has had value added to it solely at the lessee's expense.
>
> Wheeler, *supra* at 27–28.  The *Wellman* and *Tawney* Courts' refusal to align with other states which have more fully developed this rule has, according to these commentators, created "chaos" and "foster[s] the belief—perhaps the reality—that the [marketable product] doctrine lacks any cornerstone principles[.]" Keeling & Gillespie, *supra* at 79, 80.
>
> More importantly, still other commentators have observed that "West Virginia has actually achieved a Marketable Product Rule result that seems to arise more from an unwillingness to accept the realities of deregulation in the natural gas market than from implied covenant law." John W. Broomes, *Waste Not, Want Not: The Marketable Product Rule Violates Public Policy Against Waste of Natural Gas Resources*, 63 U. Kan. L. Rev. 149, 170–71 (2014). As support for this proposition, authors have cited to *Wellman's* and *Tawney's* dogged devotion to Professor Donley's, pre-deregulation 1951 treatise "The Law of Coal, Oil and Gas in West Virginia and Virginia." Additionally, citing *Tawney's* stinging criticism that the lessee in that case did not even begin deducting costs until 1993, one author uses this statement to establish the *Tawney* Court's complete misunderstanding of the industry:
>
> > The problem with this observation [that the lessee did not deduct costs until 1993] is that the lessee would not have incurred post-production costs prior to 1993 because the pipeline company would most likely have been purchasing gas at the wellhead for a price that reflected the gathering, dehydration, compression, treating, processing, line loss, and other investments associated with the gas as it moved from the wellhead to the point of sale.
>
> Pierce, *supra* at 368.
>
> In sum, this Court's jurisprudence on this issue has been critically described as follows:

N.W.2d 496, 502 (2009), which rejected the first marketable product doctrine in a case involving royalties on sour gas, which, like wet gas, is processed into separate compounds.  Accordingly, Antero is not prohibited from taking value-enhancing deductions, including the manufacture of NGLs and transportation to a more profitable market.

Moreover, as discussed above, both *Wellman* and *Tawney* are limited to proceeds leases. Like the Market Enhancement Clause, market value leases also permit post-production deductions.  The Fourth Circuit, applying West Virginia law, recognized the difference between leases that provide for royalties based on market value or prevailing price and those that provide for royalties based on proceeds in *Imperial Colliery Co. v. Oxy USA Inc.*, 912 F.2d 696 (4th Cir. 1990).  In that case, the court held that an oil and gas lease obligated the defendant to pay royalties on the market value of the gas produced, which was more than the proceeds it received for the gas.  The court explained:

> In oil and gas practice, there are two generally used lease clauses dictating the amount of royalties due under a lease: the "market value" clause and the "proceeds" clause.  Under a market value clause, royalties are paid based upon the market value of the gas; under a proceeds royalty clause, upon the amount of money received by the lessee upon its sales of gas.

> The 1944 lease required Oxy to pay Imperial

> > One eighth (1/8) of the current wholesale market value at the well for all gas produced . . . which *wholesale market value is hereby defined to mean the prevailing purchase price currently paid at the*

---

> If one believes the language has a role to play in defining the lessee's rights and obligations under the oil and gas lease, then the artful approach [ ] of the . . . West Virginia court[ ] [is] nothing more than a re-writing of the parties' contract to take money from the lessee and give it to the lessor.

*Id*. at 374. The foregoing notwithstanding, however under-developed or inadequately reasoned this Court observes *Wellman* and *Tawney* to be, the issue presently before the Court simply does not permit intrusion into these issues. We therefore leave for another day the continued vitality and scope of *Wellman* and *Tawney*.

*Id.* at 862–63.

*well* by purchasers of gas at wholesale in the field in which the well is located.

*Id.* at 700 (emphasis added).[6]  Thus, Antero is permitted to deduct post-production expenses in order to compute royalty for any market value leases.

Finally, Plaintiff's reliance on West Virginia Code Section 22-6-8 as a source of Antero's or Midstream Partners' alleged duties is misplaced.  In *Leggett*, the West Virginia Supreme Court of Appeals concluded that, with respect to flat-rate leases, the "language utilized in West Virginia Code § 22-6-8 permit[ted] allocation or deduction of reasonable post-production expenses actually incurred by the lessee and more specifically permits use of the 'net-back' or 'work-back' method of royalty calculation."  *Id.* at 853.  Antero is therefore permitted to employ the net-back method when calculating Plaintiff's royalty under flat-rate leases.[7]

In this case, the leases and other documents alleged by Plaintiff simply cannot establish a breach of contract as a matter of law because they allow for deductions.  Specifically, the Market Enhancement Clause identified in paragraph 14(A)(ii) of the amended complaint expressly allows Antero to take deductions associated with enhancing the value of marketable NGLs, and *Tawney* and *Wellman* do not apply to NGLs at any rate.  Additionally, market value leases were expressly excluded from the discussion in *Wellman* and not addressed in *Tawney*.[8]  The royalty provisions identified in paragraphs 14(B)(i)(a), (C), and (H) state that royalties are to be paid

---

[6] The court in *Imperial Colliery Co.* explained that, generally, computation of the gas's value at the wellhead could simply be made by taking the price paid by the purchaser and deducting compression and gathering expenses.  912 F.2d at 701.  In that case, however, because the contract price was below market value the court held that the district court properly applied a "willing buyer-willing seller" analysis, which computes market value by ascertaining the price that a willing buyer would pay a willing seller in a free market without regard to federal gas-price regulations. *Id.*  (citing 3 E. Kuntz, *Treatise on the Law of Oil & Gas*, § 40.4(d), 329 (1989)).  The court rejected the defendant's argument that the district court erred in its choice of comparable wells for computing average market value.  *Id.*

[7] During the 2018 legislative session, Senate Bill 360, which does not take effect until May 31, 2018, amended West Virginia Code Section 22-6-8(e).  Under the new law, which does not apply to the conduct alleged in Plaintiff's amended complaint, flat-rate leases are essentially converted to "proceeds" leases, and royalties thereunder are to be "free from any deductions for post-production expenses."  S.B. 360, 83d Leg., 2d Reg. Sess. (W. Va. 2018).

[8] *See Wellman*, 557 S.E.2d at 264 n.3 ("Where leases call for the payment of royalties based on the value of oil or gas produced, and sold directly, the Court perceives that there are possibly different issues, and they are excluded from this discussion.").

based on one-eighth (1/8) of the "value" of the gas.  Likewise, the royalty provisions identified in paragraphs 14(E) and (F) state that royalties are to be paid based on one-eighth (1/8) of the gross proceeds from the sale of gas "at the prevailing price for gas at the well."[9]  Thus, these leases call for the payment of royalties based on the market value of gas produced.  As the Fourth Circuit recognized in *Imperial Colliery Co.*, computation of the gas's value at the wellhead can be made by deducting certain costs from the price paid by the purchaser.  Finally, Plaintiff cannot demonstrate a breach of the flat-rate lease identified in paragraph 14(G) because, as the Court explained in *Leggett*, West Virginia Code § 22-6-8 permitted allocation or deduction of reasonable post-production expenses and permits use of the net-back method.  In any event, Plaintiff's royalty statement excerpt shows that Antero did not take any deductions from Plaintiff's royalties during the production months referenced therein.  *See* ECF No. 13-22 at1–5.  Therefore, this Court should grant the motion to dismiss Count I of Plaintiff's amended complaint.[10]

### 2. Plaintiff fails to state a claim for violation of fiduciary duties because the prudent operator standard governs the parties' relationship.

Plaintiff cannot state a claim for violation of fiduciary duties because, as a matter of law, the parties do not share a fiduciary relationship.  In order to prevail on a breach of fiduciary duty

---

[9] Although the leases in paragraphs 14(E) and (F) contain references to "gross proceeds," that phrase is clearly modified by the phrase "*at the prevailing price for gas sold at the well*," which is nearly verbatim the definition of the term "wholesale market value" in *Imperial Colliery Co.  See* 912 F.2d at 700.

[10] Furthermore, Plaintiff fails to plead a breach of the implied covenant of good faith and fair dealing.  *See Evans v. United Bank, Inc.*, 235 W. Va. 619, 775 S.E.2d 500, 509 (2015) ("Our federal district court has observed that West Virginia law 'implies a covenant of good faith and fair dealing in every contract for purposes of evaluating a party's performance of that contract.'").  Critically, this Court has recognized that the implied covenant of good faith and fair dealing "does not grant contracting parties rights inconsistent with those expressly set forth in the contract." *Ballenger v. Nat'l City Mortg., Inc.*, No. 1:14-CV-81, 2015 WL 5062770, at *10 (N.D. W. Va. Aug. 26, 2015).  Moreover, West Virginia law does not recognize an independent cause of action for breach of the implied duty of good faith and fair dealing, and the failure to plead a valid breach of contract claim is fatal to any claim based on an alleged breach of an implied covenant.  *See Evans*, 775 S.E.2d at 509 (affirming holding that petitioners' failure to allege breach of contract was fatal to their claim for a breach of the implied covenant of good faith and fair dealing).  Accordingly, Plaintiff's failure to plead an adequate breach of contract claim is also fatal to any allegations with respect to the implied duty of good faith and fair dealing.

claim under West Virginia law, a plaintiff must generally prove the existence of a fiduciary relationship between the parties.  *See State ex rel. Affiliated Const. Trades Found. v. Vieweg*, 205 W. Va. 687, 520 S.E.2d 854, 868 (1999) (Workman, J., concurring) ("Although this Court has not previously identified precisely the elements of a cause of action for a breach of a fiduciary duty, courts have held that the elements of such a cause of action are the existence of the fiduciary relationship, its breach, and damage proximately caused by that breach.") (citation omitted).

In *Elmore v. State Farm Mutual Automobile Insurance Company*, 202 W. Va. 430, 435, 504 S.E.2d 893 (1998), the West Virginia Supreme Court of Appeals defined a fiduciary duty as "[a] duty to act for someone else's benefit, while subordinating one's personal interests to that of the other person.  It is the highest standard of duty implied by law[.]"  *Id.*, 504 S.E.2d at 898 (alterations in original) (citation omitted).  *See also Wellman v. Bobcat Oil & Gas, Inc.*, No. 3:10-CV-0147, 2010 WL 2720748, at *3 (S.D. W. Va. July 8, 2010) ("[T]he fiduciary obligation is considered an uncommon and extraordinarily strict duty, imposed upon one who has agreed to support another's interest above his own.").

For more than a century, however, the West Virginia Supreme Court of Appeals has recognized that an oil and gas lease does not give rise to any special or fiduciary relationship between an oil and gas lessee and lessor.  For example, in *Grass v. Big Creek Development Co.*, 75 W. Va. 719, 84 S.E. 750, 753 (1915), the Court explained that

> [w]here the object of the operations contemplated by an oil and gas lease is to obtain a benefit or profit for both lessor and lessee, . . . both are bound by the standard of what, in the circumstances, would be reasonably expected of operators of ordinary prudence, having regard to the interests of both.

*Id.*, 84 S.E. at 753.  *See also Jennings v. S. Carbon Co.*, 73 W. Va. 215, 80 S.E. 368, 370 (1913) (recognizing that an oil and gas operator "must deal with the leased premises, not exclusively to

serve his own peculiar and selfish interests, unmindful of his obligations to the source from which his authority is derived, but so as to promote the mutual advantage and profit of himself and the lessor").

Based on these principles, this Court dismissed a similar claim for violation of fiduciary duties in *Cather v. Seneca-Upshur Petroleum, Inc.*, No. 1:09-CV-139, 2010 WL 3271965 (N.D. W. Va. Aug. 18, 2010), wherein the plaintiffs also argued that the fact that "they placed their trust and confidence in the defendants to accurately account for all oil and gas production and to pay the correct amount of royalties" created a fiduciary relationship. *Id.* at *4. This Court rejected the plaintiff's argument and granted the defendants' motion to dismiss because the defendants owed no duty to the plaintiffs beyond one of ordinary prudence:

> By their plain terms, the oil and gas leases in dispute in this case were drafted to provide mutual profit to both the defendants and the plaintiffs. Under West Virginia law, therefore, Forest Oil, Seneca-Upshur and EnerVest were required to promote the parties' mutual advantages and profits under a standard of "ordinary prudence."
>
> While the plaintiffs certainly reposed confidence and trust in the defendants as operators pursuant to these leases, under West Virginia law this trust and confidence does not give rise to an agreement, implicit or otherwise, by which the defendants agreed "to support [the plaintiffs'] interest[s] above [the defendants'] own.". . . Instead, the duty owed by oil and gas lessees to their lessors is a duty of ordinary prudence.

*Id.* at *5 (alterations in original) (citations omitted).

Likewise, in *Leggett v. EQT Prod. Co.*, No. 1:13-CV-4, 2015 WL 1212342, this Court dismissed an identical claim for violation of fiduciary duties and reasoned as follows:

> [T]o the extent that the plaintiffs believe that placing their trust in EQT regarding royalty payments and calculations creates such a duty, that argument is misguided. As the Supreme Court of Appeals of West Virginia provided in *Elmore*, "'as a general rule, a fiduciary relationship is established only when it is shown that the confidence reposed by one person was actually accepted by the other, and merely reposing confidence in another may not, of itself, create the relationship.'" 504 S.E.2d at 899 (internal citations omitted). Although the

16

plaintiffs allegedly placed their trust and faith in EQT to properly determine the royalty payments, no allegations have been made that EQT accepted such confidence for the purposes of creating a fiduciary relationship. In addition to that lack of acceptance, EQT does not appear to be under any obligation to subordinate its interests to those of the plaintiffs. Therefore, such a duty does not apply to the lease between EQT and the plaintiffs.

*Id.* at *3.  *See also Fout v. EQT Prod. Co.*, No. 1:15-CV-68, 2015 WL 3755934, at *2 (N.D. W. Va. June 16, 2015) (granting defendant's motion to dismiss breach of fiduciary duty claim).

Plaintiff's contention that either Antero or Midstream Partners had the obligation to act as fiduciaries is specious.  As has been the case for more than a century, Antero and Midstream Partners are in no way obligated to subordinate their interests to those of the Plaintiff.  Rather, *Cather*, *Leggett*, and *Fout* demonstrate that Plaintiff was owed only a duty of ordinary prudence. Accordingly, Plaintiff cannot establish a fiduciary relationship with Antero or Midstream Partners because an oil and gas lessee owes no duty to lessors beyond one of ordinary prudence under West Virginia law.  Because Plaintiff cannot, as a matter of law, establish a fiduciary relationship, Plaintiff cannot state a claim for violation of fiduciary duties.  Therefore, this Court should grant the motion to dismiss Count II of Plaintiff's amended complaint.

### 3. Plaintiff fails to state a claim for misrepresentation because Plaintiff has not pled fraud with the requisite particularity and the claim is barred by the gist of the action doctrine.

Plaintiff has not and cannot state a claim for misrepresentation or fraud.  This Court has recognized that, in order to prevail on a misrepresentation or fraud claim under West Virginia law, a plaintiff must plead and prove the following elements by clear and convincing evidence: "(1) that the act claimed to be fraudulent was the act of the defendant or induced by the defendant; (2) that it was material and false; (3) that the party relied upon it; and (4) that the party was damaged because he relied upon it."  *Univ. of W. Va. Bd. of Trs. v. VanVoorhies*, 84 F. Supp. 2d 759, 769 (N.D. W. Va. 2000), *aff'd*, 278 F.3d 1288 (Fed. Cir. 2002).  Pursuant to

Federal Rule of Civil Procedure 9(b), Plaintiff must plead fraud with particularity.  Plaintiff fails to plead the elements of fraud with particularity as required by Rule 9(b) because Plaintiff does not adequately allege any circumstances surrounding the supposed misrepresentations.  Even if Plaintiff had stated a claim for misrepresentation with the requisite particularity, the claim is barred by the gist of the action doctrine because it is derivative of and arises solely from Plaintiff's breach of contract claim.

### a.  Plaintiff fails to plead fraud with particularity.

Plaintiff fails to plead misrepresentation, which is subject to a heightened pleading requirement, with the requisite particularity in accordance with Rule 9(b).  Bare allegations of fraud, absent sufficient specificity to permit the defendants to fully understand the specific facts asserted against it, violate Rule 9(b), which requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  This Court has recognized that "Courts have interpreted this rule to hold that a 'plaintiff alleging fraud must make particular allegations of the time, place, speaker, and contents of the allegedly false acts or statements.'"  *Brown v. Partipilo*, No. 1:10-CV-110, 2011 WL 1562908, at *3 (N.D. W. Va. Apr. 22, 2011) (quoting *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 249–50 (D. Md. 2000)).  *See also Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (stating that the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby" must be pled with particularity under Rule 9(b)) (citations omitted).

In *Wellman v. Bobcat Oil & Gas, Inc.*, No. 3:10-CV-0147, 2010 WL 2720748 (S.D. W. Va. July 8, 2010), the court held that the plaintiffs failed to adequately plead a similar misrepresentation claim, reasoning as follows:

Plaintiffs' complaint simply cannot be read to satisfy the heightened pleading standards required by Rule 9(b). Plaintiffs rely on five allegations within the complaint to satisfy these requirements. First, that "Bobcat concealed, suppressed and omitted material facts with the intent that plaintiffs would rely upon the same in connection with plaintiffs' requests for information . . . [;]" second, that Plaintiffs relied upon Bobcat to accurately carry out is [sic] responsibilities toward them; third that Plaintiffs were deprived of royalty payments "for many years;" fourth, that the conduct of Bobcat was willful, wanton, and intentional; and, finally, that Bobcat intentionally and knowingly concealed the fact that it was extracting gas from the mineral estate. From these allegations, however, only a few very general facts are presented. It is not explained, for example, whether the only fact Bobcat allegedly concealed was that it was producing gas or whether there were misrepresentations made in response to Plaintiffs' inquiries. It is not claimed whether Plaintiffs made inquiries. It is not stated over what time period this concealment and/or these misrepresentations occurred. It is not alleged what individual was responsible for these fraudulent acts. Finally, and most glaringly, the complaint does not even indicate at what point Plaintiffs took over the mineral rights at issue and at what point Bobcat took over as lessee. . . . These generalized allegations are insufficient to meet the requisite pleading standards.

*Id.* at *4.

Likewise, in *Mountain Link Assocs., Inc. v. Chesapeake Energy Corp.*, No. 2:13-CV-16860, 2014 WL 4851993, at *10 (S.D. W. Va. Sept. 29, 2014), the court dismissed a similar fraud claim at follows:

Beyond their conclusory assertion that they "relied upon Defendants' material misrepresentations to their detriment" . . ., Plaintiffs do not point to any acts of theirs in reliance on Defendants' representations about the correctness of their calculations of the royalty deductions. Even if they had, however, it does not appear that any reliance would have been justifiable. The May 21, 2012 letter by Attorney Jason P. Blose specified in clear terms that it was informing Rockford of "Chesapeake's position" that the royalty was being calculated correctly. . . . The letter further specifies that "we do not believe" the language of the assignment would preclude the deduction of post-production costs. . . . Thus, the letter was explicit in qualifying the letter's statements regarding CHK Appalachia's contractual obligations to Plaintiffs, putting Plaintiffs on notice that they were merely interpretations. Finally, just as Plaintiffs do not allege any acts they undertook in reliance on the alleged misrepresentations, they also do not allege any damage that occurred to them as a result of any reliance on their part.

*Id.* at *10 (S.D. W. Va. Sept. 29, 2014)

Furthermore, this Court has also recognized that, "[w]here multiple defendants are asked to respond to allegations of fraud, the amended complaint should inform each defendant of the nature of his alleged participation in the fraud." *Brown*, 2011 WL 1562908, at *3 (citations omitted). *See also Juntti v. Prudential–Bache Sec.*, Inc., 993 F.2d 228 (4th Cir. 1993) (affirming district court's dismissal of fraud claim because complaint referenced "defendants" generally and did not reference actions of specific defendants regarding the alleged fraud); *Bluestone Coal Corp. v. CNX Land Res., Inc.*, No. 1:07-CV-00549, 2007 WL 6641647, at *7 (S.D. W. Va. Nov. 16, 2007) (dismissing fraud claim where complaint merely described general nature of fraud and referred to "defendants" in a cumulative sense).

In this action, the claim for fraud states:

> Defendants misrepresented to plaintiffs that defendants were entitled to take deductions from plaintiffs' royalty, that they had the right to take the amount of deductions they took, reduced plaintiffs' royalty payments, misrepresented the amount of volume that was taken from plaintiffs' property, overcharged plaintiffs for services, and/or wrongfully claimed plaintiffs' royalty due was less than the amount actually due, and failed to report to plaintiffs that they were extracting and selling liquids from plaintiffs' natural gas, thereby denying plaintiffs the rents and royalties to which they were due.

ECF No. 13 ¶ 58. *See also id.* at ¶ 46 ("Defendants concealed, suppressed, and omitted material facts with intent that plaintiffs would rely upon same in connection with the bases for charging plaintiffs for specific services for marketing, transporting and processing and for other service charges associated with the calculation of plaintiffs royalties and deductions therefrom.").

Similar to *Wellman*, *Mountain Link Associates*, *Juntti*, and *Bluestone*, Plaintiff's allegations relating to the misrepresentation claim present only a very few conclusory facts, which are insufficient to plead fraud with particularity. For example, Plaintiff does not plead whether Plaintiff made inquiries regarding royalty deductions. Plaintiff does not plead the time period the alleged concealment and/or misrepresentations occurred. Moreover, Plaintiff does not

plead which Defendant – Antero or Midstream Partners – was responsible for the alleged fraudulent acts.  Finally, as discussed above, the amended complaint does not allege when Plaintiff came to own the mineral rights at issue or when Antero took over as lessee.  Plaintiff further fails to specify which particular leases referenced in the amended complaint are the subjects of the misrepresentation claim.  These generalized allegations are insufficient to meet the pleading standards required by Federal Rule of Civil Procedure 9(b).  Furthermore, Plaintiff has not adequately pled justifiable reliance.  Finally, as was the case in *Mountain Link Associates*, Plaintiff fails to plead sufficient facts to establish damage as a result of any reliance.

In any event, Plaintiff could not have justifiably relied on any alleged misrepresentation.  As discussed above, Plaintiff could not have been deceived about royalty deductions for any leases that contain the Market Enhancement Clause set forth in paragraph 14(A)(ii) of the amended complaint, which expressly allows deductions for costs associated with enhancing the value of natural gas liquids and transportation to a more profitable market.  Plaintiff does not articulate how Antero deviated from this provision, including how the manufacture of NGLs fails to enhance the value of the otherwise unprocessed raw gas stream or how transportation to better markets fails to enhance the value of the product.  Likewise, Plaintiff also could not have been deceived with respect to deductions from any market value leases.  *See Imperial Colliery Co*, 912 F.2d at 700–01.  Finally, Plaintiff also could not have been deceived about royalty deductions under flat-rate leases because the West Virginia Supreme Court held that West Virginia Code § 22-6-8 permitted deduction of reasonable post-production expenses.  *See Leggett*, 800 S.E.2d 850.  Therefore, this Court should grant the motion to dismiss Count III of Plaintiff's amended complaint.

**b.**     __The claim is barred by the gist of the action doctrine.__

Even if Plaintiff had pled a claim for misrepresentation or fraud with the requisite

particularity, the claim is barred by the gist of the action doctrine.   In *Gaddy Engineering v.*

*Bowles Rice McDavid Graff & Love, LLP*, 231 W. Va. 577, 746 S.E.2d 568 (2013), the West

Virginia Supreme Court of Appeals explained:

> In seeking to prevent the recasting of a contract claim as a tort claim, courts often
> apply the "gist of the action" doctrine.  Under this doctrine, recovery in tort will
> be barred when any of the following factors is demonstrated:
>
> > (1) where liability arises solely from the contractual relationship
> > between the parties; (2) when the alleged duties breached were
> > grounded on the contract itself; (3) where any liability stems from
> > the contract; and (4) when the tort claim essentially duplicates the
> > breach of contract claim or where the success of the tort claim is
> > dependent on the success of the breach of contract claim.

*Id.*, 745 S.E.2d at 576 (citations omitted).

Gaddy held that a fraud claim was barred under the gist of the action doctrine because the

misrepresentations involved simply claimed that affirmative promises of a contractual nature

were made and not performed where the parties subsequently entered into a formal contractual

relationship.  *Id.* at 576–77.  Thus, "whether a tort claim can coexist with a contract claim is

determined by examining whether the parties' obligations are defined by the terms of the

contract." *Id.* at 577.

Based on these principles, this Court held in *Stern v. Columbia Gas Transmission, LLC*,

No. 5:15-CV-98, 2016 WL 7053702 (N.D. W. Va. Dec. 5, 2016), that the plaintiffs' tort claims

for trespass and conversion were barred by the "gist of the action" doctrine as follows:

> The [plaintiffs'] trespass and conversion claims are dependent upon a finding that
> the defendants have breached the subject leases and lack contractual authority to
> unitize the [plaintiffs'] properties and to produce gas from their property through
> a well on a neighboring tract. The defendants' alleged liability arises solely out of
> the parties' performance of the subject leases' terms. While the defendants'

> obligations to not trespass and convert the [plaintiffs'] gas arise out of common law, the subject leases grant the defendants title to the [plaintiffs'] gas and to conduct operations to produce that gas. Thus, the defendants are liable for trespass and conversion only if they have also breached the terms of the subject leases. All liability must stem from that breach, and the [plaintiffs'] trespass and conversion claims seek only to duplicate the same breaches of the same contractual duties. Thus, the [plaintiffs'] trespass and conversion claims are barred under the gist of the action doctrine.

*Id.* at * 5. *See also Rodgers*, 2016 WL 3248437, at *3 (holding gist of the action doctrine barred recovery on conversion claim grounded in breach of contract involving gas lease royalties).

Similar to *Gaddy*, *Stern*, and *Rodgers*, the source of the duties that Antero and Midstream Partners allegedly breached are contractual (other than alleged the fiduciary duties, which, as discussed above, this Court has held do not exist as a matter of law).  Specifically, the entire basis of Plaintiff's misrepresentation claim is premised on information that could only be contained within Plaintiff's royalty statements, which is generated in accordance with the terms of underlying leases.  As was the case in *Stern*, Antero and Midstream Partners' alleged liability arises solely out of the performance of the lease(s).  Accordingly, Plaintiff's misrepresentation claim is wholly derivative of Plaintiff's contract(s) with Antero.  As this Court explained in *Stern* and *Rodgers*, this is an improper attempt to recast the allegations of breach of contract as a separate tort claim, both of which fail as a matter of law.  Therefore, this Court should grant the motion to dismiss Count III of Plaintiff's amended complaint for this reason as well.

### 4.  Plaintiff fails to state a claim for punitive damages, which is not a standalone cause of action under West Virginia law.

Plaintiff cannot state a claim for punitive damages, which is not a standalone cause of action under West Virginia law.  This Court has recognized that "[u]nder West Virginia law, a separate cause of action for punitive damages does not exist."  *Susko v. Cox Enters., Inc.*, No. 5:07CV144, 2008 WL 4279673, at *4 (N.D. W. Va. Sept. 16, 2008) (citations omitted); *Miller v. Carelink Health Plans, Inc.*, 82 F. Supp. 2d 574, 579 n.6 (S.D. W. Va. 2000)).  *See also Rodgers*

*v. Sw. Energy Co.*, No. 5:16-CV-54, 2016 WL 3248437, at *5 (N.D. W. Va. June 13, 2016)

("West Virginia does not recognize an independent cause of action for damages.").

The Court recently reaffirmed this position in *Games v. Chesapeake Appalachia, LLC*,

No. 5:17-CV-101, 2017 WL 5297948 (N.D. W. Va. Nov. 13, 2017):

> The plaintiffs cannot plead punitive damages as a stand-alone claim. . . . And, even if the Court had found that there was any breach of an implied covenant of fair dealing or an implied duty to market, punitive damages are not an available remedy in an action for breach of contract. . . .

*Id.* at *4 (citations omitted).

Where, as here, a claim fails to state an independent cause of action, the claim should be

dismissed.  *See, e.g.*, *Barber v. Magnum Land Servs., LLC*, No. 1:13CV33, 2014 WL 5148575,

at *8 (N.D. W. Va. Oct. 14, 2014) (dismissing a civil conspiracy claim because it was not an

independent cause of action but rather "a legal doctrine under which liability for a tort may be

imposed on people who did not actually commit a tort themselves . . . .") (citations omitted);

*Stand Energy Corp. v. Colombia Gas Transmission Corp.*, 373 F. Supp. 2d 631, 644 (S.D. W.

Va. 2005) (dismissing  breach of duty of good faith and fair dealing because it was not

independent from a breach of contract).

In this case, the claim for punitive damages states:

> The actions of defendants as set forth herein above were done intentionally and with a reckless disregard for the rights of the plaintiffs, entitling the plaintiffs to punitive damages for all causes of action alleged herein. In particular, defendants entered into a plan, scheme, design and conspiracy to take portions of plaintiffs' royalties, to which defendants were not entitled, and use them for their own business purposes, including the sale of plaintiffs' gas to a subsidiary at less than the value at the point of sale, deducting from plaintiffs' royalty amounts paid to defendants' subsidiaries for transporting and processing the gas to the "point of sale," and for failure to pay plaintiffs for the volume and for portions of their gas which were sold separately for liquids without compensating plaintiffs.

ECF No. 13 ¶ 62.

The entirety of Plaintiff's punitive damages claim is derivative of Plaintiff's other claims. Plaintiff's punitive claim damages merely reflects a form of relief, and, as discussed in more detail *supra*, Plaintiff cannot prevail as a matter of law on the substantive claims set forth in the amended complaint.  It follows that Plaintiff cannot demand damages, let alone punitive damages, for claims on which Plaintiff cannot prevail.  *See Kerns v. Range Res.–Appalachia, LLC*, No. 1:10CV23, 2011 WL 197908, at *7 (N.D. W. Va. Jan. 18, 2011) ("[I]n light of the fact that all of the plaintiffs' substantive claims fail as a matter of law, it follows that their claim for punitive damages also fails because punitive damages are a form of relief rather than an independent claim.").  As this Court recognized in *Games*, punitive damages are not generally awarded for breach of contract.  Because a claim for punitive damages is not a standalone cause of action under West Virginia law, this Court should grant the motion to dismiss Count IV of Plaintiff's amended complaint.

## IV.    CONCLUSION

For all of the foregoing reasons, this Court should grant Antero Resources Corporation's and Antero Midstream Partners LP's motion to dismiss and enter an order dismissing Plaintiff's claims in the amended complaint and the entire action with prejudice.

/s/ Amy M. Smith
W. Henry Lawrence (WV State Bar #2156)
hank.lawrence@steptoe-johnson.com
Amy M. Smith (WV State Bar #6454)
amy.smith@steptoe-johnson.com
Shaina D. Massie (WV State Bar #13018)
shaina.massie@steptoe-johnson.com

STEPTOE & JOHNSON PLLC          400 White Oaks Boulevard
      Of Counsel                Bridgeport, WV  26330
                                (304) 933-8000

Attorneys for Defendants Antero Resources Corporation and Antero Midstream Partners LP

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 6th day of April 2018, I electronically filed the foregoing "Memorandum in Support of Defendants' Motion to Dismiss Amended Complaint" with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following CM/ECF participants:

> Marvin W. Masters, Esquire
> The Masters Law Firm, LC
> 181 Summers Street
> Charleston, WV 25301
> mwm@themasterslawfirm.com

> _/s/ **Amy M. Smith**_ _____

7913884