## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**GERALD W. CORDER,**

   **Plaintiff,**

**v.**                                                    **Civil Action No. 1:18-00030**
                                                          **Hon. Irene M. Keeley**

**ANTERO RESOURCES CORPORATION, ET AL.**

   **Defendants.**

## PLAINTIFFS' RESPONSE IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

### Introduction

Plaintiffs in this case *Gerald W. Corder v. Antero Resources Corporation et al.*, Civil Action No. 1:18-0030, allege that they are the owners of oil and gas interests which were leased to Antero or assigned as set out in the Complaint.  Plaintiffs allege that Defendants are taking deductions from Plaintiffs' leases without the right to take any deductions and are not paying Plaintiffs' royalties as required by the leases.  Plaintiffs demand compensating damages and other remedies including equitable and injunctive relief including an accounting of all royalties due Plaintiffs.

The issue presented by Defendants' motion is whether Plaintiffs' have stated plausible claims in their Amended Complaints.  This issue is governed by Federal Rule of Civil Procedure 8(a)(2) which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only give the defendant fair notice of what the claims are and the grounds upon which they rest.  A 12(b)(6) motion tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.  The plausibility standard does not impose a

probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence to support Plaintiffs' allegations. Contrary to Defendants' arguments, Plaintiffs need not prove their cases at the pleading stage, and the pleadings here exceed the minimum requirements under Rule 12(b)(6), especially as the Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met.

### Statement of the Case

The Plaintiff owns oil, natural gas, and other mineral deposits lying under land located in Harrison and Doddridge Counties in West Virginia.  These oil, natural gas, and mineral interests are the subject of and are described in leases that are identified and in Paragraph 14 of Plaintiffs' Amended Complaint and are also attached to the Amended Complaint as Exhibits (Doc 13, ¶ 14.)  Specifically pled and identified are the parties to the lease agreements (*See* Id., ¶¶ 1-32 & Doc. 13-23); Defendants' acquisition of the leases (*See* Id., ¶¶ 13-14, 31); statement and description of the involved property (Id., ¶ 14); the acreage and location of the mineral interests (Id., ¶ 14); the royalty provisions (Id., ¶ 14); the duties owed under the lease agreements (Id., ¶¶ 14, 31, 36-43, 48); Plaintiffs' entitlement to royalties under the lease agreements (Id., ¶¶ 14, 29, 31, 38- 40, 42-43, 48-49; Defendants' breaches of these agreements and the duties owed to Plaintiffs (Id. ¶¶ 29, 36-41, 44-47, 54); and that Plaintiffs have been damaged ( Id., ¶¶ 36-41, 49-50, 53, 54).  Plaintiffs assert claims for breach of contract (Count I); breach of fiduciary duty (Count II); fraud (Count III); and punitive damages under each cause of action (Count IV) and request an accounting and damages.  *Id*.

It is important to note that Plaintiffs must rely upon Defendants' truthfulness and honesty in accounting for Plaintiffs' royalties. (*See* Id., ¶ 48).  Plaintiffs have no independent means of

tracking Defendants' transactions or checking Defendants' accounting.  It is understood that Defendants will perform those functions, and with that duty, Defendants have the duty to perform such functions fairly and accurately based upon the contracts and law of West Virginia. All of the information is in Defendants' control and possession.  Plaintiff sees only the check and royalty statements prepared by Defendants. Therefore, Plaintiffs also demand an accounting as part of their prayer for relief. (*See also,* Id., at ¶¶ 55, 61). Plaintiffs attached representative examples of their royalty statements from Defendants.[1] (Doc. 13-22).

---

[1] Defendants argue that Antero "Pipeline" and "Investment" are not proper parties; however, by a virtue of Pipeline's merger with Antero Resources, the latter is liable for Pipeline's alleged misconduct.  Since the statute of limitations for breach of contract is 10 years and fraud and fiduciary duty breach are subject to the discovery rule.  Pipeline's conduct remains an issue.  Further, Investment, while dissolved, remains liable for its misconduct for three years after dissolution which is alleged to have occurred on October 31, 2017.  Therefore, it is a proper party. As provided in Del. Code Ann. tit. 8, § 278 (West):  "All corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued, for the term of 3 years from such expiration or dissolution or for such longer period as the Court of Chancery shall in its discretion direct, bodies corporate for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, to discharge their liabilities and to distribute to their stockholders any remaining assets, but not for the purpose of continuing the business for which the corporation was organized. With respect to any action, suit or proceeding begun by or against the corporation either prior to or within 3 years after the date of its expiration or dissolution, the action shall not abate by reason of the dissolution of the corporation; the corporation shall, solely for the purpose of such action, suit or proceeding, be continued as a body corporate beyond the 3-year period and until any judgments, orders or decrees therein shall be fully executed, without the necessity for any special direction to that effect by the Court of Chancery.  Del. Code Ann. tit. 8, § 259 (West) provides that, following a merger of corporations,  "all debts, liabilities and duties of the respective constituent corporations shall thenceforth attach to said surviving or resulting corporation, and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it."  Additionally, the Amended Complaint states claims for misrepresentation against Midstream Partners and Midstream Partners should not be dismissed as fraudulently joined. *See* Doc 13, ¶¶ 1-21, 23-43, 46-53, 58-62; *Southern Elec. Supply v. Raleigh County N.B*, 320 S.E.2d 515, 523 (W. Va. 1984); *Laya v. Erin Homes, Inc.,* 352 S.E.2d 93, 98 (W. Va. 1986); *Sanders*

## Legal Standard

To survive a motion to dismiss, Plaintiffs' factual allegations, taken as true, must "state a claim to relief that is plausible on its face." *Robertson v. Sea Pines Real Estate Co.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). The plausibility standard is not a probability requirement, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Although it is true that "the complaint must contain sufficient facts to state a claim that is plausible on its face, it nevertheless need only give the defendant fair notice of what the claim is and the grounds on which it rests." *Wright*, 787 F.3d at 263 (internal quotation marks and citations omitted). Thus, we have emphasized that "a complaint is to be construed liberally so as to do substantial justice." *Id.*

*Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 635, 199 L. Ed. 2d 526 (2018).

As stated by this District,

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). But a complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*

---

*v. Roselawn Mem'l Gardens, Inc.,* 159 S.E.2d 784, 800 (W.Va. 1968); *Southern States Cooperative, Inc. v. Dailey,* 280 S.E.2d 821, 827 (W.Va. 1981); Syl. Pt. 3, *Mills v. USA Mobile Communications, Inc.,* 438 S.E.2d 1 (W.Va. 1993); *Dieter Eng'g Servs., Inc. v. Parkland Dev., Inc.,* 483 S.E.2d 48, 58 (W.Va. 1996); *United States v. Bestfoods*, 524 U.S. 51, 51–53, 118 S. Ct. 1876, 1879–81, 141 L. Ed. 2d 43 (1998); *Miller v. Parker,* 336 S.E.2d 213 (W.Va. 1985); *Atl. Bitulithic Co v. Town of Edgewood*, 171 S.E. 754, 755 (W.Va. 1933); *Prager v. W. H. Chapman & Sons Co.,* 9 S.E.2d 880, 884 (W.Va. 1940); *Broadmoor/Timberline Apartments v. Pub. Serv. Comm'n of W. Virginia,* 376 S.E.2d 593, 598 n. 8 (W.Va. 1988); *Henry v. Benyo,* 506 S.E.2d 615, 620 (W.Va. 1998); *Graf v. W. Virginia Univ.,* 429 S.E.2d 496, 502 (W.Va. 1992); *Armor v. Lantz*, 535 S.E.2d 737, 743 (W.Va. 2000).

*v. Twombly*, 550 U.S. 544, 570 (2007). To that end, Federal Rule of Civil Procedure 8 articulates a pleading standard which "does not require detailed factual allegations, but ... demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).

*NY @ Route 9 Limited Partnership v. Essroc Cement Corp.*, No. 3:16-CV-63, 2016 WL

4014703, at * 2 (N.D.W.Va. July 26, 2016) (Groh, J.).

It remains true that "a rule 12(b)(6) motion should be granted only in very limited circumstances." *Rogers v. Jefferson-Pilot Life Ins. Co.* 883 F.2d 324, 325 (4th Cir.1989).

*Perry v. Tri-State Chrysler Jeep, LLC*, No. CIV.A. 3:08-0104, 2008 WL 1780938, at *2–3

(S.D.W. Va. Apr. 16, 2008).

 "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable and that a recovery is very remote and unlikely." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quotation marks and citation omitted).

*SD3, LLC v. Black & Decker (U.S.) Inc.,* 801 F.3d 412, 441 (4th Cir. 2015), *as amended on reh'g*

*in part* (Oct. 29, 2015). *See also Hall v. Burney,* 454 F. App'x 149, 150 (4th Cir. 2011).

The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the plaintiff's allegations. *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955.

*Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018).

Even with the heightened pleading requirements of *Iqbal* and *Twombly*, the pleading requirements to survive a challenge to a motion to dismiss remain low.

*Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 588–89 (7th Cir. 2016).

*See, e.g., ACA Fin. Guar. Corp. v. Advest, Inc.,* 512 F.3d 46, 58 (1st Cir.2008) *(Twombly* gave 12(b)(6) "more heft"); *Iqbal v. Hasty,* 490 F.3d 143, 157–59 (2d Cir.2007) ("requiring not a universal standard of heightened fact pleading" but a "flexible 'plausibility standard' " under which "a conclusory allegation might ... need to be fleshed out ... [in] response to a defendant's motion for a more definite statement"); *Phillips v. County of Allegheny,* 515 F.3d 224, 234 (3d Cir.2008) (no probability requirement at the pleading stage); *Barclay White Skanska, Inc. v. Battelle Mem'l Inst.,* No. 07–1084, 2008 WL 238562, at *4, 2008 U.S.App. LEXIS 1916, at *9 (4th Cir. Jan. 29, 2008) (unpublished) (pleading only needs to give "fair notice"); *Lindsay v. Yates,* 498 F.3d 434, 440 n. 6 (6th Cir.2007) (concluding only that *Twombly* did not overrule *Swierkiewicz);*

*Airborne Beepers & Video, Inc. v. AT & T Mobility L.L. C.,* 499 F.3d 663, 667 (7th Cir.2007) *("Twombly* did not signal a switch to fact-pleading"); *Stalley v. Catholic Health Initiatives,* 509 F.3d 517, 521 (8th Cir.2007) (plaintiff must allege facts "that affirmatively and plausibly suggest" he has the claimed right, not just "facts that are merely consistent with such a right"); *Skaff v. Meridien N. Amer. Beverly Hills, L.L.C.,* 506 F.3d 832, 842 (9th Cir.2007) (citing *Twombly* as instructing courts "not to impose such heightened [pleading] standards"); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,* 514 F.3d 1063, 1070 (10th Cir.2008) (courts must "tak[e] as true all well-pled (that is, plausible, non-conclusory, and non-speculative) facts alleged in plaintiff's complaint"); *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295–96 (11th Cir.2007) (courts may not assess the probability of facts, but a plaintiff must "allege[ ] enough facts to suggest, raise a reasonable expectation of, and render plausible" his claim); *McZeal v. Sprint Nextel Corp.,* 501 F.3d 1354, 1357 (Fed.Cir.2007) (plaintiff need only "place [a defendant] on notice as to what he must defend").

*Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.,* 525 F.3d 8, 14–15, n. 3 (D.C. Cir. 2008).

A claim crosses from conceivable to plausible when it contains factual allegations that, if proved, would "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

*Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1128–29 (D.C. Cir. 2015).

A complaint need not establish a *prima facie* case in order to survive a motion to dismiss:

A *prima facie* case is "an evidentiary standard, not a pleading requirement," *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), and hence is "not a proper measure of whether a complaint fails to state a claim." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 213 (3d Cir.2009). As we have previously noted about pleading in a context such as this,

> [a] determination whether a *prima facie* case has been made ... is an evidentiary inquiry—... Even post-*Twombly,* it has been noted that a plaintiff is not required to establish the elements of a *prima facie* case....

*Id.* at 213 (citation omitted). Instead of requiring a *prima facie* case, the post-*Twombly* pleading standard " 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element[s]." *Phillips v. Cty. of Allegheny,* 515 F.3d 224, 234 (3d Cir.2008) (quoting *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955).

*Connelly v. Lane Const. Corp.,* 809 F.3d 780, 788–89 (3d Cir. 2016) (footnotes omitted).

Finally, "the pleading standard under Rule 12(b)(6) contemplates that plaintiffs will often

be unable to prove definitively the elements of the claim before discovery, particularly in cases

where the necessary information is within the control of the defendants." *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 961–62 (8th Cir. 2015).

**Argument**

### 1. Plaintiffs' Breach of Contract Claim is Adequately Pled

The act of leasing the oil and gas rights by plaintiffs encompasses the duty that the plaintiffs have under the oil and gas lease.  Such is the case with most or all oil and gas leases.  A brief review of the leases (Doc. 13-1 to 13-21) discloses that apparent fact.  While it obviously is a requirement if there is an issue in the contract which contains a bi-lateral ongoing duty among the parties, but it is not pertinent unless there exists such ongoing duties.

In Defendants' memorandum in support of motion to dismiss the amended complaint, (Doc. 18,) Defendants assert that regardless of Plaintiffs' amendments to the complaint, the complaint is deficient because it (1) "still does not sufficiently allege Plaintiffs', Antero's or Midstream Partners' connection to each and every lease, memorandum or amendment or allegations[2]; or (2) allege either Plaintiffs' obligations or performance under these instruments." Defendants then assert that "[m]ore importantly, it cannot prove that Antero breached any contractual provision."  (Doc. 18, Page 1.)  Defendants also assert that Plaintiffs fail to state a claim for the following:  (a) violation of fiduciary duties, (b) failed to allege fraud with the required particularity, (c) that the fraud claim is barred by the gist of the action defense and (d) punitive damages is not a standalone cause of action.  Each is addressed below:

---

[2] Plaintiffs assert that the Defendants' connection to the lease here is adequately pled to place Defendants on notice of matters which are well within their own knowledge.  However, Plaintiffs have undertaken to have a title opinion prepared which remains only partially complete.  Should the Court determine that is a necessary requirement, Plaintiffs request leave of the Court to have the same completed and amend the Complaint accordingly.

It must be noted that a *prima facie* case is an evidentiary standard, not a pleading requirement. Plaintiff is not required to establish the elements of a *prima facie* case.  As set forth in *Patrick v. PHH Mortgage Corp.,* 937 F.Supp.2d 773, 792 (N.D.W.Va. 2013):

> "In West Virginia, the elements of a breach of contract are (a) a contract exists between the parties; (2) a defendant failed to comply with a term in the contract, and (3) damage arose from the breach."

*See also,* Syl. Pt. 1, *State ex rel. Thornhill Group, Inc. v. King,* 759 S.E.2d 795 (W.Va. 2014) and *Wetzel County Savings & Loan Co. v. Stern Bros., Inc.,* 195 S.E.2d 732, 736 (W.Va. 1973).

Plaintiff's amended complaint adequately alleges the ownership of the oil and gas interests at issue in this case and that Plaintiffs have leased those oil and gas interests as set forth in ¶14 and in the Exhibits (1-21) attached to the complaint.  Plaintiffs have identified the relevant royalty obligation for each lease in Paragraph 14 where plaintiffs allege that Antero had duties and responsibilities for the following leases:

(A)   a tract of land containing 48.69 acres, more or less situated on the waters of Turtle Tree Fork of Ten Mile, in Union District, County of Harrison, State of West Virginia, 48.69 acres, being the same as Deed dated October 10, 1928, Book 393, Page 399, and being bounded now or formerly substantially as follows, to wit:

| On the North by lands of: | County Road 30/5 |
| On the East by lands of: | Franklin D. Riffee |
| On the South by lands of: | James Corder |
| On the West by lands of: | Bill Devericks |

(i)   The plaintiffs and Antero entered into the lease which provided for Antero to pay royalties as follows:

(a)   on oil, One-Eighth (12.5%) (amended to be 15%) of that produced and saved and delivered at the wells or into the pipeline to which the wells may be connected; and

(b)   on gas, including casinghead gas or other gaseous substance, produced from said land and sold or used beyond the well or for the extraction of gasoline or other product, an amount equal to One-Eighth (12.5%)(amended to be 15%) of the net amount realized by Lessee computed at the wellhead from the sale of such substances.

(ii)   And further it was agreed that:

all oil, gas or other proceeds accruing to the Lessor under this lease or by state law **shall be without deduction, directly or indirectly**, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements.  However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.

Plaintiffs then identified the leases and amendment in (iii) (a) – (k).

The complaint then alleges additional leases of oil and gas in 14(B), (C), (D), (E,) (F,), (G) and (H.)  Plaintiffs alleged that "lessees and Antero" were required to pay Plaintiffs the amounts required pursuant to the laws of the State of West Virginia under the terms and conditions of said lease.  (Doc. 13, ¶ 31.)

Plaintiffs alleged factual details regarding alter ego and that Defendants joined (Doc. 13, ¶¶15-35) to produce, transport, market, sell, transport and hedge Plaintiffs' oil and gas and then breached their duties and responsibilities under the contract by entering in to a plan and scheme to not pay Plaintiffs (Doc. 13,  ¶¶36-43) the royalty to which Plaintiffs were entitled to under the contract and by failing to properly account and pay Plaintiffs for royalties due to plaintiffs under the contract.   (Doc. 13, ¶¶ 29, 31, 38-39, 42-43, 48-49, 58.)  Plaintiffs further alleged that Plaintiffs were damaged. (Doc. 13, ¶¶ 15-35.)  In sum, Plaintiffs entered into a contract leasing Plaintiffs' oil and gas in exchange for royalty payments from Defendants.  Defendants took Plaintiffs' oil and gas under the contract.  Plaintiffs were entitled to be paid according to the contract and Defendants wrongfully failed and refused to pay Plaintiffs the amounts due to Plaintiffs under the contract, damaging Plaintiffs.

Plaintiffs have alleged facts that allow the Court to draw the reasonable inference that the Defendants are liable for the misconduct alleged.  Plaintiffs are not required to prove the case in the pleadings.  Furthermore, Plaintiffs' allegations are not akin to the allegations in *Rodgers v. Southwestern Energy Co.,* No. 5:16-CV-54, 2016 WL 3248437 (N.D.W.Va.  June 13, 2016),[3] *KBS Preowned Vehicles, LLC v. Revia, Inc.,* No. 1:13CV138, 2014 WL 12591890 (N.D.W.Va. Mar. 26, 2014) or *Cather v. Seneca-Upshur Petroleum, Inc.,* No. 1:09-CV-139, 2010 WL 3271965 (N.D.W.Va. Aug. 18, 2010).  Plaintiffs alleged and identified the property and lease at issue, royalty provisions, connection between Defendants and the lease, and specific details regarding the Parties' agreement entitling Plaintiffs to royalties.  The Plaintiffs have also alleged that Defendants are agents, alter egos and joint venturers, thus making all of them liable for Plaintiffs' damages. Plaintiffs do not baldy assert that there is a contractual duty to pay royalties without any factual support.

While Plaintiffs have not alleged the specific amounts underpaid, that information is solely within the knowledge of the Defendants.  The 12(b)(6) standard contemplates that a plaintiff will often be unable to prove definitively the elements of the claim before discovery, particularly where the necessary information is solely within the control of the defendants.

In addition, as per the 12(b)(6) legal standard,  a plaintiff does not have to prove his or her case in the pleadings.  A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses, or, in other words, evidence.  Plaintiffs have pled ample facts to state a plausible claim and put Defendants on notice of it.  Defendants are asking this Court to require Plaintiffs to prove this case in the pleadings.  The law does not require such level of pleading.

---

[3] It should also be noted that *Rogers, supra,* did not address whether the plaintiffs' claim for a breach of contract was adequately pled. *Rogers,* at *3.

2.      **Plaintiffs' breach of contract claim does not fail as a matter of law.**

Defendants argue that Plaintiffs' claims for breach of contract fail to state a claim because "[f]or example, the amended complaint identifies an express provision, 14(A)(ii), that allows Antero to take deductions for costs associated with enhancing the value of marketable gas ('Market Enhancement Clause')."  The clause they are relying on only applies to gas which has already been made marketable – not gas which has just been produced at the wellhead and is neither transported to the first liquid trading point for sale nor processed and made suitable to be accepted for sale on the interstate pipeline.

The clause defendants' cite does not allow for deductions, in fact it prohibits deductions. "[A]ll oil, gas, or other proceeds accruing to the lessor under the lease or by state law shall be **without deductions, directly or indirectly**."  This clause in the subject lease even identifies every kind and type of prohibited deduction known to the industry – "producing, gathering, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas <u>and other products produced</u> hereunder to transform the product into a marketable form." The clause limits any deductions whatsoever to the following:  (1)  lessee must first make the gas marketable which only occurs when it has been transported to the point of sale or a point of sale which is at an interstate pipeline; (2)  lessee must have spent money which enhances the value of the already marketable oil, gas and other products; and (3)  the gas, oil and/or other products must "receive a "better price" as a result of defendants spending more money than was required to make the gas marketable."  Defendants' argument merely points out an issue which is, at best, a factual issue of what else could they do, if anything, to "enhance" the value of gas and other products after all of the above things were done to the gas.  After all, the clause prohibits

"processing," "transporting" and "marketing," and everything else of not only the oil and gas, but also "other products."

What is clear from reading this clause, which in any event, does not appear in all leases set forth in Plaintiffs' complaint, is that it only becomes relevant if the costs and expenses "result in enhancing the value of the marketable oil, gas or other product to receive a better price." The gas, oil or other products, therefore, must already be made marketable before the cost and expense is incurred by defendants, and it is further contingent that the other products or oil and gas must then receive a better price than if the costs were not expended.

Although Defendants' reasoning is unclear, Defendants' also appear to argue that the first part of the clause prohibiting deductions can be ignored; that the phrase "shall be without deductions," must be ignored. Plaintiffs do not believe the clause is unclear in its meaning, but Defendants' argument if considered by the court only introduces another issue with respect to the interpretation of the clause. Oil and gas leases are to be strictly construed against the lessee and any ambiguity must be resolved in favor of the lessor. *Martin v. Consolidated Coal & Oil Corp*., 101 W.Va. 721, 133 S.E. 626, 628 (1926), *Flanagan v. Stalnaker*, 216 W.Va. 436, 607 S.E.2d 765, 769-770 (2004). Defendants' contention that in the face of the prohibition of all deductions, the enhancement language still allows defendants to take deductions creates an ambiguity which must be resolved in Plaintiffs' favor.

Defendants also claim that they are allowed to use the "net-back" method by virtue of the Market Enhancement Clause. In support of their claim, defendants' cite *Wellman v. Energy Resources, Inc.*, 557 S.E.2d 254 (W.Va. 2001) and *Estate of Tawney v. Columbia Natural Resources, L.L.C.*, 633 S.E.2d 22 (W.Va. 2006). Defendants claim that these two cases only applied to "proceeds" leases which defendants say are not the leases which this Court is dealing

12

with in this case.  That is simply not true.  The *Tawney* case dealt with variety of types of leases including both "market value" lease and "proceeds" leases.[4]  Whether a lease was market value or proceeds was not the issue in *Tawney*.  The issue was whether in a "lease" that had no provisions which addressed allowing lessees the right to take deductions, other language such as "at the wellhead" allowed lessee to take deductions.  "Wherein **in an oil and gas** lease there is no specific provision allowing for deductions of post productions expenses does language such as "wholesale market at the well, "amount realized at the well," etc., "grant to the lessee the right to deduct post production expenses."  See *Tawney*, 633 S.E.2d at 25.  Both market and proceeds leases were therefore identified in *Tawney*.  Further, in *Wellman*, the Court quoted the lease language which in part states "that lessee was to pay lessor "1/8 of the market value of such gas"" which is clearly a market lease.  Plaintiffs, therefore unlike defendants, see no "marked differences" between leases in *Wellman* and *Tawney* and those involved in this action.  There is no difference and neither those two cases nor *Leggett* are supportive of Defendants' rights to take any deductions in this case.  *Leggett* was only applicable to flat rate leases, converted pursuant to the operation of *W.Va. Code* § 22-6-8.  The Leggett court stated that the issues before the Court "simply does not permit intrusion into these issues."  *Leggett*, 800 S.E.2d at 863.  These issues were whether the *Tawney* and *Wellman* holdings were valid.

Defendants cited David E. Pierce, *Royalty Jurisprudence: A Tale of Two States*, 49 Washburn L.J. 347, 377 N. 91 (2010) as an authority to criticize the West Virginia Supreme

---

[4] Reviewing the treatment of flat-rate leases which are converted to 1/8 royalty leases by W.Va. Code § 22-6-8, held that "royalty payments pursuant to an oil or gas lease governed by West Virginia Code § 22-6-8(e) (1994) may be subject to pro-rata deduction or allocation of all reasonable post-production expenses actually incurred by the lessee. Therefore, an oil or gas lessee may utilize the net-back or work-back method to calculate royalties owed to a lessor pursuant to a lease governed by West Virginia Code § 22-6-8(e). **The reasonableness of the post-production expenses is a question for the fact-finder**."  Syllabus Point 8, *Leggett*.

13

Court's opinions in *Wellman* and *Tawney*.  (Doc. 17, Pages 11-12, fn. 5.)  Regardless, however, Plaintiffs are not relying upon expert witnesses, but are relying upon the law as it exists.

Neither is *Imperial Colliery Co. v. OXY USA Inc.*, 912 F.2d 696, 699 (4th Cir. 1990) conclusive authority for Defendants' argument that Antero is permitted to deduct post-production expenses in order to compute royalty for any market value leases.  As set forth above, *Tawney* and *Wellman,* decided years later, prohibit the taking of deductions unless the language used in the lease so specified and required that any such deductions must be reasonable and actual.

The United States District Court (Southern District of West Virginia) held in *W.W. McDonald Land Co. v. EQT Production Co.*, 983 F.Supp.2d 790 (2014), that:

> The defendants cannot calculate royalties based on a sale between subsidiaries at the wellhead when the defendants later sell the gas in an open market at a higher price. Otherwise, gas producers could always reduce royalties by spinning off portions of their business and making nominal sales at the wellhead.

983 F.Supp.2d at 804.

Judge Goodwin added:

> To determine the wellhead price, the defendants use a "work-back method" which "involves subtracting post-production costs that enhance the value of the gas from the interstate connection price." . . . . Absent lease language to the contrary, *Tawney* requires lessees to pay royalties free of these costs. The defendants cannot avoid *Tawney* by simply reorganizing their businesses and making intra-company wellhead sales. Accordingly, I FIND that *Tawney's* specificity requirements apply to royalty payments made under the defendants' work-back method after 2005.

*Id.*

There are, however, other types of leases among Plaintiffs and Defendants besides the one Defendants have targeted.  But assuming that is the one giving them their best argument, it should be noted that the lease Defendants' cite prohibits deductions.  Defendants throw into their argument in support of motion to dismiss the amended complaint, a list of cases which allow for

14

deductions for liquids (NGL's.)  (Doc. 17, Page 10, fn. 4.)  This preview of things to come does not satisfy any right to dismissal under Rule 12(b)(6).  Antero cannot explain the lease they are relying on which included a prohibition from deducting costs for "not only oil and gas" but also "**other products**."  NGL's are hydrocarbons existing in Plaintiffs' gas.  Therefore, defendants' argument may become a factual issue in this case, but it is not grounds for dismissal at this stage.

The Plaintiffs respond to a summary of other of Defendants' arguments as follows:

1.      Defendants argue that it is allowed to take deductions from flat rate leases. Plaintiffs agree that *Leggett*, *supra*, is controlling on that point in West Virginia.  But *Leggett* still requires that the deductions must be reasonable and actual.  *Leggett v. EQT Production Co.*, 800 S.E.2d at 868.  Plaintiffs have alleged that the deductions are unreasonable and unlawful. (Doc. 1-1, Pages 37, 41 and 53(d).)  Therefore, this is a factual issue and is not grounds for dismissal of their claims.

2.      Defendants argue that the leases allow for deductions.  The only lease Defendants cite to as allowing deductions, as explained above, actually prohibits deductions.   The other leases clearly are not *Tawney* compliant and, therefore, Defendants are not permitted to take deductions.

> (14)(A)(i)(ii), lease containing 50.82 acres (Exhibit 15) is a 1/8 of the value at the well, ¶ 14 (B); the 54.18 acre lease is a 1/8 of the value at the well, ¶ 14(C); the 104.75 acre and 6.5 acre lease is a 1/8 of the price received from the sale of the gas, ¶ 14(D); the 59 acre tract is a 1/8 of the gross proceeds received from the sale of same at the prevailing price for gas at the well, for all natural gas saved and marketed from the premises, ¶ 14(E); 105 acre tract is a 1/8 of the gross proceeds received from the sale at the prevailing price, ¶ 14(F); the 44.4 acre tract is a flat rate lease, ¶ 14(G) and the 50 acre tract is a 1/8 of the value at the well of the gas, ¶ 14(H).  (See Plaintiffs' complaint, Paragraph 14.)

3.      The above leases, except for the flat rate lease, are clearly *Tawney* non-compliant. They are 1/8 royalty "at the well" which does not allow for deductions because there is no

provision in any of them identifying any deduction or stating that any may be taken.  *Estate of Tawney v. Columbia Natural Resources, L.L.C.*, 633 S.E.2d 22, 30 (W.Va. 2006):

> In light of the fact that West Virginia recognizes that a lessee to an oil and gas lease must bear all costs incurred in marketing and transporting the product to the point of sale unless the oil and gas lease provides otherwise, is lease language that provides that the lessor's 1/8 royalty is to be calculated "at the well," "at the wellhead" or similar language, or that the royalty is "an amount equal to 1/8 of the price, net all costs beyond the "wellhead," or "less all taxes, assessments, and adjustments" sufficient to indicate that the lessee may deduct post-production expenses from the lessor's 1/8 royalty, presuming that such expenses are reasonable and actually incurred?

Therefore, Defendants are not entitled to take deductions, yet the statements, Exhibit 22, demonstrates that they are taking deductions.  Defendants also claim that they are allowed to use a "work-back method" to arrive at a price for the gas which defendants claim, except for leases in ¶ 14(G) allows them to take deductions from the sales price.  These are not "flat rate converted" leases, which fall under *Leggett v. EQT Production Co.*, 800 S.E.2d 850 (W.Va. 2017).

*Leggett* only applies to leases falling under the terms of W. Va. Code § 22-6-8:

> Reviewing the treatment of flat-rate leases which are converted to 1/8 royalty leases by W.Va. Code § 22-6-8, held that "royalty payments pursuant to an oil or gas lease governed by West Virginia Code § 22-6-8(e) (1994) may be subject to pro-rata deduction or allocation of all reasonable post-production expenses actually incurred by the lessee.  Therefore, an oil or gas lessee may utilize the net-back or work-back method to calculate royalties owed to a lessor pursuant to a lease governed by West Virginia Code § 22-6-8(e). The reasonableness of the post-production expenses is a question for the fact-finder."  Syllabus Point 8, *Leggett.*

Except for the one flat rate lease, Defendants are prohibited from taking deductions from any leases, and for the flat rate, they are limited to reasonable deductions as required in *Leggett*.

Plaintiffs' claims, therefore, do not fail as a matter of law.  The allegations in the pleadings support causes of action for the plaintiffs against defendants for wrongfully taking deductions and not paying royalty due to the plaintiffs.

3.      **Plaintiffs' Breach of Fiduciary-Duty Claim Is Adequately Pled**

As to Plaintiffs' breach of fiduciary-duty claim, it is important to recognize that Defendants do not contend that plaintiffs have failed to adequately plead such claim for purposes of providing the required notice pleading, but instead contend that as a matter of law a fiduciary duty simply does not exist between lessors and lessees in an oil and gas lease.  Plaintiffs acknowledge that many courts have lumped all aspects of the oil and gas lessees' duties into one category and deny that an oil and gas lessee owes a fiduciary duty to a lessor.   Under the facts of the present case, Plaintiffs respectfully disagree.  Plaintiffs further understand that several courts within this State have held that a fiduciary relationship is not created merely because a natural gas lease has been entered into by lessors and lessees.   *See, e.g., Wellman v. Bobcat Oil & Gas, Inc.*, No. 3:10cv147, 2010 WL 2720748, at *2 (S.D.W.Va. July 8, 2010) (Goodwin, J.); *Cather v. Seneca-Upshur Petroleum, Inc.*, No. 1:09cv139, 2010 WL 3271965, at *5 (N.D.W.Va. Aug. 18, 2010) (Keeley, J.).  However, these cases fail to acknowledge that the duties and responsibilities actually assumed by a lessee as a result of a natural gas lease are much different from that seen in more typical leases and the reasonably prudent operator standard cannot be applied to all of a lessee's acts in performing its duties under an oil and gas lease.  As set forth below, this is particularly true where the lessee collects, holds, and disburses the money, and especially where the lessee is self-dealing and/or dealing with its affiliates.

Plaintiffs respectfully submit that a fiduciary and agency relationship does exist between Plaintiffs and Defendants, particularly when the gas company receives money for both the Plaintiffs and Defendants.   Plaintiffs have alleged facts that demonstrate that (i) the activities of the parties have a reciprocal benefit; (ii) the activities impose a common interest and profit; (iii) the parties repose trust in each other; and (iv) one party, here the Defendants, has dominion and control over the other.   *See*, 37 Am.Jur.2d *Fraud and Deceit*, §494.

Rarely, but occasionally, courts overlook separate, distinct, factual differences with respect to precedent.  Plaintiffs request the Court to carefully examine the cases cited by Defendants and their rationale because nowhere in the lease does it exempt Defendants from honestly and accurately dispersing Plaintiffs' royalty.  For example, *Grass v. Big Creek Development Co.,* 84 S.E.750 (W.Va. 1915) dealt with the judgment of an operator of an oil and gas lease and the diligence with which and extent to which wells should be drilled upon discovery of minerals in paying quantities.  The Court in *Grass* explained:

Where the object of the operations contemplated by an oil and gas lease is to obtain a benefit or profit for both lessor and lessee, neither is, in the absence of a stipulation to that effect, the arbiter of the extent to which or the diligence with which the operation shall proceed; but both are bound by the standard of what, in the circumstances, would be reasonably expected of operators of ordinary prudence, having regard to the interests of both.

*Grass,* at 753.  In *Jennings v. Southern Carbon Co.,* 80 S.E. 368 (W.Va. 1913), the issues were whether the defendant had properly tested the plaintiffs lands for oil and gas under a lease and whether the defendant failed to protect the lands for drainage.  On these issues, the Court said:

To the judgment of the operator, when, and where, and how many wells he shall drill, deference is justly due. But the judgment must be an honest, not an arbitrary, judgment. He must deal with the leased premises, not exclusively to serve his own peculiar and selfish interests, unmindful of his obligations to the source from which his authority is derived, but so as to promote the mutual advantage and profit of himself and the lessor; and, to excuse the operator, his judgment must conform to that judgment generally exercised by other operators under similar circumstances and conditions, and in view of the real purpose and intention of the parties when entering into the agreement, and not merely the opinion of those not so engaged.

*Id.* The fiduciary duty here relates Defendants' accounting for royalties owed to the Plaintiffs. Accounting for royalties is not analogous to conducting operations under a lease such as drilling wells to prevent drainage. There should be no "mutual advantage" or promotion of profit for Defendants in accounting for Plaintiffs' royalties. When accounting for Plaintiffs' royalties Defendants should have to support Plaintiffs' interests above theirs, especially where Defendants have taken it upon themselves to account for Plaintiffs' royalties, Defendants have all of the records and royalty accounting data and information in their possession, and Plaintiffs must rely on them to truthfully and accurately account for the royalties. A duty of "ordinary prudence" has no place under these circumstances where Plaintiffs must rely and the Defendants to correctly account for the gas and royalties and where Defendants are selling the gas to themselves and/or their joint venturers and affiliates. The duty here arises from Plaintiffs' reliance on Defendants to truly, accurately, and properly account for the gas and royalties owed to the Plaintiffs. There is no question that in accounting for Plaintiffs' gas and royalties, Defendants had "[a] duty to act for someone else's benefit [the Plaintiff's], while subordinating" their "personal interests to that of the other person [Plaintiff]." *Elmore v. State Farm Mut. Automobile Insurance Co.,* 504 S.E.2d 893, 898 (W.Va. 1998). Accordingly, Defendants' motion should be denied.

**4.     Plaintiffs' Fraud Claim Is Adequately Pled**

In attacking the sufficiency of Plaintiffs' fraud claim, Defendants fail to acknowledge that the fraudulent transactions at issue do not involve face-to-face communications between the Plaintiffs and some individual agent of the Defendants whose identity has been made known to the Plaintiffs. Moreover, Defendants fail to note the fraud at issue here consists of fraudulent omissions and concealment that constitute a type or subspecies of fraud for which courts do not demand the same heightened pleading requirements as they do for your more typical claims of direct and active, fraudulent misrepresentations. Paragraphs 36-43, 46, 48-50, 53, and 58-61 of

Plaintiff's Amended Complaint (Doc. 13), are particularly relevant to Plaintiff's fraud claim.[5] These paragraphs demonstrate that the Defendants' fraudulent conduct consists of concealment, suppression, and omissions of material facts concerning what the proper amount of Plaintiffs' royalty payments should be as well as what the proper amount of any deductions from such royalty payments should be.

As acknowledged by the West Virginia Supreme Court of Appeals, "`"an action for fraud can arise by the concealment of truth."' *Teter v. Old Colony Co.*, 441 S.E.2d 728, 734 (W.Va. 1994) (quoting *Thacker v. Tyree*, 297 S.E.2d 885, 888 (W.Va. 1982)).  Such a basis for a claim of fraud is possible because `[f]raud is the concealment of the truth, just as much as it is the utterance of a falsehood.' *Frazier v. Brewer*, 43 S.E. 110, 111 (W.Va. 1902)." *Kessel v. Leavitt*, 511 S.E.2d 720 (W.Va. 1998).

Generally speaking, it is true that Rule 9(b) of the Federal Rules of Civil Procedure requires that in all averments of fraud, the circumstances constituting fraud shall be stated with particularity.  However, in the present case, Defendants do not acknowledge that less particularity is required when a plaintiff alleges claims of fraudulent omission or concealment. As acknowledged by the Court in *In Town Hotels Ltd. Partnership*, 246 F. Supp.2d 469, 487 (S.D.W.Va. 2003), "[a]s for the allegations of material omissions, the plaintiffs correctly point

---

[5] Throughout their complaint, plaintiffs adopt and incorporate all of their prior allegations as if fully set forth in each respective count.  Courts have held that, when a party so adopts and incorporates allegations, the totality of the complaint must be examined in assessing the sufficiency of any particular count, such as a claim of fraud. *See Polis v. American Liberty Fin., Inc.*, 237 F. Supp. 2d 681, 688 (S.D. W. Va. 2002) (denying Rule 12(b)(6) motion based upon alleged Rule 9(b) violation where, inter alia, the complaint "incorporate[d] by reference into [the fraud count] the earlier paragraphs in the Amended Complaint"); *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F. Supp. 2d 298, 314 (D. Md. 2000) ("The Fraud Counts incorporate by reference all preceding paragraphs of the Amended Complaint.  Accordingly, an examination of the entire Amended Complaint is necessary.").

out that **when the allegation of fraud relates to an omission rather than an affirmative misrepresentation, less particularity is required**." (*Citing Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 552 (D.Md. 1997)) (emphasis added).

As explained by the United States District Court for the District of Maryland in *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. at 552:

> With respect to fraud committed by affirmative statements, "[p]articularity of pleading is required with regard to the time, place, speaker and contents of the allegedly false statements, as well as the manner in which statements are supposedly false and the specific facts which raise an inference of fraud." *In re Medimmune, Inc. Securities Litigation*, 873 F. Supp. 953, 960 (D.Md. 1995). **Such particularity cannot be met in a concealment case, however, because an omission "cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation."** *Flynn v. Everything Yogurt*, 1993 WL 454355, at *9 (D.Md. Sept. 14, 1993). **Thus, this Court has recognized that these particularity requirements are less strictly applied with respect to claims of fraud by concealment**. *Id.*; *see also Bonfield v. AAMCO Transmissions, Inc.*, 708 F. Supp. 867, 875 (N.D.Ill. 1989) (stating that allegations of omissions are "really not subject to Rule 9(b) analysis").

(Emphases added). Simply stated, an allegation of fraudulent omission "is really not subject to Rule 9(b) analysis. Like Sherlock Holmes' dog that did not bark in the night, an actionable omission obviously cannot be particularized as to `the time, place, and contents of the false representation' or `the identity of the person making the misrepresentation.'" *Bonfield v. AAMCO Transmissions, Inc.*, 708 F. Supp. at 875.

It should also be noted that a duty to disclose arises not only where a fiduciary duty exists but also under other circumstances, including, but not limited to, where a defendant provides half-truths or incomplete information or has superior knowledge and/or access to such knowledge. *See*, *e.g.*, *Okland Oil Company v. Conoco*, 144 F.3d 1308, 1324 (10th Cir. 1998); 26 *Willston on Contracts* §69:17 (4th ed.); 37 Am.Jur.2d, *Fraud And Deceit* § 204. Providing this information to the Court is particularly important considering defendants are contending that no fiduciary duty exists between lessors and lessees and are seeking dismissal of such claim as well.

20

As one court put the matter:  "A duty to speak arises from a fiduciary or confidential relationship or where a person is, `by force of circumstances,' under a duty to speak."  26 *Willston on Contracts* §69:17 (4th ed.), (citing *Boyd v. Boyd*, 67 S.W.3d 398 (Tex. 2002).  When one voluntarily discloses information, he has a duty to disclose the whole truth rather than making a partial disclosure that conveys a false impression, and regardless of the existence of a duty to disclose, a direct inquiry regarding a material fact requires a truthful answer.  *Id.*, (citations omitted).

Transactional circumstances other than a confidential or fiduciary relationship give rise to a duty to disclose, and one such circumstance is the disclosure of certain facts, which, absent other disclosures, will mislead.  *Id.*  In discussing such half-truths, the Supreme Court of the United States stated as follows:

> A statement in a business transaction which, while stating the truth, so far as it goes, the maker knows or believes to be materially misleading because of his failure to state qualifying matter is a fraudulent misrepresentation.
>
> Such a statement of a half truth is as much a misrepresentation as if the facts stated were untrue.

26 *Willston on Contracts* §69:17 (4th ed.), (citing *Equitable Life Ins. Co. of Iowa v. Hasley, Stuart & Co.*, 312 U.S. 40, 61 S.Ct. 623 (1941).  *See*, *also*, 37 Am.Jur.2d, *Fraud And Deceit* § 209.  Additionally, numerous courts have described the duty to speak arising from circumstances where defendants possess superior information that plaintiffs are entitled to have.  26 *Willston on Contracts* §69:17 (4th ed.)  The possession of superior  information coupled with a relationship involving a degree of trust and confidence, or the fact that the information was not reasonably available to the other party are circumstances that create the duty to speak.  *Id.*

Whether a duty to speak exists is determined by all of the circumstances of the case, and, by comparing the facts not disclosed with the object and end sought by the contracting parties.

37 Am.Jur.2d, *Fraud And Deceit* § 204.   A party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter that the other was thus prevented from discovering. Restatement (Second), *Torts* § 550.   Liability for fraudulent concealment occurs "[w]hen the defendant successfully prevents the plaintiff from making an investigation that he would otherwise have made, and which, if made, would have disclosed the facts; or when the defendant frustrates an investigation." Restatement (Second), *Torts* § 550, comment b-551.   (Restatement (Second), *Contracts* § 160 (action intended or known to be likely to prevent another from learning a fact is equivalent to an assertion that the fact does not exist).

Restatement (Second), *Torts* § 551, provides:

"(1)   One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

"(2)   One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

(a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and

(b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and

(c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and

(d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and

(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts."

As noted in *Okland Oil Company v. Conoco*, 144 F.3d 1308 (10th Cir. 1998):

> " '[i]n determining **whether there is a duty to speak, consideration must be given to the situation of the parties and matters with which they are dealing.**'" *Thrifty Rent-A-Car Sys., Inc. v. Brown Flight Rental One Corp.,* 24 F.3d 1190, 1195 (10th Cir.1994) (quoting *Silk v. Phillips Petroleum Co.,* 760 P.2d 174, 179 (Okla.1988)). Those considerations may require either (1) **an absolute positive duty to speak based on a fiduciary or similar duty**, or (2) **a duty to speak arising from a partial disclosure**. *See Thrifty Rent-A-Car Sys.,* 24 F.3d at 1195. The second duty is imposed because the speaker is " 'under a duty to say nothing or to tell the whole truth. **One conveying a false impression by the disclosure of some facts and the concealment of others is guilty of fraud, even though his statement is true as far as it goes, since such concealment is in effect a false representation that what is disclosed is the whole truth**.'" *Id.* (quoting *Deardof v. Rosenbusch,* 201 Okla. 420, 206 P.2d 996, 998 (1949)); *see also Varn v. Maloney,* 516 P.2d 1328, 1332 (Okla.1973); *Ragland v. Shattuck Nat'l Bank,* 36 F.3d 983, 991-92 (10th Cir.1994); Okla. Stat. tit. 76, § 3 (Deceit may be found, inter alia, by the "suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact."). **So even in the absence of a fiduciary or similar relationship, the duty to speak often arises**. *See Ragland,* 36 F.3d at 991-92; *Uptegraft v. Dome Petroleum Corp.,* 764 P.2d 1350, 1353-54 (Okla.1988).

*Id.* at 1324 (emphases added, footnote omitted).

Moreover, Plaintiffs' fraud claim is not barred by the gist of action doctrine. Under West Virginia law, if an action in tort would arise independent of the existence of a contract, it is a viable cause of action. In other words, "'whether a tort claim can coexist with a contract claim is determined by examining whether the parties' obligations are defined by the terms of the contract.'" *Soyoola v. Oceanus Ins. Co*., 986 F.Supp.2d 695, 707 (S.D.W.Va. 2013) (citing *Gaddy Eng'g Co. v. Bowles Rice McGraff & Love*, 231 W.Va. 577, 746 S.E.2d 568, 577 (2013). The "gist of action" doctrine under West Virginia law only bars a tort action if a party establishes one of the following:

> (1) where liability arises solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.

*Id. See also,* Syl. Pts. 9 & 10, *Lockhart v. Airco Heating & Cooling, Inc.*, 211 W.Va. 609, 567 S.E.2d 619 (2002). Plaintiffs' claim of fraud is an independent tort that possesses all of the essential elements of fraud and is not premised upon a mere omission to perform a contract.

In light of the above, Plaintiffs respectfully submit that the allegations of Plaintiffs' Complaint, when read in its entirety, more than adequately satisfies the pleading requirements

for claims of fraudulent concealment and omissions.  Accordingly, Plaintiffs request that the Court deny Defendants' motion to dismiss Plaintiffs' fraud claim.

   **5.     Plaintiffs have stated Claims for Punitive Damages in All Counts**

   Plaintiffs are not alleging punitive damages as a stand-alone cause of action. Plaintiffs adopted and incorporated all of their prior allegations as if fully set forth in Count IV. When a party so adopts and incorporates allegations, the totality of the complaint must be examined in assessing the sufficiency of any particular count. *See Polis v. American Liberty Fin., Inc.*, 237 F. Supp. 2d 681, 688 (S.D. W. Va. 2002); *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F. Supp. 2d 298, 314 (D. Md. 2000).  Accordingly, an examination of the entire Complaint is necessary, and a review of the Complaint reveals that Plaintiff has stated independent causes of action and a claim for punitive damages. *See* RST 2d of Contracts, § 355 (1981); *Goodwin v. Thomas,* 403 S.E.2d 13, 16 (W.Va. 1991); *Hayseeds, Inc. v. State Farm Fire & Cas*., 352 S.E.2d 66, 80 (W.Va. 1986); *Berry v. Nationwide Mut. Fire Ins. Co.,* 381 S.E.2d 367, 374 (W.Va. 1989); *Okland Oil Company v. Conoco Inc.*, 144 F.3d 1308 (C.A.10 1998); *Grynberg v. Citation Oil and Gas Corp.,* 573 N.W.2d 493 (S.D. 1997).

<u>Conclusion</u>

   Wherefore, Plaintiffs respectfully request that the Court deny the motion to dismiss for reasons stated herein.  Alternatively, should the Court determine that a chain of title is necessary in the Complaint, Plaintiffs request the Court to deny Defendants' motion to dismiss and grant Plaintiffs leave to complete the title search and amend to include the same in Complaint.

GERALD W. CORDER,

By Counsel

/s/ Marvin W.  Masters
West Virginia State Bar No. 2359
The Masters Law Firm lc
181 Summers Street
Charleston, West Virginia  25301
304-342-3106
mwm@themasterslawfirm.com
Counsel for Plaintiff
F:\5\1025\b036gcorder.docx

## CERTIFICATE OF SERVICE

I, Marvin W. Masters, hereby certify that on April 30, 2018, I electronically filed "Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss Amended Complaint" with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

W. Henry Lawrence
West Virginia State Bar No. 2156
Amy M. Smith
West Virginia State Bar No. 6454
Shaina D. Massie
West Virginia State Bar No. 13018
Steptoe & Johnson PLLC
400 White Oaks Boulevard
Bridgeport, West Virginia  26330
hank.lawrence@steptoe-johnson.com
amy.smith@steptoe-johnson.com
shaina.massie@steptoe-johnson.com
*Counsel for Defendants*

/s/ Marvin W. Masters
West Virginia State Bar No. 2359
The Masters Law Firm lc
181 Summers Street
Charleston, WV  25301
304-342-3106
mwm@themasterslawfirm.com