## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**GERALD W. CORDER,**

     **Plaintiff,**

**v.**

                                             **Civil Action No. 1:18-CV-00030**

**ANTERO RESOURCES CORPORATION,** *et al.*,     **Hon. Irene M. Keeley**

     **Defendants.**

### REPLY IN SUPPORT OF DEFENDANTS'
### MOTION TO DISMISS AMENDED COMPLAINT

## I.     INTRODUCTION

Defendants Antero Resources Corporation ("Antero") and Antero Midstream Partners LP

("Midstream Partners")[1] submit this reply in support of their motion to dismiss this action with

---

[1] Contrary to Plaintiff's response, the Court should dismiss Midstream Partners as fraudulently joined. Plaintiff cannot establish claims for breach of contract, breach of fiduciary duties, or misrepresentation against Midstream Partners because (1) Midstream Partners is not alleged to be a party to any of Plaintiff's leases, and (2) the complaint does not allege any misrepresentation either made by Midstream Partners or for which Midstream Partners could be liable. *See, e.g.*, *Martin-Evans v. Chesapeake Appalachia, LLC*, No. 5:15CV87, 2015 WL 5076992, at *4 (N.D. W. Va. Aug. 27, 2015) (dismissing defendant based on fraudulent joinder because (1) as a non-party to the contract, defendant could not be sued for breach of contract; and (2) plaintiffs' fraud claim was insufficiently pled and did not arise independently of breach of contract claim). In *Shaffer v. National Health Insurance Co.*, No. 1:17CV195, 2018 WL 1995525 (N.D. W. Va. Apr. 27, 2018), this Court recently reaffirmed that "[i]t is well-settled that '[a] non-party to a contract cannot be sued for breach of that contract.'" *Id.* at *2 (alterations in original) (citing *Ohio Valley Health Servs. & Educ. Corp. v. Riley*, 149 F. Supp. 3d 709, 715 (N.D. W. Va. 2015) (citations omitted). Plaintiff cannot escape this well-established rule because Plaintiff's allegations with respect to alter-ego and joint venture liability are also insufficiently pled. Much like the plaintiff in *O'Bryan v. Synthes, Inc.*, No. 5:13-CV-25981, 2014 WL 297835 (S.D. W. Va. Jan. 27, 2014), Plaintiff does not allege that Antero "used or attempted to use its corporate form to perpetrate fraud." *Id.* at *4. Similarly, the amended complaint "merely recited language from *Laya* [*v. Erin Homes, Inc.*, 177 W. Va. 343, 352 S.E.2d 93 (1986)] and alleged that the Defendants acted in accordance therewith." *Id.* at 6. The same over-simplistic recitation applies to Plaintiff's joint venture allegations. Moreover, the authorities cited in Plaintiff's response — which are completely inapposite and inapplicable to fraudulent joinder — do not compel a contrary conclusion. *See, e.g.*, *United States v. Bestfoods*, 524 U.S. 51, 51–52 (1998) (providing that parent corporation can be charged under CERCLA for subsidiary's polluting factory); *Prager v. W.H. Chapman & Sons Co.*, 122 W. Va. 428, 9 S.E.2d 880, 884 (1940) (holding that certain provisions in West Virginia Workmen's Compensation Law are unconstitutional). Moreover, Plaintiff's response improperly cites to the amended complaint, rather than the complaint in effect at the time of removal. *See Dotson v. Elite Oil Field Servs., Inc.*, 91 F. Supp. 865, 870 (N.D. W. Va. 2015) (holding that court analyzing fraudulent joinder must "determine removal jurisdiction on the basis of the state court complaint at the time of removal"). For these reasons, Midstream Partners has been fraudulently joined.

prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Court should dismiss the amended complaint (ECF No. 13) filed by Plaintiff Gerald W. Corder because it fails to set forth any claim upon which relief may be granted.  Plaintiff still does not sufficiently allege Plaintiff's, Antero's, or Midstream Partners' connection to each and every lease, memorandum, or amendment or allege either Plaintiff's obligations or performance under these instruments.  Most importantly, Plaintiff cannot prove that Antero breached any contractual provision.  Additionally, Plaintiff fails to state a claim for violation of fiduciary duties because Antero and Midstream Partners do not owe Plaintiff any such duties.   Furthermore, Plaintiff fails to state a misrepresentation claim because it is not pled with the requisite particularity, and the claim is barred by the gist of the action doctrine.  Finally, punitive damages are not a standalone claim under West Virginia law.  The amended complaint simply does not contain sufficient factual allegations to state a plausible claim for relief as required by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Therefore, the Court should dismiss the amended complaint and the entire action with prejudice.

---

In addition, neither Antero Resources Pipeline LLC ("Pipeline") nor Antero Resources Investment LLC ("Investment") is properly named as a defendant because they have ceased to exist.  Even if the Court declines to dismiss Pipeline, complete diversity exists; because Appalachian — now Antero — was the surviving corporation, and its citizenship controls for purposes of diversity.  *See Hoefferle Truck Sales, Inc. v. Divco-Wayne Corp.*, 523 F.2d 543, 549 (7th Cir. 1975) ("Naming [the non-surviving corporation] as a defendant consequently had no effect upon diversity jurisdiction . . . [s]ince [the non-surviving corporation] ceased to exist prior to commencement of this suit, the court could never have acquired jurisdiction over it except through its successor in interest.").  Although Plaintiff contends that Delaware Code Title 8, § 278 forecloses dismissal of Investment, that section is inapplicable to limited liability companies.  This Court and others have held that in accordance with Delaware Code Title 6, § 18-803(b), a Delaware limited liability company such as Investment cannot be sued after filing a certificate of cancellation pursuant to Delaware Code Title 6, § 18-203.  *See, e.g.*, *Decker v. Statoil USA Onshore Props., Inc.*, No. 5:15CV114, 2015 WL 6159483, at *1–2 (N.D. W. Va. Oct. 20, 2015) ("However, once the LLC has dissolved and filed its certificate of cancellation, it no longer exists and cannot be sued."); *Idnani v. Venus Capital Mgmt., Inc.*, No. 2010-01280-BLS1, 2011 WL 255303, at *5 (Mass. Super. Ct. Jan. 6, 2011) ("[B]oth the Delaware Limited Partnership Act and Limited Liability Company Act provide that suit generally may be brought against a limited partnership or limited liability company only until the certificate of cancellation is filed.").

## II.    ARGUMENT

### A.    Plaintiff Fails to State a Claim for Breach of Contract Because the Claim Is Not Adequately Pled and Fails as a Matter of Law.

#### 1.    Plaintiff fails to adequately plead a breach of contract claim.

Plaintiff fails to adequately plead a breach of contract claim.  As a threshold matter, Plaintiff does not adequately allege a complete contract between Plaintiff and Antero or Midstream Partners.  In *Cather v. Seneca-Upshur Petroleum, Inc.*, No. 1:09-CV-139, 2010 WL 3271965 (N.D. W. Va. Aug. 18, 2010), this Court directed the plaintiffs to file a more definite statement or to amend their complaint where the plaintiffs alleged that Forest Oil was a lessee or ultimate assignee of the leases at issue without alleging the precise connection between Forest Oil and the leases.  *Id.* at *4.  The Court concluded that to prevail on a breach of contract claim, "a plaintiff must make out a complete contract and allege a breach of its terms."  *Id.* at *2 (citations omitted).

Likewise, in *Hedrick v. Pack*, 105 W. Va. 540, 143 S.E. 309 (1928), the West Virginia Supreme Court of Appeals recognized that, "if a person claiming to be an heir sought to recover by virtue of that relationship, it was necessary for him to show *how heir*."  *Id.* at 311.  The Court restated the rule as follows:

> But when the declaration is by or against a person who is not a party to the original contract, and particularly in actions upon leases, the statement of the *derivative title* of the plaintiff or the defendant precedes the breach. And in an action on a lease by a party claiming from the lessor there must be an inducement of the lessor's title as before explained. Thus, when an action is brought *by* the *heir* of the lessor, the title and death of his ancestor, and the descent to the plaintiff as heir, is shown; and it must appear how he is heir, viz., whether as son or otherwise, and if he claims by mediate, not immediate, descent, he must show the pedigree; for example, if he claims as nephew, he must show *how* nephew. And when the plaintiff claims as assignee of the reversion by lease and re–lease or other conveyance, the nature and operative part of the conveyance must be set forth.

*Id.* (citations omitted).  *See also Bankers Pocahontas Coal Co. v. Monarch Smokeless Coal Co.*, 123 W. Va. 53, 14 S.E.2d 922, 926 (1941) ("That there can be no recovery from the assignee of the lessee until either privity of contract or privity of estate is established on the part of the assignee is uniformly asserted by the authorities.") (citations omitted).

The amended complaint alleges that "Plaintiffs are the owners of oil and gas interests which were leased, assigned or otherwise acquired by and presently held by Antero."  ECF No. 13 at ¶ 13.   The amended complaint also alleges that Plaintiff's "rights and remedies were transferred by heirship, purchase or otherwise" and that the "duties and responsibilities . . . were previously acquired by Antero by leases and modifications of leases and by assignment of the leases or by Antero's acquisition of leases and rights thereto from previous lessors. . . ."  *Id.* at ¶ 14.   Such conclusory allegations do not suffice to make out a complete contract between the parties under *Cather*, *Hedrick*, or *Bankers Pocahontas Coal Co.*

In addition, Plaintiff attempts to circumvent the amended complaint's failure to address the element requiring a plaintiff to allege that he has performed his obligations under a contract by citing to *Patrick v. PHH Mortgage Corporation*, 937 F. Supp. 2d 773 (N.D. W. Va. 2013). However, in *KBS Preowned Vehicles, LLC v. Reviva, Inc.*, No. 1:13CV138, 2014 WL 12591890 (N.D. W. Va. Mar. 26, 2014), this Court held that a *prima facie* breach of contract claim under West Virginia law requires a plaintiff to allege: "(1) that there is a valid, enforceable contract; (2) that the plaintiff has performed under the contract; (3) that the defendant has breached or violated its duties or obligations under the contract; and (4) that the plaintiff has been injured as a result."  *Id.* at *2. *See also Rodgers v. Sw. Energy Co.*, No. 5:16-CV-54, 2016 WL 3248437 (N.D. W. Va. June 13, 2016) (same).  *Cf.* Syl. Pt. 5, *Jones v. Kessler*, 98 W. Va. 1, 126 S.E. 344 (1925) ("Where the plaintiff claims damages for the breach of a contract, it is necessary to a

recovery that he show that he has complied with the contract himself, or that he has been prevented or relieved from compliance by act of defendant . . . .").

Because the amended complaint fails to allege that Plaintiff had obligations under the leases identified in the amended complaint, as well as Plaintiff's compliance with such obligations, Plaintiff fails to state a breach of contract claim that is plausible on its face.  In other words, the Court cannot draw a reasonable inference that Antero is liable for breach of contract in the absence of any allegations with respect to Plaintiff's own performance, which is a prerequisite to the recovery of damages.[2]

Finally, Plaintiff does not adequately allege sufficient facts to put Antero on notice of its purported breach.  In *Rodgers*, this Court required the plaintiffs to amend their complaint alleging improper deductions from gas lease royalties where the defendants argued plaintiffs' breach of contract claim was insufficiently pled because plaintiffs did not attach the lease at issue or identify the date, acreage, parties, any language regarding royalty provisions, the amounts paid or underpaid, or any other specific details regarding the contract.  *Id.* at *2–3.

Plaintiff's failure to adequately plead exactly what royalties were allegedly underpaid, as required by *Rodgers*, remains a fatal deficiency in the amended complaint.  Plaintiff does not

---

[2] For the first time in response to the motion to dismiss, Plaintiff appears to suggest that "[t]he act of leasing the oil and gas rights" is the only duty Plaintiff has under the leases.  This assertion, which was not alleged in the amended complaint, ignores notice and demand provisions included in certain leases.  *See, e.g.*, ECF Nos. 13-18, -19 ("[T]his lease shall not be forfeited for Lessee's failure to pay any rentals or royalties until Lessee has received written notice by registered mail of such default and shall fail, for a period of thirty (30) days after receipt of such notice to pay same.").  The West Virginia Supreme Court of Appeals considered a similar "notice and demand" provision in *McCullough Oil, Inc. v. Rezek*, 176 W. Va. 638, 346 S.E.2d 788 (1986), wherein the Court explained that such provisions are often included in oil and gas leases "[t]o avoid an inadvertent breach of contract and an unexpected cancellation of the lease . . . ."  *Id.*, 346 S.E.2d at 795 (1986). This Court also addressed the failure to comply with a notice and demand provision in *Stricklin v. Fortuna Energy, Inc.*, No. 5:12-CV-8, 2014 WL 2619587 (N.D. W. Va. June 12, 2014), wherein the defendants argued that, by failing to comply with the notice and demand provision in their leases, the plaintiffs waived their right to assert any claim for breach of the leases arising from certain assignments.  *Id.* at *2.  This Court agreed.  *Id.* at *3.  The purpose of the notice and demand provisions included in the leases in this case remains operative to militate against litigation, regardless of the nature of Plaintiff's claims. As explained in *McCullough Oil, Inc.* and *Stricklin*, such provisions allow the parties to address allegations of breach prior to resorting to lawsuits.  The amended complaint does not allege how, or if, Plaintiff complied with these provisions.  Accordingly, the amended complaint should be dismissed.

allege which deductions are improper or from which leases such deductions were taken. Plaintiff attempts to satisfy the *Rodgers* requirement by attaching royalty statements to the amended complaint; however, Plaintiff's royalty statement excerpt shows that Antero did not take any deductions from Plaintiff's royalties during the production months referenced therein. *See* ECF No. 13-22 at 1–5. For these reasons, Plaintiff does not state a claim for breach of contract under West Virginia law, let alone put Antero or Midstream Partners on notice of a plausible claim.

### 2.   Plaintiff's breach of contract claim fails as a matter of law.

In any event, Plaintiff's claim for breach of contract fails to state a claim upon which relief may be granted. Contrary to Plaintiff's assertion, the Market Enhancement Clause allows Antero to take deductions for costs associated with enhancing the value of marketable gas and natural gas liquids ("NGLs"). *See* ECF. No. 13 at ¶ 14(A)(ii) ("[H]owever, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements.").[3] Ignoring all the language after the semi-colon in the Market Enhancement Clause, Plaintiff has essentially asked this Court to strike the unambiguous proviso that allows Antero to take value-enhancing deductions. Such an interpretation is untenable.[4]

---

[3] As the court found in *EQT Production Co. v. Magnum Hunter Production Co.*, 266 F. Supp. 3d 961 (E.D. Ky. 2017), the plain meaning of the term "gas" does not include NGLs "[b]ecause NGLs are liquid in form, rather than gaseous, . . . the term 'gas,' as it is used in [the] FOAs, unambiguously excludes NGLs." *Id.* at 971. The court concluded that "[b]ecause the FOA definition of 'gas well' does not contemplate the production of NGL from subject wells, the royalty provisions requiring Magnum Hunter to pay a percentage of the proceeds from the sale of 'oil and/or gas' do not apply to NGLs." *Id. See also EQT Prod. Co. v. Magnum Hunter Prod. Co.*, No. 5:16CV150, 2018 WL 1217155, at *6–7 (E.D. Ky. Mar. 8 2018) (affirming court's prior ruling).

[4] *See* Syl. Pt. 1, *Cotiga Dev. Co. v. United Fuel Gas Co.*, 147 W. Va. 484, 128 S.E.2d 626 (1962) ("A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent."); Syl. Pt. 3, *Moore v. Johnson Serv. Co.*, 158 W. Va. 808, 219 S.E.2d 315 (1975) ("As with other contracts, the language of a lease agreement must be considered and construed as a whole, giving effect, if possible, to all parts of the instrument. Accordingly, specific words or clauses of an agreement are not to be treated as meaningless, or to be discarded, if any reasonable meaning can be given them consistent with the whole contract.").

Secondary authorities have recognized that similar market enhancement clauses are being used in the Appalachian Basin "to deal with the issue of whether the netback methodology may be used to calculate royalty where the sales point is downstream of the well."  3 Williams & Meyers, *Oil and Gas Law* § 643.2 (2017).  In this case, the Market Enhancement Clause allows Antero to take those deductions that enhance the value of already marketable gas.  Plaintiff has not pled how any of Antero's allegedly improper deductions failed to enhance the value of gas on which Plaintiff's royalty otherwise would have been based by manufacturing NGLs or transporting to a more profitable market.  Accordingly, Antero is permitted to take costs associated with value-enhancing deductions under this language.

Moreover, nothing in either *Wellman v. Energy Resources, Inc.*, 210 W. Va. 200, 557 S.E.2d 254 (2001), or *Tawney v. Columbia Natural Resources, L.L.C.*, 219 W. Va. 266, 633 S.E.2d 22 (2006), has any bearing on *Imperial Colliery Co. v. Oxy USA Inc.*, 912 F.2d 696 (4th Cir. 1990), which held that an oil and gas lease obligated the defendant to pay royalties on the market value of the gas produced, which was more than the proceeds it received for the gas. *Wellman* expressly excluded consideration of "market value" leases. *Id.*, 557 S.E.2d at 264 n.3 ("Where leases call for the payment of royalties based on the value of oil or gas produced, and sold directly, the Court perceives that there are possibly different issues, and they are excluded from this discussion."). Contrary to Plaintiff's assertion, *Tawney*'s holding, which adopted the reasoning set forth in *Wellman*, was also limited to "proceeds" leases.  *See Tawney*, 633 S.E.2d at Syl. Pt. 1 ("If an oil and gas lease provides for a royalty based on *proceeds* received by the lessee, unless the lease provides otherwise, the lessee must bear all costs incurred in exploring for, producing, marketing, and transporting the product to the point of sale." Syllabus Point 4, *Wellman v. Energy Resources, Inc.*, 210 W. Va. 200, 557 S.E.2d 254 (2001).") (emphasis

added).[5]   Accordingly, Plaintiff's argument that Antero is not permitted to use the net-back method for "market-value" leases is without merit.[6]

Finally, Plaintiff concedes that Antero was permitted to use the net-back method for the flat-rate lease under *Leggett v. EQT Production Co.*, 239 W. Va. 264, 800 S.E.2d 850, 869, *cert. denied*, 138 S. Ct. 472 (2017).   However, Plaintiff contends, without any factual support, that Antero's deductions were "unreasonably excessive and not actual."   ECF No. 13 at ¶ 41. Accordingly, Plaintiff cites to *Leggett* for the notion that "[t]he reasonableness of the post-production expenses is a question for the fact-finder."   *Id.* at Syl. Pt. 8.   Taken to its logical conclusion, Plaintiff's argument would require a jury trial any time an operator applies the net-back method to a flat-rate lease.   Such a result is untenable.   Simply put, Plaintiff has stated no

---

[5] The West Virginia Supreme Court of Appeals recently recognized *Wellman*'s limited application to "proceeds" leases.  In *Cabot Oil & Gas Corp. v. Beaver Coal Co., Ltd.*, No. 16-0904, 2017 WL 5192490 (W. Va. Nov. 9, 2017), the plaintiff argued that a 2004 arbitration award should not have a preclusive effect because, according to the plaintiff, the panel improperly relied on *Wellman*.  *Id.* at *7.  The Court rejected this argument and reasoned as follows:

> While the panel discussed *Wellman*, as well as other cases, it clearly stated that *Wellman* was "expressly limited to 'proceeds' leases, excluded 'value' leases from the discussion and, even as to 'proceeds' leases, failed to resolve the issue of the deductibility of 'post-production' expenses, at least with respect to 'mouth of the well' leases." Because the 1929 Lease is not a proceeds lease, the panel ultimately found there was no "controlling West Virginia decision" and that it was reaching its decision on the deduction of postproduction expenses from royalties by applying "the language of the lease[ ] as written." Further, *Wellman* has never been reversed and continues to be the basis for the law in this state on the deduction of post-production costs. *See Leggett v. EQT Prod. Co.*, 239 W. Va. 264, ——, 800 S.E.2d 850, 858 (2017) ("[I]t is *Wellman* which forms the foundation of the current state of West Virginia's law on deduction of post-production costs.").

*Id.* at *7 n.16.

[6] As the Tenth Circuit recently recognized:

> [T]he netback method is not a means of cost-shifting; it is a means of determining the net profit on the oil and gas by "netting" the gross profit. The post-production expenses are not subtracted from the sales amount because the royalty owners are responsible for post-production expenses; they are subtracted as an accounting mechanism to determine the market value at the wellhead. Stated differently, "value added" to the gas produced at the wellhead solely through the effort and expense of the lessee must be deducted from an established market price of the improved product in order to make an accurate estimate of the value of the gas at the wellhead.

*Anderson Living Tr. v. Energen Res. Corp.*, 886 F.3d 826, 832–33 (10th Cir. 2018).

factual allegations that could support a plausible inference that any of Antero's deductions were unreasonable. Therefore, this Court should dismiss Count I of Plaintiff's amended complaint.[7]

### B.     Plaintiff Fails to State a Claim for Violation of Fiduciary Duties Because the Prudent Operator Standard Governs the Parties' Relationship.

Plaintiff cannot state a claim for violation of fiduciary duties because, as a matter of law, the parties do not share a fiduciary relationship. In *Yokel v. Hite*, 809 N.E.2d 721 (Ill. App. Ct. 2004), the court upheld the dismissal of a claim for breach of fiduciary duty, rejecting arguments similar to those made by Plaintiff in this action as follows:

> In the instant case, the plaintiffs contend that they were required to place complete trust in the defendants due to the fact that only Hite Operating Company was permitted by the unitization agreement to recover oil from the property. This contention is unavailing, however, because it is a basic feature of any oil and gas lease that the operator has exclusive control over oil and gas production operations. Where one party to a business contract trusts the other to do no more than fulfill its obligations under the contract, no fiduciary duty arises.

*Id.* at 725 (citations omitted).

The court continued:

> We can find no principled reason to distinguish between relationships among the coowners of a working interest and relationships between operators and royalty or overriding royalty interest owners. In either case, only the operator may produce oil, and the interest holder's share of the proceeds will be dependent to some degree upon the operator's efforts. In either case, the operator owes the interest holder a duty to act as a reasonably prudent operator. . . . Indeed, the only difference between the plaintiffs' nonoperating working interest and an overriding royalty interest is the fact that the plaintiffs' interest is subject to the costs of recovering the oil. Such an interest might give a working-interest owner in the plaintiffs' position a greater interest in making certain the operator produces oil in

---

[7] Furthermore, Plaintiff fails to plead a breach of the implied covenant of good faith and fair dealing. Notably, the implied covenant of good faith and fair dealing "does not grant contracting parties rights inconsistent with those expressly set forth in the contract." *Ballenger v. Nat'l City Mortg., Inc.*, No. 1:14-CV-81, 2015 WL 5062770, at *10 (N.D. W. Va. Aug. 26, 2015). Moreover, West Virginia law does not recognize an independent cause of action for breach of the implied duty of good faith and fair dealing, and the failure to plead a valid breach of contract claim is fatal to any claim based on an alleged breach of an implied covenant. *See Evans v. United Bank, Inc.*, 235 W. Va. 619, 775 S.E.2d 500, 509 (2015) (affirming holding that petitioners' failure to allege breach of contract was fatal to their claim for a breach of the implied covenant of good faith and fair dealing). Accordingly, Plaintiff's failure to plead an adequate breach of contract claim is also fatal to any allegations with respect to the implied duty of good faith and fair dealing.

an economically efficient manner than the owner of an overriding royalty interest
might have.  However, we see no reason to elevate the operator's duty to act as a
reasonably prudent operator to a fiduciary one merely because the plaintiffs'
additional interest is subject to the operator's costs.

*Id.* at 726 (citations omitted).

In *Cather v. Seneca-Upshur Petroleum, Inc.*, No. 1:09-CV-139, 2010 WL 3271965 (N.D.

W. Va. Aug. 18, 2010), this Court examined the nature of fiduciary duties and held:

In West Virginia, a fiduciary duty is "'[a] duty to act for someone else's benefit,
while subordinating one's personal interests to that of the other person. It is the
highest standard of duty implied by law[.]'" *Elmore v. State Farm Mutual
Insurance Co.*, 504 S.E.2d 893, 898, 202 W. Va. 430, 435 (1998) (quoting
Black's Law Dictionary 625 (6th ed.1990)). In other words, a fiduciary duty is
considered uncommon and "extraordinarily strict," and is to be imposed only
upon one who has agreed to support another's interests above his own. *Wellman
v. Bobcat Oil & Gas, Inc.,* No. 3:10cv147, 2010 U.S. Dist. LEXIS 68133, at *8,
2010 WL 2720748 (S.D. W. Va. July 8, 2010) (Chambers, J.).

*Wellman* held that such a heightened duty does not exist in the context of an oil
and gas lease. It found that West Virginia has defined the duty owed by an oil and
gas operator to a royalty owner to be one of "ordinary prudence." 2010 U.S. Dist.
LEXIS 68133, at *9,2010 WL 2720748 (citing *Grass v. Big Creek Development
Co.,* 84 S.E. 750, 753, 75 W. Va. 719, 728 (1915)). In *Grass*, the West Virginia
Supreme Court of Appeals held that

[w]here the object of the operations contemplated by an oil and gas
lease is to obtain a benefit or profit for both lessor and lessee,
neither is[,] in the absence of a stipulation to that effect[,] the
arbiter of ... the diligence with which the operations shall proceed;
but both are bound by the standard of what, in the circumstances,
would be reasonably expected of operators of ordinary prudence,
having regard to the interests of both.

75 W. Va. at 728, 84 S.E. 750. *Grass* further reasoned that "[the operator] must
deal with the leased premises . . . so as to promote the mutual advantage and
profit of himself and the lessor." *Id.* Thus, the duty of ordinary prudence imposed
upon an oil and gas operator to "promote the mutual advantage and profit of [both
parties to an oil and gas lease]" is different from a fiduciary's duty to "act for [the
lessor's] benefit, while subordinating [the lessor's own interest] to that of [the
lessee]." *Elmore*, 202 W. Va. at 435, 504 S.E.2d 893 (internal citation and quote
marks omitted).

*Id.* at *4–5.

10

In this action, the Court should apply the same reasoning and dismiss Count II of Plaintiff's amended complaint.

### C. Plaintiff Fails to State a Claim for Misrepresentation Because Plaintiff Has Not Pled Fraud with the Requisite Particularity and the Claim is Barred by the Gist of the Action Doctrine.

#### 1. Plaintiff fails to plead fraud with particularity.

Plaintiff fails to plead misrepresentation, which is subject to a heightened pleading requirement, with the requisite particularity in accordance with Rule 9(b).  Plaintiff's reliance on *In Town Hotels Limited Partnership v. Marriott International, Inc.*, 246 F. Supp. 2d 469 (S.D. W. Va. 2003), is misplaced.[8]  In that case, the court actually dismissed the plaintiffs' fraud claim for failing to plead fraud with particularity, reasoning in relevant part as follows:

> As for the allegations of material omissions, the plaintiffs correctly point out that when the allegation of fraud relates to an omission rather than an affirmative misrepresentation, less particularity is required.  *See, e.g., Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 552 (D. Md. 1997).  As to the allegations of omission, however, the plaintiffs' claim depends necessarily on the existence of some legal duty on the party of Avendra to In Town Hotels to share the undisclosed information.  In their complaint, the plaintiffs allege that "[p]ursuant to section 11.03 [of the Management Agreement] . . . Marriot *and its affiliates and/or related parties* agreed that they would not profit from the provision of Chain Services." (Compl. ¶ 56) (emphasis added).  To the extent that this allegation suggests that Avendra (or any other Marriott affiliates) agreed in the Management Agreement not to profit from the provision of Chain Services, that allegation is flatly contradicted by the terms of the Management Agreement itself.  Looking at the Management Agreement, it is clear that the agreement is between only In Town Hotels and Marriott.  Avendra was not a party to and is not bound by that Agreement.  The plaintiffs cannot claim that Avendra owes In Town Hotels any contractual duties as a result.
>
> Finally, the plaintiffs allege fraud based on Avendra's obtaining and retaining undisclosed payments related to purchasing activities.  The court is unsure how this allegation fits in any way within the elements of common law fraud, which, generally speaking, are:  "'(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3)

---

[8] It should be noted that Antero does not concede that less particularity is required when allegation of fraud relates to an omission.  *See* 2 James Wm. Moore, *Moore's Federal Practice* § 903[1][b] & n.17 (citing cases).

that he was damaged because he relied upon it.'" *Legg v. Johnson, Simmerman &
Broughton, L.C.*, 576 S.E.2d 532, (W. Va. 2002) (quoting *Horton v. Tyree*, 104
W. Va. 238, 139 S.E. 737, 738 (1927)).  Avendra's receipt of payments itself does
not constitute fraud, as no representation (false or otherwise) is involved.

*Id.* at 486–88 (footnotes omitted).

In *Martin-Evans v. Chesapeake Appalachia, LLC*, No. 5:15-cv-87, 2015 WL 5076992

(N.D. W. Va. Aug. 27, 2015), this Court cited to *In Town Hotels Limited Partnership* but again

nonetheless held that the plaintiffs had insufficiently pled a fraud claim against a fraudulently

joined defendant, reasoning as follows:

> In the instant case, the plaintiffs allege that the defendants engaged in fraud,
> whether by intentionally concealing material facts or making false
> representations.  However, the plaintiffs provide only conclusory allegations.  The
> plaintiffs do not state "the time, place, and contents of the false representations, as
> well as the identity of the person making the misrepresentation and what he
> obtained thereby.'" *Harrison*, 176 F.3d at 784.  As to defendant Schreckengost,
> the complaint states neither the time and place of the misrepresentations he made,
> if any, nor does it adequately point out defendant Schreckengost's specific
> participation in the alleged fraud.  As the court stated in *Bluestone Coal Corp.*,
> "simply alleging that [the defendant] was an [agent or employee] of the corporate
> defendant [here, Chesapeake], and that the corporate defendant engaged" in fraud
> is not enough.  2007 WL 6641647, at *7.  Therefore, the plaintiffs do not comply
> with the requirements under Rule 9 because they fail to state their fraud claim
> against defendant Schreckengost with sufficient particularity.  Moreover, the
> plaintiffs have not complied with the requirements under West Virginia law.  *See
> Folio*, 655 S.E.2d at Syl. Pt. 5 (internal citations omitted).

*Id.* at *5 (alterations in original).

The Court in *Martin-Evans* went on to dismiss a fraud claim against Chesapeake,

reasoning as follows:

> This Court previously stated the particularity requirements for a claim of fraud
> under both Rule 9 and West Virginia law.  The "'circumstances' required to be
> pled with particularity under Rule 9(b) are 'the time, place, and contents of the
> false representations, as well as the identity of the person making the
> misrepresentation and what he obtained thereby.'" . . . Similar to their allegations
> against defendant Schreckengost, the plaintiffs simply state that Chesapeake
> intentionally made false representations or withheld information and thereby
> benefitted from such fraud. However, they do not allege when or where
> Chesapeake made the false misrepresentations, what those misrepresentations or

omissions were, or what Chesapeake fraudulently obtained.   The plaintiffs'
conclusory allegations clearly do not satisfy the pleading requirements as set forth
above, under either Rule 9 or West Virginia law.

*Id.* at * 8 (citations omitted).

Likewise, in *Campbell v. Brook Trout Coal, LLC*, No. 2:07-cv-0651, 2008 WL 4415078

(S.D. W. Va. Sept. 25, 2008), the court dismissed a fraud claim for failing to plead with the

requisite particularity, reasoning as follows:

Rule 9(b) of the Federal Rules of Civil Procedure requires that "the circumstances
of fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).
"[L]ack of compliance with Rule 9(b)'s pleading requirements is treated as a
failure to state a claim under Rule 12(b)(6)." . . . To satisfy the requirement of
Rule 9(b), plaintiffs must plead "the time, place and contents of the false
representations, as well as the identity of the person making the representations
and what he obtained thereby." . . . For obvious reasons, allegations of material
omissions may require less particularity.

*Id.* at *12–13 (citations omitted).

In this action, Plaintiff's allegations relating to the misrepresentation claim present only a

very few conclusory facts, which are insufficient to plead fraud with particularity.  For example,

Plaintiff does not plead whether Plaintiff made inquiries regarding royalty deductions.  Plaintiff

does not plead the time period the alleged concealment and/or misrepresentations occurred.

Moreover, Plaintiff does not plead which Defendant – Antero or Midstream Partners – was

responsible for the alleged fraudulent acts.  Finally, as discussed above, the amended complaint

does not allege when Plaintiff came to own the mineral rights at issue or when Antero took over

as lessee.  Plaintiff further fails to specify which particular leases referenced in the amended

complaint are the subjects of the misrepresentation claim.  Plaintiff has not adequately pled

justifiable reliance.  Plaintiff fails to plead sufficient facts to establish damage as a result of any

reliance. These generalized allegations are insufficient to meet the pleading standards required

by Rule 9(b).  Therefore, this Court should dismiss Count III of Plaintiff's amended complaint.

13

## 2.   The claim is barred by the gist of the action doctrine.

Even if Plaintiff had pled a claim for misrepresentation or fraud with the requisite particularity, the claim is barred by the gist of the action doctrine.  Plaintiff acknowledges the test for the gist of the action doctrine in *Gaddy Engineering Co. v. Bowles Rice McDavid Graff & Love, LLP*, 231 W. Va. 577, 746 S.E.2d 568, 577 (2013), but baldly asserts that the "claim of fraud is an independent tort that possesses all of the essential elements of fraud and is not premised upon a mere omission to perform a contract."  ECF No. 19 at 23.  Courts have rejected similar arguments.  For example, in *Covol Fuels No. 4, LLC v. Pinnacle Mining Co., LLC*, 785 F.3d 104 (4th Cir. 2015), the Court affirmed the dismissal of negligent misrepresentation and fraudulent concealment claims based on the gist of the action doctrine:

> Covol's assertions that Pinnacle made misrepresentations or concealed its intention regarding the water level of the impoundment simply recast Covol's claim for breach of contract.  And with respect to the alleged misstatements or concealments as to the wash plant, any liability would be defined by the Agreement, wherein Pinnacle expressly disclaimed any warranty as to the quality of refuse material in the impoundment.

*Id.* at 115–16.

This Court relied on *Covol Fuels No. 4, LLC* in *Rodgers v. Southwestern Energy Co.*, No. 5:16-cv-54, 2016 WL 3248437, at *3–4  (N.D. W. Va. June 13, 2016), which held that the gist of the action doctrine barred recovery on a conversion claim grounded in breach of contract involving gas royalties.  *Cf. Martin-Evans*, 2015 WL 5076992, at *5 (plaintiffs could not recover under fraud claim that failed to arise independent of lease agreement); *Kerns v. Range Res.-Appalachia, LLC*, No. 1:10-cv-23, 2011 WL 197908, *6 (N.D. W. Va. Jan. 18, 2011) (plaintiffs' claim for fraudulent misrepresentation "fatally relie[d] on the existence of a contract").

Similar to *Gaddy*, *Covol Fuels No. 4, LLC* and *Rodgers*, the source of the duties that Antero allegedly breached are contractual.  Accordingly, Plaintiff's misrepresentation claim is

wholly derivative of Plaintiff's contract(s) with Antero.  Therefore, this Court should dismiss Count III of Plaintiff's amended complaint for this reason as well.

### D.   Plaintiff Fails to State a Claim for Punitive Damages, Which Is Not a Standalone Cause of Action Under West Virginia Law.

Finally, notwithstanding Plaintiff's protestations to the contrary, the amended complaint improperly pleads a standalone claim for punitive damages.  This Court recently rejected a similar claim in *Games v. Chesapeake Appalachia, LLC*, No. 5:17-CV-101, 2017 WL 5297948 (N.D. W. Va. Nov. 13, 2017), reasoning as follows:

> The plaintiffs cannot plead punitive damages as a stand-alone claim. . . . And, even if the Court had found that there was any breach of an implied covenant of fair dealing or an implied duty to market, punitive damages are not an available remedy in an action for breach of contract.

*Id.* at *4 (citation omitted).

In this action, because a claim for punitive damages is not a standalone claim under West Virginia law, this Court should dismiss Count IV of Plaintiff's amended complaint.

## IV.   CONCLUSION

For all of the foregoing reasons, this Court should grant Defendants' motion to dismiss and enter an order dismissing the amended complaint and the entire action with prejudice.

**/s/ Amy M. Smith**
W. Henry Lawrence (WV State Bar #2156)
hank.lawrence@steptoe-johnson.com
Amy M. Smith (WV State Bar #6454)
amy.smith@steptoe-johnson.com
Shaina D. Massie (WV State Bar #13018)
shaina.massie@steptoe-johnson.com
400 White Oaks Boulevard
Bridgeport, WV  26330
(304) 933-8000

Attorneys for Defendants Antero Resources Corporation
and Antero Midstream Partners LP

STEPTOE & JOHNSON PLLC
    Of Counsel

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 14th day of May 2018, I electronically filed the foregoing

"Reply in Support of Defendants' Motion to Dismiss Amended Complaint" with the Clerk of the

Court using the CM/ECF System, which will send notification of such filing to the following

CM/ECF participant:

> Marvin W. Masters, Esquire
> The Masters Law Firm, LC
> 181 Summers Street
> Charleston, WV 25301
> mwm@themasterslawfirm.com

> ***/s/ Amy M. Smith***_____

8016362