IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

GERALD W. CORDER,

             Plaintiff,

v.                          //   CIVIL ACTION NO. 1:18CV30
                                      (Judge Keeley)

ANTERO RESOURCES CORPORATION,    c/w 1:18CV31, 1:18CV32,
a Delaware corporation;          1:18CV33, 1:18CV34, 1:18CV35,
ANTERO MIDSTREAM PARTNERS, LP,   1:18CV36, 1:18CV37, 1:18CV38,
a Delaware corporation;          1:18CV39, and 1:18CV40
ANTERO RESOURCES PIPELINE, LLC,  for the purpose of ruling
a Delaware corporation; and      on these motions
ANTERO RESOURCES INVESTMENT, LLC,
a Delaware corporation,

             Defendants.

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],[1]
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS

On December 6, 2017, 11 identical complaints were filed in the
Circuit Court of Harrison County, West Virginia, against Antero
Resources Corporation ("Antero"), Antero Midstream Partners LP
("Midstream Partners"), Antero Resources Pipeline LLC ("Pipeline"),
and Antero Resources Investment LLC ("Investment") (collectively,
"Antero defendants") (Dkt. No. 1-1). Antero and Midstream Partners
removed the cases to this Court on February 12, 2018, on the basis
of diversity jurisdiction (Dkt. No. 1). The plaintiffs argue that
the Antero defendants have been improperly deducting

---

[1] Unless otherwise noted, citations to docket entries in this
Memorandum Opinion and Order refer to Civil Action No. 1:18-CV-30.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS**

post-production costs from royalty payments due to the plaintiffs under certain oil and gas leases. Finding that these motions involve questions common to all cases, the Court **CONSOLIDATES** civil action numbers **1:18-CV-30** through **1:18-CV-40** for the purpose of deciding this motion, **1:18-CV-30** to serve as the lead case.

## I. BACKGROUND

The recitation of the facts is taken from the second amended complaints and is construed in the light most favorable to the plaintiffs. See <u>De'Lonta v. Johnson</u>, 708 F.3d 520, 524 (4th Cir. 2013).

The plaintiffs allege that they own oil and gas interests which were leased, assigned or otherwise acquired by and presently held by Antero. The lessor's rights and remedies were transferred by heirship, purchase or otherwise to the plaintiffs. Antero purportedly acquired the lessees' rights, duties, and responsibilities by leases and modifications of leases, by assignment, or by Antero's acquisition of leases and rights thereto from previous lessors. As support for these propositions, the plaintiffs attached various royalty statements from Antero, as well as an opinion entered by the Circuit Court of Harrison County

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS**

describing several of the plaintiffs' interest in certain tracts of real property.

The plaintiffs allege that Antero had duties and responsibilities to them pursuant to the following leases covering tracts of land situated in Harrison County, West Virginia:

(A)  48.69 acres (Deed Book 393, Page 399)

The lease covering this tract requires Antero to pay a royalty "on gas, including casinghead gas or other gaseous substance, produced from said land and sold or used beyond the well or for the extraction of gasoline or other product, [in] an amount equal to One-Eighth (12.5%) (amended to be 15%) of the net amount realized by Lessee computed at the wellhead from the sale of such substances" (Dkt. No. 27-1 at 25).

The parties also agreed that "all oil, gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS**

the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements. However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee." <u>Id.</u>

(B)  50.82 acres (Deed Book 839, Page 23)

The lease covering this tract requires Antero "to pay one-eighth (1/8) of the value at the well of gas from each and every gas well from which is marketed and used off the premises." The plaintiff claims that this lease was later amended to require "1/8 of the value of the gas from each well." <u>Id.</u>

(C)  54.18 acres (Deed Book 1082, Page 656)

The lease covering this tract requires Antero to pay "one-eighth of the value at the well of the gas from each and every well." <u>Id.</u> at 25-26.

(D)  104.75 acres (Deed Book 1103, Page 733)

The lease covering this tract requires Antero "to pay 1/8 of the price received by the lessee from the sale of such gas." <u>Id.</u> at 26.

(E)  59 acres (Deed Book 1084, Page 203)

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS**

The lease covering this tract requires Antero to pay "1/8 of the gross proceeds received from each and every well drilled on said properties providing natural gas, an amount equal to one-eighth (1/8) of the gross proceeds received from the sale of same at the prevailing price for gas at the well, for all natural gas saved and marketed from the said premises." Id.

(F)   105 acres (Deed Book 1084, Page 197)

The lease covering this tract requires Antero to pay "1/8 of the gross proceeds received from each and every well drilled on said properties providing natural gas, an amount equal to one-eighth (1/8) of the gross proceeds received from the sale of same at the prevailing price for gas at the well, for all natural gas saved and marketed from the premises." Id.

(G)   44.4 acres (Deed Book 99)

The lease covering this tract requires Antero to pay "$100 per year for each and every gas well obtained on the premises." Id.

(H)   50 acres (Deed Book 143, Page 291)

The lease covering this tract requires Antero to pay "1/8 of the value at the well of the gas from each and every gas well drilled on the premises." Id.

5

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS**

According to the plaintiffs,

> Contrary to their contractual, legal, statutory and
> common law duties and responsibilities, Investment and
> Antero and/or defendants' subsidiaries, Midstream and
> Pipeline, and/or defendants' other subsidiaries have and
> continue to take deductions, reduce plaintiffs' royalty
> payments, overcharge plaintiffs for the deductions that
> they do charge plaintiffs, and otherwise reduce and not
> pay for plaintiffs' royalty on volume and/or price and/or
> by taking the liquid hydrocarbons which are part of the
> natural gas extracted from the said gas and subtracting
> unauthorized deductions therefrom."

(Dkt. No. 27-1 at 31). More particularly, Antero has "sold
plaintiffs' natural gas liquids for money without compensating
plaintiffs for same," and has deducted expenses and taxes in
contravention of West Virginia law. Id. at 31-32. In addition, the
plaintiffs allege that Antero charged them "with costs and charges
which were unreasonably excessive and not actual." Id. at 32.
Specific allegations related to each claim for relief will be
discussed below in connection with Antero's motions to dismiss. The
plaintiffs make the following claims for relief: 1) Breach of
Contract, 2) Breach of Fiduciary Duty, 3) Fraud, and 4) Punitive
Damages. Id. at 35-37.

Pending are motions to dismiss the amended complaint filed by
Antero and Midstream Partners, which are fully briefed and ripe for

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS**

review (Dkt. No. 16). Also pending are the plaintiffs' motions to amend their complaints for a second time (Dkt. No. 27).

## II. JURISDICTION

As an initial matter, the Court must address whether it has subject matter jurisdiction. Pursuant to 28 U.S.C. § 1332, the Court finds that there is diversity of citizenship based on the citizenship of properly joined parties.

**A.   Plaintiffs**

1.   Gerald W. Corder resides in West Virginia (1:18-CV-30).

2.   Marlyn Sigmon resides in Virginia (1:18-CV-31).

3.   Garnet Cotrill resides in Florida (1:18-CV-32).

4.   Randall N. Corder resides in West Virginia (1:18-CV-33).

5.   Janet C. Packard and Leroy Packard reside in Florida (1:18-CV-34).

6.   Lorena Krafft resides in Ohio (1:18-CV-35).

7.   Cheryl Morris resides in Tennessee (1:18-CV-36).

8.   Tracy Bridge resides in Ohio (1:18-CV-37).

9.   Angela Nicholson resides in Virginia (1:18-CV-38).

10.  Kevin McCall resides in Ohio (1:18-CV-39).

11.  Brian McCall resides in Ohio (1:18-CV-40).

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS**

## B.    Defendants

### 1. Antero

Antero is a Delaware corporation with its principal place of business in Denver, Colorado. The defendants do not contest that, as the alleged party to contracts with the plaintiffs, Antero is an appropriate defendant in this action.

### 2.    Midstream Partners

Midstream Partners is a limited partnership, at least one of whose partners may be a citizen of West Virginia. In their notices of removal and briefing on the motions to dismiss, the defendants contend that Midstream Partners has been fraudulently joined to defeat diversity (Dkt. Nos. 1 at 5; 17 at 2 n.1; 20 at 1 n.1).

Under the doctrine of fraudulent joinder, a district court may "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999). "The party alleging fraudulent joinder bears a heavy burden-it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." Johnson v. Am. Towers,

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS**

LLC, 781 F.3d 693, 704 (4th Cir. 2015) (quoting Hartley v. CSX
Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999)). In order to
establish fraudulent joinder, "the removing party must establish
either: [t]hat there is no possibility that the plaintiff would be
able to establish a cause of action against the in-state defendant
in state court; or [t]hat there has been outright fraud in the
plaintiff's pleading of jurisdictional facts." Mayes, 198 F.3d at
464 (emphasis added). Under the former "no possibility" standard,
a removing defendant cannot succeed if there is a "glimmer of hope"
that the plaintiff's claim against a non-diverse defendant will
succeed. Id. at 466.

     Here, there is no hope that the plaintiffs will succeed on
their breach-of-contract or breach-of-fiduciary-duty claims against
Midstream Partners. "It is well-settled that '[a] non-party to a
contract cannot be sued for breach of contract.'" Ohio Valley
Health Servs. & Educ. Corp. v. Riley, 149 F. Supp. 3d 709, 715
(N.D.W.Va. 2015) (quoting A. Hak Indus. Servs. BV v. TechCorr USA,
LLC, 2014 WL 7243191, at *12 (N.D.W.Va. Dec. 19, 2014)).

     The original complaint alleges that Antero, not Midstream
Partners, acquired the rights under the relevant leases (Dkt. No.

9

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS**

1-1 at 7).[2] In addition, although the plaintiffs alleged that the defendants were involved in a joint venture that subjects them to joint liability, they did not plead any facts to support the "critical component" of a joint venture: "an agreement to share in the profits and losses of an enterprise." Pyles v. Mason Cty. Fair, Inc., 806 S.E.2d 806, 812 (W. Va. 2017). Nor did the plaintiffs allege the "necess[ary]" fact that Midstream Partners had equal control over its "common commercial pursuits" with Antero. Id. Moreover, as the defendants contend (Dkt No. 20 at 1 n.1), the plaintiffs failed to plead any specific facts in support of their bare recitation of legal elements regarding the defendants' possible status as alter egos. Accord O'Bryan v. Synthes, Inc., No. 5:13-cv-25981, 2014 WL 297835, at *6 (S.D.W.Va. Jan. 27, 2014) (citing Laya v. Erin Homes, Inc., 352 S.E.2d 93 (W. Va. 1986).

Moreover, as discussed below, the plaintiffs cannot succeed against any of the defendants on their claims for misrepresentation and punitive damages.

---

[2] See Dotson v. Elite Oil Field Servs., Inc., 91 F.Supp.3d 865, 870 (N.D.W.Va. 2015) ("The Court must determine removal jurisdiction on the basis of the state court complaint at the time of removal, and ... a plaintiff cannot defeat removal by amending it.")(citations omitted).

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS**

Because there is no possibility that the plaintiffs will succeed in their claims against Midstream Partners, the Court finds that Midstream Partners has been fraudulently joined and **DISMISSES** it from this case.

### 3.    Pipeline

Pipeline is an LLC that merged into Antero Resources Appalachian Corporation ("Appalachian"), with Appalachian being the surviving corporation. Appalachian later became Antero. Because Antero is the surviving corporation, the Court need not consider Pipeline's citizenship when assessing diversity. See Vision Bank v. Dynamic Air, Inc., No. 10-00543-CG-B, 2011 WL 1475939, at *3 (S.D. Ala. Mar. 30, 2011) (collecting cases). Further, because Pipeline is not a proper party, the Court **DISMISSES** it from this action.

### 4.    Investment

Investment was a Delaware LLC that filed its certificate of cancellation on October 31, 2017. Because an LLC cannot be sued after it dissolves and files a certificate of cancellation, Investment cannot be named as a party in this action. See Decker v. Statoil USA Onshore Props., Inc., No. 5:15CV114, 2015 WL 6159483, at *1–*2 (N.D.W.Va. Oct. 20, 2015). The plaintiffs' argument to the

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS**

contrary is not convincing, as they only cite authority applicable to corporations, not limited liability companies. See Delaware Code Title 8, § 278. Therefore, finding that Investment is not a proper party, the Court **DISMISSES** it from this action.

### III. MOTION TO AMEND

The plaintiffs filed these actions on December 6, 2017, in the Circuit Court of Harrison County, West Virginia (Dkt. No. 1-1). Antero and Midstream Partners removed the cases on February 12, 2018, on the basis of diversity jurisdiction (Dkt. No. 1). On February 20, 2018, Antero and Midstream Partners moved to dismiss the complaints (Dkt. No. 4). When the plaintiffs moved to file amended complaints on March 6, 2018 (Dkt. No. 9), the Court granted the motions and denied the defendants' motions to dismiss as moot (Dkt. No. 12). Now the plaintiffs have moved to amend the complaints for a second time (Dkt. No. 27).

Federal Rule of Civil Procedure 15(a)(1) states, in pertinent part, that "[a] party may amend its pleading once as a matter of course (A) within 21 days after serving it, or (B) ... 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." If

12

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS**

a party seeks to amend its pleadings in all other cases, it may only do so "with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). Rule 15(a) grants the district court broad discretion concerning motions to amend pleadings, and leave should be granted absent some reason "such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ... [or] futility of amendment." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>see also</u> <u>Ward Elec. Serv. v. First Commercial Bank</u>, 819 F.2d 496, 497 (4th Cir. 1987); <u>Gladhill v. Gen. Motors Corp.</u>, 743 F.2d 1049, 1052 (4th Cir. 1984).

The plaintiffs seek leave to amend their complaints to set forth additional allegations pertaining to the relevant mineral chains of title. Having reviewed the plaintiffs' proposed second amended complaints, the Court concludes that the amendment is not made in bad faith. The plaintiffs do not seek to add any new causes of action, but rather to plead additional allegations in support of the causes of action originally pled. Furthermore, the amendment

13

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS**

neither unduly delays these recently-filed actions, nor unduly
prejudices the remaining defendant, Antero. The Court further
concludes that, for the reasons discussed below, the proposed
amendments are not futile. Accordingly, pursuant to Fed.R.Civ.P.
15(a)(2), the Court **GRANTS** the plaintiffs' Motions to Amend the
Amended Complaint (Dkt. No. 27) and **DIRECTS** the Clerk to file the
Second Amended Complaint (Dkt. No. 27-1). Because the second
amended complaint does not present any novel claims or legal
theories, the Court will consider Antero's pending Motion to
Dismiss as it relates to the second amended complaint.

## IV. MOTION TO DISMISS

### A.    Standard of Review

Fed. R. Civ. P. 12(b)(6) allows a defendant to move for
dismissal on the grounds that a complaint does not "state a claim
upon which relief can be granted." When reviewing the sufficiency
of a complaint, a district court "must accept as true all of the
factual allegations contained in the complaint." Anderson v. Sara
Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v.
Pardus, 551 U.S. 89, 94 (2007)). "While a complaint . . . does not
need detailed factual allegations, a plaintiff's obligation to

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS**

provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal citation omitted). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).

In order to be sufficient, "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" <u>Anderson</u>, 508 F.3d at 188 n.7 (quoting <u>Twombly</u>, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992).

In deciding on the motion, the Court need not confine its inquiry to the complaint; it may also consider "documents incorporated into the complaint by reference." <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007). "A copy of

15

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS**

a written instrument that is an exhibit to a pleading is a part of

the pleading for all purposes." Fed. R. Civ. P. 10(c).

**B.  Discussion**

**1.  Breach of Contract**

**a.  Pleading Standard**

As the Court stated in KBS Preowned Vehicles, LLC v. Reviva,

Inc.:

> Under West Virginia law, a prima facie breach of contract
> claim requires the plaintiff to allege four elements: (1)
> that there is a valid, enforceable contract; (2) that the
> plaintiff has performed under the contract; (3) that the
> defendant has breached or violated its duties or
> obligations under the contract; and (4) that the
> plaintiff has been injured as a result.

No. 1:13cv138, 2014 WL 12591890, at *2 (N.D.W.Va. Mar. 26, 2014)

(citing Dan Ryan Builders, Inc. v. Crystal Ridge Dev., Inc., No.

1:09CV161, 2013 WL 5352844, at *11 (N.D.W.Va. Sept. 24, 2013)); see

also Charleston Nat'l Bank v. Sims, 70 S.E.2d 809, 813 (W. Va.

1952) (quoting Jones v. Kessler, 126 S.E. 344 (W. Va. 1925)); Exec.

Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc., 681 F. Supp.

2d 694, 714 (S.D.W. Va. 2009) (citing 23 Williston on Contracts §

63:1 (Richard A. Lord, ed., 4th ed. West 2009)) (same elements).

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS**

In its motion to dismiss, Antero first argues that the plaintiffs have not sufficiently alleged Antero's "connection to each and every lease, memorandum, or amendment" (Dkt. No. 17 at 1). This Court's precedent plainly requires the plaintiffs to allege the parties' connection to oil and gas leases at issue. In <u>Cather v. Seneca-Upshur Petroleum, Inc.</u>, the plaintiff alleged only that defendant Forest Oil was "a lessee or ultimate assignee of the leases" at issue. No. 1:09CV139, 2010 WL 3271965, at *3 (N.D.W.Va. Aug. 18, 2010). Because the Court was not satisfied that this allegation clearly established Forest Oil's connection to the contracts, it construed Forest Oil's motion to dismiss as a motion for a more definite statement and allowed the plaintiff to file an amended complaint detailing the corporate merger that resulted in Forest Oil's interest. <u>Id.</u> at *4.

Here, as argued by Antero, the allegations in the first amended complaints varied in sufficiency with regard to each lease. Some of the leases attached to the amended complaints were executed by the plaintiffs and Antero themselves, but a significant number were executed by other parties. Although the plaintiffs attached royalty statements from Antero, none of these documents references

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS**

the particular tracts or leases in question in a manner sufficient to establish the parties' connection. In the second amended complaints, however, the plaintiffs allege facts sufficient to establish their own-and Antero's-connection to each lease through the record chain of title for the tracts at issue (Dkt. No. 27-1 at 2-25). Accordingly, the second amended complaints adequately allege the existence of enforceable contracts between the plaintiffs and Antero.

Second, Antero argues that the plaintiffs' amended complaints fail to allege that they performed any of their obligations outlined in the lease agreements or were excused from such performance. This is a light burden; Twombly does not require the plaintiffs to plead factual support for a prima facie case, so long as their allegations make it factually plausible that the defendants are liable for the misconduct alleged. See, e.g., Connelly v. Lane Const. Corp., 809 F.3d 780, 788-89 (3d Cir. 2016). Indeed, in amending the complaints for a second time, the plaintiffs took the opportunity to address their performance, and have sufficiently alleged that they fulfilled their duties and

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS**

obligations under the leases by maintaining title (Dkt. No. 27-1 at 26).

Because the plaintiffs have corrected each of the pleading deficiencies identified in Antero's motion to dismiss, the Court concludes that the plaintiffs have adequately pleaded claims for breach of contract.

### b.    Matter of Law

Antero also argues that the plaintiffs have failed to state a claim for breach of contract as a matter of law because the leases at issue allow Antero to deduct post-production costs (Dkt. No. 17 at 9-14). The second amended complaints attach eight separate leases with different language.

As an initial matter, only one of the leases at issue is a flat-rate lease subject to W. Va. Code § 22-6-8. Therefore, as the Supreme Court of Appeals of West Virginia has noted, all but one of the leases is "unaffected" by Leggett v. EQT Prod. Co., 800 S.E.2d 850, 853, cert. denied, 138 S. Ct. 472 (W. Va. 2017). Instead, the leases remain governed by the analysis in Wellman v. Energy Res., Inc., 557 S.E.2d 254 (W. Va. 2001), and Estate of Tawney v. Columbia Nat. Res., L.L.C., 633 S.E.2d 22 (W. Va. 2006). The Court

19

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS**

will address the three types of leases at issue in this case in turn.

First, the leases regarding Tract (A) require a royalty on "the net amount realized by Lessee computed at the wellhead." They also contain a "Market Enhancement Clause," which forbids deductions regarding preparation, transportation, and sale of a marketable product, but permits deductions for steps taken to enhance the value of already marketable products. Antero contends that, because certain of the leases covering Tract (A) contain a Market Enhancement Clause, it may deduct post-production expenses from the plaintiffs' royalties (Dkt. No. 17 at 13).

Indeed, leases containing the Market Enhancement Clause may be Tawney-compliant. The clause "expressly provide[s] that the lessor shall bear some part of the costs incurred between the wellhead and the point of sale," Tawney, 633 S.E.2d 22, Syl. Pt. 10, by deducting the actual cost of enhancements to the value of oil and gas that is already in marketable form. Nonetheless, the clause also expressly forbids Antero from deducting costs to market oil and gas or place it in marketable form. Id. Given that such deductions fall within the general breach-of-contract allegations

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS**

in the second amended complaints, the Market Enhancement Clause provides no reason to dismiss the complaints for failure to state a claim.

Second, the royalty provisions regarding Tracts (B), (C), (E), (F), and (H) appear to require royalties based on the market price due to either of the following clauses: (a) "value at the well," or (b) "gross proceeds received from the sale of the same at the prevailing price." Antero argues that Tawney is inapplicable because the royalty provisions are based on "market value" rather than "proceeds" (Dkt. No. 17 at 12-14). In support, it relies on Imperial Colliery Co. v. Oxy USA Inc., 912 F.2d 696 (4th Cir. 1990), in which the Fourth Circuit reasoned that post-production deductions are a permissible way to arrive at the "wholesale market value at the well." Although the reasoning in Imperial Colliery Co. is on point, the more recent and binding decision of the Supreme Court of Appeals in Tawney rejected a similar argument. There, the defendant asserted that "wellhead-type language clearly called for allocation of post-production expenses" when read in conjunction with language such as "gross proceeds," "market price," or "net of all costs." Tawney, 633 S.E.2d at 28-29. Due to inherent

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS**

ambiguities, the court found that none of these modifiers was sufficient to overcome the <u>Wellman</u> presumption that the lessee must bear post-production costs. <u>Id.</u> Therefore, the "market value" provisions do not render the leases unambiguous enough to escape <u>Tawney</u>.

Third, Antero argues that the plaintiffs have not stated a claim for breach of contract with regard to Tract (G), which is subject to a flat-rate lease (Dkt. No. 17 at 14). Pursuant to <u>Leggett</u>, Antero is entitled to take reasonable, actual post-production deductions from the plaintiffs' royalties with regard to this well. The plaintiffs have thus alleged that the "defendants charged [them] with costs and charges which were unreasonably excessive and not actual" (Dkt. No. 27-1 at 32). This allegation makes it plausible that Antero has breached the lease agreements by failing to comply with the requirements of <u>Leggett</u>. Therefore, the plaintiffs have stated a claim for breach of contract with regard to Tract (G).

For these reasons, the Court **DENIES** Antero's motion to dismiss the plaintiffs' claims for Breach of Contract (Count One).

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS**

### 2.    Breach of Fiduciary Duty

Antero argues that the plaintiffs' claims for Breach of Fiduciary Duty (Count Two) should be dismissed because a fiduciary duty is not formed by the mere execution of an oil and gas lease (Dkt. No. 17 at 15-17).

In their response, the plaintiffs concede that many courts have held that an oil and gas producer does not owe a fiduciary duty to a landowner with respect to the operational duties and allegations to its lessees. However, they argue that "these cases fail to acknowledge that the duties and responsibilities actually assumed by a lessee as a result of a natural gas lease are much different than that seen in more typical leases" (Dkt. No. 19 at 17). They further argue that a duty exists, "particularly when the gas company receives money for both the plaintiffs and defendants," because the gas company must honestly account for the royalties owed to the landowners.

In its reply, Antero reiterates its argument that West Virginia law has repeatedly held that the duty owed between parties in an oil and gas lease does not rise to the level of a fiduciary relationship (Dkt. No. 20 at 9-10).

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS**

This Court has previously concluded that a fiduciary duty does not exist between the parties of an oil and gas lease because the duty created is one of "ordinary prudence" and not of a fiduciary. Cather v. Seneca-Upshur Petroleum, Inc., 2010 WL 3271965, *5 (N.D.W.Va. August 18, 2010). Many other courts in factually similar cases have also held that a fiduciary duty does not exist between the parties of a oil and gas lease. See, e.g., Leggett v. EQT Prod. Co., 2015 WL 1212342 (N.D.W.Va. March 17, 2015); The Kay Company, LLC v. EQT Prod. Co., et al., Civil Action No. 1:13CV151 (N.D.W.Va. Sept. 4, 2014); W.W. McDonald Land Co., v. EQT Prod. Co., 2013 WL 6098497 (S.D.W.Va. Nov. 21, 2013); Wellman v. Bobcat Oil & Gas, Inc., 2010 WL 2720748 (S.D.W.Va. July 8, 2010).

The facts in this case are similar to the cases cited as all involve deduction of royalty fees to pay for post-production costs in relation to oil and gas leases. West Virginia law is clear that a fiduciary duty does not exist in this type of case dealing with gas and oil leases. Accordingly, the Court **GRANTS** Antero's motion to dismiss the plaintiffs' claims for Breach of Fiduciary Duty (Count Two).

24

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS**

### 3.  Fraud

#### a.  Particularity

Antero first argues that, under the heightened pleading standards of Fed.R.Civ.P. 9(b), the plaintiffs did not plead the relevant facts of their fraud claims with sufficient particularity (Dkt. No. 17 at 18-21).

"The essential elements in an action for fraud are: "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; (3) that plaintiff relied on it and was justified under the circumstances in relying upon it; and (4) that he was damaged because he relied on it." Syl. Pt. 5, <u>Folio v. City of Clarksburg</u>, 655 S.E.2d 143 (W. Va. 2007) (internal quotation and citation omitted).

When pleading fraud, a party must state with particularity the factual circumstances constituting the alleged fraud or mistake. See Fed.R.Civ.P. 9(b). To meet this standard, the Fourth Circuit has held that a claim for fraud must state "the time, place, and contents of the false representations as well as the identity of the person making the misrepresentation and what he obtained thereby." <u>Harrison v. Westinghouse Savannah River Company</u>, 176 F.3d

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS**

776, 784 (4th Cir. 1999) (requiring more notice than required under
Rule 8, so that the defendant can prepare an adequate answer). In
cases involving allegations of fraud relating to "an omission
instead of an affirmative misrepresentation," however, "less
particularity is required." In Town Hotels Ltd. Partnership v.
Marriot Int'l, Inc., 246 F.Supp.2d 469, 487 (S.D.W.Va. 2003)
(citing Shaw v. Brown & Williamson Tobacco Corp., 973 F.Supp. 539,
552 (D.Md. 1997)).

The Fourth Circuit has instructed district courts to
"hesitate" in dismissing a fraud claim under Rule 9(b) if satisfied
"(1) that the defendant has been made aware of the particular
circumstances for which she will have to prepare a defense at
trial, and (2) that plaintiff has substantial prediscovery evidence
of those facts." Id. at 486 (quoting Harrison, 176 F.3d at 784).

Here, the plaintiffs have not pleaded their fraud claims with
the requisite particularity. In the second amended complaints, the
plaintiffs allege that

> [d]efendants misrepresented to plaintiffs that defendants
> were entitled to take deductions from plaintiffs'
> royalty, that they had the right to take the amount of
> deductions they took, reduced plaintiffs' royalty
> payments, misrepresented the amount of volume that was

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS**

> taken from plaintiffs' property, overcharged plaintiffs
> for services, and/or wrongfully claimed plaintiffs'
> royalty due was less than the amount actually due, and
> failed to report to plaintiffs that they were extracting
> and selling liquids from plaintiffs' natural gas, thereby
> denying plaintiffs the rents and royalties to which they
> were due.

Dkt. No. 27-1 at 36. The plaintiffs' allegations of fraud can
therefore be grouped into three categories: (1) affirmative
misrepresentations, (2) material omissions, and (3) fraud by way of
reducing royalty payments. The first question before the Court is
whether these allegations amount to fraud under West Virginia law.

As to affirmative misrepresentations, the plaintiffs have
failed to allege any such misrepresentation with particularity.
While the plaintiffs generally allege that the "defendants
misrepresented . . . that [they] were entitled to take deductions
from plaintiffs' royalty, [and] that they had the right to take the
amount of deductions they took," the complaint does not
specifically identify any false representation made by the
defendants to the plaintiffs (Dkt. No. 27-1 at 36). Because these
allegations of affirmative misrepresentations lack the specificity
necessary to provide the defendants with "the particular
circumstances for which [they] will have to prepare a defense at

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS**

trial," they are stated with insufficient particularity to meet the requirements of Rule 9(b). <u>In Town Hotels</u>, 246 F.Supp.2d at 486.

As to material omissions, the plaintiffs allege that the defendants "failed to report . . . that they were extracting and selling liquids from plaintiffs' natural gas" (Dkt. No. 27-1 at 36). This claim seemingly depends on the existence of some legal duty owed by the defendants to the plaintiffs to share the allegedly undisclosed information. However, the plaintiffs have failed to allege which defendant(s) were responsible for these alleged omissions. Moreover, Antero is the only defendant alleged to be a party to any of the plaintiffs' leases. Because Midstream is not a party to the leases, the plaintiffs cannot claim that it owes them any contractual duties.

Finally, the plaintiffs have alleged fraud based on the defendants' "reduc[tion of] plaintiffs' royalty payments" and "overcharge[ of] plaintiffs for services" (Dkt. No. 27-1 at 36). At bottom, it is simply unclear how these allegations, which do not involve any representations, fit within the elements of an action for fraud under West Virginia law.

28

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS**

Nevertheless, as argued by Antero, the plaintiffs have failed to adequately allege justifiable reliance, the third element of fraud. Beyond a general allegation that they "rel[ied] on the defendants for the honest accounting and lawful payment[]. . . of royalty owed" (Dkt. No. 27-1 at 36), the plaintiffs have not alleged any acts they took in reliance on Antero's alleged misrepresentations. See Mountain Link Assocs., Inc. v. Chesapeake Energy Corp., No. 2:13-cv-16860, 2014 WL 4851993, at *10 (S.D.W.Va. Sept. 29, 2014) ("Beyond their conclusory assertion that they 'relied upon Defendants' material misrepresentations to their detriment" . . ., Plaintiffs do not point to any acts of theirs in reliance on Defendants' representations about the correctness of their calculations of the royalty deductions."). As succinctly stated by the court in Bluestone Coal Corp. v. CNX Land Res., Inc., No. 1:07-00549, 2007 WL 6641647, at *4 (S.D. W.Va. Nov. 16, 2007) (Faber, J.), in the context of an alleged bad faith denial of an option contract,

> [i]t can hardly constitute fraud to contend that [an] agreement means something different than the construction placed upon it by the other party. The essence of conflict between the parties is disagreement as to the meaning of the written memorandum they signed. Resolution

29

of their dispute must turn on construction of the
agreement itself. Even if, as [plaintiff] contends,
[defendant] instructed [its agent] to lie about the true
nature of this agreement, a legitimate fraud claim is not
formed. Attempting to conceal a breach of contract by
engaging in a scheme to misrepresent the true nature of
that contract is not fraud. There is no reliance, only an
intentional false statement, which is more akin to
perjury.

Because the plaintiffs have failed to allege any justifiable

reliance on Antero's misrepresentations, they have failed to state

a claim for fraud.[3]

### b.  Gist of the Action

Alternatively, Antero persuasively argues that the plaintiffs'

fraud claims should be dismissed under the "gist of the action"

doctrine.

Under West Virginia law, "[i]f the action is not maintainable

without pleading and proving the contract, where the gist of the

action is the breach of the contract, either by malfeasance or

misfeasance, it is, in substance, an action on the contract,

---

[3] Although these matters were addressed in the defendants'
motions to dismiss the first amended complaints, the plaintiffs did
not attempt to correct these deficiencies in their second amended
complaints. Therefore, the Court perceives that no further
opportunity to amend this claim is warranted.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS**

whatever may be the form of the pleading." Cochran v. Appalachian Power Co., 246 S.E.2d 624, 628 (W. Va. 1978).

This so-called "gist of the action" doctrine provides that a tort claim arising from a breach of contract may be pursued only if " 'the action in tort would arise independent of the existence of the contract.'" Secure US, Inc. v. Idearc Media Corp., No. 1:08CV190, 2008 WL 5378319, at *3-4 (N.D.W.Va. Dec. 24, 2008) (quoting Syl. Pt. 9, Lockhart v. Airco Heating & Cooling,567 S.E.2d 619 (W.Va. 2002)). In other words, "[t]he source of the duty is controlling. To be maintained, the action in tort must arise independent of the existence of the contract." CWS Trucking, Inc. v. Welltech Eastern, Inc., No. 2:04-CV-84, 2005 WL 2237788, at *2 (N.D.W.Va. 2005) (citing Syl. Pt. 9, Lockhart, 567 S.E.2d 619)

The Supreme Court of Appeals recently affirmed the continued vitality of the doctrine, finding that "recovery in tort will be barred" where any of the following four factors is present:

> (1) where liability arises solely from the contractual
> relationship between the parties;
> (2) when the alleged duties breached were grounded in the
> contract itself;
> (3) where any liability stems from the contract; and
> (4) when the tort claim essentially duplicates the breach
> of contract claim or where the success of the tort claim

31

is dependent on the success of the breach of contract claim.

Gaddy Engineering Co. v. Bowles Rice McDavid Graff & Love, LLP, 746 S.E.2d 568, 586 (W. Va. 2013) (quoting Star v. Rosenthal, 884 F.Supp.2d 319, 328-29 (E.D.Pa. 2012)). Accordingly, in order to maintain a cause of action for tort, a plaintiff must establish the existence of a legal duty independent from any contractual duty. Lockhart, 567 S.E.2d at 624 ("[A plaintiff] cannot maintain an action in tort for an alleged breach of a contractual duty.").

Here, the alleged fraud arises solely from the contractual relationship between the plaintiffs and the defendants (i.e., the leases at issue). As noted, the plaintiffs' fraud claims are grounded in allegations that the defendants have made material misrepresentations related to royalties owed to the plaintiffs under the relevant leases, and that the defendants have wrongfully reduced the plaintiffs' royalty payments.

It is clear that the misrepresentations alleged in the amended complaints all relate to royalty payments owed to the plaintiffs and are thus directly tied to the duties and obligations assumed in the relevant leases. Gaddy, 746 S.E.2d at 586. In other words, the

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS**

claims do not arise independently of the existence of a contract. CWS Trucking, 2005 WL 2237788, at *2. Rather, Antero's alleged liability for these claims "stems from" the leases and the plaintiffs' fraud claims against Antero thus are barred by the gist of the action doctrine.

For these reasons, the Court **GRANTS** Antero's motion to dismiss the plaintiffs' claims for Fraud (Count Three).

### 4.  Punitive Damages

Finally, Antero argues that the plaintiffs' claims for Punitive Damages (Count Four) should be dismissed because, under West Virginia law, a separate cause of action for punitive damages does not exist. Antero also seems to argue that, if the Court dismisses the tort claims against it, then no basis exists to award punitive damages in the case (Dkt. No. 17 at 23-25). In response, the plaintiffs argue that, contrary to Antero's assertions, they have adequately pleaded independent causes of action, which they incorporated by reference into their claim for punitive damages (Dkt. No. 19 at 24).

For the reasons discussed, the Court has dismissed the plaintiffs' claims for Breach of Fiduciary Duty (Count Two) and

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS**

Fraud (Count Three). Consequently, it also dismisses the plaintiffs' claims for Punitive Damages as they relate to those tort claims.

Regarding the Breach of Contract claim, the plaintiffs allege that Antero has improperly deducted post-production costs from royalty payments due to the plaintiffs under the relevant leases. Under West Virginia law, punitive damages are generally unavailable in a breach of contract action. See Berry v. Nationwide Mut. Fire Ins. Co., 381 S.E.2d 367, 374 (W. Va. 1989) ("Generally, absent an independent, intentional tort committed by the defendant, punitive damages are not available in an action for breach of contract."). Here, as noted, the plaintiffs seek punitive damages based on Antero's alleged taking of portions of the plaintiffs' royalties to which the defendants were not entitled under the leases. Thus, the plaintiffs have not pled "an independent, intentional tort" committed by Antero that would allow for the potential recovery of punitive damages.

Accordingly, the Court **GRANTS** Antero's motion to dismiss the plaintiffs' claims for Punitive Damages (Count Four).

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS**

## V. CONCLUSION

For the reasons discussed, the Court:

- **CONSOLIDATES** civil action numbers **1:18-CV-30, 1:18-CV-31, 1:18-CV-32, 1:18-CV-33, 1:18-CV-34, 1:18-CV-35, 1:18-CV-36, 1:18-CV-37, 1:18-CV-38, 1:18-CV-39,** and **1:18-CV-40** for the purpose of this Memorandum Opinion and Order only, **1:18-CV-30** to serve as the lead case;

- **GRANTS** the plaintiff's Motion to Amend the Amended Complaint (Dkt. No. 27);

  - **GRANTS** the plaintiff's Motion to Amend the Amended Complaint in case number 1:18CV31 (Dkt. No. 27); 1:18CV32 (Dkt. No. 28); 1:18CV33 (Dkt. No. 27); 1:18CV34 (Dkt. No. 28); 1:18CV35 (Dkt. No. 27); 1:18CV36 (Dkt. No. 27); 1:18CV37 (Dkt. No. 27); 1:18CV38 (Dkt. No. 27); 1:18CV39 (Dkt. No. 28); and 1:18CV40 (Dkt. No. 27);

- **DIRECTS** the Clerk to file the plaintiff's Second Amended Complaint (Dkt. No. 27-1);

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS**

- **DIRECTS** the Clerk to file the plaintiff's Second Amended Complaint in case number 1:18CV31 (Dkt. No. 27-1); 1:18CV32 (Dkt. No. 28-1); 1:18CV33 (Dkt. No. 27-1); 1:18CV34 (Dkt. No. 28-1); 1:18CV35 (Dkt. No. 27-1); 1:18CV36 (Dkt. No. 27-1); 1:18CV37 (Dkt. No. 27-1); 1:18CV38 (Dkt. No. 27-1); 1:18CV39 (Dkt. No. 28-1); and 1:18CV40 (Dkt. No. 27-1);

- **DENIES** the defendants' Motion to Dismiss the plaintiff's Breach of Contract claim as alleged in Count One of the Second Amended Complaint (Dkt. No. 16);

- **DENIES** the defendants' Motion to Dismiss the plaintiff's Breach of Contract claim as alleged in Count One of the Second Amended Complaint in case number 1:18CV31 (Dkt. No. 16); 1:18CV32 (Dkt. No. 17); 1:18CV33 (Dkt. No. 16); 1:18CV34 (Dkt. No. 17); 1:18CV35 (Dkt. No. 16); 1:18CV36 (Dkt. No. 16); 1:18CV37 (Dkt. No. 16); 1:18CV38 (Dkt. No. 16); 1:18CV39 (Dkt. No. 16); and 1:18CV40 (Dkt. No. 16);

36

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS**

- **GRANTS** the defendants' Motion to Dismiss the plaintiff's claims for Breach of Fiduciary Duty, Fraud, and Punitive Damages (Dkt. No. 16) and **DISMISSES** Counts Two, Three, and Four of the Second Amended Complaint;

  - **GRANTS** the defendants' Motion to Dismiss the plaintiff's claims for Breach of Fiduciary Duty, Fraud, and Punitive Damages in case number 1:18CV31 (Dkt. No. 16); 1:18CV32 (Dkt. No. 17); 1:18CV33 (Dkt. No. 16); 1:18CV34 (Dkt. No. 17); 1:18CV35 (Dkt. No. 16); 1:18CV36 (Dkt. No. 16); 1:18CV37 (Dkt. No. 16); 1:18CV38 (Dkt. No. 16); 1:18CV39 (Dkt. No. 16); and 1:18CV40 (Dkt. No. 16); and **DISMISSES** Counts Two, Three, and Four of the Second Amended Complaint;

- **DISMISSES** defendants Antero Midstream Partners LP, Antero Resources Pipeline LLC, and Antero Resources Investment LLC from this case and case numbers 1:18CV31, 1:18CV32, 1:18CV33, 1:18CV34, 1:18CV35, 1:18CV36, 1:18CV37, 1:18CV38, 1:18CV39, and 1:18CV40.

It is so **ORDERED.**

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO AMEND THE COMPLAINT [DKT. NO. 27],
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 16], AND
CONSOLIDATING CASES FOR PURPOSE OF RULING ON THESE MOTIONS**

The Court **DIRECTS** the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: June 11, 2018.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE