Corder v. Antero

EXHIBIT 2

ANTERO RESOURCES APPALACHIAN CORPORATION
P.O. BOX 410
BRIDGEPORT, WV 26330-0410

BK1496 PG1203

Susan J Thomas
HARRISON County 02:48:31 PM
Instrument No 201200036652
Date Recorded 08/14/2012
Document Type LEA
Pages Recorded 6
Book-Page    1496-1203
Recording Fee $5.00
Additional    $6.00

## OIL AND GAS LEASE
(PAID-UP)

Lessor:  Garnett Cottrill, heir of Jesse C. Corder
Lessee:  Antero Resources Appalachian Corporation
Lease Number _____
Prospect: Greenbrier
WV-PA Revised– ARAC/PAL Rev. June-09

This Agreement, made and entered into this day of July 24th, 2012, by and between Garnett Cottrill, 323 Forest Park Circle, Longwood, Florida, 32779, hereinafter referred to individually and collectively as "Lessor," and **Antero Resources Appalachian Corporation**, 1625 17th Street, Suite 300., Denver, CO 80202, hereinafter referred to as "Lessee;" WITNESSETH THAT:

1.  **Leasing.**  Lessor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, and the covenants herein contained, hereby grants, demises, leases and lets exclusively unto Lessee the lands hereinafter described for the purposes of:

   a)  exploring by geological and geophysical and other methods, (including, but not limited to, conducting seismic surveys), drilling either vertically or horizontally, operating for, producing oil or gas or both including methane gas present in or associated with any formations, horizons, strata or zones and/or; and,

   b)  for the further purpose and with the exclusive right in the Lessee, as it may see fit, to store any kind of gas therein by pumping or otherwise introducing the same into any sand or sands, substrata or horizon in an under said land, and the right to remove the same by pumping or otherwise through any well or wells on said land or other lands, and to use said land for protecting gas stored within and under adjoining and neighboring lands, together also with the right to drill, operate and maintain wells for the purpose of injecting, storing and disposing of waste fluids from within and under said land or other lands resulting from or incidental to the production of or injection, storage and removal of gas,

together with the right and easement to construct, operate, repair, maintain, resize and remove pipelines, telephone, power and electric lines, tanks, ponds, roadways, plants, equipment and structures thereon to produce, save, store and take care of such substances, and the exclusive right to inject air, gas, water, brine or other fluids into the subsurface strata and any and all other rights and privileges necessary, incident to, or convenient for the economical operation of the lands, alone or conjointly with neighboring lands for these purposes, said lands being situated on the waters of Turtle Tree Fork of Ten Mile, in Union District, County of Harrison, State of West Virginia, and being bounded now or formerly substantially as follows, to wit:

   On the North by lands of:    County Road 30/5
   On the East by lands of:     Franklin D. Riffle
   On the South by lands of:    James Corder
   On the West by lands of:     Bill Devericks

Said lands being identified for tax purposes as Tax Parcel ID: 20-361-3, 4, 5 as of this date. Notwithstanding said tax map designation, this lease shall be effective as to the tract actually owned by Lessor whether or not the tax map designation correctly identifies the location of the tract. Being also the same interest acquired by the Lessor by Deed Book Deed dated October 10, 1928 and recorded on October 10, 1928 in the Recorder of Deeds Office in and for Harrison County, State of West Virginia, filed as Deed Book 393, Page 399. It being the purpose and intent of Lessor to lease, and Lessor does hereby lease, all strips or parcels of land now owned by Lessor, or hereafter acquired which adjoin the lands above described, and all interests in the land above described now owned or hereafter acquired by Lessor. For all purposes of this lease, including determining the amount of delay rentals, royalties and shut-in royalties hereunder, said land shall be deemed to contain 48.69 acres whether it actually contains more or less. For all purposes of this lease, references to oil and gas or either or both of them shall mean oil, or gas, or both and all substances which are constituents of or produced with oil or gas, whether similar or dissimilar or produced in a gaseous, liquid, or solid state.

2.  **Term.**  Subject to the other provisions hereof, this lease shall remain in force for a term of Five (5) years from this date (herein called "primary term") and:

   a)  as long thereafter as oil and gas, or either of them, is produced from the land or from lands pooled therewith, or drilling operations are continuously prosecuted as hereinafter provided, or this lease is otherwise maintained in effect pursuant to the provisions hereof; or,

   b)  as long thereafter as gas is being stored, held in storage, or withdrawn from the premises by Lessee or said land is used for the protection of stored gas alone or in conjunction with other lands or Lessee is actively engaged in developing the area including said lands for the storage of gas. It is agreed that the cessation of production from wells on the leased premises or upon other lands unitized therewith, after the expiration of the original term, shall not terminate this lease whether the pooling units have been dissolved or not, if the land is used for the storage or protection of stored gas prior to the plugging and abandonment of wells from which oil and/or gas has been produced. It is understood that a well need not be drilled on the premises to permit the storage of gas, and it is agreed that the Lessee shall be the sole judge as to whether gas is being stored within the leased premises or said land is being used for the protection of stored gas and that its determination shall be final and conclusive.

"Drilling operations" include operations for the drilling of a new well, the reworking, deepening or plugging back of a well or hole or other operations conducted in an effort to obtain or reestablish production of oil or gas. Drilling operations shall be considered to be "continuously prosecuted" if not more than 120 days shall elapse between the completion or abandonment of one well or hole and the commencement of drilling operations on another well or hole.

3.  **Royalties.**  The royalties to be paid by Lessee are: (a) on oil, One-Eighth (12.5%) of that produced and saved and delivered at the wells or into the pipeline to which the wells may be connected. Lessee may from time to time purchase any royalty oil in its possession, paying the market price then prevailing for the field where produced, and Lessee may sell any royalty oil in its possession and pay Lessor the price received by Lessee for such oil computed at the well, less One-Eighth (12.5%) of all Post Production Costs and less the same fractional share of all production, petroleum excise and severance taxes; (b) on gas, including casinghead gas or other gaseous substance, produced from said land and sold or used beyond the well or for the

Corder v. Antero

Corder v. Antero

BK1496 PG1204

extraction of gasoline or other product, an amount equal to One-Eighth (12.5%) of the net amount realized by Lessee computed at the wellhead from the sale of such substances. On gas sold at the well, the royalty shall be One-Eighth (12.5%) of the amount realized by Lessee from such sale, less One-Eighth (12.5%) of all Post Production Costs and less the same fractional share of all production, petroleum excise and severance taxes.

As used in this provision, "Post Production Costs" shall mean all costs actually incurred by Lessee or its affiliate and all losses of produced volumes whether by use as fuel, line loss, flaring, venting or otherwise from and after the wellhead to the point of sale. Post Production Costs includes, without limitation, all costs of gathering, treating, processing, blending, marketing, compression, dehydration, transportation, removal of liquid or gaseous substances, and/or removal of impurities of or from the affected oil and gas, and costs of any other activities associated with making the oil and gas ready for movement, sale or use.  For royalty calculation purposes, Lessee shall never be required to adjust the sales proceeds to account for the purchaser's revenues, receipts, costs or charges, or other activities that occur, beyond and past the point of sale.  Lessee or its affiliate shall have the right to construct, maintain and operate any facilities providing some or all of the services identified as Post Production Costs.  If Lessee or its affiliate does so, the actual costs of such facilities shall be included in the Post Production Costs as a per barrel or per mcf (or per mmbtu, at Lessee's election) charge, as appropriate, calculated by spreading the construction, maintenance and operating costs for such facilities over the reasonably estimated total production volumes attributable to the well or wells using such facilities.

In no event will the royalties payable hereunder exceed One-Eighth (12.5%) of any governmentally-imposed sales price ceiling applicable to Lessee's sales or One-Eighth (12.5%) of the net amount received by Lessee not subject to refund, whichever is the lesser; provided that any amounts held by Lessee subject to refund will be promptly distributed, without interest, when Lessee's sale price is finally determined by judicial or administrative authority. Payment of royalties hereunder shall be made or tendered on or before the end of the month following the production month, beginning no later than six (6) months after Date of First Sales.

4.      **Delay Rental.**  It is hereby agreed and acknowledged by Lessor and Lessee that this is a Paid-Up Oil and Gas Lease and all delay rentals due and payable under this agreement have been paid in advance and have been included in the consideration paid to Lessor by Lessee for this oil and gas lease.

It is agreed that Lessee may drill or not drill on the leased premises, as it may elect, and that the consideration and rentals paid constitute adequate compensation for such privilege. No implied covenant shall be read into this lease requiring Lessee to drill or to continue drilling on said land, or fixing the measure of diligence necessary on Lessee's part.

5.      ~~**Payment for Storage or Storage Protection Privileges.**  In full compensation for the storage and storage protection rights herein granted and in lieu of all delay rental, or royalty due or to become due for the right to produce or for the production of oil or gas from the sands, strata, or horizons where gas may be stored or being protected as herein provided, Lessee covenants and agrees to pay Lessor, when no wells on the leased premises are utilized for the storage of gas, an annual storage rental of Five Dollars per acre ($5.00) dollars, payable quarterly in advance, beginning at the next payment date after gas shall have been stored under the terms of this agreement and continuing until the leased premises shall no longer be used for storage purposes, or until wells on the leased premises are utilized for the storage of gas, in which event Lessee shall cease paying storage rental to Lessor and pay in lieu thereof, a storage well rental or royalty of Two Hundred and no/100ᵗʰ⁺ ($ 200.00) dollars, per well quarterly in advance, as long as such shall be so utilized; subject to the right of cancellation or surrender hereinafter provided. Any storage rental paid for time beyond the date of such utilization of a well yielding storage well rental or royalty shall be credited upon the first storage well rental or royalty due upon the same, Lessee agrees to give Lessor written notice of the use of the leased premises and any wells drilled thereon for the storage of gas or protection of stored gas.~~

~~Notwithstanding anything contained herein to the contrary, the payment of storage rentals shall be subject to the "Lesser Interest", "Apportionment of Payments" and "Assignment" provisions of this lease. In addition, this lease shall be deemed to include the number of acres specified in Paragraph 1 for the calculation of storage payments.~~

6.      **Dry Hole Clause and Cessation of Production.**  If during the last year of the primary term and prior to the discovery of oil or gas on said land, Lessee should drill a dry hole thereon, or, if after discovery of oil or gas either before or during the last year of the primary term, the production thereof should cease during the last year of said term from any cause, no rental payment or operations are necessary in order to keep this lease in force during the remainder of the primary term. If, at the expiration of the primary term, Lessee has commenced operations for drilling a new well or reworking an old well, this lease shall continue in force as long as such drilling or reworking operations continue, or if after the expiration of the primary term, production on this lease shall cease, this lease shall continue in force if drilling or reworking operations are commenced within 120 consecutive days after such cessation of production; if production is restored or additional production is discovered as a result of any such drilling or reworking operations, conducted without cessation of more than 120 consecutive days, this lease shall continue as long thereafter as oil or gas is produced and as long as additional drilling or reworking operations are continued without cessation for more than 120 consecutive days.

7.      **Shut-in Royalty.**  During any period (whether before or after expiration of the primary term hereof) when gas is not being so sold or used and the well or wells are shut in and there is no current production of oil or operations on said leased premises sufficient to keep this lease in force, Lessee shall pay or tender a royalty of Twenty Dollar ($20.00) per year per net royalty acre retained hereunder, such payment or tender to be made on or before the anniversary date of this lease next ensuing after the expiration of ninety (90) days from the date such well is shut-in and thereafter on the anniversary date of this lease during the period such well is shut in, to the royalty owners. When such payment or tender is made it will be considered that gas is being produced within the meaning of the entire lease.  Notwithstanding any other provision to the contrary, this lease shall not terminate because of a failure to properly or timely make shut-in gas well payment unless Lessor shall have given Lessee written notice of such failure to properly or timely make such shut-in gas well payment and Lessee shall have failed for a period of sixty (60) days after receipt of such notice to tender such late payment or such payment in the proper amount, together with a late or improper payment penalty of $100.00.

8.      **Lesser Interest.**  The respective amounts of all delay rentals, royalties, and other payments are to be calculated in proportion to Lessor's interest in such rights with respect to which each such payment is made; that is, in case Lessor owns less of an interest in any of such rights than the full and entire interest therein, then the payments in respect to such rights shall be paid to Lessor only in the proportion which Lessor's interest in such rights bears to the full and entire interest in such rights.

Corder v. Antero

BK1496 PG1205

9.      **Apportionment of Payments.**  If the leased premises are now, or shall hereafter be owned in severalty or in separate tracts, the premises nevertheless shall be developed and operated as one lease, and all rentals, royalties and payments provided for shall be treated as an entirety and shall be divided among, and paid to, such separate owners in the proportion that the acreage owned by each such separate owner bears to the entire leased acreage.

10.      **Assignment.**  The rights of either party hereunder may be assigned, in whole or in part, and the provisions hereof shall extend to the heirs, successors and assigns, of the parties hereto, but no change in division of ownership of the land, rentals, royalties, or other payments hereunder, or interest therein, however accomplished, shall operate to enlarge the obligations or diminish the rights of Lessee. No change in the ownership of the land, or any interest herein, shall be binding on Lessee until thirty (30) days after Lessee shall have been furnished by registered U.S. Mail at Lessee's principal place of business with a certified copy of all recorded instruments, all court proceedings and all other necessary evidence of any transfer, inheritance or sale of said rights. In event of the assignment of this lease as to a segregated portion of said land, the shut-in royalties and other payments payable hereunder shall be apportioned among the several leasehold owners ratably according to the surface areas attributable to each, and default in shut-in royalties or other payments by one such leasehold owner or Lessee shall not affect the rights of the other leasehold owners or Lessees hereunder. In case Lessee assigns this Lease, in whole or in part, Lessee shall be relieved of all obligations with respect to the assigned portion or portions arising subsequent to the date of assignment.

11.      **Surrender.**  Lessee may, at any time or from time to time, execute and deliver to Lessor or place of record a surrender covering all or any part of the leased premises and thereupon shall be relieved of all obligations thereafter to accrue with respect to the leased premises so surrendered.

12.      **Pooling.**  Lessor grants unto Lessee the right to pool into a separate drilling or production unit(s), as to any one or more formations, said land or any part thereof and the leasehold estates in the vicinity of said land, whether contiguous or non-contiguous, held by Lessee or other mineral owners or lessees under other leases, when in Lessee's judgment, it is necessary or advisable to create such pools to develop and operate efficiently such lands. Any such pool shall not substantially exceed 80 acres each in area for oil and 640 acres each in area for gas, plus, in both instances, a tolerance of ten percent (10%); provided however, that larger pools may be created to conform to any well spacing or unit pattern prescribed by any governmental authority. The units formed by pooling as to any one or more formations need not conform in size or area with the unit or units into which the lease is pooled or combined as to any formation or formations, and oil units need not conform to the area within gas units. Lessee, alone or with or other mineral owners or lessees under other leases, may form any pool before or after completion of a well thereon by recording in the county wherein the pooled land(s) are located, a declaration of such pooling. Neither the pooling nor the provisions hereof shall operate as a transfer to title of any interest in the leased premises. The commencement of a well, the conduct of other drilling operations, the completion of a well or dry hole, or the operation of a producing well on the pooled area, shall be considered for all purposes (except as to royalties) as if said well were located on, or such drilling operations were conducted upon the lands covered by this lease whether or not such well is located upon, or such drilling operations are conducted upon, said lands. The royalties provided for in Paragraph 3 hereof shall be tendered or paid to Lessor in the proportion that Lessor's acreage in the pooled area(s) bears to the total pooled area. Lessee shall have the right but not the obligation, to reduce, enlarge, or modify such pool(s) at any time. The royalties and such other payments tendered or paid thereafter shall then be based upon the proportionate acreage and interests in the revised pool. At any time the pool is not being operated as aforesaid, the declaration of pooling may be surrendered and canceled of record. Such cancellation or surrender shall not affect a surrender or cancellation of this lease.

13.      **Other Rights – Lessee.**  Lessee shall have the right to use, free of cost, oil, gas and water produced on said land for its operations except water from wells of Lessor. Lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing. No part of the surface of the leased premises shall, without the written consent of Lessee, be let, granted or licensed by Lessor to any other party for the location, construction or maintenance of structures, tanks, pits, reservoirs, equipment or machinery to be used for the purpose of exploring, developing or operating adjacent lands for oil or gas. Lessee shall also have the right to use, free of cost, any pipeline(s) laid under the terms of this lease for the transportation of gas produced off of the lands leased hereunder. Upon termination or expiration of this lease, Lessee shall have the option to purchase a pipeline right of way for any existing pipelines laid under the terms of this lease pursuant to paragraph 19 hereof.

14.      **Other Rights – Lessor.**  Lessee shall bury below plow depth its pipelines on the leased premises when requested by a Lessor owning an interest in the surface. No well shall be drilled within 200 feet of any house or barn now on the leased premises without the written consent of the owner of the surface on which such house or barn is located. Lessee shall pay for actual damages to growing crops, merchantable timber and fences caused by its operations on said lands.

15.      **Warranties.**  ~~Lessor hereby warrants and agrees to defend the title to the lands and interest described in Paragraph 1, but if the interest of Lessor covered by this lease is expressly stated to be less than the entire fee or mineral estate, Lessor's warranty shall be limited to the interest so stated. Lessor further warrants that the lands hereby leased are not subject to any valid prior oil and gas leases. Lessee may purchase or lease the rights of any party claiming any interest in said land and exercise such rights as may be obtained thereby and Lessee shall not suffer any forfeiture nor incur any liability to Lessor by reason thereof. Lessee shall have the right at any time to pay for Lessor, any mortgage, taxes or other lien on said lands, in the event of default of payment by Lessor, and then be subrogated to the rights of the holder thereof. Any such payments made by Lessee for Lessor may be deducted from any amounts of money which may become due Lessor under this lease.~~

16.      **Force Majeure.**  Should Lessee be prevented from complying with any expressed or implied covenant of this lease, from conducting drilling or reworking operations thereon or from producing oil or gas by reason of scarcity of, or inability to obtain or to use equipment or material, or by operation of force majeure, or because of any federal or state law or any order, rule or regulation of a governmental authority, then while so prevented, Lessee's obligations to comply with such covenant shall be suspended, and Lessee shall not be liable in damages for failure to comply therewith; and this lease shall be extended while and so long as Lessee is prevented by any such cause from conducting drilling or reworking operations on, or from producing oil or gas or other hydrocarbons from the leased premises; and the time while Lessee is so prevented shall not be counted against the Lessee, anything in this lease to the contrary notwithstanding, and, if such cause shall extend within 120 days of the end of the primary term, this lease shall be extended for 120 days after the cessation of such cause and as long thereafter as there are operations on or production from the lease or lands pooled with it.

Corder v. Antero

Corder v. Antero

BK1496 PG1206

17.     **Adverse Claim.** If Lessee receives written notice of an adverse claim to the leased premises, affecting all or any part of the payments due hereunder, Lessee may, at its sole discretion, withhold payment or delivery of same without obligation to pay interest or penalty until such time as Lessor's ownership is determined by compromise, or by final decree of a court of competent jurisdiction, or Lessee may file a petition for interpleader. Lessee shall in no event be liable for interest or penalty for any such amounts withheld.

18.     **Payments.**     All payments are to be mailed to:   Garnett Cottrill
                                                              323 Forest Park Circle
                                                              Longwood, FL 32779

who is (are) hereby appointed agent(s), if designated as 'Agent" above, to receive and receipt for the same and to receive notices given by Lessee as provided herein. Lessee shall not be obligated to make payments or give notices to more than the number of payees hereinabove designated. Lessee shall not be obligated to make payments to any individual payee or agent hereunder until payments exceed the sum of Twenty-Five Dollars ($25.00), but In any case, payments shall be made at least once each calendar year, Lessee shall not be obligated to see to the application of any monies paid by Lessee to Lessor or to the agent(s) designated herein. Until such agent(s) or payee(s) is appointed or designated as above required, Lessee may withhold payment due hereunder without liability for interest or penalty. The depositing of such payments hereunder in any post office addressed as above set out fourth shall be deemed payment or tender as herein provided. Notwithstanding the death of Lessor, payment or tender to the deceased Lessor shall be binding on the heirs, devisees, executors, administrators and personal representatives of Lessor and his successors in interest.

19.     **Pipeline Option.** ~~For and in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, at the expiration of termination of this lease, Lessee shall be given the option to purchase pipeline right(s) of way for any existing pipelines laid under the terms of this lease for the price of $1.00 per linear foot. Lessee shall have one (1) year to exercise this option from, the later of, the expiration or termination of this lease or after receiving written notification from the Lessor stating that said lease has expired or been terminated and demanding that Lessee exercise the aforedescribed option or abandon its pipelines in place.~~

20.     **Successors and Assigns.** This lease and all provisions thereof shall be applicable to and binding upon the parties and their respective heirs, devisees, personal representatives, successors and assigns. Reference herein to Lessor and Lessee shall include reference to their respective heirs, devisees, personal representatives, successors and assigns. Should any one or more of the parties named above as Lessors not execute this lease, it shall nevertheless be binding upon the party or parties executing same.

21.     **Pre-Existing Wells.** It is mutually agreed between Lessee and Lessor that any and all existing oil and/or gas wells located on the premises are specifically excepted and excluded from the operations of this lease.

22.     **Affidavit of Non-Production.** Lessor hereby warrants that (i) the property is not encumbered by any enforceable oil or gas use of record or otherwise executed by the Lessor and that (ii) Lessor is not currently receiving any bonus, rental, production royalty or payment, or shut-in royalty as the result of any prior oil and gas lease covering any or all of the subject property, and that there have been no wells drilled upon the subject property or upon any lands with which the property has been combined in a drilling or production unit, with the exception of the well privately owned by Lessor.

23.     **Compliance with Statutes.** It is agreed between the parties hereto that in the event any provision or portion of this oil and gas lease is determined by a court of competent jurisdiction, regulatory agency, regulatory body, or legislative body to be in violation of local, state or federal statute, rule or regulation, the relevant portion of the subject provision or portion of this oil and gas lease which is not in compliance with such statute, rule or regulation shall be severed from this agreement to the extent necessary to comply with such statute, rule or regulation, and this oil and gas lease shall continue in full force and effect as amended.

24.     **Right of First Refusal.** ~~If at any time within the primary term of this lease or any continuation or extension thereof, Lessor receives any bona fide offer, acceptable to Lessor, to grant an additional lease ("Top Lease") covering all or part of the above described land, Lessee shall have the continuing option by meeting any such offer to acquire a Top Lease on equivalent terms and conditions. Any offer must be in writing and must set forth the proposed lessee's name, bonus consideration and royalty consideration to be paid for such Top Lease, and include a copy of the lease form to be utilized reflecting all pertinent and relevant terms and conditions of the Top Lease. Lessee shall have fifteen (15) days (exclusive of Saturdays, Sundays and Federal holidays) after receipt from Lessor of a complete copy of any such offer to advise Lessor in writing of its election to enter into an oil and gas lease with Lessor on equivalent terms and conditions, as to all or any part of the above described land. If Lessee fails to notify Lessor within the aforesaid fifteen (15) day period of its election to meet any such bona fide offer, Lessor shall have the right to accept said offer. Any Top Lease granted by Lessor in violation of this provision shall be null and void.~~

Corder v. Antero

BK1496 PG1207

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF FOR ADDITIONAL PROVISONS

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands, signed and acknowledged in the presence of:

LESSOR

Garnett Cottrill

ACKNOWLEDGEMENT

STATE OF WEST VIRGINIA Florida)
COUNTY OF FLORIDA Seminole )
          The foregoing instrument was acknowledged before me this 8 day of August , 2012, by
Garnett Cottrill

My Commission Expires: 3|27|15                          Notary Public

KATIE BALLINGER
MY COMMISSION # EE 0752#J
EXPIRES: March 27, 2015
Bonded Thru Notary Public Underwriters

This instrument prepared by the following; when recorded, please return to:

Antero Resources Appalachian Corporation
P.O. Box 410
Bridgeport, WV  26330

Corder v. Antero

DK1496 PG1208

**EXHIBIT "A"**

Attached to and made a part of that certain oil and gas lease dated July 24, 2012  by and between Garnett Cottrill, as lessors and Antero Resources Appalachian Corporation, as lessee, to-wit:

The following provisions shall supplement the printed provisions of the Lease; and, in the event of any conflict between the following supplemental provisions, and the provisions of the printed Lease, these supplemental provisions shall prevail and control:

**SUPERSEDE CLAUSE**
All term and provision of this Exhibit A supersede and replace those in the body of the oil and gas lease, to which this is attached, whenever they conflict.

All reference herein made to One-Eighth (12 ½%) royalty are hereby amended to read Fifteen (15.0%) percent royalty.

**Market Enhancement (Gross Proceeds) Clause**
It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil, gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements.  However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.

Signed for Identification:

*Garnett Cottrill*

Garnett Cottrill

**This instrument prepared by the following; when recorded, please return to:**

Antero Resources Appalachian Corporation
P.O. Box 410
Bridgeport, WV  26330

Antero

Corder v. Antero

DK1498 PG0865

FOR JOSSS0, APPALACHIAN CORPORATION
[illegible]
[illegible]

Susan J Thomas
HARRISON County 01:48:55 PM
Instrument No 201200042913
Date Recorded 09/21/2012
Document Type LEA
Pages Recorded 6
Book-Page       1498-865
Recording Fee $6.00
Additional     $0.00

## OIL AND GAS LEASE
### (PAID-UP)

Lessor:  Marlyn Sigmon, heir of Jesse C. Corder
Lessee:  Antero Resources Appalachian Corporation
Lease Number _____
Prospect: Greenbrier
WV-PA Revised– ARAC/PAL Rev. June-09

This Agreement, made and entered into this day of July 24th, 2012, by and between Marlyn Sigmon, 154 Clarendon Circle, Danville, VA, 24541, hereinafter referred to individually and collectively as "Lessor," and Antero Resources Appalachian Corporation, 1625 17th Street, Suite 300., Denver, CO 80202, hereinafter referred to as "Lessee;" WITNESSETH THAT:

1.       Leasing.        Lessor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, and the covenants herein contained, hereby grants, demises, leases and lets exclusively unto Lessee the lands hereinafter described for the purposes of:

a)   exploring by geological and geophysical and other methods, (including, but not limited to, conducting seismic surveys), drilling either vertically or horizontally, operating for, producing oil or gas or both including methane gas present in or associated with any formations, horizons, strata or zones and/or; and,

b)   for the further purpose and with the exclusive right in the Lessee, as it may see fit, to store any kind of gas therein by pumping or otherwise introducing the same into any sand or sands, substrata or horizon in an under said land, and the right to remove the same by pumping or otherwise through any well or wells on said land or other lands, and to use said land for protecting gas stored within and under adjoining and neighboring lands, together also with the right to drill, operate and maintain wells for the purpose of injecting, storing and disposing of waste fluids from within and under said land or other lands resulting from or incidental to the production of or injection, storage and removal of gas,

together with the right and easement to construct, operate, repair, maintain, resize and remove pipelines, telephone, power and electric lines, tanks, ponds, roadways, plants, equipment and structures thereon to produce, save, store and take care of such substances, and the exclusive right to inject air, gas, water, brine or other fluids into the subsurface strata and any and all other rights and privileges necessary, incident to, or convenient for the economical operation of the lands, alone or conjointly with neighboring lands for these purposes, said lands being situated on the waters of Turtle Tree Fork of Ten Mile, in Union District, County of Harrison, State of West Virginia, and being bounded now or formerly substantially as follows, to wit:

On the North by lands of:        County Road 30/5
On the East by lands of:         Franklin D. Riffle
On the South by lands of:        James Corder
On the West by lands of:         Bill Devericks

Said lands being identified for tax purposes as Tax Parcel ID: 20-361-3, 4, 5 as of this date. Notwithstanding said tax map designation, this lease shall be effective as to the tract actually owned by Lessor whether or not the tax map designation correctly identifies the location of the tract. Being also the same interest acquired by the Lessor by Affidavit of Heirship dated August 8, 2012 and recorded on August 13, 2012 in the Recorder of Deeds Office in and for Harrison County, State of West Virginia, filed as Affidavit of Heirship Book 39 Page 986. It being the purpose and intent of Lessor to lease, and Lessor does hereby lease, all strips or parcels of land now owned by Lessor, or hereafter acquired which adjoin the lands above described, and all interests in the land above described now owned or hereafter acquired by Lessor. For all purposes of this lease, including determining the amount of delay rentals, royalties and shut-in royalties hereunder, said land shall be deemed to contain 48.80 acres whether it actually contains more or less. For all purposes of this lease, references to oil and gas or either or both of them shall mean oil, or gas, or both and all substances which are constituents of or produced with oil or gas, whether similar or dissimilar or produced in a gaseous, liquid, or solid state.

2    Term.  Subject to the other provisions hereof, this lease shall remain in force for a term of Five (5) years from this date (herein called "primary term") or:

a)   as long thereafter as oil and gas, or either of them, is produced from the land or from lands pooled therewith, or drilling operations are continuously prosecuted as hereinafter provided, or this lease is otherwise maintained in effect pursuant to the provisions hereof; or,

b)   as long thereafter as gas is being stored, held in storage, or withdrawn from the premises by Lessee or said land is used for the protection of stored gas alone or in conjunction with other lands or Lessee is actively engaged in developing the area including said lands for the storage of gas. It is agreed that the cessation of production from wells on the leased premises or upon other lands unitized therewith, after the expiration of the original term, shall not terminate this lease whether the pooling units have been dissolved or not, if the land is used for the storage or protection of stored gas prior to the plugging and abandonment of wells from which oil and/or gas has been produced. It is understood that a well need not be drilled on the premises to permit the storage of gas, and it is agreed that the Lessee shall be the sole judge as to whether gas is being stored within the leased premises or said land is being used for the protection of stored gas and that its determination shall be final and conclusive.

"Drilling operations" include operations for the drilling of a new well, the reworking, deepening or plugging back of a well or hole or other operations conducted in an effort to obtain or reestablish production of oil or gas. Drilling operations shall be considered to be "continuously prosecuted" if not more than 120 days shall elapse between the completion or abandonment of one well or hole and the commencement of drilling operations on another well or hole.

3.       Royalties.        The royalties to be paid by Lessee are: (a) on oil, One-Eighth (12.5%) of that produced and saved and delivered at the wells or into the pipeline to which the wells may be connected. Lessee may from time to time purchase any royalty oil in its possession, paying the market price then prevailing for the field where produced, and Lessee may sell any royalty oil in its possession and pay Lessor the price received by Lessee for such oil computed at the well, less One-Eighth (12.5%) of all Post Production Costs and less the same fractional share of all production, petroleum excise and severance taxes; (b) on gas, including casinghead gas or other gaseous substance, produced from said land and sold or used beyond the well or for the

Corder v. Antero

Corder v. Antero

BK1498 PG0866

extraction of gasoline or other product, an amount equal to One-Eighth (12.5%) of the net amount realized by Lessee computed at the wellhead from the sale of such substances. On gas sold at the well, the royalty shall be One-Eighth (12.5%) of the amount realized by Lessee from such sale, less One-Eighth (12.5%) of all Post Production Costs and less the same fractional share of all production, petroleum excise and severance taxes.

As used in this provision, "Post Production Costs" shall mean all costs actually incurred by Lessee or its affiliate and all losses of produced volumes whether by use as fuel, line loss, flaring, venting or otherwise from and after the wellhead to the point of sale. Post Production Costs includes, without limitation, all costs of gathering, treating, processing, blending, marketing, compression, dehydration, transportation, removal of liquid or gaseous substances, and/or removal of impurities of or from the affected oil and gas, and costs of any other activities associated with making the oil and gas ready for movement, sale or use. For royalty calculation purposes, Lessee shall never be required to adjust the sales proceeds to account for the purchaser's revenues, receipts, costs or charges, or other activities that occur, beyond and past the point of sale. Lessee or its affiliate shall have the right to construct, maintain and operate any facilities providing some or all of the services identified as Post Production Costs. If Lessee or its affiliate does so, the actual costs of such facilities shall be included in the Post Production Costs as a per barrel or per mcf (or per mmbtu, at Lessee's election) charge, as appropriate, calculated by spreading the construction, maintenance and operating costs for such facilities over the reasonably estimated total production volumes attributable to the well or wells using such facilities.

In no event will the royalties payable hereunder exceed One-Eighth (12.5%) of any governmentally-imposed sales price ceiling applicable to Lessee's sales or One-Eighth (12.5%) of the net amounts received by Lessee not subject to refund, whichever is the lesser; provided that any amounts held by Lessee subject to refund will be promptly distributed, without interest, when Lessee's sale price is finally determined by judicial or administrative authority. Payment of royalties hereunder shall be made or tendered on or before the end of the month following the production month, beginning no later than six (6) months after Date of First Sales.

4.      Delay Rental.  It is hereby agreed and acknowledged by Lessor and Lessee that this is a Paid-Up Oil and Gas Lease and all delay rentals due and payable under this agreement have been paid in advance and have been included in the consideration paid to Lessor by Lessee for this oil and gas lease.

It is agreed that Lessee may drill or not drill on the leased premises, as it may elect, and that the consideration and rentals paid constitute adequate compensation for such privilege. No implied covenant shall be read into this lease requiring Lessee to drill or to continue drilling on said land, or fixing the measure of diligence necessary on Lessee's part.

5.      Payment for Storage or Storage Protection Privileges.  ~~In full compensation for the storage and storage protection rights herein granted and in lieu of all delay rental, or royalty due or to become due for the right to produce or for the production of oil or gas from the sands, strata, or horizons where gas may be stored or being protected as herein provided, Lessee covenants and agrees to pay Lessor, when no wells on the leased premises are utilized for the storage of gas, an annual storage rental of Five Dollars per acre ($5.00) dollars, payable quarterly in advance, beginning at the next payment date after gas shall have been stored under the terms of this agreement and continuing until the leased premises shall no longer be used for storage purposes, or until wells on the leased premises are utilized for the storage of gas, in which event Lessee shall cease paying storage rental to Lessor and pay in lieu thereof, a storage well rental or royalty of Two Hundred and no/100ths ($ 200.00) dollars, per well quarterly in advance, as long as such shall be so utilized, subject to the right of cancellation or surrender hereinafter provided. Any storage rental paid for time beyond the date of such utilization of a well-yielding storage well rental or royalty shall be credited upon the first storage well rental or royalty due upon the same, Lessee agrees to give Lessor written notice of the use of the leased premises and any wells drilled thereon for the storage of gas or protection of stored gas.~~

~~Notwithstanding anything contained herein to the contrary, the payment of storage rentals shall be subject to the "Lesser Interest", "Apportionment of Payments" and "Assignment" provisions of this lease. In addition, this lease shall be deemed to include the number of acres specified in Paragraph 1 for the calculation of storage payments.~~

6.      Dry Hole Clause and Cessation of Production.  If during the last year of the primary term and prior to the discovery of oil or gas on said land, Lessee should drill a dry hole thereon, or, if after discovery of oil or gas either before or during the last year of the primary term, the production thereof should cease during the last year of said term from any cause, no rental payment or operations are necessary in order to keep this lease in force during the remainder of the primary term. If, at the expiration of the primary term, Lessee has commenced operations for drilling a new well or reworking an old well, this lease shall continue in force as long as such drilling or reworking operations continue, or if after the expiration of the primary term, production on this lease shall cease, this lease shall continue in force if drilling or reworking operations are commenced within 120 consecutive days after such cessation of production; if production is restored or additional production is discovered as a result of any such drilling or reworking operations, conducted without cessation of more than 120 consecutive days, this lease shall continue as long thereafter as oil or gas is produced and as long as additional drilling or reworking operations are continued without cessation for more than 120 consecutive days.

7.      Shut-in Royalty.  During any period (whether before or after expiration of the primary term hereof) when gas is not being so sold or used and the well or wells are shut in and there is no current production of oil or operations on said leased premises sufficient to keep this lease in force, Lessee shall pay or tender a royalty of Twenty Dollar ($20.00) per year per net royalty acre retained hereunder, such payment or tender to be made on or before the anniversary date of this lease next ensuing after the expiration of ninety (90) days from the date such well is shut-in and thereafter on the anniversary date of this lease during the period such well is shut in, to the royalty owners. When such payment or tender is made it will be considered that gas is being produced within the meaning of the entire lease. Notwithstanding any other provision to the contrary, this lease shall not terminate because of a failure to properly or timely make shut-in gas well payments unless Lessor shall have given Lessee written notice of such failure to properly or timely make such shut-in gas well payment and Lessee shall have failed for a period of sixty (60) days after receipt of such notice to tender such late payment or such payment in the proper amount, together with a late or improper payment penalty of $100.00.

8.      Lesser Interest.  The respective amounts of all delay rentals, royalties, and other payments are to be calculated in proportion to Lessor's interest in such rights with respect to which such payment is made; that is, in case Lessors own less of an interest in any of such rights than the full and entire interest therein, then the payments in respect to such rights shall be paid to Lessor only in the proportion which Lessor's interest in such rights bears to the full and entire interest in such rights.

Corder v. Antero

Corder v. Antero

BK1498 PG0867

9.     Apportionment of Payments.  If the leased premises are now, or shall hereafter be owned in severally or in separate tracts, the premises nevertheless shall be developed and operated as one lease, and all rentals, royalties and payments provided for shall be treated as an entirety and shall be divided among, and paid to, such separate owners in the proportion that the acreage owned by each such separate owner bears to the entire leased acreage.

10.     Assignment. The rights of either party hereunder may be assigned, in whole or in part, and the provisions hereof shall extend to the heirs, successors and assigns, of the parties hereto, but no change in division of ownership of the land, rentals, royalties, or other payments hereunder, or interest therein, however accomplished, shall operate to enlarge the obligations or diminish the rights of Lessee. No change in the ownership of the land, or any interest herein, shall be binding on Lessee until thirty (30) days after Lessee shall have been furnished by registered U.S. Mail at Lessee's principal place of business with a certified copy of all recorded instruments, all court proceedings and all other necessary evidence of any transfer, inheritance or sale of said rights. In event of the assignment of this lease as to a segregated portion of said land, the shut-in royalties and other payments payable hereunder shall be apportioned among the several leasehold owners ratably according to the surface areas attributable to each, and default in shut-in royalties or other payments by one such leasehold owner or Lessee shall not affect the rights of the other leasehold owners or Lessees hereunder. In case Lessee assigns this Lease, in whole or in part, Lessee shall be relieved of all obligations with respect to the assigned portion or portions arising subsequent to the date of assignment.

11.     Surrender. Lessee may, at any time or from time to time, execute and deliver to Lessor or place of record a surrender covering all or any part of the leased premises and thereupon shall be relieved of all obligations thereafter to accrue with respect to the leased premises so surrendered.

12.     Pooling. Lessor grants unto Lessee the right to pool into a separate drilling or production unit(s), as to any one or more formations, said land or any part thereof and the leasehold estates in the vicinity of said land, whether contiguous or non-contiguous, held by Lessee or other mineral owners or lessees under other leases, when in Lessee's judgment, it is necessary or advisable to create such pools to develop and operate efficiently such lands. Any such pool shall not substantially exceed 80 acres each in area for oil and 640 acres each in area for gas, plus, in both instances, a tolerance of ten percent (10%); provided however, that larger pools may be created to conform to any well spacing or unit pattern prescribed by any governmental authority. The units formed by pooling as to any one or more formations need not conform in size or area with the unit or units into which the lease is pooled or combined as to any formation or formations, and oil units need not conform to the area within gas units. Lessee, alone or with or other mineral owners or lessees under other leases, may form any pool before or after completion of a well thereon by recording in the county wherein the pooled land(s) are located, a declaration of such pooling. Neither the pooling nor the provisions hereof shall operate as a transfer to title of any interest in the leased premises. The commencement of a well, the conduct of other drilling operations, the completion of a well or dry hole, or the operation of a producing well on the pooled area, shall be considered for all purposes (except as to royalties) as if said well were located on, or such drilling operations were conducted upon the lands covered by this lease whether or not such well is located upon, or such drilling operations are conducted upon, said lands. The royalties provided for in Paragraph 3 hereof shall be tendered or paid to Lessor in the proportion that Lessor's acreage in the pooled area(s) bears to the total pooled area. Lessee shall have the right but not the obligation, to reduce, enlarge, or modify such pool(s) at any time. The royalties and such other payments tendered or paid thereafter shall then be based upon the proportionate acreage and interests in the revised pool. At any time the pool is not being operated as aforesaid, the declaration of pooling may be surrendered and canceled of record. Such cancellation or surrender shall not affect a surrender or cancellation of this lease.

13.     Other Rights – Lessee. Lessee shall have the right to use, free of cost, oil, gas and water produced on said land for its operations except water from wells of Lessor. Lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing. No part of the surface of the leased premises shall, without the written consent of Lessee, be let, granted or licensed by Lessor to any other party for the location, construction or maintenance of structures, tanks, pits, reservoirs, equipment or machinery to be used for the purpose of exploring, developing or operating adjacent lands for oil or gas. Lessee shall also have the right to use, free of cost, any pipeline(s) laid under the terms of this lease for the transportation of gas produced off of the lands leased hereunder. Upon termination or expiration of this lease, Lessee shall have the option to purchase a pipeline right of way for any existing pipelines laid under the terms of this lease pursuant to paragraph 19 hereof.

14.     Other Rights – Lessor. Lessee shall bury below plow depth its pipelines on the leased premises when requested by a Lessor owning an interest in the surface. No well shall be drilled within 200 feet of any house or barn now on the leased premises without the written consent of the owner of the surface on which such house or barn is located. Lessee shall pay for actual damages to growing crops, merchantable timber and fences caused by its operations on said lands.

15.     Warranties. Lessor hereby warrants and agrees to defend the title to the lands and interest described in Paragraph 1, but if the interest of Lessor covered by this lease is expressly stated to be less than the entire fee or mineral estate, Lessor's warranty shall be limited to the interest so stated. Lessor further warrants that the lands hereby leased are not subject to any valid prior oil and gas leases. Lessee may purchase or lease the rights of any party claiming any interest in said land and exercise such rights as may be obtained thereby and Lessee shall not suffer any forfeiture nor incur any liability to Lessor by reason thereof. Lessee shall have the right at any time to pay for Lessor, any mortgage, taxes or other lien on said lands, in the event of default of payment by Lessor, and then be subrogated to the rights of the holder thereof. Any such payments made by Lessee for Lessor may be deducted from any amounts of money which may become due Lessor under this lease.

16.     Force Majeure. Should Lessee be prevented from complying with any expressed or implied covenant of this lease, from conducting drilling or reworking operations thereon or from producing oil or gas by reason of scarcity of, or inability to obtain or to use equipment or material, or by operation of force majeure, or because of any federal or state law or any order, rule or regulation of a governmental authority, then while so prevented, Lessee's obligations to comply with such covenant shall be suspended, and Lessee shall not be liable in damages for failure to comply therewith; and this lease shall be extended while and so long as Lessee is prevented by any such cause from conducting drilling or reworking operations on, or from producing oil or gas or other hydrocarbons from the leased premises; and the time while Lessee is so prevented shall not be counted against the Lessee, anything in this lease to the contrary notwithstanding, and, if such cause shall cause shall extend within 120 days of the end of the primary term, this lease shall be extended for 120 days after the cessation of such cause and as long thereafter as there are operations on or production from the lease or lands pooled with it.

Corder v. Antero

Corder v. Antero

BK1698 PG0868

17.     **Adverse Claim.**  If Lessee receives written notice of an adverse claim to the leased premises, affecting all or any part of the payments due hereunder, Lessee may, at its sole discretion, withhold payment or delivery of same without obligation to pay interest or penalty until such time as Lessor's ownership is determined by compromise, or by final decree of a court of competent jurisdiction, or Lessee may file a petition for interpleader. Lessee shall in no event be liable for interest or penalty for any such amounts withheld.

18.     **Payments.**     All payments are to be mailed to:     Marilyn Sigmon
                                                                154 Clarendon Circle
                                                                Danville, VA 24541

who is (are) hereby appointed agent(s), if designated as "Agent" above, to receive and receipt for the same and to receive notices given by Lessee as provided herein. Lessee shall not be obligated to make payments or give notices to more than the number of payees hereinabove designated. Lessee shall not be obligated to make payments to any individual payee or agent hereunder until payments exceed the sum of Twenty-Five Dollars ($25.00), but in any case, payments shall be made at least once each calendar year. Lessee shall not be obligated to see to the application of any monies paid by Lessee to Lessor or to the agent(s) designated herein. Until such agent(s) or payee(s) is appointed or designated as above required, Lessee may withhold payment due hereunder without liability for interest or penalty. The depositing of such payments hereunder in any post office addressed as above set out fourth shall be deemed payment or tender as herein provided. Notwithstanding the death of Lessor, payment or tender to the deceased Lessor shall be binding on the heirs, devisees, executors, administrators and personal representatives of Lessor and his successors in interest.

19.    ~~Pipeline Option.  For and in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, at the expiration or termination of this lease, Lessee shall be given the option to purchase pipeline right(s) of way for any existing pipeline laid under the terms of this lease for the price of $1.00 per linear foot. Lessee shall have one (1) year to exercise this option from, the later of, the expiration or termination of this lease or after receiving written notification from the Lessor stating that said lease has expired or been terminated and demanding that Lessee exercise the aforedescribed option or abandon its pipelines in place.~~

20.     **Successors and Assigns.**  This lease and all provisions thereof shall be applicable to and binding upon the parties and their respective heirs, devisees, personal representatives, successors and assigns. Reference herein to Lessor and Lessee shall include reference to their respective heirs, devisees, personal representatives, successors and assigns. Should any one or more of the parties named above as Lessors not execute this lease, it shall nevertheless be binding upon the party or parties executing same.

21.     **Pre-Existing Wells.**  It is mutually agreed between Lessee and Lessor that any and all existing oil and/or gas wells located on the premises are specifically excepted and excluded from the operations of this lease.

22.     **Affidavit of Non-Production.**  Lessor hereby warrants that (i) the property is not encumbered by any enforceable oil or gas use of record or otherwise executed by the Lessor and that (ii) Lessor is not currently receiving any bonus, rental, production royalty or payment, or shut-in royalty as the result of any prior oil and gas lease covering any or all of the subject property, and that there have been no wells drilled upon the subject property or upon any lands with which the property has been combined in a drilling or production unit, with the exception of the well privately owned by Lessor.

23.     **Compliance with Statutes.**  It is agreed between the parties hereto that in the event any provision or portion of this oil and gas lease is determined by a court of competent jurisdiction, regulatory agency, regulatory body, or legislative body to be in violation of local, state or federal statute, rule or regulation, the relevant portion of the subject provision or portion of this oil and gas lease which is not in compliance with such statute, rule or regulation shall be severed from this agreement to the extent necessary to comply with such statute, rule or regulation, and this oil and gas lease shall continue in full force and effect as amended.

24.     **Right of First Refusal.**  ~~If at any time within the primary term of this lease or any continuation or extension thereof, Lessor receives any bona fide offer, acceptable to Lessor, to grant an additional lease ("Top Lease") covering all or part of the above described land, Lessee shall have the continuing option by meeting any such offer to acquire a Top Lease on equivalent terms and conditions. Any offer must be in writing and must set forth the proposed lessee's name, bonus consideration and royalty consideration to be paid for such Top Lease, and include a copy of the lease form to be utilized reflecting all pertinent and relevant terms and conditions of the Top Lease. Lessee shall have fifteen (15) days (exclusive of Saturdays, Sundays and Federal holidays) after receipt from Lessor of a complete copy of any such offer to advise Lessor in writing of its election to enter into an oil and gas lease with Lessor on equivalent terms and conditions, as to all or any part of the above described land. If Lessee fails to notify Lessor within the aforesaid fifteen (15) day period of its election to meet any such bona fide offer, Lessor shall have the right to accept said offer. Any Top Lease granted by Lessor in violation of this provision shall be null and void.~~

Corder v. Antero

Corder v. Antero

**BK1498 PG0869**

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF FOR ADDITIONAL PROVISONS

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands, signed and acknowledged in the presence of:

LESSOR

*Marlyn C Sigmon*

Marlyn Sigmon

## ACKNOWLEDGEMENT

STATE OF VIRGINIA )
CITY )
COUNTY OF DANVILLE )

The foregoing instrument was acknowledged before me this __2nd__ day of __August__, 2012, by Marlyn Sigmon.

My Commission Expires: __12-31-14__        _____
                                             Notary Public

This Instrument prepared by the following; when recorded, please return to:

Antero Resources Appalachian Corporation
P.O. Box 410
Bridgeport, WV 26330

Corder v. Antero

Corder v. Antero

**DK1498 PG0870**

## EXHIBIT "A"

Attached to and made a part of that certain oil and gas lease dated July 24, 2012  by and between Marlyn Sigmon, as lessors and Antero Resources Appalachian Corporation, as lessee, to-wit:

The following provisions shall supplement the printed provisions of the Lease; and, in the event of any conflict between the following supplemental provisions, and the provisions of the printed Lease, these supplemental provisions shall prevail and control:

**SUPERSEDE CLAUSE**
All term and provision of this Exhibit A supersede and replace those in the body of the oil and gas lease, to which this is attached, whenever they conflict.

All reference herein made to One-Eighth (12 ¹/₈%) royalty are hereby amended to read Fifteen (15.0%) percent royalty.

**Market Enhancement (Gross Proceeds) Clause**
It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil, gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements.  However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.

Signed for Identification:

_Marlyn L. Sigmon_
Marlyn Sigmon

**This instrument prepared by the following; when recorded, please return to:**

Antero Resources Appalachian Corporation
P.O. Box 410
Bridgeport, WV  26330

Corder v. Antero

Corder v. Antero

ANTERO RESOURCES APPALACHIAN CORPORATION
P.O. BOX 410
BRIDGEPORT, WV 26330-0410

BK1499 PG0147

Susan J Thomas
HARRISON County 02:43:42 PM
Instrument No 201200043521
Date Recorded 10/02/2012
Document Type LEA
Pages Recorded 6
Book-Page   1499-147
Recording Fee $6.00
Additional   $6.50

## OIL AND GAS LEASE
(PAID-UP)

Lessor:  Janet Packard and Leroy Packard, wife and husband, heir of Jesse C. Corder
Lessee.  Antero Resources Appalachian Corporation
Lease Number
Prospect: Greenbrier
WV-PA Revised– ARAC/PAL Rev. June-09

This Agreement, made and entered into this day of July 24th, 2012, by and between Janet Packard and Leroy Packard, wife and husband, 39425 Harbor Hills Blvd., Lady Lake, Florida, 32159, hereinafter referred to individually and collectively as "Lessor," and Antero Resources Appalachian Corporation, 1625 17th Street, Suite 300., Denver, CO 80202, hereinafter referred to as "Lessee." WITNESSETH THAT:

1.   Leasing.   Lessor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, and the covenants herein contained, hereby grants, demises, leases and lets exclusively unto Lessee the lands hereinafter described for the purposes of:

   a)   exploring by geological and geophysical and other methods, (including, but not limited to, conducting seismic surveys), drilling either vertically or horizontally, operating for, producing oil or gas or both including methane gas present in or associated with any formations, horizons, strata or zones and/or; and,

   b)   for the further purpose and with the exclusive right in the Lessee, as it may see fit, to store any kind of gas therein by pumping or otherwise introducing the same into any sand or sands, substrata or horizon in an under said land, and the right to remove the same by pumping or otherwise through any well or wells on said land or other lands, and to use said land for protecting gas stored within and under adjoining and neighboring lands, together also with the right to drill, operate and maintain wells for the purpose of injecting, storing and disposing of waste fluids from within and under said land or other lands resulting from or incidental to the production of or injection, storage and removal of gas,

together with the right and easement to construct, operate, repair, maintain, resize and remove pipelines, telephone, power and electric lines, tanks, ponds, roadways, plants, equipment and structures thereon to produce, save, store and take care of such substances, and the exclusive right to inject air, gas, water, brine or other fluids into the subsurface strata and any and all other rights and privileges necessary, incident to, or convenient for the economical operation of the lands, alone or conjointly with neighboring lands for these purposes, said lands being situated on the waters of Turtle Tree Fork of Ten Mile, in Union District, County of Harrison, State of West Virginia, and being bounded now or formerly substantially as follows, to wit:

On the North by lands of:       County Road 30/5
On the East by lands of:        Franklin D. Riffle
On the South by lands of:       James Corder
On the West by lands of:        Bill Devericks

Said lands being identified for tax purposes as Tax Parcel ID: 20-361-3, 4, 5 as of this date. Notwithstanding said tax map designation, this lease shall be effective as to the tract actually owned by Lessor whether or not the tax map designation correctly identifies the location of the tract. Being also the same interest acquired by the Lessor by Deed Book Deed dated October 10, 1928 and recorded on October 10, 1928 in the Recorder of Deeds Office in and for Harrison County, State of West Virginia, filed as Deed Book 393, Page 399. It being the purpose and intent of Lessor to lease, and Lessor does hereby lease, all strips or parcels of land now owned by Lessor, or hereafter acquired which adjoin the lands above described, and all interests in the land above described now owned or hereafter acquired by Lessor. For all purposes of this lease, including determining the amount of delay rentals, royalties and shut-in royalties hereunder, said land shall be deemed to contain 48.69 acres whether it actually contains more or less. For all purposes of this lease, references to oil and gas or either or both of them shall mean oil, or gas, and both and all substances which are constituents of or produced with oil or gas, whether similar or dissimilar or produced in a gaseous, liquid, or solid state.

2.   Term.   Subject to the other provisions hereof, this lease shall remain in force for a term of Five (5) years from this date (herein called "primary term") and:

   a)   as long thereafter as oil and gas, or either of them, is produced from the land or from lands pooled therewith, or drilling operations are continuously prosecuted as hereinafter provided, or this lease is otherwise maintained in effect pursuant to the provisions hereof; or,

   b)   as long thereafter as gas is being stored, held in storage, or withdrawn from the premises by Lessee or said land is used for the protection of stored gas alone or in conjunction with other lands or Lessee is actively engaged in developing the area including said lands for the storage of gas. It is agreed that the cessation of production from wells on the leased premises or upon other lands unitized therewith, after the expiration of the original term, shall not terminate this lease whether the pooling units have been dissolved or not, if the land is used for the storage or protection of stored gas prior to the plugging and abandonment of wells from which oil and/or gas has been produced. It is understood that a well need not be drilled on the premises to permit the storage of gas, and it is agreed that the Lessee shall be the sole judge as to whether gas is being stored within the leased premises or said land is being used for the protection of stored gas and that its determination shall be final and conclusive.

"Drilling operations" include operations for the drilling of a new well, the reworking, deepening or plugging back of a well or hole or other operations conducted in an effort to obtain or reestablish production of oil or gas. Drilling operations shall be considered to be "continuously prosecuted" if not more than 120 days shall elapse between the completion or abandonment of one well or hole and the commencement of drilling operations on another well or hole.

3.   Royalties.   The royalties to be paid by Lessee are: (a) on oil, One-Eighth (12.5%) of that produced and saved and delivered at the wells or into the pipeline to which the wells may be connected. Lessee may from time to time purchase any royalty oil in its possession, paying the market price then prevailing for the field where produced, and Lessee may sell any royalty oil in its possession, paying the price received by Lessee for such oil computed at the well, less One-Eighth (12.5%) of all Post Production Costs and less the same fractional share of all production, petroleum excise and severance taxes; (b) on gas,

Corder v. Antero

Corder v. Antero

**BK1499 PG0148**

including casinghead gas or other gaseous substance, produced from said land and sold or used beyond the well or for the extraction of gasoline or other product, an amount equal to One-Eighth (12.5%) of the net amount realized by Lessee computed at the wellhead from the sale of such substances. On gas sold at the well, the royalty shall be One-Eighth (12.5%) of the amount realized by Lessee from such sale, less One-Eighth (12.5%) of all Post Production Costs and less the same fractional share of all production, petroleum excise and severance taxes. As used in this provision, "Post Production Costs" shall mean all costs actually incurred by Lessee or its affiliate and all losses of Post Production Costs includes, without limitation, all costs of gathering, treating, processing, blending, marketing, compression, dehydration, transportation, removal of liquid or gaseous substances, and/or removal of impurities of or from the affected oil and gas, and costs of any other activities associated with making the oil and gas ready for movement, sale or use. For royalty calculation purposes, Lessee shall never be required to adjust the sales proceeds to account for the purchaser's revenues, receipts, costs or charges, or other activities that occur, beyond and past the point of sale. Lessee or its affiliate shall have the right to construct, maintain and operate any facilities providing some or all of the services identified as Post Production Costs. If Lessee or its affiliate does so, the actual costs of such facilities shall be included in the Post Production Costs as a per barrel or per mcf (or per mmbtu, at Lessee's election) charge, as appropriate, calculated by spreading the construction, maintenance and operating costs for such facilities over the reasonably estimated total production volumes attributable to the well or wells using such facilities.

In no event will the royalties payable hereunder exceed One-Eighth (12.5%) of any governmentally-imposed sales price ceiling applicable to Lessee's sales or One-Eighth (12.5%) of the net amounts received by Lessee subject to refund will be promptly distributed, without interest, when Lessee's lessee; provided that any amounts held by Lessee subject to refund will be promptly distributed, without interest, when Lessee's sale price is finally determined by judicial or administrative authority. Payment of royalties hereunder shall be made or tendered on or before the end of the month following the production month, beginning no later than six (6) months after Date of First Sales.

4.      **Delay Rental.** It is hereby agreed and acknowledged by Lessor and Lessee that this is a Paid-Up Oil and Gas Lease and all delay rentals due and payable under this agreement have been paid in advance and have been included in the consideration paid to Lessor by Lessee for this oil and gas lease.

It is agreed that Lessee may drill or not drill on the leased premises, as it may elect, and that the consideration and rentals paid constitute adequate compensation for such privilege. No implied covenant shall be read into this lease requiring Lessee to drill or to continue drilling on said land, or fixing the measure of diligence necessary on Lessee's part.

5.      ~~Payment for Storage or Storage Protection Privileges. In full compensation for the storage and storage protection rights herein granted and in lieu of all delay rental, or royalty due or to become due for the right to produce or for the production of oil or gas from the sands, strata, or horizons where gas may be stored or being protected as herein provided, Lessee covenants and agrees to pay Lessor, when no wells on the leased premises are utilized for the storage of gas, an annual storage rental of Five Dollars per acre ($5.00) dollars, payable quarterly in advance, beginning at the next payment date after gas shall have been stored under the terms of this agreement and continuing until the leased premises shall no longer be used for storage purposes, or until wells on the leased premises are utilized for the storage of gas, in which event Lessee shall cease paying storage rental to Lessor and pay in lieu thereof, a storage well rental or royalty of Two Hundred and no/100 (2,200.00) dollars, per well quarterly in advance, as long as such shall be so utilized; subject to the right of cancellation or surrender hereinafter provided. Any storage rental paid for time beyond the date of such utilization of a well yielding storage well rental or royalty shall be credited upon the first storage well rental or royalty due upon the same. Lessee agrees to give Lessor written notice of the use of the leased premises and any wells drilled thereon for the storage of gas or protection of stored gas.~~

~~Notwithstanding anything contained herein to the contrary, the payment of storage rentals shall be subject to the "Lessor Interest", "Apportionment of Payments" and "Assignment" provisions of this lease. In addition, this lease shall be deemed to include the number of acres specified in Paragraph 1 for the calculation of storage payments.~~

6.      **Dry Hole Clause and Cessation of Production.** If during the last year of the primary term and prior to the discovery of oil or gas on said land, Lessee should drill a dry hole thereon, or, if after discovery of oil or gas either before or during the last year of the primary term, the production thereof should cease during the last year of said term from any cause, no rental payment or operations are necessary in order to keep this lease in force during the remainder of the primary term. If, at the expiration of the primary term, Lessee has commenced operations for drilling a new well or reworking an old well, this lease shall continue in force as long as such drilling or reworking operations continue, or if after the expiration of the primary term, production on this lease shall cease, this lease shall continue in force if drilling or reworking operations are commenced within 120 consecutive days after such cessation of production; if production is restored or additional production is discovered as a result of any such drilling or reworking operations, conducted without cessation of more than 120 consecutive days, this lease shall continue as long thereafter as oil or gas is produced and as long as additional drilling or reworking operations are continued without cessation for more than 120 consecutive days.

7.      **Shut-in Royalty.** During any period (whether before or after expiration of the primary term hereof) when gas is not being so sold or used and the well or wells are shut in and there is no current production of oil or operations on said leased premises sufficient to keep this lease in force, Lessee shall pay or tender a royalty of Twenty Dollar ($20.00) per year per net royalty acre retained hereunder, such payment or tender to be made on or before the anniversary date of this lease next ensuing after the expiration of ninety (90) days from the date such well is shut-in and thereafter on the anniversary date of this lease during the period such well is shut in, to the royalty owners. When such payment or tender is made it will be considered that gas is being produced within the meaning of the entire lease. Notwithstanding any other provision to the contrary, this lease shall not terminate because of a failure to properly or timely make shut-in gas well payments unless Lessor shall have given Lessee written notice of such failure to properly or timely make such shut-in gas well payment and Lessee shall have failed for a period of sixty (60) days after receipt of such notice to tender such late payment or such payment in the proper amount, together with a late or improper payment penalty of $100.00.

8.      **Lessor Interest.** The respective amounts of all delay rentals, royalties, and other payments are to be calculated in proportion to Lessor's interest in such rights with respect to which each such payment is made; that is, in case Lessor owns less of an interest in any of such rights than the full and entire interest therein, then the payments in respect to such rights shall be paid to Lessor only in the proportion which Lessor's interest in such rights bears to the full and entire interest in such rights.

Corder v. Antero

Corder v. Antero

BK1499 PG0149

9.  **Apportionment of Payments.** If the leased premises are now, or shall hereafter be owned in severalty or in separate tracts, the premises nevertheless shall be developed and operated as one lease, and all rentals, royalties and payments provided for shall be treated as an entirety and shall be divided among, and paid to, such separate owners in the proportion that the acreage owned by each such separate owner bears to the entire leased acreage.

10.  **Assignment.** The rights of either party hereunder may be assigned, in whole or in part, and the provisions hereof shall extend to the heirs, successors and assigns, of the parties hereto, but no change in division of ownership of the land, rentals, royalties, or other payments hereunder, or interest therein, however accomplished, shall operate to enlarge the obligations or diminish the rights of Lessee. No change in the ownership of the land, or any interest herein, shall be binding on Lessee until thirty (30) days after Lessee shall have been furnished by registered U.S. Mail at Lessee's principal place of business with a certified copy of all recorded instruments, all court proceedings and all other necessary evidence of any transfer, inheritance or sale of said rights. In event of the assignment of this lease as to a segregated portion of said land, the shut-in royalties and other payments payable hereunder shall be apportioned among the several leasehold owners ratably according to the surface area attributable to each, and default in shut-in royalties or other payments by one such leasehold owner or Lessee shall not affect the rights of the other leasehold owners or Lessees hereunder. In case Lessee assigns this Lease, in whole or in part, Lessee shall be relieved of all obligations with respect to the assigned portion or portions arising subsequent to the date of assignment.

11.  **Surrender.** Lessee may, at any time or from time to time, execute and deliver to Lessor or place of record a surrender covering all or any part of the leased premises and thereupon shall be relieved of all obligations thereafter to accrue with respect to the leased premises so surrendered.

12.  **Pooling.** Lessor grants unto Lessee the right to pool into a separate drilling or production unit(s), as to any one or more formations, said land or any part thereof and the leasehold estates in the vicinity of said land, whether contiguous or non-contiguous, held by Lessee or other mineral owners or lessees under other lease, when in Lessee's judgment, it is necessary or advisable to create such pools to develop and operate efficiently such lands. Any such pool shall not substantially exceed 80 acres each in area for oil and 640 acres each in area for gas, plus, in both instances, a tolerance of ten percent (10%); provided however, that larger pools may be created to conform to any well spacing or unit pattern prescribed by any governmental authority. The units formed by pooling as to any one or more formations need not conform in size or area with the unit or units into which the lease is pooled or combined as to any formation or formations, and oil units need not conform to the area within gas units. Lessee, alone or with or other mineral owners or lessees under other leases, may form any pool before or after completion of a well thereon by recording in the county wherein the pooled land(s) are located, a declaration of such pooling. Neither the pooling nor the provisions hereof shall operate as a transfer to title of any interest in the leased premises. The commencement of a well, the conduct of other drilling operations, the completion of a well or dry hole, or the operation of a producing well on the pooled area, shall be considered for all purposes (except as to royalties) as if said well were located on, or such drilling operations were conducted upon the lands covered by this lease whether or not such well is located upon, or such drilling operations are conducted upon, said lands. The royalties provided for in Paragraph 3 hereof shall be tendered or paid to Lessor in the proportion that Lessor's acreage in the pooled area(s) bears to the total pooled area. Lessee shall have the right but not the obligation, to reduce, enlarge, or modify such pool(s) at any time. The royalties and such other payments tendered or paid thereafter shall then be based upon the proportionate acreage and interests in the revised pool. At any time the pool is not being operated as aforesaid, the declaration of pooling may be surrendered and canceled of record. Such cancellation or surrender shall not affect a surrender or cancellation of this lease.

13.  **Other Rights – Lessee.** Lessee shall have the right to use, free of cost, oil, gas and water produced on said land for its operations except water from wells of Lessor. Lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing. No part of the surface of the leased premises shall, without the written consent of Lessee, be let, granted or licensed by Lessor to any other party for the location, construction or maintenance of structures, tanks, pits, reservoirs, equipment or machinery to be used for the purpose of exploring, developing or operating adjacent lands for oil or gas. Lessee shall also have the right to use, free of cost, any pipeline(s) laid under the terms of this lease for the transportation of gas produced off of the lands leased hereunder. Upon termination or expiration of this lease, Lessee shall have the option to purchase a pipeline right of way for any existing pipelines laid under the terms of this lease pursuant to paragraph 19 hereof.

14.  **Other Rights – Lessor.** Lessee shall bury below plow depth its pipelines on the leased premises when requested by a Lessor owning an interest in the surface. No well shall be drilled within 200 feet of any house or barn now on the leased premises without the written consent of the owner of the surface on which such house or barn is located. Lessee shall pay for actual damages to growing crops, merchantable timber and fences caused by its operations on said lands.

15.  **Warranties.** Lessee hereby warrants and agrees to defend the title to the lands and interest described in Paragraph 1, but if the interest of Lessor covered by this lease is expressly stated to be less than the entire fee or mineral estate, Lessor's warranty shall be limited to the interest so stated. Lessor further warrants that the lands hereby leased are not subject to any valid prior oil and gas leases. Lessee may purchase or lease the rights of any party claiming any interest in said land and exercise such rights as may be obtained thereby, and Lessee shall not suffer any forfeiture nor incur any liability to Lessor by reason thereof. Lessee shall have the right at any time to pay for Lessor any mortgage, taxes or other lien on said lands, in the event of default of payment by Lessor, and then be subrogated to the rights of the holder thereof. Any such payments made by Lessee for Lessor may be deducted from any amounts of money which may become due Lessor under this lease.

16.  **Force Majeure.** Should Lessee be prevented from complying with any expressed or implied covenant of this lease, from conducting drilling or reworking operations thereon or from producing oil or gas by reason of scarcity of, or inability to obtain or to use equipment or material, or by operation of force majeure, or because of any federal or state law or any order, rule or regulation of a governmental authority, then while so prevented, Lessee's obligations to comply with such covenant shall be suspended, and Lessee shall not be liable in damages for failure to comply therewith; and this lease shall be extended while and so long as Lessee is prevented by any such cause from conducting drilling or reworking operations on, or from producing oil or gas or other hydrocarbons from the leased premises; and the time while Lessee is so prevented shall not be counted against the Lessee, anything in this lease to the contrary notwithstanding, and, if such cause shall extend within 120 days of the end of the primary term, this lease shall be extended for 120 days after the cessation of such cause and as long thereafter as there are operations on or production from the lease or lands pooled with it.

Corder v. Antero

Corder v. Antero

**DK 1499 PG 0150**

17.   **Adverse Claim.** If Lessee receives written notice of an adverse claim to the leased premises, affecting all or any part of the payments due hereunder, Lessee may, at its sole discretion, withhold payment or delivery of same without obligation to pay interest or penalty until such time as Lessor's ownership is determined by compromise, or by final decree of a court of competent jurisdiction, or Lessee may file a petition for interpleader. Lessee shall in no event be liable for interest or penalty for any such amounts withheld.

18.   **Payments.**      All payments are to be mailed to:   Janet Packard
                                                              39425 Harbor Hills Blvd
                                                              Lady Lake, FL 32159

who is (are) hereby appointed agent(s), if designated as "Agent" above, to receive and receipt for the same and to receive notices given by Lessee as provided herein. Lessee shall not be obligated to make payments or give notices to more than the number of payees hereinabove designated. Lessee shall not be obligated to make payments to any individual payee or agent hereunder until payments exceed the sum of Twenty-Five Dollars ($25.00), but in any case, payments shall be made at least once each calendar year. Lessee shall not be obligated to see to the application of any monies paid by Lessee to Lessor or to the agent(s) designated herein. Until such agent(s) or payee(s) is appointed or designated as above required, Lessee may withhold payment due hereunder without liability for interest or penalty. The depositing of such payments hereunder in any post office addressed as above set out fourth shall be deemed payment or tender as herein provided. Notwithstanding the death of Lessor, payment or tender to the deceased Lessor shall be binding on the heirs, devisees, executors, administrators and personal representatives of Lessor and his successors in interest.

19.   Pipeline Option.  For and in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, at the expiration of termination of this lease, Lessee shall be given the option to purchase pipeline right(s) of way for any existing pipeline laid under the terms of this lease for the price of $1.00 per linear foot. Lessee shall have one (1) year to exercise this option from, the later of, the expiration or termination of this lease or after receiving written notification from the Lessor stating that said lease has expired or been terminated and demanding that Lessee exercise the aforedescribed option or abandon its pipeline in place.

20.   **Successors and Assigns.** This lease and all provisions thereof shall be applicable to and binding upon the parties and their respective heirs, devisees, personal representatives, successors and assigns. Reference herein to Lessor and Lessee shall include reference to their respective heirs, devisees, personal representatives, successors and assigns. Should any one or more of the parties named above as Lessors not execute this lease, it shall nevertheless be binding upon the party or parties executing same

21.   **Pre-Existing Wells.** It is mutually agreed between Lessee and Lessor that any and all existing oil and/or gas wells located on the premises are specifically excepted and excluded from the operations of this lease.

22.   **Affidavit of Non-Production.** Lessor hereby warrants that (i) the property is not encumbered by any enforceable oil or gas use of record or otherwise executed by the Lessor and that (ii) Lessor is not currently receiving any bonus, rental, production royalty or payment, or shut-in royalty as the result of any prior oil and gas lease covering any or all of the subject property, and that there have been no wells drilled upon the subject property or upon any lands with which the property has been combined in a drilling or production unit, with the exception of the well privately owned by Lessor.

23.   **Compliance with Statutes.** It is agreed between the parties hereto that in the event any provision or portion of this oil and gas lease is determined by a court of competent jurisdiction, regulatory agency, regulatory body, or legislative body to be in violation of local, state or federal statute, rule or regulation, the relevant portion of the subject provision or portion of this oil and gas lease which is not in compliance with such statute, rule or regulation shall be severed from this agreement to the extent necessary to comply with such statute, rule or regulation, and this oil and gas lease shall continue in full force and effect as amended.

24.   Right of First Refusal.  If at any time within the primary term of this lease or any continuation or extension thereof, Lessor receives any bona fide offer, acceptable to Lessor, to grant an additional lease ("Top Lease") covering all or part of the above described land, Lessee shall have the continuing option by meeting any such offer to acquire a Top Lease on equivalent terms and conditions. Any offer must be in writing and must set forth the proposed lessee's name, bonus consideration and royalty consideration to be paid for such Top Lease, and include a copy of the lease form to be utilized reflecting all pertinent and relevant terms and conditions of the Top Lease. Lessee shall have fifteen (15) days (exclusive of Saturdays, Sundays and Federal holidays) after receipt from Lessor of a complete copy of any such offer to advise Lessor in writing of its election to enter into an oil and gas lease with Lessor on equivalent terms and conditions, as to all or any part of the above described land. If Lessee fails to notify Lessor within the aforesaid fifteen (15) day period of its election to meet any such bona fide offer, Lessor shall have the right to accept said offer. Any Top Lease granted by Lessor in violation of this provision shall be null and void.

Corder v. Antero

Corder v. Antero

BK 1499 PG 0151

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF FOR ADDITIONAL PROVISIONS

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands, signed and acknowledged in the presence of:

LESSOR

_____
/ Janet Packard

_____
Leroy Packard

ACKNOWLEDGEMENT

STATE OF FLORIDA                    )
COUNTY OF _Lake_                    )

The foregoing instrument was acknowledged before me this ___25th___ day of ___September___, 2012, by Janet Packard and Leroy Packard, wife and husband.

My Commission Expires: _7/16/16_

_____
Notary Public

GEORGE M. BECK
Notary Public - State of Florida
My Comm. Expires Jul 16, 2016
Commission # EE 216422

This instrument prepared by the following; when recorded, please return to:

Antero Resources Appalachian Corporation
P.O. Box 410
Bridgeport, WV 26330

Corder v. Antero

Corder v. Antero

BK 1499 PG0152

## EXHIBIT "A"

Attached to and made a part of that certain oil and gas lease dated July 24, 2012 by and between Janet Packard and Leroy Packard, wife and husband, as lessors and Antero Resources Appalachian Corporation, as lessee, to-wit:

The following provisions shall supplement the printed provisions of the Lease; and, in the event of any conflict between the following supplemental provisions, and the provisions of the printed Lease, these supplemental provisions shall prevail and control:

**SUPERSEDE CLAUSE**
All term and provision of this Exhibit A supersede and replace those in the body of the oil and gas lease, to which this is attached, whenever they conflict.

All reference herein made to One-Eighth (12 ½%) royalty are hereby amended to read Fifteen (15.0%) percent royalty.

**Market Enhancement (Gross Proceeds) Clause**
It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil, gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements. However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.

Signed for Identification:

_Janet Packard_

Janet Packard

_Leroy Packard_

Leroy Packard

This instrument prepared by the following; when recorded, please return to:

Antero Resources Appalachian Corporation
P.O. Box 410
Bridgeport, WV 26330

Corder v. Antero

Corder v. Antero

ANTERO RESOURCES APPALACHIAN CORPORATION
P.O. BOX 410
BRIDGEPORT, WV 26330-0410

**BK1499 PG0135**

Susan J Thomas
HARRISON County 02:41:58 PM
Instrument No 201200043518
Date Recorded 10/02/2012
Document Type LEA
Pages Recorded 6
Book-Page   1499-135
Recording Fee $6.00
Additional   $6.00

## OIL AND GAS LEASE
### (PAID-UP)

Lessor: Lorena Krafft, heir of Jesse C. Corder
Lessee: Antero Resources Appalachian Corporation
Lease Number _____
Prospect: Greenbrier
WV-PA Revised– ARAC/PAL Rev. June-09

This Agreement, made and entered into this day of September 20th, 2012, by and between Lorena Krafft, 720 Park Avenue, Elyria, OH 44035, hereinafter referred to individually and collectively as "Lessor," and Antero Resources Appalachian Corporation, 1625 17th Street, Suite 300, Denver, CO 80202, hereinafter referred to as "Lessee." WITNESSETH THAT:

1.     **Leasing.**     Lessor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, and the covenants herein contained, hereby grants, demises, leases and lets exclusively unto Lessee the lands hereinafter described for the purposes of:

  a)  exploring by geological and geophysical and other methods, (including, but not limited to, conducting seismic surveys), drilling either vertically or horizontally, operating for, producing oil or gas or both including methane gas present in or associated with any formations, horizons, strata or zones and/or; and,

  b)  for the further purpose and with the exclusive right in the Lessee, as it may see fit, to store any kind of gas therein by pumping or otherwise introducing the same into any sand or sands, substrata or horizon in an under said land, and the right to remove the same by pumping or otherwise through any well or wells on said land or other lands, and to use said land for protecting gas stored within and under adjoining and neighboring lands, together also with the right to drill, operate and maintain wells for the purpose of injecting, storing and disposing of waste fluids from within and under said land or other lands resulting from or incidental to the production of or injection, storage and removal of gas,

together with the right and easement to construct, operate, repair, maintain, resize and remove pipelines, telephone, power and electric lines, tanks, ponds, roadways, plants, equipment and structures thereon to produce, save, store and take care of such substances, and the exclusive right to inject air, gas, water, brine or other fluids into the subsurface strata and any and all other rights and privileges necessary, incident to, or convenient for the economical operation of the lands, alone or conjointly with neighboring lands for these purposes, said lands being situated on the waters of Turtle Tree Fork of Ten Mile, in Union District, County of Harrison, State of West Virginia, and being bounded now or formerly substantially as follows, to wit:

On the North by lands of:     County Road 30/5
On the East by lands of:     Franklin D. Riffle
On the South by lands of:     James Corder
On the West by lands of:     Bill Devericks

Said lands being identified for tax purposes as Tax Parcel ID: 20-361-3, 4, 5 as of this date. Notwithstanding said tax map designation, this lease shall be effective as to the tract actually owned by Lessor whether or not the tax map designation correctly identifies the location of the tract. Being also the same interest acquired by the Lessor by Deed Book Deed dated October 10, 1928 and recorded on October 10, 1928 in the Recorder of Deeds Office in and for Harrison County, State of West Virginia, filed as Deed Book 393, Page 399. It being the purpose and intent of Lessor to lease, and Lessor does hereby lease, all strips or parcels of land now owned by Lessor, or hereafter acquired which adjoin the lands above described, and all interests in the land above described now owned or hereafter acquired by Lessor. For all purposes of this lease, including determining the amount of delay rentals, royalties and shut-in royalties hereunder, said land shall be deemed to contain 48.60 acres whether it actually contains more or less. For all purposes of this lease, references to oil and gas or either or both of them shall mean oil, or gas, or both and all substances which are constituents of or produced with oil or gas, whether similar or dissimilar or produced in a gaseous, liquid, or solid state.

2.  **Term.**  Subject to the other provisions hereof, this lease shall remain in force for a term of Five (5) years from this date (herein called "primary term") and:

  a)  as long thereafter as oil and gas, or either of them, is produced from the land or from lands pooled therewith, or drilling operations are continuously prosecuted as hereinafter provided, or this lease is otherwise maintained in effect pursuant to the provisions hereof; or,

  b)  as long thereafter as gas is being stored, held in storage, or withdrawn from the premises by Lessee or said land is used for the protection of stored gas alone or in conjunction with other lands or Lessee is actively engaged in developing the area including said lands for the storage of gas. It is agreed that the cessation of production from wells on the leased premises or upon other lands utilized therewith, after the expiration of the original term, shall not terminate this lease whether the pooling units have been dissolved or not. If the land is used for the storage or protection of stored gas prior to the plugging and abandonment of wells from which oil and/or gas has been produced, it is understood that a well need not be drilled on the premises to permit the storage of gas, and it is agreed that the Lessee shall be the sole judge as to whether gas is being stored within the leased premises or said land is being used for the protection of stored gas and that its determination shall be final and conclusive.

"Drilling operations" include operations for the drilling of a new well, the reworking, deepening or plugging back of a well or hole or other operations conducted in an effort to obtain or reestablish production of oil or gas. Drilling operations shall be considered to be "continuously prosecuted" if not more than 120 days shall elapse between the completion or abandonment of one well or hole and the commencement of drilling operations on another well or hole.

3.  **Royalties.**  The royalties to be paid by Lessee are: (a) on oil, One-Eighth (12.5%) of that produced and saved and delivered at the wells or into the pipeline to which the wells may be connected. Lessee may from time to time purchase any royalty oil in its possession, paying the market price then prevailing for the field where produced, and Lessee may sell any royalty oil in its possession and pay Lessor the price received by Lessee for such oil computed at the well, less One-Eighth (12.5%) of all Post Production Costs and less the same fractional share of all production, petroleum excise and severance taxes; (b) on gas, including casinghead gas or other gaseous substance, produced from said land and sold or used beyond the well or for the

Corder v. Antero

Corder v. Antero

BK1499 PG0136

extraction of gasoline or other product, an amount equal to One-Eighth (12.5%) of the net amount realized by Lessee computed at the wellhead from the sale of such substances. On gas sold at the well, the royalty shall be One-Eighth (12.5%) of the amount realized by Lessee from such sale, less One-Eighth (12.5%) of all Post Production Costs and less the same fractional share of all production, petroleum excise and severance taxes.

As used in this provision, "Post Production Costs" shall mean all costs actually incurred by Lessee or its affiliate and all losses of produced volumes whether by use as fuel, line loss, flaring, venting or otherwise from and after the wellhead to the point of sale. Post Production Costs includes, without limitation, all costs of gathering, treating, processing, blending, marketing, compression, dehydration, transportation, removal of liquid or gaseous substances, and/or removal of impurities of or from the affected oil and gas, and costs of any other activities associated with making the oil and gas ready for movement, sale or use.  For royalty calculation purposes, Lessee shall never be required to adjust the sales proceeds to account for the purchaser's revenues, receipts, costs or charges, or other activities that occur, beyond and past the point of sale.  Lessee or its affiliate shall have the right to construct, maintain and operate any facilities providing some or all of the services identified as Post Production Costs.  If Lessee or its affiliate does so, the actual costs of such facilities shall be included in the Post Production Costs as a per barrel or per mcf (or per mmbtu, at Lessee's election) charge, as appropriate, calculated by spreading the construction, maintenance and operating costs for such facilities over the reasonably estimated total production volumes attributable to the well or wells using such facilities.

In no event will the royalties payable hereunder exceed One-Eighth (12.5%) of any governmentally-imposed sales price ceiling applicable to Lessee's sales or One-Eighth (12.5%) of the net amounts received by Lessee not subject to refund, whichever is the lesser; provided that any amounts held by Lessee subject to refund will be promptly distributed, without interest, when Lessee's sale price is finally determined by judicial or administrative authority. Payment of royalties hereunder shall be made or tendered on or before the end of the month following the production month, beginning no later than six (6) months after Date of First Sales.

4.      Delay Rental.  It is hereby agreed and acknowledged by Lessor and Lessee that this is a Paid-Up Oil and Gas Lease and all delay rentals due and payable under this agreement have been paid in advance and have been included in the consideration paid to Lessor by Lessee for this oil and gas lease.

It is agreed that Lessee may drill or not drill on the leased premises, as it may elect, and that the consideration and rentals paid constitute adequate compensation for such privilege. No implied covenant shall be read into this lease requiring Lessee to drill or to continue drilling on said land, or fixing the measure of diligence necessary on Lessee's part.

5.      ~~Payment for Storage or Storage Protection Privileges.  In full compensation for the storage and storage protection rights herein granted and in lieu of all delay rental, or royalty due or to become due for the right to produce or for the production of oil or gas from the sands, strata, or horizons where gas may be stored or being protected as herein provided, Lessee covenants and agrees to pay Lessor, when no wells on the leased premises are utilized for the storage of gas, an annual storage rental of Five Dollars per acre ($5.00) dollars, payable quarterly in advance, beginning at the next payment date after gas shall have been stored under the terms of this agreement and continuing until the leased premises shall no longer be used for storage purposes, or until wells on the leased premises are utilized for the storage of gas, in which event Lessee shall cease paying storage rental to Lessor and pay in lieu thereof, a storage well rental or royalty of Two Hundred and no/100ᵗʰ ($ 200.00) dollars, per well quarterly in advance, as long as such shall be so utilized; subject to the right of cancellation or surrender hereinafter provided. Any storage rental paid for time beyond the date of such utilization of a well yielding storage well rental or royalty shall be credited upon the first storage well rental or royalty due upon the same, Lessee agrees to give Lessor written notice of the use of the leased premises and any wells drilled thereon for the storage of gas or protection of stored gas.~~

~~Notwithstanding anything contained herein to the contrary, the payment of storage rentals shall be subject to the "Lessor Interest", "Apportionment of Payments" and "Assignment" provisions of this lease. In addition, this lease shall be deemed to include the number of acres specified in Paragraph 1 for the calculation of storage payments.~~

6.      Dry Hole Clause and Cessation of Production.  If during the last year of the primary term and prior to the discovery of oil or gas on said land, Lessee should drill a dry hole thereon, or, if after discovery of oil or gas either before or during the last year of the primary term, the production thereof should cease during the last year of said term from any cause, no rental payment or operations are necessary in order to keep this lease in force during the remainder of the primary term. If, at the expiration of the primary term, Lessee has commenced operations for drilling a new well or reworking an old well, this lease shall continue in force as long as such drilling or reworking operations continue, or if after the expiration of the primary term, production on the lease shall cease, this lease shall continue in force if drilling or reworking operations are commenced within 120 consecutive days after such cessation of production; if production is restored or additional production is discovered as a result of any such drilling or reworking operations, conducted without cessation of more than 120 consecutive days, this lease shall continue as long thereafter as oil or gas is produced and as long as additional drilling or reworking operations are continued without cessation for more than 120 consecutive days.

7.      Shut-in Royalty.  During any period (whether before or after expiration of the primary term hereof) when gas is not being so sold or used and the well or wells are shut in and there is no current production of oil or operations on said leased premises sufficient to keep this lease in force, Lessee shall pay or tender a royalty of Twenty Dollar ($20.00) per year per net royalty acre retained hereunder, such payment or tender to be made on or before the anniversary date of this lease next ensuing after the expiration of ninety (90) days from the date such well is shut-in and thereafter on the anniversary date of this lease during the period such well is shut in, to the royalty owners. When such payment or tender is made it will be considered that gas is being produced within the meaning of the entire lease.  Notwithstanding any other provision to the contrary, this lease shall not terminate because of a failure to properly or timely make shut-in gas well payments unless Lessor shall have given Lessee written notice of such failure to properly or timely make such shut-in gas well payment and Lessee shall have failed for a period of sixty (60) days after receipt of such notice to tender such late payment or such payment in the proper amount, together with a late or improper payment penalty of $100.00.

8.      Lessor Interest.  The respective amounts of all delay rentals, royalties, and other payments are to be calculated in proportion to Lessor's interest in such rights with respect to which each such payment is made; that is, in case Lessor owns less of an interest in any of such rights than the full and entire interest therein, then the payments in respect to such rights shall be paid to Lessor only in the proportion which Lessor's interest in such rights bears to the full and entire interest in such rights.

Corder v. Antero

Corder v. Antero

BK1499 PG0137

9.        Apportionment of Payments.  If the leased premises are now, or shall hereafter be owned in severalty or in separate tracts, the premises nevertheless shall be developed and operated as one lease, and all rentals, royalties and payments provided for shall be treated as an entirety and shall be divided among, and paid to, such separate owners in the proportion that the acreage owned by each such separate owner bears to the entire leased acreage.

10.        Assignment.  The rights of either party hereunder may be assigned, in whole or in part, and the provisions hereof shall extend to the heirs, successors and assigns, of the parties hereto, but no change in division of ownership of the land, rentals, royalties, or other payments hereunder, or interest therein, however accomplished, shall operate to enlarge the obligations or diminish the rights of Lessee. No change in the ownership of the land, or any interest herein, shall be binding on Lessee until thirty (30) days after Lessee shall have been furnished by registered U.S. Mail at Lessee's principal place of business with a certified copy of all recorded instruments, all court proceedings and all other necessary evidence of any transfer, inheritance or sale of said rights. In event of the assignment of this lease as to a segregated portion of said land, the shut-in royalties and other payments payable hereunder shall be apportioned among the several leasehold owners ratably according to the surface areas attributable to each, and default in shut-in royalties or other payments by one such leasehold owner or Lessee shall not affect the rights of the other leasehold owners or Lessees hereunder. In case Lessee assigns this Lease, in whole or in part, Lessee shall be relieved of all obligations with respect to the assigned portion or portions arising subsequent to the date of assignment.

11.        Surrender.  Lessee may, at any time or from time to time, execute and deliver to Lessor or place of record a surrender covering all or any part of the leased premises and thereupon shall be relieved of all obligations thereafter to accrue with respect to the leased premises so surrendered.

12.        Pooling.  Lessor grants unto Lessee the right to pool into a separate drilling or production unit(s), as to any one or more formations, said land or any part thereof and the leasehold estates in the vicinity of said land, whether contiguous or non-contiguous, held by Lessee or other mineral owners or lessees under other leases, when in Lessee's judgment, it is necessary or advisable to create such pools to develop and operate efficiently such lands. Any such pool shall not substantially exceed 80 acres each in area for oil and 640 acres each in area for gas, plus, in both instances, a tolerance of ten percent (10%); provided however, that larger pools may be created to conform to any well spacing or unit pattern prescribed by any governmental authority. The units formed by pooling as to any one or more formations need not conform in size or area with the unit or units into which the lease is pooled or combined as to any formation or formations, and oil units need not conform to the area within gas units. Lessee, alone or with or other mineral owners or lessees under other leases, may form any pool before or after completion of a well thereon by recording in the county wherein the pooled land(s) are located, a declaration of such pooling. Neither the pooling nor the provisions hereof shall operate as a transfer to title of any interest in the leased premises. The commencement of a well, the conduct of other drilling operations, the completion of a well or dry hole, or the operation of a producing well on the pooled area, shall be considered for all purposes (except as to royalties) as if said well were located on, or such drilling operations were conducted upon the lands covered by this lease whether or not such well is located upon, or such drilling operations are conducted upon, said lands. The royalties provided for in Paragraph 3 hereof shall be tendered or paid to Lessor in the proportion that Lessor's acreage in the pooled area(s) bears to the total pooled area. Lessee shall have the right but not the obligation, to reduce, enlarge, or modify such pool(s) at any time. The royalties and such other payments tendered or paid thereafter shall then be based upon the proportionate acreage and interests in the revised pool. At any time the pool is not being operated as aforesaid, the declaration of pooling may be surrendered and canceled of record. Such cancellation or surrender shall not affect a surrender or cancellation of this lease.

13.        Other Rights – Lessee.  Lessee shall have the right to use, free of cost, oil, gas and water produced on said land for its operations except water from wells of Lessor. Lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing. No part of the surface of the leased premises shall, without the written consent of Lessee, be let, granted or licensed by Lessor to any other party for the location, construction or maintenance of structures, tanks, pits, reservoirs, equipment or machinery to be used for the purpose of exploring, developing or operating adjacent lands for oil or gas. Lessee shall also have the right to use, free of cost, any pipeline(s) laid under the terms of this lease for the transportation of gas produced off of the lands leased hereunder. Upon termination or expiration of this lease, Lessee shall have the option to purchase a pipeline right of way for any existing pipelines laid under the terms of this lease pursuant to paragraph 19 hereof.

14.        Other Rights – Lessor.  Lessee shall bury below plow depth its pipelines on the leased premises when requested by a Lessor owning an interest in the surface. No well shall be drilled within 200 feet of any house or barn now on the leased premises without the written consent of the owner of the surface on which such house or barn is located. Lessee shall pay for actual damages to growing crops, merchantable timber and fences caused by its operations on said lands.

15.        ~~Warranties.  Lessor hereby warrants and agrees to defend the title to the lands and interest described in Paragraph 1, but if the interest of Lessor covered by this lease is expressly stated to be less than the entire fee or mineral estate, Lessor's warranty shall be limited to the interest so stated. Lessor further warrants that the lands hereby leased are not subject to any valid prior oil and gas lease. Lessee may purchase or lease the rights of any party claiming any interest in said land and exercise such rights as may be obtained thereby and Lessee shall not suffer any forfeiture nor incur any liability to Lessor by reason thereof. Lessee shall have the right at any time to pay for Lessor, any mortgage, taxes or other lien on said lands, in the event of default of payment by Lessor, and then be subrogated to the rights of the holder thereof. Any such payments made by Lessee for Lessor may be deducted from any amounts of money which may become due Lessor under this lease.~~

16.        Force Majeure.  Should Lessee be prevented from complying with any expressed or implied covenant of this lease, from conducting drilling or reworking operations thereon or from producing oil or gas by reason of scarcity of, or inability to obtain or to use equipment or material, or by operation of force majeure, or because of any federal or state law or any order, rule or regulation of a governmental authority, then while so prevented, Lessee's obligations to comply with such covenant shall be suspended, and Lessee shall not be liable in damages for failure to comply therewith; and this lease shall be extended while and so long as Lessee is prevented by any such cause from conducting drilling or reworking operations on, or from producing oil or gas or other hydrocarbons from the leased premises; and the time while Lessee is so prevented shall not be counted against the Lessee, anything in this lease to the contrary notwithstanding, and, if such cause shall extend within 120 days of the end of the primary term, this lease shall be extended for 120 days after the cessation of such cause and as long thereafter as there are operations on or production from the lease or lands pooled with it.

Corder v. Antero

Corder v. Antero

DK1499 PG0138

17.     **Adverse Claim.**  If Lessee receives written notice of an adverse claim to the leased premises, affecting all or any part of the payments due hereunder, Lessee may, at its sole discretion, withhold payment or delivery of same without obligation to pay interest or penalty until such time as Lessor's ownership is determined by compromise, or by final decree of a court of competent jurisdiction, or Lessee may file a petition for interpleader. Lessee shall in no event be liable for interest or penalty for any such amounts withheld.

18.     **Payments.**       All payments are to be mailed to:   Lorena Krafft
                                                                720 Park Avenue
                                                                Elyria, OH 44035

who is (are) hereby appointed agent(s), if designated as "Agent" above, to receive and receipt for the same and to receive notices given by Lessee as provided herein. Lessee shall not be obligated to make payments or give notices to more than the number of payees hereinabove designated. Lessee shall not be obligated to make payments to any individual payee or agent hereunder until payments exceed the sum of Twenty-Five Dollars ($25.00), but in any case, payments shall be made at least once each calendar year. Lessee shall not be obligated to see to the application of any monies paid by Lessee to Lessor or to the agent(s) designated herein. Until such agent(s) or payee(s) is appointed or designated as above required, Lessee may withhold payment due hereunder without liability for interest or penalty. The depositing of such payments hereunder in any post office addressed as above set out fourth shall be deemed payment or tender as herein provided. Notwithstanding the death of Lessor, payment or tender to the deceased Lessor shall be binding on the heirs, devisees, executors, administrators and personal representatives of Lessor and his successors in interest.

19.     ~~Pipeline Option.  For and in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, at the expiration of termination of this lease, Lessee shall be given the option to purchase pipeline right(s) of way for any existing pipelines laid under the terms of this lease for the price of $1.00 per linear foot. Lessee shall have one (1) year to exercise this option from, the later of, the expiration or termination of this lease or after receiving written notification from the Lessor stating that said lease has expired or been terminated and demanding that Lessee exercise the aforedescribed option or abandon its pipelines in place.~~

20.     **Successors and Assigns.**  This lease and all provisions thereof shall be applicable to and binding upon the parties and their respective heirs, devisees, personal representatives, successors and assigns. Reference herein to Lessor and Lessee shall include reference to their respective heirs, devisees, personal representatives, successors and assigns. Should any one or more of the parties named above as Lessors not execute this lease, it shall nevertheless be binding upon the party or parties executing same.

21.     **Pre-Existing Wells.**  It is mutually agreed between Lessee and Lessor that any and all existing oil and/or gas wells located on the premises are specifically excepted and excluded from the operations of this lease.

22.     **Affidavit of Non-Production.**  Lessor hereby warrants that (i) the property is not encumbered by any enforceable oil or gas use of record or otherwise executed by the Lessor and that (ii) Lessor is not currently receiving any bonus, rental, production royalty or payment, or shut-in royalty as the result of any prior oil and gas lease covering any or all of the subject property, and that there have been no wells drilled upon the subject property or upon any lands with which the property has been combined in a drilling or production unit, with the exception of the well privately owned by Lessor.

23.     **Compliance with Statutes.**  It is agreed between the parties hereto that in the event any provision or portion of this oil and gas lease is determined by a court of competent jurisdiction, regulatory agency, regulatory body, or legislative body to be in violation of local, state or federal statute, rule or regulation, the relevant portion of the subject provision or portion of this oil and gas lease which is not in compliance with such statute, rule or regulation shall be severed from this agreement to the extent necessary to comply with such statute, rule or regulation, and this oil and gas lease shall continue in full force and effect as amended.

24.     **Right of First Refusal.**  ~~If at any time within the primary term of this lease or any continuation or extension thereof, Lessor receives any bona-fide offer, acceptable to Lessor, to grant an additional lease ("Top Lease") covering all or part of the above-described land, Lessee shall have the continuing option by meeting any such offer to execute a Top Lease on equivalent terms and conditions. Any offer must be in writing and must set forth the proposed lessee's name, bonus consideration and royalty consideration to be paid for such Top Lease, and include a copy of the lease form to be utilized reflecting all pertinent and relevant terms and conditions of the Top Lease. Lessee shall have fifteen (15) days (exclusive of Saturdays, Sundays and Federal holidays) after receipt from Lessor of a complete copy of any such offer to advise Lessor in writing of its election to enter into an oil and gas lease with Lessor on equivalent terms and conditions, as to all or any part of the above described land. If Lessee fails to notify Lessor within the aforesaid fifteen (15) day period of its election to meet any such bona-fide offer, Lessor shall have the right to accept said offer. Any Top Lease granted by Lessor in violation of this provision shall be null and void.~~

Corder v. Antero

Corder v. Antero

OK1499 PG0139

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF FOR ADDITIONAL PROVISONS

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands, signed and acknowledged in the presence of:

LESSOR

_Lorena B. Krafft_

Lorena Krafft

ACKNOWLEDGEMENT

STATE OF WEST VIRGINIA          )
                                )
COUNTY OF HARRISON              )

The foregoing instrument was acknowledged before me this _24_ day of _September_, 2012, by Lorena Krafft.

My Commission Expires: _2/22/2019_          _Wendy Skinner_
                                                    Notary Public

[Notary Seal: OFFICIAL SEAL / NOTARY PUBLIC / STATE OF WEST VIRGINIA / WENDY SKINNER / 1772 JENNINGS RUN ROAD / WESTON, WEST VIRGINIA 26452 / MY COMMISSION EXPIRES FEBRUARY 22, 2019]

This Instrument prepared by the following; when recorded, please return to:

Antero Resources Appalachian Corporation
P.O. Box 410
Bridgeport, WV 26330

Corder v. Antero

Corder v. Antero

BK1499 PG0140

### EXHIBIT "A"

Attached to and made a part of that certain oil and gas lease dated September 20, 2012 by and between Lorena Krafft, as lessors and Antero Resources Appalachian Corporation, as lessee, to-wit:

The following provisions shall supplement the printed provisions of the Lease; and, in the event of any conflict between the following supplemental provisions, and the provisions of the printed Lease, these supplemental provisions shall prevail and control:

**SUPERSEDE CLAUSE**
All term and provision of this Exhibit A supersede and replace those in the body of the oil and gas lease, to which this is attached, whenever they conflict.

All reference herein made to One-Eighth (12 ½%) royalty are hereby amended to read Fifteen (15.0%) percent royalty.

**Market Enhancement (Gross Proceeds) Clause**
It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil, gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements. However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.

Signed for Identification:

_Lorena B Krafft_

Lorena Krafft

**This instrument prepared by the following; when recorded, please return to:**

Antero Resources Appalachian Corporation
P.O. Box 410
Bridgeport, WV 26330

Corder v. Antero

Corder v. Antero

ANTERO RESOURCES CORPORATION
..  BOX 420
PORT . W: 26330-0410

BK : 5 6 2  PG I 1 2 0

Susan J Thomas
HARRISON County 03:45:25 PM
Instrument No 201500852971
Date Recorded 10/21/2015
Document Type LEA
Pages Recorded 2
Book-Page    1562-1120
Recording Fee $5.00
Additional    $6.00

## MEMORANDUM OF OIL AND GAS LEASE

THIS MEMORANDUM OF OIL AND GAS LEASE ("Memorandum"), dated this 14th day of August, 2015, by and between Lorena Krafft, whose address is 720 Park Avenue, Elyria, OH 44035, hereinafter referred to individually and collectively as "Lessor," (whether one or more) and ANTERO RESOURCES CORPORATION, whose address is 1615 Wynkoop Street, Denver, CO 80202, hereinafter referred to as "Lessee."

### WITNESSETH:

*WHEREAS*, Lessor has entered into an Amended Oil and Gas Lease with Lessee dated the 14th day of August, 2015 (the "Lease"), and

*WHEREAS*, that parties now enter into this Memorandum to provide notice of the Lease.

*1.* For good and valuable consideration, the receipt of which having been acknowledged and accepted by the Lessor, the Lessor did grant, demise, lease and let exclusively unto Lessee the lands hereinafter described for the purposes of exploring by geological and geophysical and other methods, (including, but not limited to, conducting seismic surveys), drilling either vertically or horizontally, operating for, producing oil or gas or both including methane gas present in or associated with any formations, horizons, strata or zones, from the top of the Rhinestreet Formation (as seen by the James P. Boring Well, API Number 47033005270000, at a depth of 5439') to five hundred feet (500') below the top of the Helderberg Formation (with the top of the Helderberg Formation as seen by the James P. Boring Well, API Number 47033005270000, at a depth of 7191'), and the exclusive right to inject air, gas, water, brine or other fluids into the subsurface strata and any and all other rights and privileges necessary, incident to, or convenient for the economical operation of the lands, alone or conjointly with neighboring lands for these purposes, together with the right and easement to construct, operate, repair, maintain, resize and remove pipelines, telephone, power and electric lines, tanks, ponds, roadways, plants, equipment and structures thereon to produce, save, store and take care of such substances.

*2.* Said lands being described in the Lease as situated on the waters of the Turtle Tree Fork of Ten Mile in the District of Union, County of Harrison, State of West Virginia, and being bounded now or formerly substantially as follows, to wit:

> On the North by lands of County Road 30/5
> On the East by lands of Franklin D. Riffle
> On the South by lands of James Corder
> On the West by lands of Bill Devericks

Said lands being identified for tax purposes as tract or parcel number 20-361-3, p/o 5 as of the date of this lease. Notwithstanding said tax map designation, this lease shall be effective as to the tract actually owned by Lessor whether or not the tax map designation correctly describes the location of the tract. Being also the same interest acquired by the Lessor in Fiduciary Order Book dated July 5, 2000, and recorded in the Clerk's Office in and for Harrison County, State of West Virginia, filed in Fiduciary Order Book 100 at Page 347. For all purposes of this lease, including determining the amount of delay rentals, royalties and shut-in royalties hereunder, said land shall be deemed to contain 32.45 gross acres whether it actually contains more or less. For all purposes of this Memorandum, reference to oil and gas or either of them shall mean oil, or gas, or both and all substances which are constituents of, or produced with, oil or gas, whether similar or dissimilar, or produced in a gaseous, liquid, or solid state (as further defined in Paragraph 1 of the Lease).

*3.* The primary term of said Lease commenced August 14th, 2015 for a term of FIVE (5) YEARS, and will expire August 14th, 2020. The primary term of the Lease shall be extended for as long thereafter as oil and/or gas is produced from the Lease premises or lands with which the Lease is unitized or pooled; or as long as drilling operations are continuously prosecuted as provided in the Lease; or as long as the leased premises shall be operated or otherwise maintained by Lessee, its successors or assigns, in accordance with the terms and provisions of the Lease, unless earlier terminated in accordance with the terms and provisions of the Lease.

*4.* Lessee shall have the option to extend the primary term of the Lease for an additional five (5) years ("Extended Term"), pursuant to the terms of the Lease. Assignee's election to extend the term of the Lease shall be tendered in writing to Lessor on or before the expiration of the primary term. Lessee may file a written notice of its election to extend the primary term and cause the same to be recorded among the land records of the county wherein the lands are located.

*5.* Right of First Refusal. If at any time within the primary term of this lease or any continuation or extension thereof, Lessor receives any bona fide offer, acceptable to Lessor, to grant an additional lease ("Top Lease") covering all or part of the above described land, Lessee shall have the continuing option by meeting any such offer to acquire a Top Lease on equivalent terms and conditions. Any offer must be in writing and must set forth the proposed lessee's name, bonus consideration and royalty consideration to be paid for such Top Lease, and include a copy of the lease form to be utilized reflecting all pertinent and relevant terms and conditions of the Top Lease. Lessee shall have fifteen (15) days (exclusive of Saturdays, Sundays and Federal holidays) after receipt from Lessor of a complete copy of any such offer to advise Lessor in writing of its election to enter into an oil and gas lease with Lessor on equivalent terms and conditions, as to all or any part of the above described land. If Lessee fails to notify Lessor within the aforesaid fifteen (15) day period of its election to meet any such bona fide offer, Lessor shall have the right to accept said offer. Any Top Lease granted by Lessor in violation of this provision shall be null and void.

1 of 2

Corder v. Antero

Corder v. Antero

BK : 562 PG1121

6.      The parties hereto incorporate all terms, covenants, provisions, conditions, royalties and rentals as set forth in the Lease by reference as though fully written and set forth herein.  In the event the Lease is amended or supplemented by written instrument executed by the parties in interest thereto or assigned or terminated in any manner permitted under the terms thereof, then without any further act or instrument whatsoever, this Memorandum shall likewise and to the same effect be amended, assigned or terminated, as the case may be. This Memorandum is executed in simplified short form for the convenience of the parties and for the purpose of recording the same and this Memorandum shall not in any way have the effect of modifying, supplementing or abridging the Lease or any of its provisions now or hereafter in force and effect.

*IN WITNESS WHEREOF*, the parties hereto have hereunto set their hands the day and year first above written, signed and acknowledged in the presence of:

_____

LESSOR:
Lorena Krafft

_____

LESSEE:
ANTERO RESOURCES CORPORATION
By: Brian Kuhn
Title: Vice President-Land

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF  Ohio                    )
                                  )
COUNTY OF   Lorain                )

      The foregoing instrument was acknowledged before me this 28th day of Aug                    , 2015, by Lorena Krafft.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

[SEAL]                            _____
                                  Notary Public
                                  My Commission Expires: Sept. 30, 2018

### CORPORATE ACKNOWLEDGMENT

STATE OF COLORADO                 )
                                  )
COUNTY OF Denver                  )

      On this 17 day of September, 2015, before me CE Whitlock                    , the undersigned Notary, did personally appear Brian Kuhn, who acknowledged himself to be the Vice President-Land of Antero Resources Corporation, a corporation, and that he, as such, being authorized to do so, executed the foregoing instrument for the purposes therein contained on behalf of the corporation, by signing the name of the corporation by himself and as Vice President-Land.

      IN WITNESS WHEREOF, I hereunto set my hand and official seal.

[SEAL]   ┌─────────────────────────┐   _____
         │ C E WHITLOCK            │   Notary Public
         │ NOTARY PUBLIC, STATE OF COLORADO │   My Commission Expires: 1/18/18
         │ NOTARY ID 20094000878   │
         │ MY COMMISSION EXPIRES JANUARY 18, 2018 │
         └─────────────────────────┘

This instrument prepared by the following; when recorded, please return to:

Antero Resources Corporation
P.O. Box 410
Bridgeport, WV  26330

6968628.1

2 of 2

Corder v. Antero

Corder v. Antero

BK1496 PG0587

Susan J. Thomas
HARRISON County 02:38:04 PM
Instrument No 201200035385
Date Recorded 08/06/2012
Document Type LEA
Pages Recorded 6
Book-Page      1496-587
Recording Fee  15.00
Additional     15.00

## OIL AND GAS LEASE
### (PAID-UP)

Lessor:  Gerald Corder, heir of Jesse C. Corder
Lessee:  Antero Resources Appalachian Corporation
Lease Number
Prospect: Greenbrier
WV-PA Revised– ARAC/PAL Rev. June-09

This Agreement, made and entered into this day of June 29th, 2012, by and between  Gerald Corder, RR 2, Box 174, Bristol, WV 26426, hereinafter referred to individually and collectively as "Lessor," and Antero Resources Appalachian Corporation, 1625 17th Street, Suite 300 , Denver, CO 80202, hereinafter referred to as "Lessee." WITNESSETH THAT:

1.    Leasing.    Lessor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, and the covenants herein contained, hereby grants, demises, leases and lets exclusively unto Lessee the lands hereinafter described for the purposes of:

a)    exploring by geological and geophysical and other methods, (including, but not limited to, conducting seismic surveys), drilling either vertically or horizontally, operating for, producing oil or gas or both including methane gas present in or associated with any formations, horizons, strata or zones and/or; and,

b)    for the further purpose and with the exclusive right in the Lessee, as it may see fit, to store any kind of gas therein by pumping or otherwise introducing the same into any sand or sands, substrata or horizon in an under said land, and the right to remove the same by pumping or otherwise through any well or wells on said land or other lands, and to use said land for protecting gas stored within and under adjoining and neighboring lands, together also with the right to drill, operate and maintain wells for the purpose of injecting, storing and disposing of waste fluids from within and under said land or other lands resulting from or incidental to the production of or injection, storage and removal of gas,

together with the right and easement to construct, operate, repair, maintain, resize and remove pipelines, telephone, power and electric lines, tanks, ponds, roadways, plants, equipment and structures thereon to produce, save, store and take care of such substances, and the exclusive right to inject air, gas, water, brine or other fluids into the subsurface strata and any and all other rights and privileges necessary, incident to, or convenient for the economical operation of the lands, alone or conjointly with neighboring lands for these purposes, said lands being situated on the waters of Turtle Tree Fork of Ten Mile, in Union District, County of Harrison, State of West Virginia, and being bounded now or formerly substantially as follows, to wit:

On the North by lands of:        County Road 30/5
On the East by lands of:         Franklin D. Riffle
On the South by lands of:        James Corder
On the West by lands of:         Bill Devericks

Said lands being identified for tax purposes as Tax Parcel ID: 20-361-3, 4, 5 as of this date. Notwithstanding said tax map designation, this lease shall be effective as to the tract actually owned by Lessor whether or not the tax map designation correctly identifies the location of the tract. Being also the same interest acquired by the Lessor by Deed Book Deed dated October 10, 1928 and recorded on October 10, 1928 in the Recorder of Deeds Office in and for Harrison County, State of West Virginia, that as Deed Book 393, Page 399. It being the purpose and intent of Lessor to lease, and Lessor does hereby lease, all strips or parcels of land now owned by Lessor, or hereafter acquired which adjoin the lands above described, and all interests in the land above described now owned or hereafter acquired by Lessor. For all purposes of this lease, including determining the amount of delay rentals, royalties and shut-in royalties hereunder, said land shall be deemed to contain 48.69 acres whether it actually contains more or less. For all purposes of this lease, references to oil and gas or either or both of them shall mean oil, or gas, or both and all substances which are constituents of or produced with oil or gas, whether similar or dissimilar or produced in a gaseous, liquid, or solid state.

2.    Term.  Subject to the other provisions hereof, this lease shall remain in force for a term of Five (5) years from this date (herein called "primary term") end:

a)    as long thereafter as oil and gas, or either of them, is produced from the land or from lands pooled therewith, or drilling operations are continuously prosecuted as hereinafter provided, or this lease is otherwise maintained in effect pursuant to the provisions hereof; or,

b)    as long thereafter as gas is being stored, held in storage, or withdrawn from the premises by Lessee or said land is used for the protection of stored gas when or in conjunction with other lands or Lessee is actively engaged in developing the area including said lands for the storage of gas. It is agreed that the cessation of production from wells on the leased premises or upon other lands unitized therewith, after the expiration of the original term, shall not terminate this lease whether the pooling units have been dissolved or not, if the land is used for the storage or protection of stored gas prior to the plugging and abandonment of wells from which oil and/or gas has been produced. It is understood that a well need not be drilled on the premises to permit the storage of gas, and it is agreed that the Lessee shall be the sole judge as to whether gas is being stored within the leased premises or said land is being used for the protection of stored gas and that its determination shall be final and conclusive.

"Drilling operations" include operations for the drilling of a new well, the reworking, deepening or plugging back of a well or hole or other operations conducted in an effort to obtain or reestablish production of oil or gas. Drilling operations shall be considered to be "continuously prosecuted" if not more than 120 days shall elapse between the completion or abandonment of one well or hole and the commencement of drilling operations on another well or hole.

3.    Royalties.    The royalties to be paid by Lessee are: (a) on oil, One-Eighth (12.5%) of that produced and saved and delivered at the wells or into the pipeline to which the wells may be connected. Lessee may from time to time purchase any royalty oil in its possession, paying the market price then prevailing for the field where produced, and Lessee may sell any royalty oil in its possession and pay Lessor the price received by Lessee for such oil computed at the well, less One-Eighth (12.5%) of all Post Production Costs and less the same fractional share of all production, petroleum excise and severance taxes; (b) on gas, including casinghead gas or other gaseous substance, produced from said land and sold or used beyond the well or for the

Corder v. Antero

Corder v. Antero

BK1496 PG0588

extraction of gasoline or other product, an amount equal to One-Eighth (12.5%) of the net amount realized by Lessee computed at the wellhead from the sale of such substances. On gas sold at the well, the royalty shall be One-Eighth (12.5%) of the amount realized by Lessee from such sale, less One-Eighth (12.5%) of all Post Production Costs and less the same fractional share of all production, petroleum excise and severance taxes.

As used in this provision, "Post Production Costs" shall mean all costs actually incurred by Lessee or its affiliate and all losses of produced volumes whether by use as fuel, line loss, flaring, venting or otherwise from and after the wellhead to the point of sale. Post Production Costs includes, without limitation, all costs of gathering, treating, processing, blending, marketing, compression, dehydration, transportation, removal of liquid or gaseous substances, and/or removal of impurities of or from the affected oil and gas, and costs of any other activities associated with making the oil and gas ready for movement, sale or use. For royalty calculation purposes, Lessee shall never be required to adjust the sales proceeds to account for the purchaser's revenues, receipts, costs or charges, or other activities that occur, beyond and past the point of sale. Lessee or its affiliate shall have the right to construct, maintain and operate any facilities providing some or all of the services identified as Post Production Costs. If Lessee or its affiliate does so, the actual costs of such facilities shall be included in the Post Production Costs as a per barrel or per mcf (or per mmbtu, at Lessee's election) charge, as appropriate, calculated by spreading the construction, maintenance and operating costs for such facilities over the reasonably estimated total production volumes attributable to the well or wells using such facilities.

In no event will the royalties payable hereunder exceed One-Eighth (12.5%) of any governmentally-imposed sales price ceiling applicable to Lessee's sales or One-Eighth (12.5%) of net amounts received by Lessee not subject to refund, whichever is the lesser; provided that any amounts held by Lessee subject to refund will be promptly distributed, without interest, when Lessee's sale price is finally determined by judicial or administrative authority. Payment of royalties hereunder shall be made or tendered on or before the end of the month following the production month, beginning no later than six (6) months after Date of First Sales.

4.      Delay Rental.  It is hereby agreed and acknowledged by Lessor and Lessee that this is a Paid-Up Oil and Gas Lease and all delay rentals due and payable under this agreement have been paid in advance and have been included in the consideration paid to Lessor by Lessee for this oil and gas lease.

It is agreed that Lessee may drill or not drill on the leased premises, as it may elect, and that the consideration and rentals paid constitute adequate compensation for such privilege. No implied covenant shall be read into this lease requiring Lessee to drill or to continue drilling on said land, or fixing the measure of diligence necessary on Lessee's part.

5.      ~~Payment for Storage or Storage Protection Privileges.  In full compensation for the storage and storage protection rights herein granted and in lieu of all delay rental, or royalty due or to become due for the right to produce or for the production of oil or gas from the sands, strata, or horizons where gas may be stored or being protected as herein provided, Lessee covenants and agrees to pay Lessor, when no wells on the leased premises are utilized for the storage of gas, an annual storage rental of Five Dollars per acre ($5.00) dollars, payable quarterly in advance, beginning at the next payment date after gas shall have been stored under the terms of this agreement and continuing until the leased premises shall no longer be used for storage purposes, or until wells on the leased premises are utilized for the storage of gas. In which event Lessee shall cease paying storage rental to Lessor and pay in lieu thereof, a storage well rental or royalty of Two Hundred and no/100** ($ 200.00) dollars, per well quarterly in advance, so long as such shall be so utilized; subject to the right of cancellation or surrender hereinafter provided. Any storage rental paid for time beyond the date of such utilization of a well yielding storage well rental or royalty shall be credited upon the first storage well rental or royalty due upon the same, Lessee agrees to give Lessor written notice of the use of the leased premises and any wells drilled thereon for the storage of gas or protection of stored gas.~~

~~Notwithstanding anything contained herein to the contrary, the payment of storage rentals shall be subject to the "Lesser Interest", "Apportionment of Payments" and "Assignment" provisions of this lease. In addition, this lease shall be deemed to include the number of acres specified in Paragraph 1 for the calculation of storage payments.~~

6      Dry Hole Clause and Cessation of Production.  If during the last year of the primary term and prior to the discovery of oil or gas on said land, Lessee should drill a dry hole thereon, or, if after discovery of oil or gas either before or during the last year of the primary term, the production thereof should cease during the last year of said term from any cause, no rental payment or operations are necessary in order to keep this lease in force during the remainder of the primary term. If, at the expiration of the primary term, Lessee has commenced operations for drilling a new well or reworking an old well, this lease shall continue in force as long as such drilling or reworking operations continue, or if after the expiration of the primary term, production on this lease shall cease, this lease shall continue in force if drilling or reworking operations are commenced within 120 consecutive days after such cessation of production; if production is restored or additional production is discovered as a result of any such drilling or reworking operations, conducted without cessation of more than 120 consecutive days, this lease shall continue as long thereafter as oil or gas is produced and as long as additional drilling or reworking operations are continued without cessation for more than 120 consecutive days.

7      Shut-in Royalty.  During any period (whether before or after expiration of the primary term hereof) when gas is not being so sold or used and the well or wells are shut in and there is no current production of oil or operations on said leased premises sufficient to keep this lease in force, Lessee shall pay or tender a royalty of Twenty Dollar ($20.00) per year per net royalty acre retained hereunder, such payment or tender to be made on or before the anniversary date of this lease next ensuing after the expiration of ninety (90) days from the date such well is shut-in and thereafter on the anniversary date of this lease during the period such well is shut in, to the royalty owners. When such payment or tender is made it will be considered that gas is being produced within the meaning of the entire lease.  Notwithstanding any other provision to the contrary, this lease shall not terminate because of a failure to properly or timely make shut-in gas well payments unless Lessor shall have given Lessee written notice of such failure to properly or timely make shut-in gas well payment and Lessee shall have failed for a period of sixty (60) days after receipt of such notice to tender such late payment or such payment in the proper amount, together with a late or improper payment penalty of $100.00.

8      Lesser Interest.  The respective amounts of all delay rentals, royalties, and other payments are to be calculated in proportion to Lessor's interest in such rights with respect to which each such payment is made; that is, in case Lessor owns less of an interest in any of such rights than the full and entire interest therein, then the payments in respect to such rights shall be paid to Lessor only in the proportion which Lessor's interest in such rights bears to the full and entire interest in such rights.

Corder v. Antero

BK1496 PG0589

9.　　Apportionment of Payments.  If the leased premises are now, or shall hereafter be owned in severalty or in separate tracts, the premises nevertheless shall be developed and operated as one lease, and all rentals, royalties and payments provided for shall be treated as an entirety and shall be divided among, and paid to, such separate owners in the proportion that the acreage owned by each such separate owner bears to the entire leased acreage.

10.　　Assignment.  The rights of either party hereunder may be assigned, in whole or in part, and the provisions hereof shall extend to the heirs, successors and assigns, of the parties hereto, but no change in division of ownership of the land, rentals, royalties, or other payments hereunder, or interest therein, however accomplished, shall operate to enlarge the obligations or diminish the rights of Lessee. No change in the ownership of the land, or any interest herein, shall be binding on Lessee until thirty (30) days after Lessee shall have been furnished by registered U.S. Mail at Lessee's principal place of business with a certified copy of all recorded instruments, all court proceedings and all other necessary evidence of any transfer, inheritance or sale of said rights. In event of the assignment of this lease as to a segregated portion of said land, the shut-in royalties and other payments payable hereunder shall be apportioned among the several leasehold owners ratably according to the surface areas attributable to each, and default in shut-in royalties or other payments by one such leasehold owner or Lessee shall not affect the rights of the other leasehold owners or Lessees hereunder. In case Lessee assigns this Lease, in whole or in part, Lessee shall be relieved of all obligations with respect to the assigned portion or portions arising subsequent to the date of assignment

11.　　Surrender.  Lessee may, at any time or from time to time, execute and deliver to Lessor or place of record a surrender covering all or any part of the leased premises and thereupon shall be relieved of all obligations thereafter to accrue with respect to the leased premises so surrendered.

12.　　Pooling.  Lessor grants unto Lessee the right to pool into a separate drilling or production unit(s), as to any one or more formations, said land or any part thereof and the leasehold estates in the vicinity of said land, whether contiguous or non-contiguous, held by Lessee or other mineral owners or lessees under other leases, when in Lessee's judgment, it is necessary or advisable to create such pools to develop and operate efficiently such lands. Any such pool shall not substantially exceed 80 acres each in area for oil and 640 acres each in area for gas, plus, in both instances, a tolerance of ten percent (10%); provided however, that larger pools may be created to conform to any well spacing or unit pattern prescribed by any governmental authority. The units formed by pooling as to any one or more formations need not conform in size or area with the unit or units into which the lease is pooled or combined as to any formation or formations, and oil units need not conform to the area within gas units. Lessee, alone or with or other mineral owners or lessees under other leases, may form any pool before or after completion of a well thereon by recording in the county wherein the pooled land(s) are located, a declaration of such pooling. Neither the pooling nor the provisions hereof shall operate as a transfer to title of any interest in the leased premises. The commencement of a well, the conduct of other drilling operations, the completion of a well or dry hole, or the operation of a producing well on the pooled area, shall be considered for all purposes (except as to royalties) as if said well were located on, or such drilling operations were conducted upon the lands covered by this lease whether or not such well is located upon, or such drilling operations are conducted upon, said lands. The royalties provided for in Paragraph 3 hereof shall be tendered or paid to Lessor in the proportion that Lessor's acreage in the pooled area(s) bears to the total pooled area. Lessee shall have the right but not the obligation, to reduce, enlarge, or modify such pool(s) at any time. The royalties and such other payments tendered or paid thereafter shall then be based upon the proportionate acreage and interests in the revised pool. At any time the pool is not being operated as aforesaid, the declaration of pooling may be surrendered and canceled of record. Such cancellation or surrender shall not affect a surrender or cancellation of this lease.

13.　　Other Rights – Lessee.  Lessee shall have the right to use, free of cost, oil, gas and water produced on said land for its operations except water from wells of Lessor. Lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing. No part of the surface of the leased premises shall, without the written consent of Lessee, be let, granted or licensed by Lessor to any other party for the location, construction or maintenance of structures, tanks, pits, reservoirs, equipment or machinery to be used for the purpose of exploring, developing or operating adjacent lands for oil or gas. Lessee shall also have the right to use, free of cost, any pipeline(s) laid under the terms of this lease for the transportation of gas produced off of the lands leased hereunder. Upon termination or expiration of this lease, Lessee shall have the option to purchase a pipeline right of way for any existing pipelines laid under the terms of this lease pursuant to paragraph 19 hereof.

14.　　Other Rights – Lessor.  Lessee shall bury below plow depth its pipelines on the leased premises when requested by a Lessor owning an interest in the surface. No well shall be drilled within 200 feet of any house or barn now on the leased premises without the written consent of the owner of the surface on which such house or barn is located. Lessee shall pay for actual damages to growing crops, merchantable timber and fences caused by its operations on said lands.

15.　　Warranties.  Lessor hereby warrants and agrees to defend the title to the lands and interest described in Paragraph 1, but if the interest of Lessor covered by this lease is expressly stated to be less than the entire fee or mineral estate, Lessor's warranty shall be limited to the interest so stated. Lessor further warrants that the lands hereby leased are not subject to any valid prior oil and gas leases. Lessee may purchase or lease the rights of any party claiming any interest in said land and exercise such rights as may be obtained thereby and Lessee shall not suffer any forfeiture nor incur any liability to Lessor by reason thereof. Lessee shall have the right at any time to pay for Lessor, any mortgage, taxes or other lien on said lands, in the event of default of payment by Lessor, and then be subrogated to the rights of the holder thereof. Any such payments made by Lessee for Lessor may be deducted from any amounts of money which may become due Lessor under this lease.

16.　　Force Majeure.  Should Lessee be prevented from complying with any expressed or implied covenant of this lease, from conducting drilling or reworking operations thereon or from producing oil or gas by reason of scarcity of, or inability to obtain or to use equipment or material, or by operation of force majeure, or because of any federal or state law or any order, rule or regulation of a governmental authority, then while so prevented, Lessee's obligations to comply with such covenant shall be suspended, and Lessee shall not be liable in damages for failure to comply therewith; and this lease shall be extended while and so long as Lessee is prevented by any such cause from conducting drilling or reworking operations on, or from producing oil or gas or other hydrocarbons from the leased premises; and the time while Lessee is so prevented shall not be counted against the Lessee, anything in this lease to the contrary notwithstanding, and, if such cause shall extend within 120 days of the end of the primary term, this lease shall be extended for 120 days after the cessation of such cause and as long thereafter as there are operations on or production from the lease or lands pooled with it.

Corder v. Antero

Corder v. Antero

BK1496 PG0590

17.     Adverse Claim.  If Lessee receives written notice of an adverse claim to the leased premises, affecting all or any part of the payments due hereunder, Lessee may, at its sole discretion, withhold payment or delivery of same without obligation to pay interest or penalty until such time as Lessor's ownership is determined by compromise, or by final decree of a court of competent jurisdiction, or Lessee may file a petition for interpleader. Lessee shall in no event be liable for interest or penalty for any such amounts withheld.

18.     Payments.        All payments are to be mailed to:   Gerald Corder
                                                              RR 2 Box 174
                                                              Bristol, WV 26426

who is (are) hereby appointed agent(s), if designated as "Agent" above, to receive and receipt for the same and to receive notices given by Lessee as provided herein. Lessee shall not be obligated to make payments or give notices to more than the number of payees hereinabove designated. Lessee shall not be obligated to make payments to any individual payee or agent hereunder until payments exceed the sum of Twenty-Five Dollars ($25.00), but in any case, payments shall be made at least once each calendar year, Lessee shall not be obligated to see to the application of any monies paid by Lessee to Lessor or to the agent(s) designated herein  Until such agent(s) or payee(s) is appointed or designated as above required, Lessee may withhold payment due hereunder without liability for interest or penalty. The depositing of such payments hereunder in any post office addressed as above set out fourth shall be deemed payment or tender as herein provided. Notwithstanding the death of Lessor, payment or tender to the deceased Lessor shall be binding on the heirs, devisees, executors, administrators and personal representatives of Lessor and his successors in interest.

19.     Pipeline Option.  For and in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, at the expiration or termination of this lease, Lessee shall be given the option to purchase pipeline right(s) of way for any existing pipelines laid under the terms of this lease for the price of $1.00 per linear foot. Lessee shall have one (1) year to exercise this option from, the later of, the expiration or termination of this lease or after receiving written notification from the Lessor stating that said lease has expired or been terminated and demanding that Lessee exercise the aforedescribed option or abandon its pipelines in place.

20.     Successors and Assigns.  This lease and all provisions thereof shall be applicable to and binding upon the parties and their respective heirs, devisees, personal representatives, successors and assigns. Reference herein to Lessor and Lessee shall include reference to their respective heirs, devisees, personal representatives, successors and assigns. Should any one or more of the parties named above as Lessors not execute this lease, it shall nevertheless be binding upon the party or parties executing same

21.     Pre-Existing Wells.  It is mutually agreed between Lessee and Lessor that any and all existing oil and/or gas wells located on the premises are specifically excepted and excluded from the operations of this lease.

22.     Affidavit of Non-Production.  Lessor hereby warrants that (i) the property is not encumbered by any enforceable oil or gas use of record or otherwise executed by the Lessor and that (ii) Lessor is not currently receiving any bonus, rental, production royalty or payment, or shut-in royalty as the result of any prior oil and gas lease covering any or all of the subject property, and that there have been no wells drilled upon the subject property or upon any lands with which the property has been combined in a drilling or production unit, with the exception of the well privately owned by Lessor.

23.     Compliance with Statutes.  It is agreed between the parties hereto that in the event any provision or portion of this oil and gas lease is determined by a court of competent jurisdiction, regulatory agency, regulatory body, or legislative body to be in violation of local, state or federal statute, rule or regulation, the relevant portion of the subject provision or portion of this oil and gas lease which is not in compliance with such statute, rule or regulation shall be severed from this agreement to the extent necessary to comply with such statute, rule or regulation, and this oil and gas lease shall continue in full force and effect as amended.

24.     Right of First Refusal.  If at any time within the primary term of this lease or any continuation or extension thereof, Lessor receives any bona fide offer, acceptable to Lessor, to grant an additional lease ("Top Lease") covering all or part of the above described land, Lessee shall have the continuing option by meeting any such offer to acquire a Top Lease on equivalent terms and conditions.  Any offer must be in writing and must set forth the proposed lessee's name, bonus consideration and royalty consideration to be paid for such Top Lease, and include a copy of the lease form to be utilized reflecting all pertinent and relevant terms and conditions of the Top Lease.  Lessee shall have fifteen (15) days (exclusive of Saturdays, Sundays and Federal holidays) after receipt from Lessor of a complete copy of any such offer to advise Lessor in writing of its election to enter into an oil and gas lease with Lessor on equivalent terms and conditions, as to all or any part of the above described land.  If Lessee fails to notify Lessor within the aforesaid fifteen (15) day period of its election to meet any such bona fide offer, Lessor shall have the right to accept said offer. Any Top Lease granted by Lessor in violation of this provision shall be null and void.

Corder v. Antero

Corder v. Antero

BK1496 PG0592

**EXHIBIT "A"**

Attached to and made a part of that certain oil and gas lease dated June 29, 2012  by and between Gerald Corder, as lessors and Antero Resources Appalachian Corporation, as lessee, to-wit:

The following provisions shall supplement the printed provisions of the Lease; and, in the event of any conflict between the following supplemental provisions, and the provisions of the printed Lease, these supplemental provisions shall prevail and control:

**SUPERSEDE CLAUSE**
All term and provision of this Exhibit A supersede and replace those in the body of the oil and gas lease, to which this is attached, whenever they conflict.

All reference herein made to One-Eighth (12 ½%) royalty are hereby amended to read Fifteen (15.0%) percent royalty.

**Market Enhancement (Gross Proceeds) Clause**
It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil, gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements. However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.

**Depth Clause**
Notwithstanding anything to the contrary, at the expiration of the primary term this lease is to expire as to all depths and formations 100 feet below the base of the stratigraphic equivalent of the deepest producing formation, provided, however, if the Lessee, its successors or assigns, should be engaged in operations for drilling, deepening, sidetracking, or reworking a well or wells on the leased premises or on lands with which said lands or a portion thereof have been pooled or unitized, then this lease shall continue in effect as to all formations and depths until such operations have been completed and total depth has been established.

Signed for Identification:

*Gerald W Corder*

Gerald Corder

This instrument prepared by the following; when recorded, please return to:

Antero Resources Appalachian Corporation
P.O. Box 410
Bridgeport, WV  26330

Corder v. Antero

Corder v. Antero

ANTERO RESOURCES CORPORATION
P.J. BOX 410
BRIDGEPORT, WV 26330-0410

BK ' 5 6 2 PG I I I 0

Susan J Thomas
HARRISON County 03:30:39 PM
Instrument No 201500052957
Date Recorded 10/21/2015
Document Type LEA
Pages Recorded 2
Book-Page    1562-1110
Recording Fee $5.00
Additional   $6.00

### MEMORANDUM OF OIL AND GAS LEASE

THIS MEMORANDUM OF OIL AND GAS LEASE ("Memorandum"), dated this 14th day of August, 2015, by and between Gerald Corder, whose address is 58 Blackberry Hollow Rd., Bristol, WV 26426, hereinafter referred to individually and collectively as "Lessor," (whether one or more) and ANTERO RESOURCES CORPORATION, whose address is 1615 Wynkoop Street, Denver, CO 80202, hereinafter referred to as "Lessee."

### WITNESSETH:

**WHEREAS,** Lessor has entered into an Amended Oil and Gas Lease with Lessee dated the 14th day of August, 2015 (the "Lease"), and

**WHEREAS,** that parties now enter into this Memorandum to provide notice of the Lease.

1.      For good and valuable consideration, the receipt of which having been acknowledged and accepted by the Lessor, the Lessor did grant, demise, lease and let exclusively unto Lessee the lands hereinafter described for the purposes of exploring by geological and geophysical and other methods, (including, but not limited to, conducting seismic surveys), drilling either vertically or horizontally, operating for, producing oil or gas or both including methane gas present in or associated with any formations, horizons, strata or zones, from the top of the Rhinestreet Formation (as seen by the James P. Boring Well, API Number 4703300527000, at a depth of 5439') to five hundred feet (500') below the top of the Helderberg Formation (with the top of the Helderberg Formation as seen by the James P. Boring Well, API Number 4703300527000, at a depth of 7191'), and the exclusive right to inject air, gas, water, brine or other fluids into the subsurface strata and any and all other rights and privileges necessary, incident to, or convenient for the economical operation of the lands, alone or conjointly with neighboring lands for these purposes, together with the right and easement to construct, operate, repair, maintain, resize and remove pipelines, telephone, power and electric lines, tanks, ponds, roadways, plants, equipment and structures thereon to produce, save, store and take care of such substances.

2.      Said lands being described in the Lease as situated on the waters of the Turtle Tree Fork of Ten Mile in the District of Union, County of Harrison, State of West Virginia, and being bounded now or formerly substantially as follows, to wit:

On the North by lands of County Road 30/5
On the East by lands of Franklin D. Riffle
On the South by lands of James Corder
On the West by lands of Bill Devericks

Said lands being identified for tax purposes as tract or parcel number 20-361-3, p/o 5 as of the date of this lease. Notwithstanding said tax map designation, this lease shall be effective as to the tract actually owned by Lessor whether or not the tax map designation correctly identifies the location of the tract. Being also the same interest acquired by the Lessor in Fiduciary Order Book dated November 24, 1987, and recorded in the Clerk's Office in and for Harrison County, State of West Virginia, filed in Fiduciary Order Book 85 at Page 677. For all purposes of this lease, including determining the amount of delay rentals, royalties and shut-in royalties hereunder, said land shall be deemed to contain 32.45 gross acres whether it actually contains more or less. For all purposes of this Memorandum, references to oil and gas or either of them shall mean oil, or gas, or both and all substances which are constituents of, or produced with, oil or gas, whether similar or dissimilar, or produced in a gaseous, liquid, or solid state (as further defined in Paragraph 1 of the Lease).

3.      The primary term of said Lease commenced August 14th, 2015 for a term of FIVE (5) YEARS, and will expire August 14th, 2020. The primary term of the Lease shall be extended for as long thereafter as oil and/or gas is produced from the Lease premises or lands with which the Lease is unitized or pooled; or as long as drilling operations are continuously prosecuted as provided in the Lease; or as long as the leased premises shall be operated or otherwise maintained by Lessee, its successors or assigns, in accordance with the terms and provisions of the Lease, unless earlier terminated in accordance with the terms and provisions of the Lease.

4.      Lessee shall have the option to extend the primary term of the Lease for an additional five (5) years ("Extended Term"), pursuant to the terms of the Lease. Assignee's election to extend the term of the Lease shall be tendered in writing to Lessor on or before the expiration of the primary term. Lessee may file a written notice of its election to extend the primary term and cause the same to be recorded among the land records of the county wherein the lands are located.

5.      Right of First Refusal.  If at any time within the primary term of this lease or any continuation or extension thereof, Lessor receives any bona fide offer, acceptable to Lessor, to grant an additional lease ("Top Lease") covering all or part of the above described land, Lessee shall have the continuing option by meeting any such offer to acquire a Top Lease on equivalent terms and conditions. Any offer must be in writing and must set forth the proposed lessee's name, bonus consideration and royalty consideration to be paid for such Top Lease, and include a copy of the lease form to be utilized reflecting all pertinent and relevant terms and conditions of the Top Lease. Lessee shall have fifteen (15) days (exclusive of Saturdays, Sundays and Federal holidays) after receipt from Lessor of a complete copy of any such offer to advise Lessor in writing of its election to enter into an oil and gas lease with Lessor on equivalent terms and conditions, as to all or any part of the above described land. If Lessee fails to notify Lessor within the aforesaid fifteen (15) day period of its election to meet any such bona fide offer, Lessor shall have the right to accept said offer. Any Top Lease granted by Lessor is violation of this provision shall be null and void.

1 of 2

Corder v. Antero

Corder v. Antero

BK·562 PGIIII

6.      The parties hereto incorporate all terms, covenants, provisions, conditions, royalties and rentals as set forth in the Lease by reference as though fully written and set forth herein.  In the event the Lease is amended or supplemented by written instrument executed by the parties in interest thereto or assigned or terminated in any manner permitted under the terms thereof, then without any further act or instrument whatsoever, this Memorandum shall likewise and to the same effect be amended, assigned or terminated, as the case may be. This Memorandum is executed in simplified short form for the convenience of the parties and for the purpose of recording the same and this Memorandum shall not in any way have the effect of modifying, supplementing or abridging the Lease or any of its provisions now or hereafter in force and effect.

*IN WITNESS WHEREOF,* the parties hereto have hereunto set their hands the day and year first above written, signed and acknowledged in the presence of:

_Gerald W Corder_
LESSOR:
Gerald Corder

LESSEE:
ANTERO RESOURCES CORPORATION
By: Brian Kuhn
Title: Vice President-Land

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF WEST VIRGINIA            )
                                  )
COUNTY OF _Doddridge_             )

        The foregoing instrument was acknowledged before me this 29th day of _August_, 2015, by Gerald Corder.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

[SEAL]                            _Pamela B. Beamer_
                                  Notary Public
                                  My Commission Expires: _October 18, 2018_

### CORPORATE ACKNOWLEDGMENT

STATE OF COLORADO                 )
                                  )
COUNTY OF _Denver_                )

        On this _17_ day of _September_, 2015, before me _C.E. Whitlock_ the undersigned Notary, did personally appear Brian Kuhn, who acknowledged himself to be the Vice President-Land of Antero Resources Corporation, a corporation, and that he, as such, being authorized to do so, executed the foregoing instrument for the purposes therein contained on behalf of the corporation, by signing the name of the corporation by himself and as Vice President-Land.

        IN WITNESS WHEREOF, I hereunto set my hand and official seal.

[SEAL]                            _C Whitlock_
                                  Notary Public
                                  My Commission Expires: _1/18/18_

This instrument prepared by the following; when recorded, please return to:

Antero Resources Corporation
P.O. Box 410
Bridgeport, WV  26330

6968612.1

2 of 2

Corder v. Antero

Corder v. Antero

BK1195 PG0350

```
Susan J Thomas
HARRISON County 10:25:36 AM
Instrument No 201200352415
Date Recorded 7/17/2012
Document Type LEA
Pages Recorded 6
Book-Page      1195-350.
Recording Fee 16.00
Additional     0.00
```

/

## OIL AND GAS LEASE
### (PAID-UP)

Lessor:  Randall M. Corder, heir of Jesse C. Corder
Lessee:  Antero Resources Appalachian Corporation
Lease Number _____
Prospect: Greenbrier
WV-PA Revised– ARAC/PAL Rev. June-09

This Agreement, made and entered into this day of June 29th, 2012, by and between  Randall M. Corder, , RR 2, Box 185, Bristol, WV 26426, hereinafter referred to individually and collectively as "Lessor," and Antero Resources Appalachian Corporation, 1625 17th Street, Suite 300 , Denver, CO 80202, hereinafter referred to as "Lessee," WITNESSETH THAT:

1.   Leasing.   Lessor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, and the covenants herein contained, hereby grants, demises, leases and lets exclusively unto Lessee the lands hereinafter described for the purposes of:

   a)   exploring by geological and geophysical and other methods, (including, but not limited to, conducting seismic surveys), drilling either vertically or horizontally, operating for, producing oil or gas or both including methane gas present in or associated with any formations, horizons, strata or zones and/or; and,

   b)   for the further purpose and with the exclusive right in the Lessee, as it may see fit, to store any kind of gas therein by pumping or otherwise introducing the same into any sand or sands, substrata or horizon in an under said land, and the right to remove the same by pumping or otherwise through any well or wells on said land or other lands, and to use said land for protecting gas stored within and under adjoining and neighboring lands, together also with the right to drill, operate and maintain wells for the purpose of injecting, storing and disposing of waste fluids from within and under said land or other lands resulting from or incidental to the production of or injection, storage and removal of gas,

together with the right and easement to construct, operate, repair, maintain, resize and remove pipelines, telephone, power and electric lines, tanks, ponds, roadways, plants, equipment and structures thereon to produce, save, store and take care of such substances, and the exclusive right to inject air, gas, water, brine or other fluids into the subsurface strata and any and all other rights and privileges necessary, incident to, or convenient for the economical operation of the lands, alone or conjointly with neighboring lands for these purposes, said lands being situated on the waters of Turtle Tree Fork of Ten Mile, in Union District, County of Harrison, State of West Virginia, and being bounded now or formerly substantially as follows, to wit:

| | |
|---|---|
| On the North by lands of: | County Road 30/5 |
| On the East by lands of: | Franklin D. Riffle |
| On the South by lands of: | James Corder |
| On the West by lands of: | Bill Devericks |

Said lands being identified for tax purposes as Tax Parcel ID: 20-361-3, 4, 5 as of this date. Notwithstanding said tax map designation, this lease shall be effective as to the tract actually owned by Lessor whether or not the tax map designation correctly identifies the location of the tract. Being also the same interest acquired by the Lessor by Deed Book Deed dated October 10, 1928 and recorded on October 10, 1928 in the Recorder of Deeds Office in and for Harrison County, State of West Virginia, filed as Deed Book 303, Page 399. It being the purpose and intent of Lessor to lease, and Lessor does hereby lease, all strips or parcels of land now owned by Lessor, or hereafter acquired which adjoin the lands above described, and all interests in the land above described now owned or hereafter acquired by Lessor. For all purposes of this lease, including determining the amount of delay rentals, royalties and shut-in royalties hereunder, said land shall be deemed to contain 48.89 acres whether it actually contains more or less. For all purposes of this lease, references to oil and gas or either or both of them shall mean oil, or gas, or both and all substances which are constituents of or produced with oil or gas, whether similar or dissimilar or produced in a gaseous, liquid, or solid state.

2.   Term.   Subject to the other provisions hereof, this lease shall remain in force for a term of Five (5) years from this date (herein called "primary term") and:

   a)   as long thereafter as oil and gas, or either of them, is produced from the land or from lands pooled therewith, or drilling operations are continuously prosecuted as hereinafter provided, or this lease is otherwise maintained in effect pursuant to the provisions hereof; or,

   b)   as long thereafter as gas is being stored, held in storage, or withdrawn from the premises by Lessee or said land is used for the protection of stored gas alone or in conjunction with other lands or Lessee is actively engaged in developing the area including said lands for the storage of gas. It is agreed that the cessation of production from wells on the leased premises or upon other lands unitized therewith, after the expiration of the original term, shall not terminate this lease whether the pooling units have been dissolved or not, if the land is used for the storage or protection of stored gas prior to the plugging and abandonment of wells from which oil and/or gas has been produced. It is understood that a well need not be drilled on the premises to permit the storage of gas, and it is agreed that the Lessee shall be the sole judge as to whether gas is being stored within the leased premises or said land is being used for the protection of stored gas and that its determination shall be final and conclusive.

"Drilling operations" include operations for the drilling of a new well, the reworking, deepening or plugging back of a well or hole or other operations conducted in an effort to obtain or reestablish production of oil or gas. Drilling operations shall be considered to be "continuously prosecuted" if not more than 120 days shall elapse between the completion or abandonment of one well or hole and the commencement of drilling operations on another well or hole.

3.   Royalties.   The royalties to be paid by Lessee are: (a) on oil, One-Eighth (12.5%) of that produced and saved and delivered at the wells or into the pipeline to which the wells may be connected. Lessee may from time to time purchase any royalty oil in its possession, paying the market price then prevailing for the field where produced, and Lessee may sell any royalty oil in its possession and pay Lessor the price received by Lessee for such oil computed at the well, less One-Eighth (12.5%) of all Post Production Costs and less the same fractional share of all production, petroleum excise and severance taxes; (b) on gas, including casinghead gas or other gaseous substance, produced from said land and sold or used beyond the well or for the

Corder v. Antero

Corder v. Antero

BK 1695 PG0351

extraction of gasoline or other product, an amount equal to One-Eighth (12.5%) of the net amount realized by Lessee computed at the wellhead from the sale of such substances. On gas sold at the well, the royalty shall be One-Eighth (12.5% of the amount realized by Lessee from such sale, less One-Eighth (12.5%) of all Post Production Costs and less the same fractional share of all production, petroleum excise and severance taxes.

As used in this provision, "Post Production Costs" shall mean all costs actually incurred by Lessee or its affiliate and all losses of produced volumes whether by use as fuel, line loss, flaring, venting or otherwise from and after the wellhead to the point of sale. Post Production Costs includes, without limitation, all costs of gathering, treating, processing, blending, marketing, compression, dehydration, transportation, removal of liquid or gaseous substances, and/or removal of impurities of or from the affected oil and gas, and costs of any other activities associated with making the oil and gas ready for movement, sale or use. For royalty calculation purposes, Lessee shall never be required to adjust the sales proceeds to account for the purchaser's revenues, receipts, costs or charges, or other activities that occur, beyond and past the point of sale. Lessee or its affiliate shall have the right to construct, maintain and operate any facilities providing some or all of the services identified as Post Production Costs. If Lessee or its affiliate does so, the actual costs of such facilities shall be included in the Post Production Costs as a per barrel or per mcf (or per mmbtu, at Lessee's election) charge, as appropriate, calculated by spreading the construction, maintenance and operating costs for such facilities over the reasonably estimated total production volumes attributable to the well or wells using such facilities

In no event will the royalties payable hereunder exceed One-Eighth (12.5%) of any governmentally-imposed sales price ceiling applicable to Lessee's sales or One-Eighth (12.5%) of the net amounts received by Lessee not subject to refund, whichever is the lesser; provided that any amounts held by Lessee subject to refund will be promptly distributed, without interest, when Lessee's sale price is finally determined by judicial or administrative authority. Payment of royalties hereunder shall be made or tendered on or before the end of the month following the production month, beginning no later than six (6) months after Date of First Sales.

4.       Delay Rental.  It is hereby agreed and acknowledged by Lessor and Lessee that this is a Paid-Up Oil and Gas Lease and all delay rentals due and payable under this agreement have been paid in advance and have been included in the consideration paid to Lessor by Lessee for this oil and gas lease.

It is agreed that Lessee may drill or not drill on the leased premises, as it may elect, and that the consideration and rentals paid constitute adequate compensation for such privilege. No implied covenant shall be read into this lease requiring Lessee to drill or to continue drilling on said land, or fixing the measure of diligence necessary on Lessee's part.

5.       Payment for Storage or Storage Protection Privileges.  In full compensation for the storage and storage protection rights herein granted and in lieu of all delay rental, or royalty due or to become due for the right to produce or for the production of oil or gas from the sands, strata, or horizons where gas may be stored or being protected as herein provided, Lessee covenants and agrees to pay Lessor, when no wells on the leased premises are utilized for the storage of gas, an annual storage rental of Five Dollars per acre ($5.00) dollars, payable quarterly in advance, beginning at the next payment date after gas shall have been stored under the terms of this agreement and continuing until the leased premises shall no longer be used for storage purposes, or until wells on the leased premises are utilized for the storage of gas, in which event Lessee shall cease paying storage rental to Lessor and pay in lieu thereof, a storage well rental or royalty of Two Hundred and no/100ᵗʰ ($ 200.00) dollars, per well quarterly in advance, so long as such shall be so utilized, subject to the right of cancellation or surrender hereinafter provided. Any storage rental paid for time beyond the date of such utilization of a well yielding storage well rental or royalty shall be credited upon the first storage well rental or royalty due upon the same, Lessee agrees to give Lessor written notice of the use of the leased premises and any wells drilled thereon for the storage of gas or protection of stored gas.

Notwithstanding anything contained herein to the contrary, the payment of storage rentals shall be subject to the "Lessor Interest", "Apportionment of Payments" and "Assignment" provisions of this lease. In addition, this lease shall be deemed to include the number of acres specified in Paragraph 1 for the calculation of storage payments.

6.       Dry Hole Clause and Cessation of Production.  If during the last year of the primary term and prior to the discovery of oil or gas on said land, Lessee should drill a dry hole thereon, or, if after discovery of oil or gas either before or during the last year of the primary term, the production thereof should cease during the last year of said term from any cause, no rental payment or operations are necessary in order to keep this lease in force during the remainder of the primary term. If, at the expiration of the primary term, Lessee has commenced operations for drilling a new well or reworking an old well, this lease shall continue in force as long as such drilling or reworking operations continue, or if after the expiration of the primary term, production on this lease shall cease, this lease shall continue in force if drilling or reworking operations are commenced within 120 consecutive days after such cessation of production; if production is restored or additional production is discovered as a result of any such drilling or reworking operations, conducted without cessation of more than 120 consecutive days, this lease shall continue as long thereafter as oil or gas is produced and as long as additional drilling or reworking operations are continued without cessation for more than 120 consecutive days.

7.       Shut-in Royalty.  During any period (whether before or after expiration of the primary term hereof) when gas is not being so sold or used and the well or wells are shut in and there is no current production of oil or operations on said leased premises sufficient to keep this lease in force, Lessee shall pay or tender a royalty of Twenty Dollar ($20.00) per year per net royalty acre retained hereunder, such payment or tender to be made on or before the anniversary date of this lease next ensuing after the expiration of ninety (90) days from the date such well is shut-in and thereafter on the anniversary date of this lease during the period such well is shut in, to the royalty owners. When such payment or tender is made it will be considered that gas is being produced within the meaning of the entire lease. Notwithstanding any other provision to the contrary, this lease shall not terminate because of a failure to properly or timely make shut-in gas well payments unless Lessor shall have given Lessee written notice of such failure to properly or timely make such shut-in gas well payment and Lessee shall have failed for a period of sixty (60) days after receipt of such notice to tender such late payment or such payment in the proper amount, together with a late or improper payment penalty of $100.00.

8.       Lessor Interest.  The respective amounts of all delay rentals, royalties, and other payments are to be calculated in proportion to Lessor's interest in such rights with respect to which each such payment is made; that is, in case Lessor owns less of an interest in any of such rights then the full and entire interest therein, then the payments in respect to such rights shall be paid to Lessor only in the proportion which Lessor's interest in such rights bears to the full and entire interest in such rights.

Corder v. Antero

Corder v. Antero

BK 1195 PG 0352

9. **Apportionment of Payments.** If the leased premises are now, or shall hereafter be owned in severalty or in separate tracts, the premises nevertheless shall be developed and operated as one lease, and all rentals, royalties and payments provided for shall be treated as an entirety and shall be divided among, and paid to, such separate owners in the proportion that the acreage owned by each such separate owner bears to the entire leased acreage.

10. **Assignment.** The rights of either party hereunder may be assigned, in whole or in part, and the provisions hereof shall extend to the heirs, successors and assigns, of the parties hereto, but no change in division of ownership of the land, rentals, royalties, or other payments hereunder, or interest therein, however accomplished, shall operate to enlarge the obligations or diminish the rights of Lessee. No change in the ownership of the land, or any interest herein, shall be binding on Lessee until thirty (30) days after Lessee shall have been furnished by registered U.S. Mail at Lessee's principal place of business with a certified copy of all recorded instruments, all court proceedings and all other necessary evidence of any transfer, inheritance or sale of said rights. In event of the assignment of this lease as to a segregated portion of said land, the shut-in royalties and other payments payable hereunder shall be apportioned among the several leasehold owners ratably according to the surface areas attributable to each, and default in shut-in royalties or other payments by one such leasehold owner or Lessee shall not affect the rights of the other leasehold owners or Lessees hereunder. In case Lessee assigns this Lease, in whole or in part, Lessee shall be relieved of all obligations with respect to the assigned portion or portions arising subsequent to the date of assignment.

11. **Surrender.** Lessee may, at any time or from time to time, execute and deliver to Lessor or place of record a surrender covering all or any part of the leased premises and thereupon shall be relieved of all obligations thereafter to accrue with respect to the leased premises so surrendered.

12. **Pooling.** Lessor grants unto Lessee the right to pool into a separate drilling or production unit(s), as to any one or more formations, said land or any part thereof and the leasehold estates in the vicinity of said land, whether contiguous or non-contiguous, held by Lessee or other mineral owners or lessees under other leases, when in Lessee's judgment, it is necessary or advisable to create such pools to develop and operate efficiently such lands. Any such pool shall not substantially exceed 80 acres each in area for oil and 640 acres each in area for gas, plus, in both instances, a tolerance of ten percent (10%); provided however, that larger pools may be created to conform to any well spacing or unit pattern prescribed by any governmental authority. The units formed by pooling as to any one or more formations need not conform in size or area with the unit or units into which the lease is pooled or combined as to any formation or formations, and oil units need not conform to the area within gas units. Leases, alone or with or other mineral owners or lessees under other leases, may form any pool before or after completion of a well thereon by recording in the county wherein the pooled land(s) are located, a declaration of such pooling. Neither the pooling nor the conduct of other drilling operations, the completion of a well or dry hole, or the operation of a producing well on the pooled area, shall be considered for all purposes (except as to royalties) as if said well were located on, or such drilling operations were conducted upon the lands covered by this lease whether or not such well is located upon, or such drilling operations are conducted upon, said land. The royalties provided for in Paragraph 3 hereof shall be tendered or paid to Lessor in the proportion that Lessor's acreage in the pooled area(s) bears to the total pooled area. Lessee shall have the right but not the obligation, to reduce, enlarge, or modify such pool(s) at any time. The royalties and such other payments tendered or paid thereafter shall then be based upon the proportionate acreage and interests in the revised pool. At any time the pool is not being operated as aforesaid, the declaration of pooling may be surrendered and canceled of record. Such cancelation or surrender shall not effect a surrender or cancellation of this lease.

13. **Other Rights – Lessee.** Lessee shall have the right to use, free of cost, oil, gas and water produced on said land for its operations except water from wells of Lessor. Lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing. No part of the surface of the leased premises shall, without the written consent of Lessee, be let, granted or licensed by Lessor to any other party for the location, construction or maintenance of structures, tanks, pits, reservoirs, equipment or machinery to be used for the purpose of exploring, developing or operating adjacent lands for oil or gas. Lessee shall also have the right to use, free of cost, any pipeline(s) laid under the terms of this lease for the transportation of gas produced off of the lands leased hereunder. Upon termination or expiration of this lease, Lessee shall have the option to purchase a pipeline right of way for any existing pipelines laid under the terms of this lease pursuant to paragraph 10 hereof.

14. **Other Rights – Lessor.** Lessee shall bury below plow depth its pipelines on the leased premises when requested by a Lessor owning an interest in the surface. No well shall be drilled within 200 feet of any house or barn now on the leased premises without the written consent of the owner of the surface on which such house or barn is located. Lessee shall pay for actual damages to growing crops, merchantable timber and fences caused by its operations on said lands.

15. ~~Warranties.~~ Lessor hereby warrants and agrees to defend the title to the lands and interest described in Paragraph 1, but if the interest of Lessor covered by this lease is expressly stated to be less than the entire fee or mineral estate, Lessor's warranty shall be limited to the interest so stated. Lessor further warrants that the lands hereby leased are not subject to any valid prior oil and gas leases. Lessee may purchase or lease the rights of any party claiming any interest in said land and exercise such rights as may be obtained thereby and Lessee shall not suffer any forfeiture nor incur any liability to Lessor by reason thereof. Lessee shall have the right at any time to pay for Lessor, any mortgage, taxes or other lien on said lands, in the event of default of payment by Lessor, and then be subrogated to the rights of the holder thereof. Any such payments made by Lessee for Lessor may be deducted from any amounts of money which may become due Lessor under this lease.

16. **Force Majeure.** Should Lessee be prevented from complying with any expressed or implied covenant of this lease, from conducting drilling or reworking operations thereon or from producing oil or gas by reason of scarcity of, or inability to obtain or to use equipment or material, or by operation of force majeure, or because of any federal or state law or any order, rule or regulation of a governmental authority, then while so prevented, Lessee's obligations to comply with such covenant shall be suspended, and Lessee shall not be liable in damages for failure to comply therewith; and this lease shall be extended while and so long as Lessee is prevented by any such cause from conducting drilling or reworking operations on, or from producing oil or gas or other hydrocarbons from the leased premises; and the time while Lessee is so prevented shall not be counted against the Lessee, anything in this lease to the contrary notwithstanding, and, if such cause shall extend within 120 days of the end of the primary term, this lease shall be extended for 120 days after the cessation of such cause and as long thereafter as there are operations on or production from the lease or lands pooled with it.

Corder v. Antero

Corder v. Antero

BK 1195 PG0353

17.    Adverse Claim.  If Lessee receives written notice of an adverse claim to the leased premises, effecting all or any part of the payments due hereunder, Lessee may, at its sole discretion, withhold payment or delivery of same without obligation to pay interest or royalty until such time as Lessor's ownership is determined by compromise, or by final decree of a court of competent jurisdiction, or Lessee may file a petition for interpleader. Lessee shall in no event be liable for interest or penalty for any such amounts withheld.

18.    Payments.        All payments are to be mailed to:    Randall M. Corder
                                                             RR 2 Box 185
                                                             Bristol, WV  26426

who is (are) hereby appointed agent(s). If designated as 'Agent' above, to receive and receipt for the same and to receive notices given by Lessee as provided herein. Lessee shall not be obligated to make payments or give notices to more then the number of payees hereinabove designated. Lessee shall not be obligated to make payments to any individual payee or agent hereunder until payments exceed the sum of Twenty-Five Dollars ($25.00), but in any case, payments shall be made at least once each calendar year. Lessee shall not be obligated to see to the application of any monies paid by Lessee to Lessor or to the agent(s) designated herein. Until such agent(s) or payee(s) is appointed or designated as above required, Lessee may withhold payment due hereunder without liability for interest or penalty. The depositing of such payments hereunder in any post office addressed as above set out fourth shall be deemed payment or tender as herein provided. Notwithstanding the death of Lessor, payment or tender to the deceased Lessor shall be binding on the heirs, devisees, executors, administrators and personal representatives of Lessor and his successors in interest.

~~19.     Pipeline Option.  For and in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, at the expiration of termination of this lease, Lessee shall be given the option to purchase pipeline right(s) of way for any existing pipelines laid under the terms of this lease for the price of $1.00 per linear foot. Lessee shall have one (1) year to exercise this option from, the later of, the expiration or termination of this lease or after receiving written notification from the Lessor stating that said lease has expired or been terminated and demanding that Lessee exercise the aforedescribed option or abandon its pipelines in place.~~

20.    Successors and Assigns.  This lease and all provisions thereof shall be applicable to and binding upon the parties and their respective heirs, devisees, personal representatives, successors and assigns. Reference herein to Lessor and Lessee shall include reference to their respective heirs, devisees, personal representatives, successors and assigns. Should any one or more of the parties named above as Lessors not execute this lease, it shall nevertheless be binding upon the party or parties executing same

21.    Pre-Existing Wells.  It is mutually agreed between Lessee and Lessor that any and all existing oil and/or gas wells located on the premises are specifically excepted and excluded from the operations of this lease.

22.    Affidavit of Non-Production.  Lessor hereby warrants that (i) the property is not encumbered by any enforceable oil or gas use of record or otherwise executed by the Lessor and that (ii) Lessor is not currently receiving any bonus, rental, production royalty or payment, or shut-in royalty as the result of any prior oil and gas lease covering any or all of the subject property, and that there have been no wells drilled upon the subject property or upon any lands with which the property has been combined in a drilling or production unit, with the exception of the well privately owned by Lessor

23.    Compliance with Statutes.  It is agreed between the parties hereto that in the event any provision or portion of this oil and gas lease is determined by a court of competent jurisdiction, regulatory agency, regulatory body, or legislative body to be in violation of local, state or federal statute, rule or regulation, the relevant portion of the subject provision or portion of this oil and gas lease which is not in compliance with such statute, rule or regulation shall be severed from this agreement to the extent necessary to comply with such statute, rule or regulation, and this oil and gas lease shall continue in full force and effect as amended.

~~24.     Right of First Refusal. — If at any time within the primary term of this lease or any continuation or extension thereof, Lessor receives any bona fide offer, acceptable to Lessor, to grant an additional lease ("Top Lease") covering all or part of the above described land, Lessee shall have the continuing option by meeting any such offer to acquire a Top Lease on equivalent terms and conditions. Any offer must be in writing and must set forth the proposed lessee's name, bonus consideration and royalty consideration to be paid for such Top Lease, and include a copy of the lease form to be utilized reflecting all pertinent and relevant terms and conditions of the Top Lease. Lessee shall have fifteen (15) days (exclusive of Saturdays, Sundays and Federal holidays) after receipt from Lessor of a complete copy of any such offer to advise Lessor in writing of its election to enter into an oil and gas lease with Lessor on equivalent terms and conditions, as to all or any part of the above described land. If Lessee fails to notify Lessor within the aforesaid fifteen (15) day period of its election to meet any such bona fide offer, Lessor shall have the right to accept said offer. Any Top Lease granted by Lessor in violation of this provision shall be null and void.~~

Corder v. Antero

Corder v. Antero

BK1195 PG0354

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF FOR ADDITIONAL PROVISONS

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands, signed and acknowledged in the presence of:

LESSOR

*Randall M. Corder*

Randall M. Corder

ACKNOWLEDGEMENT

STATE OF WEST VIRGINIA      )
                            )
COUNTY OF HARRISON          )

The foregoing instrument was acknowledged before me this ____30th____ day of ____June____, 2012, by
Randall M. Corder

My Commission Expires: _2/23/2019_      *Wendy Skinner*
                                        Notary Public



This instrument prepared by the following; when recorded, please return to:

Antero Resources Appalachian Corporation
P.O. Box 410
Bridgeport, WV 26330

Corder v. Antero

Corder v. Antero

BK1495 PG0355

### EXHIBIT "A"

Attached to and made a part of that certain oil and gas lease dated June 29, 2012  by and between Randall M. Corder, as lessors and Antero Resources Appalachian Corporation, as lessee, to-wit:

The following provisions shall supplement the printed provisions of the Lease; and, in the event of any conflict between the following supplemental provisions, and the provisions of the printed Lease, these supplemental provisions shall prevail and control:

#### SUPERSEDE CLAUSE
All term and provision of this Exhibit A supersede and replace those in the body of the oil and gas lease, to which this is attached, whenever they conflict.

All reference herein made to One-Eighth (12 ½%) royalty are hereby amended to read Fifteen (15.0%) percent royalty.

#### Market Enhancement (Gross Proceeds) Clause
It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil, gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements.  However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.

#### Depth Clause
Notwithstanding anything to the contrary, at the expiration of the primary term this lease is to expire as to all depths and formations 100 feet below the base of the stratigraphic equivalent of the deepest producing formation, provided, however, if the Lessee, its successors or assigns, should be engaged in operations for drilling, deepening, sidetracking, or reworking a well or wells on the leased premises or on lands with which said lands or a portion thereof have been pooled or unitized, then this lease shall continue in effect as to all formations and depths until such operations have been completed and total depth has been established.

Signed for Identification:

*Randall M. Corder* (signature)

Randall M. Corder

This instrument prepared by the following; when recorded, please return to:

Antero Resources Appalachian Corporation
P.O. Box 410
Bridgeport, WV  26330

Corder v. Antero

Corder v. Antero

ANTERO RESOURCES CORPORATION
1. 408 120
DENVER, W 26030-0400

BK '562 PG1128

Susan J Thomas
HARRISON County 03:47:21 PM
Instrument No 20150085204
Date Recorded 10/21/2015
Document Type LEA
Pages Recorded 2
Book-Page    1562-1128
Recording Fee $5.00
Additional    $6.00

### MEMORANDUM OF OIL AND GAS LEASE

THIS MEMORANDUM OF OIL AND GAS LEASE ("Memorandum"), dated this 14th day of August, 2015, by and between Randall Corder, whose address is 58 Blackberry Hollow Rd., Bristol, WV 26426, hereinafter referred to individually and collectively as "Lessor," (whether one or more) and ANTERO RESOURCES CORPORATION, whose address is 1615 Wynkoop Street, Denver, CO 80202, hereinafter referred to as "Lessee."

#### WITNESSETH:

WHEREAS, Lessor has entered into an Amended Oil and Gas Lease with Lessee dated the 14th day of August, 2015 (the "Lease"), and

WHEREAS, that parties now enter into this Memorandum to provide notice of the Lease.

1.      For good and valuable consideration, the receipt of which having been acknowledged and accepted by the Lessor, the Lessor did grant, demise, lease and let exclusively unto Lessee the lands hereinafter described for the purposes of exploring by geological and geophysical and other methods, (including, but not limited to, conducting seismic surveys), drilling either vertically or horizontally, operating for, producing oil or gas or both including methane gas present in or associated with any formations, horizons, strata or zones, from the top of the Rhinestreet Formation (as seen by the James P. Boring Well, API Number 47033005270000, at a depth of 5439') to five hundred feet (500') below the top of the Helderberg Formation (with the top of the Helderberg Formation as seen by the James P. Boring Well, API Number 47033005270000, at a depth of 71917'), and the exclusive right to inject air, gas, water, brine or other fluids into the subsurface strata and any and all other rights and privileges necessary, incident to, or convenient for the economical operation of the lands, alone or conjointly with neighboring lands for these purposes, together with the right and easement to construct, operate, repair, maintain, resize and remove pipelines, telephone, power and electric lines, tanks, ponds, roadways, plants, equipment and structures thereon to produce, save, store and take care of such substances.

2.      Said lands being described in the Lease as situated on the waters of the Turtle Tree Fork of Ten Mile in the District of Union, County of Harrison, State of West Virginia, and being bounded now or formerly substantially as follows, to wit:

On the North by lands of County Road 30/5
On the East by lands of Franklin D. Riffle
On the South by lands of James Corder
On the West by lands of Bill Devericks

Said lands being identified for tax purposes as tract or parcel number 20-361-3, p/o 5 as of the date of this lease. Notwithstanding said tax map designation, this lease shall be effective as to the tract actually owned by Lessor whether or not the tax map designation correctly identifies the location of the tract. Being also the same interest acquired by the Lessor in Fiduciary Order Book dated November 24, 1987, and recorded in the Clerk's Office in and for Harrison County, State of West Virginia, filed in Fiduciary Order Book 85 at Page 677. For all purposes of this lease, including determining the amount of delay rentals, royalties and shut-in royalties hereunder, said land shall be deemed to contain 32.45 gross acres whether it actually contains more or less. For all purposes of this Memorandum, references to said acres or either of them shall mean oil, or gas, or both and all substances which are constituents of, or produced with, oil or gas, whether similar or dissimilar, or produced in a gaseous, liquid, or solid state (as further defined in Paragraph 1 of the Lease).

3.      The primary term of said Lease commenced August 14th, 2015 for a term of FIVE (5) YEARS, and will expire August 14th, 2020. The primary term of the Lease shall be extended for as long thereafter as oil and/or gas is produced from the Lease premises or lands with which the Lease is unitized or pooled; or as long as drilling operations are continuously prosecuted as provided in the Lease; or as long as the leased premises shall be operated or otherwise maintained by Lessee, its successors or assigns, in accordance with the terms and provisions of the Lease, unless earlier terminated in accordance with the terms and provisions of the Lease.

4.      Lessee shall have the option to extend the primary term of the Lease for an additional five (5) years ("Extended Term"), pursuant to the terms of the Lease. Assignee's election to extend the term of the Lease shall be tendered in writing to Lessor on or before the expiration of the primary term. Lessee may file a written notice of its election to extend the primary term and cause the same to be recorded among the land records of the county wherein the lands are located.

5.      Right of First Refusal.  If at any time within the primary term of this lease or any continuation or extension thereof, Lessor receives any bona fide offer, acceptable to Lessor, to grant an additional lease ("Top Lease") covering all or part of the above described land, Lessee shall have the continuing option by meeting any such offer to acquire a Top Lease on equivalent terms and conditions.  Any offer must be in writing and must set forth the proposed lessee's name, bonus consideration and royalty consideration to be paid for such Top Lease, and include a copy of the lease form to be utilized reflecting all pertinent and relevant terms and conditions of the Top Lease. Lessee shall have fifteen (15) days (exclusive of Saturdays, Sundays and Federal holidays) after receipt from Lessor of a complete copy of any such offer to advise Lessor in writing of its election to enter into an oil and gas lease with Lessor on equivalent terms and conditions, as to all or any part of the above described land.  If Lessee fails to notify Lessor within the aforesaid fifteen (15) day period of its election to meet any such bona fide offer, Lessor shall have the right to accept said offer.  Any Top Lease granted by Lessor in violation of this provision shall be null and void.



Corder v. Antero

Corder v. Antero

BK : 562 PG 1129

6.      The parties hereto incorporate all terms, covenants, provisions, conditions, royalties and rentals as set forth in the Lease by reference as though fully written and set forth herein.  In the event the Lease is amended or supplemented by written instrument executed by the parties in interest thereto or assigned or terminated in any manner permitted under the terms thereof, then without any further act or instrument whatsoever, this Memorandum shall likewise and to the same effect be amended, assigned or terminated, as the case may be. This Memorandum is executed in simplified short form for the convenience of the parties and for the purpose of recording the same and this Memorandum shall not in any way have the effect of modifying, supplementing or abridging the Lease or any of its provisions now or hereafter in force and effect.

*IN WITNESS WHEREOF*, the parties hereto have hereunto set their hands the day and year first above written, signed and acknowledged in the presence of:

Randall on. Corder
LESSOR:
Randall Corder


LESSEE:
ANTERO RESOURCES CORPORATION
By: Brian Kuhn
Title: Vice President-Land

INDIVIDUAL ACKNOWLEDGMENT

STATE OF WEST VIRGINIA            )
COUNTY OF  Doddridge              )
                                  )

      The foregoing instrument was acknowledged before me this 29ᵗʰ day of August, 2015, by Randall Corder.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

[SEAL]                    Pamela B. Seamon
                          Notary Public
                          My Commission Expires: October 9, 2017

CORPORATE ACKNOWLEDGMENT

STATE OF COLORADO                 )
COUNTY OF  Denver                 )
                                  )

      On this 17th day of September, 2015, before me Sarah Hummel, the undersigned Notary, did personally appear Brian Kuhn, who acknowledged himself to be the Vice President-Land of Antero Resources Corporation, a corporation, and that he, as such, being authorized to do so, executed the foregoing instrument for the purposes therein contained on behalf of the corporation, by signing the name of the corporation by himself and as Vice President-Land.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

[SEAL]                    Sarah Hummel
SARAH HUMMEL              Notary Public
Notary Public            My Commission Expires: 2/20/2018
State of Colorado
Notary ID 20104044196
My Commission Expires Dec 20, 2018

This instrument prepared by the following; when recorded, please return to:

Antero Resources Corporation
P.O. Box 410
Bridgeport, WV  26330

696459%.1

2 of 2

Corder v. Antero

Corder v. Antero

ANTERO RESOURCES CORPORATION
P.1. BOX 419
BRIDGEPORT, WV 26330-0410

BK : 562 PG 1 1 26

Susan J Thomas
HARRISON County 03:46:20 PM
Instrument No 201500852475
Date Recorded 10/21/2015
Document Type LEA
Pages Recorded 2
Book-Page        1562-1126
Recording Fee $5.00
Additional       $6.00

### MEMORANDUM OF OIL AND GAS LEASE

THIS MEMORANDUM OF OIL AND GAS LEASE ("Memorandum"), dated this 14th day of August, 2015, by and between Tracy Bridge, whose address is 895 Sherwood Drive, Elyria, OH 44035, hereinafter referred to individually and collectively as "Lessor," (whether one or more) and ANTERO RESOURCES CORPORATION, whose address is 1615 Wynkoop Street, Denver, CO 80202, hereinafter referred to as "Lessee."

### WITNESSETH:

**WHEREAS**, Lessor has entered into an Oil and Gas Lease with Lessee dated the 14th day of August, 2015 (the "Lease"), and

**WHEREAS**, that parties now enter into this Memorandum to provide notice of the Lease.

1.    For good and valuable consideration, the receipt of which having been acknowledged and accepted by the Lessor, the Lessor did grant, demise, lease and let exclusively unto Lessee the lands hereinafter described for the purposes of exploring by geological and geophysical and other methods, (including, but not limited to, conducting seismic surveys), drilling either vertically or horizontally, operating for, producing oil or gas or both including methane gas present in or associated with any formations, horizons, strata or zones, from the top of the Rhinestreet Formation (as seen by the James P. Boring Well, API Number 47033005270000, at a depth of 5439') to five hundred feet (500') below the top of the Helderberg Formation (with the top of the Helderberg Formation as seen by the James P. Boring Well, API Number 47033005270000, at a depth of 7191'), and the exclusive right to inject air, gas, water, brine or other fluids into the subsurface strata and any and all other rights and privileges necessary, incident to, or convenient for the economical operation of the lands, alone or conjointly with neighboring lands for these purposes, together with the right and easement to construct, operate, repair, maintain, resize and remove pipelines, telephone, power and electric lines, tanks, ponds, roadways, plants, equipment and structures thereon to produce, save, store and take care of such substances.

2.    Said lands being described in the Lease as situated on the waters of the Turtle Tree Fork of Ten Mile in the District of Union, County of Harrison, State of West Virginia, and being bounded now or formerly substantially as follows, to wit:

        On the North by lands of County Road 30/5
        On the East by lands of Franklin D. Riffle
        On the South by lands of James Corder
        On the West by lands of Bill Devericks

Said lands being identified for tax purposes as tract or parcel number 20-361-3, p/o 5 as of the date of this lease. Notwithstanding said tax map designation, this lease shall be effective as to the tract actually owned by Lessor whether or not the tax map designation correctly identifies the location of the tract. Being also the same interest acquired by the Lessor in Fiduciary Order Book dated July 5, 2000, and recorded in the Clerk's Office in and for Harrison County, State of West Virginia, filed in Fiduciary Order Book 100 at Page 347. For all purposes of this lease, including determining the amount of delay rentals, royalties and shut-in royalties hereunder, said land shall be deemed to contain 32.45 gross acres whether it actually contains more or less. For all purposes of this Memorandum, references to oil and gas or either of them shall mean oil, or gas, or both and all substances which are constituents of, or produced with, oil or gas, whether similar or dissimilar, or produced in a gaseous, liquid, or solid state (as further defined in Paragraph 1 of the Lease).

3.    The primary term of said Lease commenced August 14th, 2015 for a term of FIVE (5) YEARS, and will expire August 14th, 2020. The primary term of the Lease shall be extended for as long thereafter as oil and/or gas is produced from the Lease premises or lands with which the Lease is utilized or pooled; or as long as drilling operations are continuously prosecuted as provided in the Lease; or as long as the leased premises shall be operated or otherwise maintained by Lessee, its successors or assigns, in accordance with the terms and provisions of the Lease, unless earlier terminated in accordance with the terms and provisions of the Lease.

4.    Lessee shall have the option to extend the primary term of the Lease for an additional five (5) years ("Extended Term"), pursuant to the terms of the Lease. Assignee's election to extend the term of the Lease shall be tendered in writing to Lessor on or before the expiration of the primary term. Lessee may file a written notice of its election to extend the primary term and cause the same to be recorded among the land records of the county wherein the lands are located.

5.    Right of First Refusal. If at any time within the primary term of this lease or any continuation or extension thereof, Lessor receives any bona fide offer, acceptable to Lessor, to grant an additional lease ("Top Lease") covering all or part of the above described land, Lessee shall have the continuing option by meeting any such offer to acquire a Top Lease on equivalent terms and conditions. Any offer must be in writing and must set forth the proposed lessee's name, bonus consideration and royalty consideration to be paid for such Top Lease, and include a copy of the lease form to be utilized reflecting all pertinent and relevant terms and conditions of the Top Lease. Lessee shall have fifteen (15) days (exclusive of Saturdays, Sundays and Federal holidays) after receipt from Lessor of a complete copy of any such offer to advise Lessor in writing of its election to enter into an oil and gas lease with Lessor on equivalent terms and conditions, as to all or any part of the above described land. If Lessee fails to notify Lessor within the aforesaid fifteen (15) day period of its election to meet any such bona fide offer, Lessor shall have the right to accept said offer. Any Top Lease granted by Lessor in violation of this provision shall be null and void.

1 of 2

*TFB 182*

Corder v. Antero

Corder v. Antero

BK: 562 PG1127

6. The parties hereto incorporate all terms, covenants, provisions, conditions, royalties and rentals as set forth in the Lease by reference as though fully written and set forth herein. In the event the Lease is amended or supplemented by written instrument executed by the parties in interest thereto or assigned or terminated in any manner permitted under the terms thereof, then without any further act or instrument whatsoever, this Memorandum shall likewise and to the same effect be amended, assigned or terminated, as the case may be. This Memorandum is executed in simplified short form for the convenience of the parties and for the purpose of recording the same and this Memorandum shall not in any way have the effect of modifying, supplementing or abridging the Lease or any of its provisions now or hereafter in force and effect.

*IN WITNESS WHEREOF,* the parties hereto have hereunto set their hands the day and year first above written, signed and acknowledged in the presence of:

LESSOR:
Tracy Bridge

LESSEE:
ANTERO RESOURCES CORPORATION
By: Brian Kuhn
Title: Vice President-Land

INDIVIDUAL ACKNOWLEDGMENT

STATE OF   Ohio          )
COUNTY OF   Lorain       )

The foregoing instrument was acknowledged before me this 24th day of   Aug
2015, by Tracy Bridge.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

[SEAL]

Notary Public
My Commission Expires:   Sept 30, 2018

CORPORATE ACKNOWLEDGMENT

STATE OF COLORADO       )
COUNTY OF   Denver       )

On this   17   day of   September   , 2015, before me   CE Whitlock
the undersigned Notary, did personally appear Brian Kuhn, who acknowledged himself to be the Vice President-Land of Antero Resources Corporation, a corporation, and that he, as such, being authorized to do so, executed the foregoing instrument for the purposes therein contained on behalf of the corporation, by signing the name of the corporation by himself and as Vice President-Land.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

[SEAL]

C E WHITLOCK
NOTARY PUBLIC, STATE OF COLORADO
NOTARY ID 20064091975
MY COMMISSION EXPIRES JANUARY 18, 2018

Notary Public
My Commission Expires:   1/18/18

This instrument prepared by the following; when recorded, please return to:

Antero Resources Corporation
P.O. Box 410
Bridgeport, WV 26330

69686499.1

2 of 2

TFB-292
PG. 292

Corder v. Antero

Corder v. Antero

ANTERO RESOURCES CORPORATION
♦ ☐
∴ ¼ 355″ ⩒. 7630-0410

BK 562 PG1114

Susan J Thomas
HARRISON County 03:42:28 PM
Instrument No 20150002968
Date Recorded 10/21/2015
Document Type LEA
Pages Recorded 2
Book-Page    1542-1114
Recording Fee $5.00
Additional    $6.00

## MEMORANDUM OF OIL AND GAS LEASE

THIS MEMORANDUM OF OIL AND GAS LEASE ("Memorandum"), dated this 14th day of August, 2015, by and between Cheryl Morris, whose address is 346 Dye Road, Bell Buckle, TN 37020, hereinafter referred to individually and collectively as "Lessor," (whether one or more) and ANTERO RESOURCES CORPORATION, whose address is 1615 Wynkoop Street, Denver, CO 80202, hereinafter referred to as "Lessee."

### WITNESSETH:

WHEREAS, Lessor has entered into an Oil and Gas Lease with Lessee dated the 14th day of August, 2015 (the "Lease"), and

WHEREAS, that parties now enter into this Memorandum to provide notice of the Lease.

1.  For good and valuable consideration, the receipt of which having been acknowledged and accepted by the Lessor, the Lessor did grant, demise, lease and let exclusively unto Lessee the lands hereinafter described for the purposes of exploring by geological and geophysical and other methods, (including, but not limited to, conducting seismic surveys), drilling either vertically or horizontally, operating for, producing oil or gas or both including methane gas present in or associated with any formations, horizons, strata or zones, from the top of the Rhinestreet Formation (as seen by the James P. Boring Well, API Number 47033005270000, at a depth of 5439') to five hundred feet (500') below the top of the Helderberg Formation (with the top of the Helderberg Formation as seen by the James P. Boring Well, API Number 47033005270000, at a depth of 7191'), and the exclusive right to inject air, gas, water, brine or other fluids into the subsurface strata and any and all other rights and privileges necessary, incident to, or convenient for the economical operation of the lands, alone or conjointly with neighboring lands for these purposes, together with the right and easement to construct, operate, repair, maintain, resize and remove pipelines, telephone, power and electric lines, tanks, ponds, roadways, plants, equipment and structures thereon to produce, save, store and take care of such substances.

2.  Said lands being described in the Lease as situated on the waters of the Turtle Tree Fork of Ten Mile in the District of Union, County of Harrison, State of West Virginia, and being bounded now or formerly substantially as follows, to wit:

> On the North by lands of County Road 30/5
> On the East by lands of Franklin D. Riffle
> On the South by lands of James Corder
> On the West by lands of Bill Devericks

Said lands being identified for tax purposes as tract or parcel number 20-361-3, p/o 5 as of the date of this lease. Notwithstanding said tax map designation, this lease shall be effective as to the tract actually owned by Lessor whether or not the tax map designation correctly identifies the location of the tract. Being also the same interest acquired by the Lessor in Fiduciary Order Book dated July 5, 2000, and recorded in the Clerk's Office in and for Harrison County, State of West Virginia, filed in Fiduciary Order Book 100 at Page 347. For all purposes of this lease, including determining the amount of delay rentals, royalties and shut-in royalties hereunder, said land shall be deemed to contain 32.45 gross acres whether it actually contains more or less. For all purposes of this Memorandum, references to oil and gas or either of them shall mean oil, or gas, or both and all substances which are constituents of, or produced with, oil or gas, whether similar or dissimilar, or produced in a gaseous, liquid, or solid state (as further defined in Paragraph 1 of the Lease).

3.  The primary term of said Lease commenced August 14th, 2015 for a term of FIVE (5) YEARS, and will expire August 14th, 2020. The primary terms of the Lease shall be extended for as long thereafter as oil and/or gas is produced from the Lease premises or lands with which the Lease is unitized or pooled; or as long as drilling operations are continuously prosecuted as provided in the Lease; or as long as the leased premises shall be operated or otherwise maintained by Lessee, its successors or assigns, in accordance with the terms and provisions of the Lease, unless earlier terminated in accordance with the terms and provisions of the Lease.

4.  Lessee shall have the option to extend the primary term of the Lease for an additional five (5) years ("Extended Term"), pursuant to the terms of the Lease. Assignee's election to extend the term of the Lease shall be tendered in writing to Lessor on or before the expiration of the primary term. Lessee may file a written notice of its election to extend the primary term and cause the same to be recorded among the land records of the county wherein the lands are located.

5.  Right of First Refusal. If at any time within the primary term of this lease or any continuation or extension thereof, Lessor receives any bona fide offer, acceptable to Lessor, to grant an additional lease ("Top Lease") covering all or part of the above described land, Lessee shall have the continuing option by meeting any such offer to acquire a Top Lease on equivalent terms and conditions. Any offer must be in writing and must set forth the proposed lessee's name, bonus consideration and royalty consideration to be paid for such Top Lease, and include a copy of the lease form to be utilized reflecting all pertinent and relevant terms and conditions of the Top Lease. Lessee shall have fifteen (15) days (exclusive of Saturdays, Sundays and Federal holidays) after receipt from Lessor of a complete copy of any such offer to advise Lessor in writing of its election to enter into an oil and gas lease with Lessor on equivalent terms and conditions, as to all or any part of the above described land. If Lessor fails to notify Lessee within the aforesaid fifteen (15) day period of its election to meet any such bona fide offer, Lessor shall have the right to accept said offer. Any Top Lease granted by Lessor in violation of this provision shall be null and void.

1 of 2

Corder v. Antero

Corder v. Antero

BK·562 PG1115

6.      The parties hereto incorporate all terms, covenants, provisions, conditions, royalties and rentals as set forth in the Lease by reference as though fully written and set forth herein.  In the event the Lease is amended or supplemented by written instrument executed by the parties in interest thereto or assigned or terminated in any manner permitted under the terms thereof, then without any further act or instrument whatsoever, this Memorandum shall likewise and to the same effect be amended, assigned or terminated, as the case may be. This Memorandum is executed in simplified short form for the convenience of the parties and for the purpose of recording the same and this Memorandum shall not in any way have the effect of modifying, supplementing or abridging the Lease or any of its provisions now or hereafter in force and effect.

*IN WITNESS WHEREOF*, the parties hereto have hereunto set their hands the day and year first above written, signed and acknowledged in the presence of:

LESSOR:
Cheryl Morris

LESSEE:
ANTERO RESOURCES CORPORATION
By: Brian Kahn
Title: Vice President-Land

INDIVIDUAL ACKNOWLEDGMENT

STATE OF Tennssee

COUNTY OF Rutherford

        The foregoing instrument was acknowledged before me this 25th day of August 2015, by Cheryl Morris.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

[SEAL]
CAROL WHITE
STATE
OF
TENNESSEE
NOTARY
PUBLIC
OF RUTHER

                                        Carol White
                                        Notary Public
                                        My Commission Expires: Dec. 16, 2017

CORPORATE ACKNOWLEDGMENT

STATE OF COLORADO

COUNTY OF Denver

        On this 17 day of September, 2015, before me CE Whitlock the undersigned Notary, did personally appear Brian Kahn, who acknowledged himself to be the Vice President-Land of Antero Resources Corporation, a corporation, and that he, as such, being authorized to do so, executed the foregoing instrument for the purposes therein contained on behalf of the corporation, by signing the name of the corporation by himself and as Vice President-Land.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

[SEAL]
C E WHITLOCK
NOTARY PUBLIC, STATE OF COLORADO
NOTARY ID 20084001878
MY COMMISSION EXPIRES JANUARY 18, 2018

                                        Notary Public
                                        My Commission Expires: 1/18/18

This instrument prepared by the following; when recorded, please return to:

Antero Resources Corporation
P.O. Box 410
Bridgeport, WV  26330

6968643.1

2 of 2

Corder v. Antero

Corder v. Antero

ANTERO RESOURCES CORPORATION
‌‌‌‌‌‌‌BOX 420
‌‌‌‌‌‌DENVER, CO 24536-0410

BK : 562 PGI I I 8

Susan J Thomas
HARRISON County 03:44:21 PM
Instrument No 201500052970
Date Recorded 10/21/2015
Document Type LEA
Pages Recorded 2
Book-Page      1562-1118
Recording Fee $5.00
Additional     $6.00

## MEMORANDUM OF OIL AND GAS LEASE

THIS MEMORANDUM OF OIL AND GAS LEASE ("Memorandum"), dated this 14th day of August, 2015, by and between Angela Nicholson, whose address is 707 E. Woodland Dr., St. Joseph, IL 61873, hereinafter referred to individually and collectively as "Lessor," (whether one or more) and ANTERO RESOURCES CORPORATION, whose address is 1615 Wynkoop Street, Denver, CO 80202, hereinafter referred to as "Lessee."

### WITNESSETH:

WHEREAS, Lessor has entered into an Oil and Gas Lease with Lessee dated the 14th day of August, 2015 (the "Lease"), and

WHEREAS, that parties now enter into this Memorandum to provide notice of the Lease.

1.     For good and valuable consideration, the receipt of which having been acknowledged and accepted by the Lessor, the Lessor did grant, demise, lease and let exclusively unto Lessee the lands hereinafter described for the purposes of exploring by geological and geophysical and other methods, (including, but not limited to, conducting seismic surveys), drilling either vertically or horizontally, operating for, producing oil or gas or both including methane gas present in or associated with any formations, horizons, strata or zones, from the top of the Rhinestreet Formation (as seen by the James P. Boring Well, API Number 47033005270000, at a depth of 5439') to five hundred feet (500') below the top of the Helderberg Formation (with the top of the Helderberg Formation as seen by the James P. Boring Well, API Number 47033005170000, at a depth of 7191'), and the exclusive right to inject air, gas, water, brine or other fluids into the subsurface strata and any and all other rights and privileges necessary, incident to, or convenient for the economical operation of the lands, alone or conjointly with neighboring lands for these purposes, together with the right and easement to construct, operate, repair, maintain, resize and remove pipelines, telephone, power and electric lines, tanks, ponds, roadways, plants, equipment and structures thereon to produce, save, store and take care of such substances.

2.     Said lands being described in the Lease is situated on the waters of the Turtle Tree Fork of Ten Mile in the District of Union, County of Harrison, State of West Virginia, and being bounded now or formerly substantially as follows, to wit:

> On the North by lands of County Road 30/5
> On the East by lands of Franklin D. Riffle
> On the South by lands of James Corder
> On the West by lands of Bill Devericks

Said lands being identified for tax purposes as tract or parcel number 20-361-3, p/o 5 as of the date of this lease. Notwithstanding said tax map designation, this lease shall be effective as to the tract actually owned by Lessor whether or not the tax map designation correctly identifies the location of the tract. Being also the same interest acquired by the Lessor in Deed Book dated October 15, 2013, and recorded in the Clerk's Office in and for Harrison County, State of West Virginia, filed in Deed Book 1521 at Page 950. For all purposes of this lease, including determining the amount of delay rentals, royalties and shut-in royalties hereunder, said land shall be deemed to contain 32.45 gross acres whether it actually contains more or less. For all purposes of this Memorandum, references to oil and gas or either of them shall mean oil, or gas, or both and all substances which are constituents of, or produced with, oil or gas, whether similar or dissimilar, or produced in a gaseous, liquid, or solid state (as further defined in Paragraph 1 of the Lease).

3.     The primary term of said Lease commenced August 14th, 2015 for a term of FIVE (5) YEARS, and will expire August 14th, 2020. The primary term of the Lease shall be extended for as long thereafter as oil and/or gas is produced from the Lease premises or lands with which the Lease is unitized or pooled; or as long as drilling operations are continuously prosecuted as provided in the Lease; or as long as the leased premises shall be operated or otherwise maintained by Lessee, its successors or assigns, in accordance with the terms and provisions of the Lease, unless earlier terminated in accordance with the terms and provisions of the Lease.

4.     Lessee shall have the option to extend the primary term of the Lease for an additional five (5) years ("Extended Term"), pursuant to the terms of the Lease. Assignee's election to extend the term of the Lease shall be tendered in writing to Lessor on or before the expiration of the primary term. Lessee may file a written notice of its election to extend the primary term and cause the same to be recorded among the land records of the county wherein the lands are located.

5.     Right of First Refusal. If at any time within the primary term of this lease or any continuation or extension thereof, Lessor receives any bona fide offer, acceptable to Lessor, to grant an additional lease ("Top Lease") covering all or part of the above described land, Lessee shall have the continuing option by meeting any such offer to acquire a Top Lease on equivalent terms and conditions. Any offer must be in writing and must set forth the proposed lessee's name, bonus consideration and royalty consideration to be paid for such Top Lease, and include a copy of the lease form to be utilized reflecting all pertinent and relevant terms and conditions of the Top Lease. Lessee shall have fifteen (15) days (exclusive of Saturdays, Sundays and Federal holidays) after receipt from Lessor of a complete copy of any such offer to advise Lessor in writing of its election to enter into an oil and gas lease with Lessor on equivalent terms and conditions, as to all or any part of the above described land. If Lessee fails to notify Lessor within the aforesaid fifteen (15) day period of its election to meet any such bona fide offer, Lessor shall have the right to accept said offer. Any Top Lease granted by Lessor in violation of this provision shall be null and void.

mmh p.102

1 of 2

Corder v. Antero

Corder v. Antero

BK:562 PGII19

6.    The parties hereto incorporate all terms, covenants, provisions, conditions, royalties and rentals as set forth in the Lease by reference as though fully written and set forth herein.  In the event the Lease is amended or supplemented by written instrument executed by the parties in interest thereto or assigned or terminated in any manner permitted under the terms thereof, then without any further act or instrument whatsoever, this Memorandum shall likewise and to the same effect be amended, assigned or terminated, as the case may be. This Memorandum is executed in simplified short form for the convenience of the parties and for the purpose of recording the same and this Memorandum shall not in any way have the effect of modifying, supplementing or abridging the Lease or any of its provisions now or hereafter in force and effect.

*IN WITNESS WHEREOF*, the parties hereto have hereunto set their hands the day and year first above written, signed and acknowledged in the presence of:

LESSOR:
Angela Nicholson

LESSEE:
ANTERO RESOURCES CORPORATION
By: Brian Kuhn
Title: Vice President-Land

INDIVIDUAL ACKNOWLEDGMENT

STATE OF ___Illinois___ )
COUNTY OF ___Champaign___ )

The foregoing instrument was acknowledged before me this _28_ day of _August_, 2015, by Angela Nicholson.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

[SEAL]

"OFFICIAL SEAL"
MILAGROS MARGARITA MARTINEZ TYLER
Notary Public - State of Illinois
My Commission Expires December 16, 2016

Notary Public
My Commission Expires: _Dec 16, 2016_

CORPORATE ACKNOWLEDGMENT

STATE OF COLORADO )
COUNTY OF _Denver_ )

On this _17th_ day of _September_, 2015, before me; _Sarah Hummel_ the undersigned Notary, did personally appear Brian Kuhn, who acknowledged himself to be the Vice President-Land of Antero Resources Corporation, a corporation, and that he, as such, being authorized to do so, executed the foregoing instrument for the purposes therein contained on behalf of the corporation, by signing the name of the corporation by himself and as Vice President-Land.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

[SEAL]

SARAH HUMMEL
Notary Public
State of Colorado
Notary ID 20104044196
My Commission Expires Dec 20, 2018

Notary Public
My Commission Expires: _12/20/2018_

This instrument prepared by the following; when recorded, please return to:

Antero Resources Corporation
P.O. Box 410
Bridgeport, WV 26330

4968389.1

2 of 2

Corder v. Antero

Corder v. Antero

ANTERO RESOURCES CORPORATION
1615 ...
Elyria. VA 26330-0410

BK 562 PG1116

Susan J Thomas
HARRISON County 03:43:37 PM
Instrument No 201500082969
Date Recorded 10/21/2015
Document Type LEA
Pages Recorded 2
Book-Page    1562-1116
Recording Fee $6.00
Additional    $6.00

## MEMORANDUM OF OIL AND GAS LEASE

THIS MEMORANDUM OF OIL AND GAS LEASE ("Memorandum"), dated this 14th day of August, 2015, by and between Kevin McCall, whose address is 360 Bon Air Ave., Elyria, OH 44035, hereinafter referred to individually and collectively as "Lessor," (whether one or more) and ANTERO RESOURCES CORPORATION, whose address is 1615 Wynkoop Street, Denver, CO 80202, hereinafter referred to as "Lessee."

WITNESSETH:

*WHEREAS*, Lessor has entered into an Oil and Gas Lease with Lessee dated the 14th day of August, 2015 (the "Lease"), and

*WHEREAS*, that parties now enter into this Memorandum to provide notice of the Lease.

1.     For good and valuable consideration, the receipt of which having been acknowledged and accepted by the Lessor, the Lessor did grant, demise, lease and let exclusively unto Lessee the lands hereinafter described for the purposes of exploring by geological and geophysical and other methods, (including, but not limited to, conducting seismic surveys), drilling either vertically or horizontally, operating for, producing oil or gas or both including methane gas present in or associated with any formations, horizons, strata or zones, from the top of the Rhinestreet Formation (as seen by the James P. Boring Well, API Number 47033005270000, at a depth of 5439') to five hundred feet (500') below the top of the Helderberg Formation (with the top of the Helderberg Formation as seen by the James P. Boring Well, API Number 47033005270000, at a depth of 7191'), and the exclusive right to inject air, gas, water, brine or other fluids into the subsurface strata and any and all other rights and privileges necessary, incident to, or convenient for the economical operation of the lands, alone or conjointly with neighboring lands for these purposes, together with the right and easement to construct, operate, repair, maintain, resize and remove pipelines, telephone, power and electric lines, tanks, ponds, roadways, plants, equipment and structures thereon to produce, save, store and take care of such substances.

2.     Said lands being described in the Lease as situated on the waters of the Turtle Tree Fork of Ten Mile in the District of Union, County of Harrison, State of West Virginia, and being bounded now or formerly substantially as follows, to wit:

On the North by lands of County Road 30/5
On the East by lands of Franklin D. Riffle
On the South by lands of James Corder
On the West by lands of Bill Devericks

Said lands being identified for tax purposes as tract or parcel number 20-361-3, pro 3 as of the date of this lease. Notwithstanding said tax map designation, this lease shall be effective as to the tract actually owned by Lessor whether or not the tax map designation correctly identifies the location of the tract. Being also the same interest acquired by the Lessor in Deed Book dated October 15, 2013, and recorded in the Clerk's Office in and for Harrison County, State of West Virginia, filed in Deed Book 1521 at Page 950. For all purposes of this lease, including determining the amount of delay rentals, royalties and shut-in royalties hereunder, said land shall be deemed to contain 32.45 gross acres whether it actually contains more or less. For all purposes of this Memorandum, references to oil and gas or either of them shall mean oil, or gas, or both and all substances which are constituents of, or produced with, oil or gas, whether similar or dissimilar, or produced in a gaseous, liquid, or solid state (as further defined in Paragraph 1 of the Lease).

3.     The primary term of said Lease commenced August 14th, 2015 for a term of FIVE (5) YEARS, and will expire August 14th, 2020. The primary term of the Lease shall be extended for as long thereafter as oil and/or gas is produced from the Lease premises or lands with which the Lease is unitized or pooled; or as long as drilling operations are continuously prosecuted as provided in the Lease; or as long as the leased premises shall be operated or otherwise maintained by Lessee, its successors or assigns, in accordance with the terms and provisions of the Lease, unless earlier terminated in accordance with the terms and provisions of the Lease.

4.     Lessee shall have the option to extend the primary term of the Lease for an additional five (5) years ("Extended Term"), pursuant to the terms of the Lease. Assignee's election to extend the term of the Lease shall be tendered in writing to Lessor on or before the expiration of the primary term. Lessee may file a written notice of its election to extend the primary term and cause the same to be recorded among the land records of the county wherein the lands are located.

5.     Right of First Refusal. If at any time within the primary term of this lease or any continuation or extension thereof, Lessor receives any bona fide offer, acceptable to Lessor, to grant an additional lease ("Top Lease") covering all or part of the above described land, Lessee shall have the continuing option by meeting any such offer to acquire a Top Lease on equivalent terms and conditions. Any offer must be in writing and must set forth the proposed lessee's name, bonus consideration and royalty consideration to be paid for such Top Lease, and include a copy of the lease form to be utilized reflecting all pertinent and relevant terms and conditions of the Top Lease. Lessee shall have fifteen (15) days (exclusive of Saturdays, Sundays and Federal holidays) after receipt from Lessor of a complete copy of any such offer to advise Lessor in writing of its election to enter into an oil and gas lease with Lessor on equivalent terms and conditions, as to all or any part of the above described land. If Lessee fails to notify Lessor within the aforesaid fifteen (15) day period of its election to meet any such bona fide offer, Lessor shall have the right to accept said offer. Any Top Lease granted by Lessor in violation of this provision shall be null and void.

1 of 2

Corder v. Antero

Corder v. Antero

BK 562 PG1117

6.      The parties hereto incorporate all terms, covenants, provisions, conditions, royalties and rentals as set forth in the Lease by reference as though fully written and set forth herein.  In the event the Lease is amended or supplemented by written instrument executed by the parties in interest thereto or executed or assigned or terminated in any manner permitted under the terms thereof, then without any further act or instrument whatsoever, this Memorandum shall likewise and to the same effect be amended, assigned or terminated, as the case may be. This Memorandum is executed in simplified short form for the convenience of the parties and for the purpose of recording the same and this Memorandum shall not in any way have the effect of modifying, supplementing or abridging the Lease or any of its provisions now or hereafter in force and effect.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands the day and year first above written, signed and acknowledged in the presence of:

LESSOR:
Kevin McCall

LESSEE:
ANTERO RESOURCES CORPORATION
By: Brian Kuhn
Title: Vice President-Land

INDIVIDUAL ACKNOWLEDGMENT

STATE OF   Ohio                    )
                                   )
COUNTY OF   Lorain                 )

      The foregoing instrument was acknowledged before me this  24  day of  Aug  , 2015, by Kevin McCall.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

[SEAL]                             Notary Public
                                   My Commission Expires: Sept 30, 2018

CORPORATE ACKNOWLEDGMENT

STATE OF COLORADO                  )
                                   )
COUNTY OF Denver                   )

      On this  17  day of  September  , 2015, before me  CE Whitlock  , the undersigned Notary, did personally appear Brian Kuhn, who acknowledged himself to be the Vice President-Land of Antero Resources Corporation, a corporation, and that he, as such, being authorized to do so, executed the foregoing instrument for the purposes therein contained on behalf of the corporation, by signing the name of the corporation by himself and as Vice President-Land.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

[SEAL]   C E WHITLOCK              
         NOTARY PUBLIC, STATE OF COLORADO   Notary Public
         NOTARY ID 20054021875   My Commission Expires:  1/18/18
         MY COMMISSION EXPIRES JANUARY 18, 2018

This instrument prepared by the following; when recorded, please return to:

Antero Resources Corporation
P.O. Box 410
Bridgeport, WV  26330

6946564.1

                            2 of 2   Km

Corder v. Antero

Corder v. Antero

ANTERO RESOURCES CORPORATION
P. O. BOX 420
BRIDGEPORT, W. 26330-0410

BK 562 PG1108

Susan J Thomas
HARRISON County 03:29:59 PM
Instrument No 20150082956
Date Recorded 10/21/2015
Document Type LEA
Pages Recorded 2
Book-Page        1562-1108
Recording Fee $5.00
Additional        $6.00

## MEMORANDUM OF OIL AND GAS LEASE

THIS MEMORANDUM OF OIL AND GAS LEASE ("Memorandum"), dated this 14th day of August, 2015, by and between Brian McCall, whose address is 27370 Hidden Oaks Dr., Columbia Station, OH 44028, hereinafter referred to individually and collectively as "Lessor," (whether one or more) and ANTERO RESOURCES CORPORATION, whose address is 1615 Wynkoop Street, Denver, CO 80202, hereinafter referred to as "Lessee."

### WITNESSETH:

*WHEREAS*, Lessor has entered into an Oil and Gas Lease with Lessee dated the 14th day of August, 2015 (the "Lease"), and

*WHEREAS*, that parties now enter into this Memorandum to provide notice of the Lease.

*1.*     For good and valuable consideration, the receipt of which having been acknowledged and accepted by the Lessor, the Lessor did grant, demise, lease and let exclusively unto Lessee the lands hereinafter described for the purposes of exploring by geological and geophysical and other methods, (including, but not limited to, conducting seismic surveys), drilling either vertically or horizontally, operating for, producing oil or gas or both including methane gas present in or associated with any formations, horizons, strata or zones, from the top of the Rhinestreet Formation (as seen by the James P. Boring Well, API Number 47033005270000, at a depth of 5439') to five hundred feet (500') below the top of the Helderberg Formation (with the top of the Helderberg Formation as seen by the James P. Boring Well, API Number 47033005270000, at a depth of 7191'), and the exclusive right to inject air, gas, water, brine or other fluids into the subsurface strata and any and all other rights and privileges necessary, incident to, or convenient for the economical operation of the lands, alone or conjointly with neighboring lands for these purposes, together with the right and easement to construct, operate, repair, maintain, resize and remove pipelines, telephone, power and electric lines, tanks, ponds, roadways, plants, equipment and structures thereon to produce, save, store and take care of such substances.

*2.*     Said lands being described in the Lease are situated on the waters of the Turtle Tree Fork of Ten Mile in the District of Union, County of Harrison, State of West Virginia, and being bounded now or formerly substantially as follows, to wit:

On the North by lands of County Road 30/5
On the East by lands of Franklin D. Riffle
On the South by lands of James Corder
On the West by lands of Bill Devericks

Said lands being identified for tax purposes as tract or parcel number 20-361-3, p/o 5 as of the date of this lease. Notwithstanding said tax map designation, this lease shall be effective as to the tract actually owned by Lessor whether or not the tax map designation correctly identifies the location of the tract. Being also the same interest acquired by the Lessor in Deed Book dated October 15, 2013, and recorded in the Clerk's Office in and for Harrison County, State of West Virginia, filed in Deed Book 1521 at Page 950. For all purposes of this lease, including determining the amount of delay rentals, royalties and shut-in royalties hereunder, said land shall be deemed to contain 32.45 gross acres whether it actually contains more or less. For all purposes of this Memorandum, references to oil and gas or either of them shall mean oil, or gas, or both and all substances which are constituents of, or produced with, oil or gas, whether similar or dissimilar, or produced in a gaseous, liquid, or solid state (as further defined in Paragraph 1 of the Lease).

*3.*     The primary term of said Lease commenced August 14th, 2015 for a term of FIVE (5) YEARS, and will expire August 14th, 2020. The primary term of the Lease shall be extended for as long thereafter as oil and/or gas is produced from the Lease premises or lands with which the Lease is unitized or pooled; or as long as drilling operations are continuously prosecuted as provided in the Lease; or as long as the leased premises shall be operated or otherwise maintained by Lessee, its successors or assigns, in accordance with the terms and provisions of the Lease, unless earlier terminated in accordance with the terms and provisions of the Lease.

*4.*     Lessee shall have the option to extend the primary term of the Lease for an additional five (5) years ("Extended Term"), pursuant to the terms of the Lease. Assignee's election to extend the term of the Lease shall be tendered in writing to Lessor on or before the expiration of the primary term. Lessee may file a written notice of its election to extend the primary term and cause the same to be recorded among the land records of the county wherein the lands are located.

*5.*     Right of First Refusal. If at any time within the primary term of this lease or any continuation or extension thereof, Lessor receives any bona fide offer, acceptable to Lessor, to grant an additional lease ("Top Lease") covering all or part of the above described land, Lessor shall have the continuing option by meeting any such offer to acquire a Top Lease on equivalent terms and conditions. Any offer must be in writing and must set forth the proposed lessee's name, bonus consideration and royalty consideration to be paid for such Top Lease, and include a copy of the lease form to be utilized reflecting all pertinent and relevant terms and conditions of the Top Lease. Lessee shall have fifteen (15) days (exclusive of Saturdays, Sundays and Federal holidays) after receipt from Lessor of a complete copy of any such offer to advise Lessor in writing of its election to enter into an oil and gas lease with Lessor on equivalent terms and conditions, as to all or any part of the above described land. If Lessee fails to notify Lessor within the aforesaid fifteen (15) day period of its election to meet any such bona fide offer, Lessor shall have the right to accept said offer. Any Top Lease granted by Lessor in violation of this provision shall be null and void.

1 of 2

BM
1 of 2

Corder v. Antero

Corder v. Antero

BK 562 PG1109

6.      The parties hereto incorporate all terms, covenants, provisions, conditions, royalties and rentals as set forth in the Lease by reference as though fully written and set forth herein.  In the event the Lease is amended or supplemented by written instrument executed by the parties in interest thereto or assigned or terminated in any manner permitted under the terms thereof, then without any further act or instrument whatsoever, this Memorandum shall likewise and to the same effect be amended, assigned or terminated, as the case may be. This Memorandum is executed in simplified short form for the convenience of the parties and for the purpose of recording the same and this Memorandum shall not in any way have the effect of modifying, supplementing or abridging the Lease or any of its provisions now or hereafter in force and effect.

*IN WITNESS WHEREOF*, the parties hereto have hereunto set their hands the day and year first above written, signed and acknowledged in the presence of:

LESSOR:
Brian McCall

LESSEE:
ANTERO RESOURCES CORPORATION
By: Brian Kuhn
Title: Vice President-Land

**INDIVIDUAL ACKNOWLEDGMENT**

STATE OF ____OHIO____ )
                                              )
COUNTY OF ____LORAIN____ )

The foregoing instrument was acknowledged before me this 24th day of AUG.
2015, by Brian McCall.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

[SEAL]

Notary Public
My Commission Expires: Sept. 30, 2018

**CORPORATE ACKNOWLEDGMENT**

STATE OF COLORADO )
                                      )
COUNTY OF Denver )

On this 17 day of September, 2015, before me CE Whitlock the undersigned Notary, did personally appear Brian Kuhn, who acknowledged himself to be the Vice President-Land of Antero Resources Corporation, a corporation, and that he, as such, being authorized to do so, executed the foregoing instrument for the purposes therein contained on behalf of the corporation, by signing the name of the corporation by himself and as Vice President-Land.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

[SEAL]

C E WHITLOCK
NOTARY PUBLIC, STATE OF COLORADO
NOTARY ID 20084001676
MY COMMISSION EXPIRES JANUARY 18, 2018

Notary Public
My Commission Expires: 1/18/18

This instrument prepared by the following; when recorded, please return to:

Antero Resources Corporation
P.O. Box 410
Bridgeport, WV 26330

6968585.1

2 of 2