**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**GERALD W. CORDER,**

     **Plaintiff,**

v.                                                                      **Civil Action No. 1:18-CV-30**
                                                                        **Hon. Judge Irene M. Keeley**

**ANTERO RESOURCES CORPORATION,**
**a Delaware corporation,**                                             c/w 1:18CV31, 1:18CV32,
                                                                        1:18CV33, 1:18CV34, 1:18CV35,
     **Defendant.**                                    1:18CV36, 1:18CV37, 1:18CV38,
                                                                        1:18CV39, 1:18CV40 for purposes of
                                                                        discovery and setting schedule

**ANTERO RESOURCES CORPORATION'S RESPONSE
TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**I.      INTRODUCTION**

Defendant Antero Resources Corporation ("Antero") submits this response to Plaintiffs'

motion for summary judgment. Although not labeled a partial summary judgment motion,

Plaintiffs' motion only raises issues pertaining to a confidential settlement agreement between

certain Plaintiffs and Antero in August 2015 ("Settlement Agreement"). Notably, Plaintiffs failed

to reference the Settlement Agreement, let alone allege a breach of it in their second amended

complaints. By basing the entirety of their motion on two provisions from the Settlement

Agreement, Plaintiffs ignore the claims they actually pled, as well as the leases attached to the

second amended complaints as Exhibits 2 to 9.  Indeed, Plaintiffs' motion does not even implicate

the majority of leases at issue in this action, including the leases attached to the second amended

complaints as Exhibits 5 to 9.  Plaintiffs also ignore the fact that Marlyn Sigmon, Garnett Cottrill,

and Janet and Leroy Packard were not parties to the Settlement Agreement.  In any event, Antero

has not breached the Settlement Agreement or the Plaintiffs' market enhancement leases because

they authorize Antero to take deductions using the "work-back" method applied by the Fourth

Circuit in *Young v. Equinor USA Onshore Properties, Inc.*, 982 F.3d 201 (4th Cir. 2020).

In addition, Plaintiffs have not been injured as a matter of law and cannot prove damages. First, Antero over-refunded Plaintiffs $21,126.40 in costs previously deducted from Plaintiffs' royalties.  Second, Antero calculates Plaintiffs' royalties using the wellhead volume and MMBtu content of the gas at its weighted average sales price ("WASP") unless the marketable gas is further processed to enhance the value of the gas.  If gas is processed, resulting in a higher value to Plaintiffs, Antero pays royalties on the value of the NGLs and residue gas.  In any event, Plaintiffs' gas has not been processed since August 2018.  There are no genuine issues of material fact. Antero – not Plaintiffs – is entitled to judgment as a matter of law on Plaintiffs' claims for breach of contract.  Therefore, the Court should deny Plaintiffs' motion for summary judgment and grant summary judgment to Antero.

## II.    COUNTER STATEMENT OF THE CASE

Plaintiffs Gerald W. Corder, Marlyn C. Sigmon, Garnet C. Cottrill, Randall N. Corder, Janet C. and Leroy Packard, Lorena Krafft, Cheryl Morris, Tracy Bridge, Angela Nicholson, Kevin McCall, and Brian McCall initiated these actions on December 6, 2017, by filing a single complaint in the Circuit Court of Harrison County, West Virginia.  The complaint was severed and assigned eleven separate civil action numbers.  ECF No. 1-1.[1]  The actions were removed to this Court based on diversity of citizenship. ECF No. 1.

Subsequently, Plaintiffs filed amended complaints.  ECF No. 13. Motions to dismiss the amended complaints were filed.  ECF No. 16.  Plaintiffs filed motions for leave to file second amended complaints. ECF No. 27.  On June 11, 2018, the Court entered its Memorandum Opinion and Order Granting Plaintiffs' Motion to Amend the Complaint, Granting in Part and Denying in Part Defendants' Motion to Dismiss, and Consolidating Cases for Purposes of Ruling on These

---

[1] Unless otherwise indicated, all ECF references are to the lead case Civil Action No. 1:18cv30.

Motions.  ECF No. 30.  The Court denied Antero's motions to dismiss the breach of contract claims as alleged in Plaintiffs' proposed second amended complaints.  *Id.* at 22.

In their second amended complaints, Plaintiffs allege that Antero breached its contractual duties and responsibilities to Plaintiffs under leases identified and attached to the second amended complaints as Exhibits 2 to 9.  *See id.* at 25–26, 35; *see also* ECF No. 30-2–30-9.  The second amended complaints do not reference or attach the Settlement Agreement on which Plaintiffs' motion relies.

Antero filed its answer to the second amended complaints.  ECF No. 39.  Antero's answer denied liability and pled several affirmative defenses.  Among the affirmative defenses, Antero pled the doctrines of payment and/or release.  In connection therewith, Antero moved to file the Settlement Agreement under seal.  *Id.* at 31. The Court granted Antero's motion, and the Settlement Agreement was filed under seal.  ECF No. 43.

Thereafter, Antero filed a motion for judgment on the pleadings.  ECF No. 44.  Antero argued, among other things, that the claims of Plaintiffs Gerald W. Corder, Randall N. Corder, Lorena Krafft, Cheryl Morris, Tracy Bridge, Angela Nicholson, Kevin McCall, and Brian McCall ("Settling Plaintiffs")[2] are barred by the doctrines of payment and release based on the Settlement Agreement.  *Id.*  On March 25, 2019, the Court entered its Memorandum Opinion and Order Granting in Part and Denying in Part Defendant's Motion for Judgment on the Pleadings.  ECF No. 75.  For the leases attached to the second amended complaints as Exhibits 2 to 8, the Court dismissed with prejudice Settling Plaintiffs' breach of contract claims that arose before the Settlement Agreement was signed.  *Id.* at 17, 19.[3]

---

[2]  Plaintiffs' motion for partial summary judgment does not address the claims of Marlyn Sigmon, Garnett Cottrill, or Janet and Leroy Packard ("Non-Settling Plaintiffs"), who were not parties to the Settlement Agreement.

[3]  Plaintiffs' instant motion implicates only Settling Plaintiffs' interests in the leases attached to the second amended complaints as Exhibits 2, 3, and 4.  Plaintiffs' motion does not implicate the leases attached  as Exhibits 5 to 9.

III.    **DISCUSSION**

A.    **Standard of Decision.**

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the evidence "in the light most favorable to the nonmoving party." *Providence Square Assocs., L.L.C. v. G.D.F., Inc.*, 211 F.3d 846, 850 (4th Cir. 2000). The moving party bears the initial burden of informing the Court of the basis for the motion and establishing the nonexistence of genuine issues of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met that burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," and the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–56 (1986).

The same standard applies to cross motions for summary judgment. *See Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) ("When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" (citation omitted)). Cross motions for summary judgment "neither 'establish the propriety of deciding a case on summary judgment,' nor 'establish that there is no issue of fact requiring that summary judgment be granted to one side or another.'" *Continental Airlines, Inc. v. United Airlines, Inc.*, 277 F.3d 499, 511 n.7 (4th Cir. 2002) (citations omitted).  Moreover, "[n]either party . . . concedes the truth of the allegations of his adversary other than for purposes of his own motion. A movant may contend that under his theory of the case, no substantial issue of fact exists, while under the adversary's theory factual questions are in issue." *Cram v. Sun Ins. Office Ltd.*, 375 F.2d 670, 673–74 (4th Cir. 1967).

**B.      Plaintiffs Are Not Entitled to Summary Judgment Because They Failed to Plead Breach of Contract Claims Pertaining to the Settlement Agreement.**

Plaintiffs are not entitled to summary judgment because they failed to plead breach of the Settlement Agreement, which is the sole contract raised in Plaintiffs' motion.  This Court has recognized that "a plaintiff may not amend his complaint through arguments in his brief in opposition to summary judgment."  *Miller v. Jack*, No. 1:06CV64, 2007 WL 2050409, at *4 (N.D. W. Va. July 12, 2007) (citing cases); *see also Stanton v. Elliott*, No. 2:19-CV-49, 2021 WL 217610 (N.D. W. Va. Jan. 21, 2021) (recognizing plaintiff failed to plead claims pursuant to West Virginia's Wrongful Death Act and granting summary judgment to defendant on pled common law claims for battery and negligence); *Marcus v. Holley*, 217 W. Va. 508, 518, 618 S.E.2d 517, 527 (2005) (finding that a claim raised for the first time in summary judgment briefing does not amend the complaint).

As framed, Plaintiffs' motion is entirely reliant upon the Settlement Agreement. Specifically, Plaintiffs rely on paragraph 14 of the Settlement Agreement, which states as follows:

> Antero acknowledges that per the terms of said June 29, 1979 leases identified in the preceding two paragraphs, production royalties pursuant to said leases shall be deemed gross royalties and shall be calculated without regard to any postproduction or market enhancement costs claimed or incurred by Antero.

Pls.' Mem. at 5 & Ex. 1 at 5.  The "said June 29, 1979 leases identified in the preceding two paragraphs" in paragraph 14 of the Settlement Agreement are leases executed by James and Pearl Corder recorded in Deed Book 1080, Page 677 and Deed Book 1082, Page 565, respectively.  *See* Pls.' Ex. 1 at 4–5.  Although not mentioned in Plaintiffs' motion, these leases are attached to the second amended complaints as Exhibits 3 and 4, respectively.  *See* ECF No. 30-3, 30-4.[4]

---

[4] Antero has not charged Settling Plaintiffs any deductions from the lease attached to the second amended complaints as Exhibit 3 since August 2015.  Antero has charged Settling Plaintiffs only $1.63 in PRC2 from the lease attached to the second amended complaints as Exhibit 4 since August 2015, which appears to have been in error and is well below the amounts that Settling Plaintiffs have been overpaid.  *See* Schopp Decl. at Ex. 3.  The Declaration of Alvyn A. Schopp and exhibits thereto are collectively attached  as "Exhibit A."

Plaintiffs further rely on a market enhancement clause contained in an unsigned addendum to a lease form attached as "Exhibit D" to the Settlement Agreement,[5] which states as follows:

> It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil, gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements. However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.

Pls.' Mem. at 5 & Ex. 2.[6]

In relying *only* on these two provisions from the Settlement Agreement, Plaintiffs ignore the actual claims pled and do not invoke the executed leases attached to the second amended complaints as Exhibits 2 to 9.[7]  Plaintiffs further ignore this Court's ruling on Antero's motion for judgment on the pleadings, which dismissed with prejudice Settling Plaintiffs' breach of contract claims on the leases attached to the second amended complaints as Exhibits 2 to 8 that arose before the Settlement Agreement. *See* ECF No. 75. Plaintiffs further ignore the fact that Marlyn Sigmon, Garnett Cottrill, and Janet and Leroy Packard, were not parties to the Settlement Agreement and are therefore not affected by its provisions under any circumstances. Most important, Plaintiffs ignore the fact that Settling Plaintiffs never properly pled a claim for breach of the Settlement Agreement, which is not even mentioned in the second amended complaints. As was the case in *Miller* and *Stanton*, Plaintiffs cannot raise such claims for the first time in their summary judgment briefing. For this reason alone, Plaintiffs' motion should be denied.

---

[5] Paragraph 11 of the Settlement Agreement references "Exhibit D" thereto as the lease form Settling Plaintiffs will sign as part of the parties' resolution of the partition action referenced therein.

[6] Although not mentioned in Plaintiffs' motion, this market enhancement clause is identical to that contained in the leases attached to the second amended complaints as Exhibit 2.  *See, e.g.*, ECF No. 30-2 at 24, 31, 39.

[7] Plaintiffs' motion does not even implicate the leases attached to the second amended complaints as Exhibits 5 to 9.

C.     **Plaintiffs Are Not Entitled to Summary Judgment on Their Breach of Contract Claims.**

Even if Plaintiffs' motion could be construed as a motion for partial summary judgment with respect to their leases with market enhancement clauses attached as Exhibit 2 to the second amended complaints, Plaintiffs would not be entitled to judgment as a matter of law.  In *Richards v. EQT Production Co.*, No. 1:17cv50, 2018 WL 3321441 (N.D. W. Va. July 5, 2018), this Court held that, in order to prevail on a motion for summary judgment on a breach of contract claim under West Virginia law, a plaintiff must establish each of the following four elements: (1) the existence of a valid, enforceable contract; (2) that the plaintiff has performed under the contract; (3) that the defendant has breached or violated its duties or obligations under the contract; and (4) that the plaintiff has been injured as a result. *Id.* at *3.  Plaintiffs have not attempted to prove the first and second elements, and Plaintiffs cannot prove the third or fourth elements.  Simply put, Antero has not breached Plaintiffs' leases, and Plaintiffs have not been injured as a matter of law.

In *K & D Holdings, LLC v. Equitrans, L.P.*, 812 F.3d 333 (4th Cir. 2016), the Fourth Circuit construed an oil and gas lease, observing that "West Virginia contract law principles apply equally to the interpretation of leases." *Id.* at 339 (citing *Energy Dev. Corp. v. Moss*, 214 W. Va. 577, 591 S.E.2d 135, 143 (2003)). The Fourth Circuit rejected the plaintiff's argument that oil and gas leases should be liberally construed in favor of the lessor, holding that the general rule does not apply unless there is an ambiguity as to the meaning of the lease terms. The court concluded that the language of the lease at issue in that case was clear and not subject to the rule of construction advocated by the plaintiff. The court further found the plaintiff's arguments based on fairness and public policy unavailing in interpreting the unambiguous lease. *Id.* at 339–40 & n.7.  As discussed below, Antero has complied with and not breached the unambiguous terms of Plaintiffs' market enhancement leases, which are the only leases raised in Plaintiffs' motion.

1.      **The Antero has not breached the market enhancement leases.**

a.      **The plain meaning of the market enhancement clause.**

Plaintiffs are not entitled to summary judgment because Antero has not breached the market enhancement clause in the leases attached to the second amended complaint as Exhibit 2, which have the following market enhancement clause:

> It is agreed between the Lessor and Lessee that notwithstanding any language herein to the contrary, all oil, gas, or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements.  However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.

*See, e.g.*, ECF No. 30-2 at 24, 31, 39.

Although few courts have had the occasion to consider market enhancement royalty provisions specifically, those that have examined such provisions have found such language permits deductions.  For example, in *Bond v. Antero Resources Corporation*, No. 2:17-CV-14, 2018 WL 3159155, at *2–3 (S.D. Ohio June 28, 2018), the court granted a partial motion to dismiss as it applied to a claim for breach of a similar market enhancement clause.  The court reasoned that although Antero could not deduct costs arising from actions taken 'to transform the product into marketable form,'" *id.* at *3, the plain language of the market enhancement clause allowed Antero "to deduct post-production costs from Plaintiffs' royalties if those costs enhance the value of the marketable gas," *id.*  The court expressly found that Antero could deduct "'any such costs which result in enhancing the value' of the gas 'to receive a better price.'" *Id.*  As was the case in *Bond*, Plaintiffs' market enhancement clauses unambiguously distinguish between costs arising

from actions taken to transform the product into marketable form, which are not deductible, and costs which result in enhancing the value of the gas to receive a better price, which are deductible.

Plaintiffs' tortured interpretation of the market enhancement clause rewrites the parties' contracts to expressly name individual purity products such as ethane and butane, among others. Plaintiffs and their expert, Daniel Reineke,[8] essentially contend that the references to "other products" in the market enhancement clause dictate that Antero cannot take deductions associated with the manufacture of natural gas liquids until individual purity products have been obtained. Not only does this argument utterly ignore costs associated with transporting gas to a more profitable market (i.e., TRN3), which does not appear to be addressed in Plaintiffs' motion, this argument also ignores the fact that this Court must give meaning to every word in a contract. Syl. Pt. 3, *Moore v. Johnson Serv. Co.*, 158 W. Va. 808, 219 S.E.2d 315 (1975) ("As with other contracts, the language of a lease agreement must be considered and construed as a whole, giving effect, if possible, to all parts of the instrument. Accordingly, specific words or clauses of an agreement are not to be treated as meaningless, or to be discarded, if any reasonable meaning can be given them consistent with the whole contract.").

---

[8] Specifically, Plaintiffs quote from the supplemental report of Daniel Reineke as follows:

> The [market enhancement] clause plainly provides for no costs or deductions of any kind from plaintiffs' gas or the NGL's which are part of the products included in the gas. The statement that there be no costs, direct or indirect from oil, gas and "other products" produced certainly includes NGL's, which is an "other product". Also, the "enhancement" language also includes "other products", this includes the NGL's. The first sentence says that there can be no deductions for the other products (NGL's), including deductions for separating, processing, etc. of the NGL's to put them into a marketable form. The enhancement clause could not come into play because the "other product" would include ethane, butane, etc.

Pls. Mem. at 8.  For the reasons discussed above, Mr. Reineke's opinion as to the meaning of the market enhancement clause is inadmissible legal opinion.  *See Sun Yung Lee v. Clarendon*, 453 F. App'x 270, 278 (4th Cir. 2011) ("While expert witnesses may testify as to the ultimate matter at issue, Fed. R. Evid. 704(a), this refers to testimony on ultimate facts; testimony on ultimate questions of law, i.e., legal opinions or conclusions, is not favored." (citation omitted)). It is also contrary to long-settled West Virginia law recognizing that all words in a contract must be given meaning where possible.

Moreover, Plaintiffs overlook the fact that, when describing which deductions are prohibited, the market enhancement clause employs a conjunctive list. *See, e.g.*, ECF No. 30-2 at 24 (stating that certain listed deductions may not be taken to transform "the oil, gas, *and* other products produced hereunder" into a marketable form (emphasis added)). When describing which deductions are permitted, however, the market enhancement clause employs a disjunctive list. *See, e.g.*, *id.* (providing that "any such costs which result in enhancing the value of the marketable oil, gas *or* other products" may be deducted (emphasis added)).

The use of the disjunctive when applied to permissible deductions is significant because it allows the lessee to deduct value-enhancing costs under any one of three alternatives. *See Conjunctive/Disjunctive Canon*, *Black's Law Dictionary* (11th ed. 2019) ("The doctrine that in a legal instrument, *and* joins a conjunctive list to combine items, while *or* joins a disjunctive list to create alternatives."). *Cf. Carper v. Kanawha Banking & Trust Co.*, 157 W. Va. 477, 517, 207 S.E.2d 897, 921 (1974) ("Recognizing the obvious, the normal use of the disjunctive 'or' in a statute connotes an alternative or option to select."); *State v. Wilkerson*, 230 W. Va. 366, 372, 738 S.E.2d 32, 38 (2013) ("The use of the word 'or' indicates an alternative choice." (footnote omitted)). Stated differently, Antero may deduct costs that increase the value of gas *only* under the market enhancement clause. The disjunctive "or" indicates that such costs need not enhance the value of *both* gas and NGLs (i.e. "other products") in order to be deductible.

Indeed, the references to "other products" are merely a catchall for other products like oil and gas, and the long-held principle of *ejusdem generis* counsels against stripping those specific terms of meaning. *See Murray v. State Farm Fire & Cas. Co.*, 203 W. Va. 477, 485, 509 S.E.2d 1, 9 (1998) ("Under the doctrine of *ejusdem generis,* '[w]here general words are used in a contract after specific terms, the general words will be limited in their meaning or restricted to

things of like kind and nature with those specified.'" (alteration in original) (quoting Syl. Pt 4, *Jones v. Island Creek Coal Co.*, 79 W. Va. 532, 91 S.E. 391 (1917)); *Bischoff v. Francesa*, 133 W. Va. 474, 486–87, 56 S.E.2d 865, 872 (1949) ("In the construction of laws, wills, and other instruments, the 'ejusdem generis rule' is, that where general words follow an enumeration of persons or things, by words of a particular and specified meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned." (citation omitted)). Plaintiffs' argument in this regard, however, would give short shrift to the references to "oil and gas" in the market enhancement clause, which are themselves "products." Although Plaintiffs cite to numerous definitions of "natural gas" that may include natural gas liquids in some instances, "natural gas" is not limited to "natural gas liquids" in any of the West Virginia Code sections cited by Plaintiffs in their motion. For these reasons, Plaintiffs' argument is unavailing.

**b.** <u>**Plaintiffs' gas is marketable at the wellhead.**</u>

In addition to twisting the plain language of the market enhancement clause by arguing that Antero cannot take deductions associated with the manufacture of natural gas liquids, Plaintiffs fabricate the obligation that Antero must process Plaintiffs' gas in order to obtain marketable purity products such as ethane and butane. In so arguing, Plaintiffs ignore the fact that the undisputed evidence demonstrates that Plaintiffs' gas is in a marketable form at the wellhead. As a threshold matter, Antero's expert, Kris L. Terry, opined that "it is worth noting that Antero incurs all lease operating expenses for the gas produced from the leases at issue." Terry report at 10.[9] In other words, the evidence is undisputed that Antero does not pass on production costs before the gas reaches the wellhead where it is in a marketable form.

---

[9] A complete copy of the Declaration and Expert Report of Kris L. Terry is attached as "Exhibit B."

As Antero's corporate representative testified, the gas from Plaintiffs' wells in this action can flow through one of two pipelines because, although the gas can be processed, it also can be sold without processing.  *See* 1/23/20 Schopp Dep. Tr. 89:18–23.[10] Ms. Terry also discussed these alternatives in her report, and the map attached as Exhibit E to her report depicts "gas that is sometimes processed and sometimes unprocessed and the alternative marketing outlets in the field."  Terry Report at 2 & Ex. E.  Exhibit E to Ms. Terry's report shows that Plaintiffs' gas could flow either to the MarkWest Sherwood Processing Plant or directly to the ETC Bobcat pipeline without processing.  Terry Report at Ex. E.

Ms. Terry further described Plaintiffs' gas in this action as follows:

> [T]he gas is not particularly high in entrained liquefiable hydrocarbons. It's mostly methane and ethane, and it does not have to be processed necessarily. So Antero can make decisions about whether it wants to process or not process that gas, and it has the ability in the field to physically flow that gas two different directions.

Terry Dep. Tr. 51:18–52:2.[11]

Critically, Plaintiffs' gas no longer flows through the Sherwood Processing Plant, and NGLs are no longer manufactured from their gas. As Antero explained in its verified supplemental response to Plaintiffs' second set of interrogatories:

> Antero has not processed the gas produced from Plaintiffs' wells in this action, or manufactured natural gas liquids therefrom, since August 2018 production month. . . . Beginning in September 2018 production month, Antero has not received revenues from the sale of NGLs attributable to the gas produced from Plaintiffs' wells in this action, nor has Antero converted any gas in the processing and fractionation processes used to produce the NGLs.  Accordingly, since September 2018 production month, Antero has paid Plaintiffs the weighted average sales price ("WASP") for the unprocessed gas produced from Plaintiffs' wells in this action.

Antero's Supp. Resp. Interrog. No. 2.[12]

---

[10] Excerpts from the transcript of the January 23, 2020 deposition of Alvyn A. Schopp are attached as "Exhibit C."
[11] Excerpts from the transcript of the deposition of Kris Terry are attached as "Exhibit D."
[12] Excerpts from Antero's supplemental verified response to Plaintiffs' second set of interrogatories are attached as "Exhibit E."

In *Richards v. EQT Production Co.*, No. 1:17cv50, 2018 WL 3321441 (N.D. W. Va. July 5, 2018), this Court refused to apply *Tawney v. Columbia Natural Resources, LLC*, 219 W. Va. 266, 633 S.E.2d 22 (2006), noting that "[t]he holding in *Tawney* presumes a sale of gas downstream from the wellhead." *Id.* at *5 n.1. In *Richards*, the Court denied the plaintiffs' motion for summary judgment, holding that the plaintiffs had not shown that utilization of the work-back method resulted in an inaccurate determination of the market price of the gas for sales occurring at the wellhead.  *Id.* at *5.  In *Cather v. EQT Production Co.*, No. 1:17cv208, 2019 WL 3806629 (N.D. W. Va. Aug. 13, 2019), the Court approved a synthesized reading of *Wellman* and *Tawney* that concluded that "lessees have a duty to bear all costs incurred until the gas reaches market, not to a point of sale." *Id.* at *3 (citing *W.W. McDonald Land Co.*, 983 F. Supp. 2d at 800).  *W.W. McDonald Land Co. v. EQT Production Co.*, 983 F. Supp. 2d 790 (S.D. W. Va. 2013), held that the market was the first place downstream of the well where the gas *can* be sold to any willing buyer and title passed to that buyer.  *Id.* at 803 (emphasis added).

Taken together, *Richards* and *W.W. McDonald Land Co.* stand for the proposition that gas can be in a marketable form at the wellhead.  In this case, the fact that Plaintiffs' gas can flow directly into an interstate pipeline demonstrates that it is in a marketable form. Contrary to Plaintiffs' assertion in their motion, the gas does not need to be processed; therefore, the marketability of NGLs is irrelevant to the calculation of royalties under the market enhancement clause.  In any event, such statements are divorced from the reality that NGLs are no longer manufactured from Plaintiffs' gas. For these reasons, Plaintiffs' argument is unavailing.

c. <u>**Antero's permissible deductions have enhanced the value.**</u>

Finally, the deductions from Plaintiffs' market enhancement leases have undisputedly enhanced the value of Plaintiffs' gas and are permissible as a matter of law.  The Court's

interlocutory ruling that Antero's market enhancement clause may comply with *Tawney v. Columbia Natural Resources, LLC*, 219 W. Va. 266, 633 S.E.2d 22 (2006), *see* ECF No. 29 at 20–21, is consistent with the Fourth Circuit's decision in *Young v. Equinor USA Onshore Properties, Inc.*, 982 F.3d 201, 208–09 (4th Cir. 2020).  Following discovery, however, there is no evidence that Antero's deductions are not for actual and reasonable post-production costs approved in *Young*, which is not addressed by Plaintiffs in any event.

In *Young*, the Fourth Circuit vacated the Court's grant of summary judgment for the plaintiffs and remanded the case for entry of summary judgment for the defendants, holding that an oil and gas lease unambiguously allowed the defendants to deduct costs from royalties using the "work-back" method adopted by the West Virginia Supreme Court of Appeals in *Leggett v. EQT Production Co.*, 239 W. Va. 264, 800 S.E.2d 850 (2017).  The royalty provision in *Young* granted the lessors a royalty share that was a percentage of the net amount realized by the lessees computed at the wellhead, stated that post-production costs incurred by the lessee between the wellhead and point of sale would be deducted from the gross proceeds to calculate the net amount realized at the wellhead, specified seven types of such post-production costs between the wellhead and point of sale that would be deducted, and allowed the lessees to either contract with others or to perform post-production operations themselves. *Id.* at 203–04.

In holding that the royalty provision unambiguously allowed deductions, *Young* recognized that the holding in *Wellman v. Energy Resources, Inc.*, 210 W. Va. 200, 557 S.E.2d 254 (2001), established a presumption that the lessee must bear all costs incurred in exploring for, producing, marketing, and transporting the product to the point of sale is limited to proceeds leases. *See Young*, 982 F.3d at 206 (quoting *Wellman*, 557 S.E.2d at 265). *Young* further explained how *Tawney v. Columbia Natural Resources, LLC*, 219 W. Va. 266, 633 S.E.2d 22 (2006), expanded on *Wellman*

14

by establishing a three-pronged test to rebut "the *Wellman* presumption." *Id.*   Finally, *Young*

observed that *Leggett* expressly rejected *Tawney*'s assertion that the phrase "at the wellhead" is

facially ambiguous.  *Id.* at 207.  *Young* synthesized these cases as follows:

> Reading these cases together, we glean the following principles of West Virginia
> law: *An oil and gas lease must satisfy Tawney's three-pronged test to rebut the
> Wellman presumption that the lessee will bear all post-production costs. And
> although Leggett didn't overrule Wellman and Tawney, its criticism of those cases
> and its endorsement of the work-back method inform our analysis here.*

*Young*, 982 F.3d at 207 (emphasis added).

> The Fourth Circuit concluded:

> In sum, we are satisfied that the lease suffices under *Tawney* to indicate the method
> for calculating the amount of post-production costs to be deducted when calculating
> the Young's royalties.  That method is simply to add up all of the identified,
> reasonable, and actually incurred post-production costs, and deduct them from [the
> defendants'] gross proceeds.  The amount is then adjusted for the Young's
> fractional share of the total pooled acreage and their royalty rate.  Especially in light
> of *Leggett*, West Virginia law demands no more.

*Id.* at 209.

Similar to *Young*, the market enhancement clause unambiguously provides that Plaintiffs

will bear certain post-production costs and identifies the post-production costs with particularity.

In addition, the market enhancement clause indicates the method for calculating the amount of

post-production costs to be deducted when calculating royalties.  That method is simply to add the

identified, reasonable, and actually incurred post-production costs once the gas is in marketable

form and deduct them from Antero's gross proceeds to get the amount realized.  The amount

realized is then adjusted for Plaintiffs' fractional share of the total pooled acreage and their royalty

rates as reflected in the leases.  Specifically, the market enhancement leases provide: "The royalties

provided for [herein] shall be tendered or paid to Lessor in the proportion that Lessor's acreage in

the pooled area(s) bears to the total pooled area."  ECF No. 30-2 at 21.  Moreover, Antero pays

royalties on the market enhancement clauses at the stated percentage royalty rate.  *Id.* at 6.

Accordingly, the market enhancement clauses unambiguously allow Antero to deduct costs from royalties using the "work-back" method adopted in *Leggett*.[13]

Moreover, the evidence is undisputed that Antero has taken only allowable deductions that enhance the value of marketable gas and that all such deductions have been for actual and reasonable costs.[14] COM3 represents costs for compression associated with compressors at the Sherwood Processing Plant. *See* 12/18/20 Schopp Dep. Tr. 130:16–22. PRC2 represents costs associated with the manufacture of NGLs, which is simply a process by which the value of gas is enhanced. *See* 1/23/20 Schopp Dep. Tr. 20:12–24:1 (discussing how PRC2 generally is comprised of fees and charges for processing, fractionation, and NGL transportation).[15] TRN3 represents costs for transportation of gas to a more profitable market. *See id.* at 85:1–87:19, 147:24–148:16.

Non-Settling Plaintiffs collectively have been charged $46.85 in deductions for COM3, $630.36 in deductions for PRC2, and $65.70 in deductions for TRN3, for a combined total of $742.91 in deductions from their market enhancement leases. *See* Schopp Decl. at Ex. 3. Following the August 2015 Settlement Agreement, Settling Plaintiffs collectively have been charged $69.49 in deductions for PRC2 and $73.60 in deductions for TRN3, for a combined total of $143.09 in deductions from their market enhancement leases. *See id.*[16]

Antero explained how such charges enhance the value of marketable products in its verified response to Plaintiffs' second set of interrogatories as follows:

---

[13] Indeed, as one leading oil and gas treatise acknowledges, market enhancement clauses are now being used in the Appalachian basin expressly "to deal with the issue of whether the netback methodology may be used to calculate royalty where the sales point is downstream of the well." 3 Williams & Meyers, *Oil and Gas Law* § 643.2 (2020).

[14] Antero produced its gathering and compression, processing, and transportation agreements and amendments in discovery. *See* Schopp Decl. at 1–2 & Ex. 1 (discussing Antero's discovery production and providing a summary overview pursuant to Federal Rule of Evidence 1006). Antero also produced statements and invoices for gathering and compression, processing, and transportation for sample months. *See id.* at 2 & Ex. 2.

[15] Excerpts from the transcript of the December 18, 2020 deposition of Alvyn A. Schopp are attached as "Exhibit F."

[16] Settling Plaintiffs have not been charged COM3 following the August 2015 settlement. *See* Schopp Decl. at 3 & Ex. 3 (discussing Antero's production of Plaintiffs' royalty payment data and providing a summary pursuant to Federal Rule of Evidence 1006). Settling Plaintiffs have therefore released any claims regarding COM3.

Antero computes royalties on the greater of (i) the revenues Antero received from the sale of NGLs attributable to each of Plaintiffs' well(s), less a proportionate share of processing and fractionation-related costs (the "Net Factory Value"), and (ii) the "Shrink Value" of the NGLs, being the value of the MMBtu content of the natural gas converted in the processing and fractionation processes used to produce the NGLs at the weighted average sales price ("WASP") Antero receives for its sale of residue gas. Where the Net Factory Value exceeds the Shrink Value, Antero pays the royalties on the sale of NGLs attributable to Plaintiffs' well(s) (denoted on the remittance statement as "PPROD") with a deduction for the proportionate share of processing and fractionation costs (denoted on the remittance statement as "PRC2"). In such a case, the Shrink Value is not included in the computation of Plaintiffs' royalties on natural gas. Conversely, where the Shrink Value exceeds the Net Factory Value, Antero pays the royalties on the Shrink Value, such that Plaintiffs will receive royalties on natural gas as if it had not been processed or fractionated, and without deduction for processing and fractionation-related costs. Where Antero incurs costs to transport gas to a point of sale resulting in a price equal to or more favorable than the available pool price, Antero pays the royalty on Plaintiffs' natural gas with a deduction for Plaintiffs' proportionate share of the additional transportation charge (denoted on the remittance statement as "TRN3") from the available pool to the location of sale. Such deduction is limited to the transportation charge or the portion of the transportation charge resulting in a more favorable price. This calculation analyzes whether the Marcellus firm transportation agreements add economic value to owners and should be considered TRN3. If the realized price less TRN3 charge exceeds or equals the alternative sales index, firm transportation charges will be allocated through the revenue process as TRN3. If however, the realized price less TRN3 charge is less than the alternative sales index, firm transportation charges will only be distributed to owners as TRN3 up to such added economic benefit to owners.

*See* Antero's Resp. Interrog. No. 2.[17]

Ms. Terry opined that "Antero's practice of paying royalties on the greater of (i) the full wellhead MMBTU multiplied by the WASP; or (ii) the net factory value of the NGLs, plus the residue gas value . . . exceeds industry standards," and that "Antero's practice of charging transportation costs for Out-of-Basin sales that enhance the value of the In-Basin gas sale on a well by well basis meets or exceeds industry standards." Terry Report at 12, 15. In other words, PRC2 deductions for processed gas have resulted in greater royalties compared to the value of the

---

[17] Excerpts from Antero's verified response to Plaintiffs' second set of interrogatories are attached as "Exhibit G."

marketable gas at the wellhead.[18]   Likewise, by definition TRN3 deductions have resulted in greater royalties compared to local index sales prices. Plaintiffs' expert Daniel T. Reineke has not opined that any deductions were not actual or reasonable.[19]   Accordingly, Plaintiffs are not entitled to summary judgment on their breach of contract claims regarding their leases with market enhancement clauses, which are the only leases even indirectly referenced in their motion.

### 2.      Plaintiffs have no injury as a matter of law.

Plaintiffs are not entitled to summary judgment because they have no injury where Antero has exceeded its royalty obligations by paying more royalties than required under each of Plaintiffs' leases attached to the second amended complaints.  Notwithstanding the fact that Antero is permitted to take deductions under Plaintiffs' market enhancement leases, the undisputed evidence is that Antero has *overpaid* Plaintiffs.  As a threshold matter, Antero has issued over-refunds to Plaintiffs in the collective amount of $21,126.40.  *See* Schopp Decl. at 3 & Ex. 3 (discussing Antero's production of Plaintiffs' royalty payment data and providing a summary pursuant to Federal Rule of Evidence 1006).  Even Plaintiffs' expert admitted that such over-refunds should be accounted for. *See* Reineke Dep. Tr. 36:11–37:8 (discussing over-refunds).[20]

In addition, in *W. W. McDonald Land Co. v. EQT Production Co.*, 983 F. Supp. 2d 790, 800 (S.D. W. Va. 2013), the court held in granting the plaintiffs' motion for clarification that lessees have no general duty to pay for unsold gas volumes, including but not limited to fuel gas consumed in compressor stations.  The court reasoned: "Like volumes of gas lost or unaccounted for due to pipeline leaks or metering inaccuracies, gas consumed as fuel to power compressors is

---

[18] As discussed above, Plaintiffs' gas no longer goes through the Sherwood Processing Plant, and NGLs are no longer manufactured from their gas. Antero no longer charges Plaintiffs deductions for PRC2. *See* Antero's Supp. Resp. Interrog. No. 2.

[19] A copy of the Expert Report of Daniel T. Reineke dated February 10, 2020, is attached as "Exhibit H."

[20] Excerpts from the transcript of the deposition of Daniel T. Reineke are attached as "Exhibit I."

not sold or marketed. Lessees are not generally obligated to pay royalties on unsold gas because lessees receive no payment for this gas." *Id.* at 817. *See Anderson Living Tr. v. XTO Energy, Inc.*, No. 13-CV-941-SWS-KK, 2019 WL 4015210, at *11 (D.N.M. May 15, 2019) (holding royalties not owed on fuel gas citing *W.W. McDonald Land Co.* with approval).

Antero indisputably has exceeded its obligations in this regard. Notably, the unrefuted evidence shows that Plaintiffs' royalties were based upon wellhead volumes. *See* 1/23/20 Schopp Dep. at 126:14–127:1 (stating that Antero pays royalties on "gross wellhead" volumes and does not factor fuel loss or unaccounted gas into its calculations). Under *W.W. McDonald Land Co.*, however, Antero would be entitled to an offset for fuel. Thus, Antero also has overpaid Plaintiffs by basing their royalties on unsold volumes of gas.

In summary, Antero's upgrade calculations exceed its obligations, and Plaintiffs' claims are subject to setoff because Antero has overpaid on its royalty obligations when it pays royalty owners more than the wellhead MMBtu value of the natural gas. By virtue of its NGL upgrade and when the natural gas was processed, Antero paid Plaintiffs for the value of NGLs if such payment resulted in a greater payment to the royalty owner after considering the costs to manufacture NGLs. *See* Terry Report at 12–15 (opining that Antero's upgrade calculations meet or exceed industry standards). Although entitled to deduct costs such as gathering, compression, local transportation, fuel, and line loss, Antero has not taken such deductions and has not reduced the royalty by these amounts, thereby resulting in higher payments to Plaintiffs. Thus, Plaintiffs simply have no injury because Antero has exceeded its obligations under the leases. Accordingly, Plaintiffs are not entitled to summary judgment on their breach of contract claims.

## IV.   **<u>CONCLUSION</u>**

For all of the foregoing reasons, the Court should deny Plaintiffs' summary judgment motion and enter an Order granting summary judgment for Defendant Antero Resources Corporation.

*/s/  **W. Henry Lawrence**_____*
W. Henry Lawrence (WV Bar #2156)
hank.lawrence@steptoe-johnson.com
Amy M. Smith (WV Bar #6454)
amy.smith@steptoe-johnson.com
Shaina D. Massie (WV Bar #13018)
shaina.massie@steptoe-johnson.com
Steptoe & Johnson PLLC
400 White Oaks Boulevard
Bridgeport, WV  26330
(304) 933-8000

Counsel for Antero Resources Corporation

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 5th day of February 2021, I electronically filed the foregoing

"Antero Resources Corporation's Response to Plaintiffs' Motion for Partial Summary Judgment"

with the Clerk of the Court using the CM/ECF System, which will send notification of such filing

to the following CM/ECF participants:

> Marvin W. Masters, Esquire
> April D. Ferrebee, Esquire
> The Masters Law Firm, LC
> 181 Summers Street
> Charleston, WV 25301

*/s/  W. Henry Lawrence*
W. Henry Lawrence (WV Bar #2156)

21

12269011