**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**GERALD W. CORDER,**

    **Plaintiff,**

v.

**ANTERO RESOURCES CORPORATION,
a Delaware corporation,**

    **Defendant.**

**Civil Action No. 1:18-CV-30
Hon. Judge Irene M. Keeley**

c/w 1:18CV31, 1:18CV32,
1:18CV33, 1:18CV34, 1:18CV35,
1:18CV36, 1:18CV37, 1:18CV38,
1:18CV39, 1:18CV40 for purposes of
discovery and setting schedule

**REPLY IN SUPPORT OF ANTERO RESOURCES
CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION**

Defendant Antero Resources Corporation ("Antero") is entitled to summary judgment on Plaintiffs' remaining claims for breach of contract. Plaintiffs make several inaccurate statements and faulty assumptions in their response to Antero's motion for summary judgement. As a threshold matter, Plaintiffs are wrong when they assert that Antero has breached Plaintiffs' leases; rather, the various leases each authorize Antero to take deductions using the "work-back" method applied by the Fourth Circuit in *Young v. Equinor USA Onshore Properties, Inc.*, 982 F.3d 201, 208–09 (4th Cir. 2020). In this regard, Plaintiffs ignore that they failed to allege any breach of the confidential settlement agreement between certain Plaintiffs and Antero in August 2015 ("Settlement Agreement") on which they rely.  Moreover, Plaintiffs are wrong when they state that they have been injured where it is undisputed that Antero has over-refunded Plaintiffs $21,126.40 in costs previously deducted and that Antero pays Plaintiffs royalties on at least the MMBtu value at the wellhead of the gas at its weighted average sales price ("WASP").  Plaintiffs also are wrong when they contend without any evidence that Plaintiffs' gas from the leases at issue in this action always is processed.  Therefore, this Court should grant summary judgment to Antero.

## II.     DISCUSSION

### A.     Antero Has Not Breached Plaintiffs' Leases.

#### 1.     Antero has not breached the market enhancement leases.

##### a.     The market enhancement leases attached to the second amended complaints.

Antero has not breached the market enhancement clause in the leases attached to the second amended complaints as Exhibit 2. Plaintiffs wholly ignore the Court's interlocutory ruling that Antero's market value enhancement clause may comply with *Tawney v. Columbia Natural Resources, LLC*, 219 W. Va. 266, 633 S.E.2d 22 (2006). *See* ECF No. 29 at 20–21. Plaintiffs provide no basis for the Court to reconsider this ruling, which is consistent with *Young v. Equinor USA Onshore Properties, Inc.*, 982 F.3d 201, 208–09 (4th Cir. 2020).

Plaintiffs' attempt to distinguish *Young* is unavailing. The royalty provision in *Young* granted the lessors a royalty share that was a percentage of the net amount realized by the lessees computed at the wellhead, stated that post-production costs incurred by the lessee between the wellhead and point of sale would be deducted from the gross proceeds to calculate the net amount realized at the wellhead, specified seven types of such post-production costs between the wellhead and point of sale that would be deducted, and allowed the lessees to either contract with others or to perform post-production operations themselves. *Id.* at 203–04. *Young* synthesized *Wellman v. Energy Resources, Inc.*, 210 W. Va. 200, 557 S.E.2d 254 (2001), *Tawney v. Columbia Natural Resources, LLC*, 219 W. Va. 266, 633 S.E.2d 22 (2006), and *Leggett v. EQT Production Co.*, 239 W. Va. 264, 800 S.E.2d 850 (2017), as follows:

> Reading these cases together, we glean the following principles of West Virginia law: *An oil and gas lease must satisfy Tawney's three-pronged test to rebut the Wellman presumption that the lessee will bear all post-production costs. And although Leggett didn't overrule Wellman and Tawney, its criticism of those cases and its endorsement of the work-back method inform our analysis here.*

*Young*, 982 F.3d at 207 (emphasis added).

The Fourth Circuit concluded:

> In sum, we are satisfied that the lease suffices under *Tawney* to indicate the method for calculating the amount of post-production costs to be deducted when calculating the Young's royalties. That method is simply to add up all of the identified, reasonable, and actually incurred post-production costs, and deduct them from [the defendants'] gross proceeds. The amount is then adjusted for the Young's fractional share of the total pooled acreage and their royalty rate. Especially in light of *Leggett*, West Virginia law demands no more.

*Id.* at 209.[1]

Similar to *Young*, Antero's market enhancement clause unambiguously identifies post-production costs such as "the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing" and specifies with particularity that Plaintiffs will bear "any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price[.]" In addition, Antero's market enhancement clause indicates the method for calculating the post-production costs to be deducted when calculating royalties. That method is simply to deduct the identified, reasonable, and actually incurred post-production costs once the gas is in marketable form from Antero's gross proceeds to get the amount realized. The amount realized is then adjusted for Plaintiffs' fractional share of the total pooled acreage and their royalty rates as stated in the leases. Specifically, Antero's market enhancement leases provide: "The royalties provided for [herein] shall be tendered or paid to Lessor in the proportion that Lessor's acreage in the pooled area(s) bears to the total pooled area." ECF No. 30-2 at 21. Moreover, Antero pays royalties under the market enhancement clause at the

---

[1] Although the defendants in *Young* argued that *Tawney* did not apply because the lease disclaimed the duty to market, the court did not rely on that disclaimer in its analysis or holding. Accordingly, this distinction is inapposite.

3

stated percentage royalty rate. *Id.* at 6. Accordingly, the market enhancement clause unambiguously allows Antero to deduct costs from royalties using the "work-back" method.[2]

Plaintiffs' argument overlooks the fact that, when describing which deductions are permitted the market enhancement clause employs a disjunctive list. *See, e.g.*, ECF No. 30-2 at 24 ("[A]ny such costs which result in enhancing the value of the marketable oil, gas *or* other products" may be deducted (emphasis added)). Use of the disjunctive when applied to permissible deductions is significant because it allows the lessee to deduct value-enhancing costs under any one of three alternatives. *See Conjunctive/Disjunctive Canon*, *Black's Law Dictionary* (11th ed. 2019) ("The doctrine that in a legal instrument, *and* joins a conjunctive list to combine items, while *or* joins a disjunctive list to create alternatives."). *Cf. Carper v. Kanawha Banking & Tr. Co.*, 157 W. Va. 477, 517, 207 S.E.2d 897, 921 (1974) ("Recognizing the obvious, the normal use of the disjunctive 'or' in a statute connotes an alternative or option to select."); *State v. Wilkerson*, 230 W. Va. 366, 372, 738 S.E.2d 32, 38 (2013) ("The use of the word 'or' indicates an alternative choice." (footnote omitted)). Stated differently, under the market enhancement clause, Antero may deduct costs even if such costs increase the value of *only* gas. The disjunctive "or" indicates that such costs need not enhance the value of *both* gas and NGLs (i.e. "other products") in order to be deductible.

Indeed, the references to "other products" are merely a catchall for other products similar to oil and gas, and the long-held principle of *ejusdem generis* counsels against stripping those specific terms of meaning. *See Murray v. State Farm Fire & Cas. Co.*, 203 W. Va. 477, 485, 509 S.E.2d 1, 9 (1998) ("Under the doctrine of *ejusdem generis*, '[w]here general words are used in

---

[2] Indeed, as one leading oil and gas treatise acknowledges, market enhancement clauses are now being used in the Appalachian basin expressly "to deal with the issue of whether the netback methodology may be used to calculate royalty where the sales point is downstream of the well." 3 Williams & Meyers, *Oil and Gas Law* § 643.2 (2020).

4

a contract after specific terms, the general words will be limited in their meaning or restricted to things of like kind and nature with those specified.'" (alteration in original) (citation omitted); *Bischoff v. Francesa*, 133 W. Va. 474, 486–87, 56 S.E.2d 865, 872 (1949) ("In the construction of laws, wills, and other instruments, the 'ejusdem generis rule' is, that where general words follow an enumeration of persons or things, by words of a particular and specified meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned." (citation omitted)). Plaintiffs' argument in this regard, however, would give short shrift to the references to "oil and gas" in the market enhancement clause, which are themselves "products."

Plaintiffs have made no attempt to refute Antero's evidence that it has taken only deductions that enhance the value of marketable oil, gas, or other products and that all such deductions have been for actual and reasonable costs. Marlyn Sigmon, Garnett Cottrill, and Janet and Leroy Packard ("Non-Settling Plaintiffs") collectively have been charged a combined total of $742.91 in COM3, PRC2, and TRN3 deductions from their market enhancement leases. *See* Schopp Decl. at Ex. 3.[3] Following the August 2015 Settlement Agreement, Gerald W. Corder, Randall N. Corder, Lorena Krafft, Cheryl Morris, Tracy Bridge, Angela Nicholson, Kevin McCall, and Brian McCall ("Settling Plaintiffs") collectively have been charged a combined total of $143.09 in COM3, PRC2, and TRN3 deductions from their market enhancement leases. *See id.* Plaintiffs have offered no evidence that these de minis deductions are not actual or reasonable. For these reasons, Antero is entitled to summary judgment on Plaintiffs' claims for breach of contract regarding the market enhancement leases attached to the amended complaints as Exhibit 2.

---

[3] The Declaration of Alvyn A. Schopp and exhibits thereto are at ECF No. 180-1.

### b. **Plaintiffs failed to plead a breach of the Settlement Agreement.**

Plaintiffs' reliance on paragraph 14 of the Settlement Agreement is misplaced. Plaintiffs failed to plead a breach of the Settlement Agreement. This Court has recognized that "a plaintiff may not amend his complaint through arguments in his brief in opposition to summary judgment." *Miller v. Jack*, No. 1:06CV64, 2007 WL 2050409, at *4 (N.D. W. Va. July 12, 2007) (citing cases). In any event, by its unambiguous terms, paragraph 14 of the Settlement Agreement is limited to the "June 29, 1979 leases identified in the preceding two paragraphs[.]" Manifestly, the leases attached to the second amended complaints as Exhibit 2 are neither dated June 29, 1979, nor referenced in paragraphs 12 or 13 of the Settlement Agreement. Instead, the leases attached to the second amended complaints as Exhibit 2 were entered into subsequently to the date of the Settlement Agreement in September 2015. Paragraph 14 of the Settlement Agreement simply has no bearing on the proper construction of the leases with the market enhancement clause attached to the second amended complaints as Exhibit 2.[4]

Plaintiffs offer the inadmissible legal opinion of their expert, Daniel Reineke to support their position. Mr. Reineke essentially opines that the references to "other products" in the market enhancement clause dictate that Antero cannot take deductions associated with the manufacture of natural gas liquids ("NGLs") until individual purity products have been obtained.[5] Mr. Reineke's

---

[4] Plaintiffs acknowledge that paragraph 14 of the Settlement Agreement applies "with respect to the June 29, 1979 lease," *see* ECF No. 181 at 10, but never reconcile the fact that the leases with the market enhancement clause attached to the second amended complaints as Exhibit 2 were all dated more than 35 years later, in 2015.

[5] Specifically, Plaintiffs quote from the supplemental report of Daniel Reineke as follows:

> The [market enhancement] clause plainly provides for no costs or deductions of any kind from plaintiffs' gas or the NGL's which are part of the products included in the gas. The statement that there be no costs, direct or indirect from oil, gas and "other products" produced certainly includes NGL's, which is an "other product". Also, the "enhancement" language also includes "other products", this includes the NGL's. The first sentence says that there can be no deductions for the other products (NGL's), including deductions for separating, processing, etc. of the NGL's to put them into a marketable form. The enhancement clause could not come into play because the "other product" would include ethane, butane, etc.

6

opinion as to the meaning of the market enhancement clause is inadmissible legal opinion. *See Romeo v. Antero Res. Corp.*, No. 1:17cv88, 2021 WL 215494, at *4 (N.D. W. Va. Jan. 21, 2021) (holding that Antero's expert may explain how natural gas is marketed and discuss the general operation of market enhancement clauses in the industry but may not opine about the legal effect of a market enhancement clause on Antero's royalty payment obligations); *see also Sun Yung Lee v. Clarendon*, 453 F. App'x 270, 278 (4th Cir. 2011) ("[T]estimony on ultimate questions of law, i.e., legal opinions or conclusions, is not favored." (citation omitted)). For these additional reasons, Antero is entitled to summary judgment on Plaintiffs' claims for breach of contract regarding the market enhancement leases.

## 2. **Antero has not breached the market value leases.**

Antero has not breached the market value leases attached as Exhibits 3, 4, 6, 7, and 9 to the second amended complaints.[6] The royalty provisions identified in the leases attached as Exhibits 3, 4, and 9 state that royalties are to be paid based on one-eighth (1/8th) of the "value" of the gas at the well. Likewise, the royalty provisions identified in the leases attached as Exhibits 6 and 7 state that royalties are to be paid based on one-eighth (1/8th) of the gross proceeds from the sale of gas "at the prevailing price for gas at the well." Although the leases attached as Exhibits 6 and 7 contain references to "gross proceeds," that phrase is clearly modified by the phrase "*at the prevailing price for gas sold at the well*," which is nearly verbatim to the definition of the term "wholesale market value" in *Imperial Colliery Co. v. Oxy USA Inc.*, 912 F.2d 696, 700 (4th Cir.

---

Pls. Mem. at 8. It is also contrary to long-settled West Virginia law recognizing that all words in a contract must be given meaning where possible. Syl. Pt. 3, *Moore v. Johnson Serv. Co.*, 158 W. Va. 808, 219 S.E.2d 315 (1975) ("As with other contracts, the language of a lease agreement must be considered and construed as a whole, giving effect, if possible, to all parts of the instrument. Accordingly, specific words or clauses of an agreement are not to be treated as meaningless, or to be discarded, if any reasonable meaning can be given them consistent with the whole contract.").
[6] As noted in Antero's opening brief, Plaintiffs Janet and Leroy Packard have no interest in the lease attached as Exhibit 9 to the second amended complaints.

7

1990). Thus, Exhibits 3, 4, 6, 7, and 9 are all market value leases, which do not fall under the *Wellman* presumption or require satisfaction of the *Tawney* rebuttal of that presumption. Similar to *Imperial Colliery*, the leases with market value royalty provisions unambiguously authorize Antero to use the "work-back" method in order to determine the value of the gas at the wellhead on which royalties are based.

Contrary to Plaintiffs' argument, *Tawney* did not address the language in the market value leases attached as Exhibits 3, 4, 6, 7, and 9. Critically, the Court reformulated the circuit court's certified questions because the questions went beyond the scope of the defendant's summary judgment motion. *Tawney*, 633 S.E.2d at 25 n.2. The phrase "wholesale market at the well," which is more similar to the language in the market value leases attached as Exhibits 3, 4, 6, 7, and 9, was among the language that was dropped from the reformulated certified question that was answered in *Tawney*. *See id.*

In any event, Plaintiffs' argument ignores the fact that *Young* recognized that the holding in *Wellman*, which established a presumption that the lessee must bear all costs incurred in exploring for, producing, marketing, and transporting the product to the point of sale, is limited to proceeds leases. *See Young*, 982 F.3d at 206 (quoting *Wellman*, 557 S.E.2d at 265). *Young* further explained how *Tawney* expanded on *Wellman* by establishing a three-pronged test to rebut "the *Wellman* presumption." *Id.* Finally, *Young* observed that *Leggett* expressly rejected *Tawney*'s assertion that the phrase "at the wellhead" is facially ambiguous and interpreted the statutory phrase to require the calculation of royalties based on "the value of the gas at the well, before it is transported, treated, compressed or otherwise prepared for market." *Id.* at 207 (citation omitted). *Leggett* noted that the netback method can be used to calculate the wellhead value of the gas by deducting costs beyond the wellhead from the sales proceeds.

In any event, in *Cather v. EQT Production Co.*, No. 1:17cv208, 2019 WL 3806629 (N.D. W. Va. Aug. 13, 2019), this Court cited with approval a synthesized reading of *Wellman* and *Tawney* that concluded that "lessees have a duty to bear all costs incurred until the gas reaches *market, not to a point of sale*." *Id.* at *3 (emphasis added) (citing *W.W. McDonald Land Co.*, 983 F. Supp. 2d at 800). In *W.W. McDonald Land Co.*, the court held that the market was the first place downstream of the well where the gas can be sold to any willing buyer and title passed to that buyer. *Id.* at 803. *But cf. Richards v. EQT Prod. Co.*, No. 1:17cv50, 2018 WL 3321441, at *5 n.1 (N.D. W. Va. July 5, 2018) (applying *Imperial Colliery Co.*, distinguishing and declining to apply *Tawney* to wellhead sales because "[t]he holding in *Tawney* presumes a sale of gas downstream from the wellhead"). Thus, even if *Wellman* and *Tawney* applied to Plaintiffs' market value leases, *Cather* counsels that Antero is not prohibited from taking deductions for COM3, PRC2, and TRN3 from their market value leases, as these charges are incurred after the gas reaches a market.[7] For these reasons, Antero is entitled to summary judgment on Plaintiffs' claims for breach of contract regarding the market value leases.

### 3. Antero has not breached the price received for natural gas lease.

Antero also has not breached the lease that provides for royalties on the price received for natural gas attached as Exhibit 5 to the second amended complaints. The unambiguous language of the royalty provision by its terms *only* requires Antero to pay royalties on gas. *See* ECF No. 30-5 at 4 ("Lessee shall pay a royalty for all *gas* produced, saved, and marketed from the Leased Premises equal to one-eighth (1/8th) of the price received by the Lessee from the sale of such *gas*."). The lease attached as Exhibit 5 to the second amended complaints includes a separate royalty provision for oil but none for other products, including NGLs. *See id.* at 4–5.

---

[7] Antero also incurs local transportation charges, which are coded differently. Antero has not reduced its sales price by deducting local transportation charges, although it could do so to calculate the wellhead value.

9

Plaintiffs have ignored the unambiguous language of the price received for natural gas lease and also *Leggett*, which cited with approval authorities criticizing any extension of the first marketable product doctrine in *Wellman* and *Tawney* to the manufacturing of residue gas and NGLs through processing and fractionation of wet gas. *See Leggett*, 800 S.E.2d at 862–63. Plaintiffs have also ignored the fact that that this Court has construed *Tawney* to require payment of royalties without deduction only to a market – not the ultimate point of sale. *See Cather*, 2019 WL 3806629, at *3.

In any event, Plaintiffs have ignored that Antero has not taken *any* deductions from royalties paid under Exhibit 5 to the second amended complaints. *See* Schopp Decl. at Ex. 3. Although the lease refers only to gas and does not provide for NGL royalties, Antero paid gross NGL royalties when the net factory value of NGLs was greater than the shrink value. *See* 1/23/20 Schopp Dep. Tr. 162:8–17 (stating that lessors under this lease would receive gross NGL royalties if net NGL value was higher); *id.* at 163:4–8 (stating this lease was not charged PRC2).[8] Accordingly, Antero is entitled to summary judgment on Plaintiffs' claims for breach of contract regarding the price received for gas lease attached as Exhibit 5 to the second amended complaints.

### 4. Antero has not breached the flat rate lease.

Finally, Antero has not breached the flat rate lease attached as Exhibit 8 to the second amended complaints.[9] Plaintiffs concede that in ruling on Antero's motion to dismiss the breach of contract claim on this flat rate lease, the Court found that, pursuant to *Leggett*, Antero is entitled to take reasonable, actual post-production deductions from Plaintiffs' royalties. *See* ECF No. 181 at 15. Plaintiffs urge the Court to reconsider its ruling despite the fact that it is supported by

---

[8] Excerpts from the transcript of the January 23, 2020 deposition of Alvyn A. Schopp are at ECF No. 182-2.
[9] As noted in Antero's opening brief, Randall Corder has no interest in this flat rate lease.

Plaintiffs' judicial admission. Specifically, Plaintiffs responded to Antero's motion to dismiss as follows:

> Defendants argue that it is [sic] allowed to take deductions from flat rate leases. Plaintiffs agree that *Leggett*, *supra*, is controlling on that point in West Virginia. But *Leggett* still requires that the deductions must be reasonable and actual. *Leggett v. EQT Production Co.*, 800 S.E.2d at 868. Plaintiffs have alleged that the deductions are unreasonable and unlawful. (Doc. 1-1, Pages 37, 41 and 53(d).) Therefore, this is a factual issue and is not grounds for dismissal of their claims.

ECF No. 19 at 15. *See id.* (Plaintiffs claim "[t]he above leases, *except for the flat rate lease*, are clearly *Tawney* non-compliant" (emphasis added)); *id.* at 16 (Plaintiffs argue that, "[e]xcept for the one flat rate lease, Defendants are prohibited from taking deductions from any leases, and for the flat rate, they are limited to reasonable deductions as required in *Leggett*.").

Plaintiffs' repeated assertions that Antero is entitled to take reasonable deductions from their flat rate lease under *Leggett* constitutes a judicial admission, and they are judicially estopped from now arguing to the contrary. The Fourth Circuit has held that judicial admissions are not limited to affirmative statements that a fact exists but also "include intentional and unambiguous waivers that release the opposing party from its burden to prove the facts necessary to establish the waived conclusion of law." *Meyer v. Berkshire Life Ins. Co.*, 372 F.3d 261, 264–65 (4th Cir. 2004). *See Barber v. Magnum Land Servs., LLC*, No. 1:13cv33, 2014 WL 5148575, at *5 n.7 (N.D. W. Va. Oct. 14, 2014) (doctrines of judicial estoppel and judicial admissions barred change of theory where counsel for plaintiffs made several representations to the contrary).

Moreover, it is undisputed that the wells associated with the flat rate lease at issue in this action were permitted before amendment to the flat rate statute on which Plaintiffs now rely, which became effective on May 31, 2018. *See* W. Va. Code § 22-6-8. Based on publicly-available information provided by the West Virginia Department of Environmental Protection, the permit for the Cleta Unit 2H well was issued on August 6, 2012, the permit for the Cleta Unit 1H well

11

was issued on September 28, 2012, and the permit for the Opie Unit 1H well was issued on October 25, 2012. Thus, contrary to Plaintiffs' assertions, Antero does have a reasonable and continuing expectation that the flat rate lease at issue in this action would be governed by the flat rate statute in force and effect when these wells were permitted and as interpreted by *Leggett*. As Antero noted in its opening brief, there is no evidence that the de minimis deductions from Plaintiffs' flat rate lease are unreasonable or not actual. *Leggett* requires nothing more. Plaintiffs have offered no proof to the contrary. For these reasons, Antero is entitled to summary judgment on Plaintiffs' claims for breach of contract regarding the flat rate lease.

### B. Plaintiffs Have No Injury Because Antero Exceeded Its Obligations.

Finally, Plaintiffs have no injury because Antero has exceeded its royalty obligations by paying more royalties than required under each of Plaintiffs' leases attached to the second amended complaints. First, Plaintiffs do not dispute that Antero has issued over-refunds to Plaintiffs in the collective amount of $21,126.40. *See* Schopp Decl. at 3 & Ex. 3 (discussing Antero's production of Plaintiffs' royalty payment data and providing a summary pursuant to Federal Rule of Evidence 1006). Even Plaintiffs' expert admitted that such over-refunds should be accounted for. *See* Reineke Dep. Tr. 36:11–37:8 (discussing over-refunds).[10]

Second, Plaintiffs do not dispute the fact that they have been overpaid where Antero based royalties on wellhead volumes rather than the actual volumes of gas sold. *See* 1/23/20 Schopp Dep. Tr. 126:14–127:1 (stating that Antero pays royalties on "gross wellhead" volumes and does not factor fuel loss or unaccounted gas into its calculations). Under *W.W. McDonald Land Co. v. EQT Production Co.*, 983 F. Supp. 2d 790, 817 (S.D. W. Va. 2013), Antero would be entitled to an offset for fuel. *See Romeo v. Antero Res. Corp.*, No. 1:17CV88, 2021 WL 215494, at *8 (N.D.

---

[10] Excerpts from the deposition of Daniel T. Reineke are at ECF No. 180-9.

12

W. Va. Jan. 21, 2021) ("Under West Virginia law, lessees are not required to pay royalties on unsold or lost gas volumes." (citation omitted)). Under *W.W. McDonald Land Co.*, Antero would be entitled to an offset for fuel. Assuming, *arguendo*, Plaintiffs' theory of the case is correct, Antero also has overpaid Plaintiffs by paying royalties on these unsold volumes of gas. Accordingly, Antero is entitled to summary judgment on Plaintiffs' breach of contract claims.

### C. Plaintiffs' Gas Is No Longer Processed.

There is no genuine issue of material fact that Plaintiffs' gas is no longer processed. Plaintiffs dispute the fact that their gas is no longer processed, stating that "Mr. Reineke disagrees with Antero's position that the gas was not being processed." ECF No. 181 at 3. Plaintiffs, however, offer no support in this regard.[11] As the Fourth Circuit has recognized, "[t]he function of the judge at the summary judgment stage is not to determine the truth of a matter or to weigh credibility but to determine whether there is any genuine issue of fact that can only properly be resolved by a finder of fact because it could reasonably be resolved in favor of either party." *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). "Pure speculation cannot create a genuine issue of material fact." *Hall v. Holsmith*, 340 F. App'x 944, 947 (4th Cir. 2009). Plaintiffs therefore fail to set forth any evidence refuting the fact that Antero has exceeded its obligations under the leases in their response. Antero is therefore entitled to summary judgment.

---

[11] In any event, Mr. Reineke's faulty damage calculation based on Antero's upgrade methodology is significantly overstated. First, Mr. Reineke includes damages based on Antero's upgrade methodology for claims released by Settling Plaintiffs, *see* ECF No. 75 (dismissing with prejudice the Settling Plaintiffs' breach of contract claims on the leases attached to the second amended complaints as Exhibits 2–8 that arose before the Settlement Agreement was signed), in the amount of $47,790.02. Second, Mr. Reineke calculates damages in the amount of $15,359.24 based on Antero's upgrade methodology in months where the upgrade analysis could not apply, as Plaintiffs' gas was not processed after August 2018. As discussed in Antero's opening brief, Antero is not obligated to manufacture NGLs from Plaintiffs' gas and, manifestly, cannot pay royalties on NGLs that it does not manufacture.

### III. CONCLUSION

For all of the foregoing reasons, the Court should deny Plaintiffs' summary judgment motion and enter an Order granting summary judgment for Defendant Antero Resources Corporation.

/s/ *W. Henry Lawrence*
W. Henry Lawrence (WV Bar #2156)
hank.lawrence@steptoe-johnson.com
Amy M. Smith (WV Bar #6454)
amy.smith@steptoe-johnson.com
Shaina D. Massie (WV Bar #13018)
shaina.massie@steptoe-johnson.com
Steptoe & Johnson PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330
(304) 933-8000

Counsel for Antero Resources Corporation

**CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of February 2021, I electronically filed the foregoing "Reply in Support of Antero Resources Corporation's Motion for Summary Judgment" with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following CM/ECF participants:

>Marvin W. Masters, Esquire
>April D. Ferrebee, Esquire
>The Masters Law Firm, LC
>181 Summers Street
>Charleston, WV 25301

>*/s/  W. Henry Lawrence*
>W. Henry Lawrence (WV Bar #2156)

12353336