FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**GERALD CORDER,**

      **Plaintiff,**

v.                                                                    **Civil Action No. 1:18-CV-30**
                                                                     **Hon. Judge Irene Keeley**

**ANTERO RESOURCES CORPORATION,**
**a Delaware corporation,**                          c/w 1:18CV31, 1:18CV32,
                                                                     1:18CV32, 1:18CV32, 1:18CV32,
                                                                     1:18CV32, 1:18CV32, 1:18CV32,
                                                                     1:18CV32, 1:18CV32, for purposes
                                                                     of discovery and setting schedule

**PLAINTIFF'S THIRD AMENDED COMPLAINT**

Now come the Plaintiffs and for their Third Amended Complaint against the Defendants

allege and aver as follows:

1.     Plaintiff Gerald W. Corder is a resident of West Virginia.

2.     Plaintiff Marlyn Sigmon is a resident of Virginia.

3.     Plaintiff Garnet Cottrill is a resident of Florida.

4.     Plaintiff Randall N. Corder is a resident of West Virginia.

5.     Plaintiffs Janet C. Packard and Leroy Packard are residents of Florida.

6.     Plaintiff Lorena Krafft is a resident of Ohio.

7.     Plaintiff Cheryl Morris is a resident of of Tennessee.

8.     Plaintiff Tracy Bridge is a resident of Ohio.

9.     Plaintiff Angela Nicholson is a resident of Virginia.

10.    Plaintiff Kevin McCall is a resident of Ohio.

11.    Plaintiff Brian McCall is a resident of Ohio.

12.    Defendant Antero Resources Corporation ("Antero") is an independent oil and

natural gas company which acquires, explores, produces, and develops natural gas, natural gas

liquids, and oil properties in the United States.  The company was formerly known as Antero Resources Appalachian Corporation and changed its name to Antero Resources Corporation in June 2013.

## THE 48.69-ACRE TRACT

13.    Plaintiffs own oil and gas interests in that certain 48.69-acre tract (the "48.69-Acre Tract") of real property located in Union District, Harrison County, West Virginia, and more particularly described in that certain deed dated October 26, 1867, and of record in the Clerk's Office in Deed Book 50, at Page 269, as follows:

> "Beginning at a White Oak (Childer's corner), thence S. 58 ¾° E. 12 poles to a White Oak, near the county road, thence S. 22° W. 58 ¾ poles to a stone on a line of the original, thence S. 81 ¾° W. 35 ½ poles to a Chestnut Oak, thence N. 65° W. 81 poles to a chestnut Oak, thence N. 88° W. 15 ½ poles to a stone pile and pointers, thence N. 25° E. 83 poles with a line of Solomon Day's lot to a Hickory, thence S. 72° E. 11 ½ poles to a Gum tree, thence S. 8° W. 33 ½ poles to a Poplar, thence S. 84 ¼° E. 96 poles to the beginning, containing 50 acres,"

(the "50-Acre Deed").

14.    Upon information and belief, sometime after the date of the 50-Acre Deed, the 48.69-Acre Tract was re-surveyed, thereby becoming the 48.69-Acre Tract.

15.    The relevant chain of title to the 48.69-Acre Tract is as follows:

a.    James Corder owned an interest in the 48.69-Acre Tract.

b.    Upon information provided in a deed recitals and estate records in the Clerk's Office, James I. Corder died October 31, 1987, intestate, and was were survived by the following children: Maryln C. Sigmon; Maxine C. Krafft; Garnet C. Cottrill; Janet C. Packard; Gerald Wayne Corder; Randall N. Corder; and Roger M. Corder.

c.   Maxine C. Krafft died and was survived by the following heirs: Lorena B. Krafft; Kimberly D. Smith; Cheryl L. Morris; Tracey F. Bridge; and Brenda Kilgore.

d.   Brenda Kilgore died September 3, 2007, and was survived by the following heirs: Todd A. Kilgore (husband; of record in the Clerk's Office in Book 1521, at Page 950, Todd A. Kilgore renunciates any interest in her estate); Angela M. Nicholas; Kevin P. McCall; and Brian M. McCall.

e.   Garnet Cottrill leased her interest in the 48.69-Acre Tract to Antero on July 24, 2012, and of record in the Clerk's Office in Lease Book 1496, at Page 1203.

f.   Marilyn Sigmon leased her interest in the 48.69-Acre Tract to Antero on July 24, 2012, and of record in the Clerk's Office in Lease Book 1498, at Page 865.

g.   Janet C. Packard leased her interest in the 48.69-Acre Tract to Antero on July 24, 2012, and of record in the Clerk's Office in Lease Book 1499, at Page 147.

h.   Lorena Krafft leased her interest in the 48.69-Acre Tract to Antero on September 20, 2012, and of record in the Clerk's Office in Lease Book 1499, at Page 135.

i.   Gerald Corder leased his interest in the 48.69-Acre Tract to Antero on June 29, 2012, and of record in the Clerk's Office in Lease Book 1496, at Page 587.

j.   Randall M. Corder leased his interest in the 48.69-Acre Tract to Antero on June 29, 2012, and of record in the Clerk's Office in Lease Book 1495, at Page 350.

k.   Roger Corder leased his interest in the 48.69-Acre Tract to Antero on July 10, 2012, and of record in the Clerk's Office in Lease Book 1495, at Page 895.

l.   Tracy Bridge leased her interest in the 48.69-Acre Tract to Antero on August

14, 2015, and of record in the Clerk's Office in Lease Book 1562, Page 1126.

m. Cheryl Morris leased her interest in the 48.69-Acre Tract to Antero on August 14, 2015, and of record in the Clerk's Office in Lease Book 1562, at Page 1114.

n. Angela Nicholson leased her interest in the 48.69-Acre Tract to Antero on August 14, 2015, and of record in the Clerk's Office in Lease Book 1562, at Page 1118.

o. Kevin McCall leased his interest in the 48.69-Acre Tract to Antero on August 14, 2015, and of record in the Clerk's Office in Lease Book 1562, at Page 1118.

p. Brian McCall leased her interest in the 48.69-Acre Tract to Antero on August 14, 2015, and of record in the Clerk's Office in Lease Book 1562, at Page 1118.

## THE 50.82-ACRE TRACT

16.     Plaintiffs own oil and gas interests in that certain 50.82-acre tract (the "50.82-Acre Tract") tract of real property located in Union District, Harrison County, West Virginia, and more particularly described in that certain deed dated April 8, 2018, and of record in the Clerk's Office in Deed Book 1575, at Page 118, as follows:

> Beginning at a white oak and running thence S. 58 ¾ E. 15.08 poles to a maple; S. 45 E 47 poles to a stone at the side of the road; N. 81 ¼ E 16.4 poles to a white oak; S. 29 W. 44.1 poles to the line of Jessee Corder; thence with his line S. 53 7/8 W. 102.5 poles to a chestnut oak; N. 21 ½ W. 104.72 poles to a stone with pointers; N. 81 ¾ E. 12.56 poles to a stone with pointers; N. 22 E 59.16 poles to the place of beginning, containing 50.82 acres, more or less, being the same tract or parcel of land conveyed unto James I. Corder by Ira W. Bell and Bessie F. Bell, his wife, by deed the 18th day of May, 1948, and of recorded in the office of the Clerk of the County Commission of Harrison County, West Virginia, in Deed Book No. 649, at page 526.

17.     The relevant chain of title to the 50.82-Acre Tract is as follows:

a. Prior to his death, James I. Corder owned 100% of the surface and oil and gas of the 50.82-Acre Tract.

b. By lease dated June 29, 1979, and recorded in Deed Book 1080, at Page 677 in the Clerk's Office, James I. Corder and Pearl T. Corder leased the 50.82-Acre Tract to Clarance Mutschelknaus (the "50.82-Acre Lease").

c. Upon information provided in a deed recital, James I. Corder died October 31, 1987, intestate, and was survived by the following children: Maryln C. Sigmon; Maxine C. Krafft; Garnet C. Cottrill; Janet C. Packard; Gerald Wayne Corder; Randall N. Corder; and Roger M. Corder.

d. By that deed dated September 5, 1989 and recorded in the Harrison County Clerk's Office ("Clerk's Office") in Deed Book 1210, at Page 1289, Maryln C. Sigmon, Maxine C. Krafft, Garnet C. Cottrill, Janet C. Packard, Randall N. Corder, and Roger M. Corder, collectively the grantors, conveyed their interest in the 50.82-Acre Mineral Tract to Gerald Wayne Corder. However, due to a scrivener's error (the "Scrivener's Error"), this deed failed to reserve an undivided interest in the oil and gas to the grantors. The Scrivener's Error was confirmed in civil action 14-c-104-3, filed in the Circuit Court of Harrison County, West Virginia, and corrected the record chain of title by that certain deed referenced and described in subparagraph g. below. [1]

e. By assignment dated March 16, 2010, and recorded in Deed Book 1455, at Page 184 in the Clerk's Office, Clarance Mutschelknaus assigned his rights in the 50.82-Acre Lease to Bluestone Energy Partner.

f. On January 4, 2011, by that Affidavit Regarding Merger, recorded in Affidavit Book 35, at Page 1236, Bluestone Energy Partner merged into Antero

---

[1] *See* **Exhibit 1.**

Resources Appalachian Corporation, a Delaware corporation.

g. By deed dated April 8, 2016, and recorded in the Clerk's Office in Deed Book 1575, at Page 1144, Gerald Wayne Corder corrected the Scrivener's Error in the record title by conveying the following interests in the oil and gas to the following parties:

  i. Marlyn C. Sigmon – 1/7th oil and gas

  ii. Lorena B. Krafft – 1/35th oil and gas

  iii. Kimberly D. Smith – 1/35th oil and gas

  iv. Cheryl L. Morris – 1/35th oil and gas

  v. Tracey F. Bridge – 1/35th oil and gas

  vi. Angela M. Nicholas – 1/105th oil and gas

  vii. Kevin P. McCall – 1/105th oil and gas

  viii. Brian M. McCall – 1/105th oil and gas

  ix. Garnet C. Cottrill – 1/7th oil and gas

  x. Janet C. Packard – 1/7th oil and gas

  xi. Randall N. Corder – 1/7th oil and gas

  xii. Roger M. Corder – 1/7th oil and gas

Notwithstanding the Scrivener's Error, Gerald Wayne Corder's 1/7th (or .1429 or 14.29%) oil and gas interest was of record and assessed from at least tax year 2004 until present. By way of example, his 1/7th (or .1429 or 14.29%) oil and gas interest in the 50.82-Acre Tract was assessed for tax years 2004 and 2012 by and through the following assessments:

h. **<u>Tax Year 2004</u>**:

  i. Ticket No. 59514;

6

ii. Account No. 6695463;

iii. Owner Name: Corder Gerald W.;

iv. Property: .1429 INT 50.28 AC O&G

v. Map: 9999, Parcel: 0669 5463.

i. **Tax Year 2012**:

i. Ticket No. 62991;

ii. Account No. 6695463;

iii. Owner Name: Corder Gerald W.;

iv. Property: .1429 INT 50.28 AC O&G

v. Map: 9999, Parcel: 0669 5463.

**THE 54.18-ACRE TRACT**

18.      Plaintiffs own oil and gas interests in that certain 54.18-acre tract (the "54.18-Acre Tract") tract of real property located in Union District, Harrison County, West Virginia, and more particularly described in that certain deed dated April 8, 2018, and of record in the Clerk's Office in Deed Book 1575, at Page 1118:

> Beginning at a stone with pointers, corner to the T.M. Bailey tract of land, thence with same N. 19 3/8 W. 47.76 poles to a chestnut oak in said line; N. 53 7/8 E. 102.5 poles to a stone in W.T. Day's line thence with same and two others, S. 26 ¼ E. 18.9 poles to a stone; S. 65 ¼ E. 26 poles to a poplar stump, corner to the Brohard land; thence with same S. 65 ¼ E. 10.8 poles to a black oak bush, corner to the Matthey land; thence with a line thereof S. 21 ½ W. 98.2 poles to a stone in the Ward line; thence with three lines thereof N. 57 W. 31.2 poles to two chestnut oaks; N. 86 ½ W. 44.4 poles to a hickory; and thence S. 69 ½ W. 2.4 poles to the beginning, containing fifty-four and eighteen hundredths (54.18) acres, being the same tract of parcel of land conveyed unto James I. Corder by Jessee C. Corder and Lenora Corder, his wife, by deed dated the first day of October, 1943, and of record in the office of the Clerk of the County Commission of Harrison County, West Virginia, in Deed Book No. 554, at page 344.

19.      The relevant chain of title to the 54.18-Acre Tract is as follows:

a.   Prior to his death, James I. Corder owned 100% of the surface and 50% of the oil and gas under the 54.18-Acre Tract.

b.   By lease dated June 29, 1979, and recorded in Deed Book 1082, at Page 656 in the Clerk's Office, James I. Corder and Pearl T. Corder leased the 54.18-Acre Tract to Clarance Mutschelknaus (the "54.18-Acre Lease").

c.   Upon information provided in a deed recital, James I. Corder died October 31, 1987, intestate, and was survived by the following children: Maryln C. Sigmon; Maxine C. Krafft; Garnet C. Cottrill; Janet C. Packard; Gerald Wayne Corder; Randall N. Corder; and Roger M. Corder.

d.   By that deed dated September 5, 1989 and recorded in the Harrison County Clerk's Office ("Clerk's Office") in Deed Book 1206, at Page 369, Maryln C. Sigmon, Maxine C. Krafft, Garnet C. Cottrill, Janet C. Packard, Randall N. Corder, and Gerald Wayne Corder, collectively the grantors, conveyed their interest in the 54.18-Acre Mineral Tract Randall N. Corder. However, due to a scrivener's error (the "Scrivener's Error"), this deed failed to reserve an undivided interest in the oil and gas to the grantors. The Scrivener's Error was confirmed in civil action 14-c-104-3, filed in the Circuit Court of Harrison County, West Virginia, and corrected the record chain of title by that certain deed referenced and described in subparagraph g. below.

e.   By assignment dated March 16, 2010, and recorded in Deed Book 1456, at Page 832 in the Clerk's Office, Clarance Mutschelknaus assigned his rights in the 54.18-Acre Lease to Bluestone Energy Partner.

f.   On January 4, 2011, by that Affidavit Regarding Merger, recorded in Affidavit

Book 35, at Page 1236, Bluestone Energy Partner merged into Antero Resources Appalachian Corporation, a Delaware corporation.

g.  By deed dated April 8, 2016, and recorded in the Clerk's Office in Deed Book 1575, at Page 1130, Randall N. Corder corrected the Scrivener's Error in the record title by conveying the following interests in the oil and gas under the 54.18-Acre Tract to the following parties:

    i.  Marlyn C. Sigmon – 1/14th oil and gas

    ii.  Lorena B. Krafft – 1/70th oil and gas

    iii.  Kimberly D. Smith – 1/70th oil and gas

    iv.  Cheryl L. Morris – 1/70th oil and gas

    v.  Tracey F. Bridge – 1/70th oil and gas

    vi.  Angela M. Nicholas – 1/210th oil and gas

    vii.  Kevin P. McCall – 1/210th oil and gas

    viii.  Brian M. McCall – 1/210th oil and gas

    ix.  Garnet C. Cottrill – 1/14th oil and gas

    x.  Janet C. Packard – 1/14th oil and gas

    xi.  Roger M. Corder – 1/14th oil and gas

    xii.  Gerald W. Corder – 1/14th oil and gas

h.  Notwithstanding the Scrivener's Error, Randall N. Corder's 1/14th (or .0714 or 7.14%) oil and gas interest for the 54.18-Acre Tract was of record and assessed from at least tax year 2004 until present.  By way of example, his 1/14th (or .0714 or 7.14%) oil and gas interest in the 54.18-Acre Tract was assessed for tax years 2004 and 2012 by and through the following assessments:

    i.   Tax Year 2004:

        xiii.  Ticket No. 59602;

        xiv.  Account No. 6692956;

        xv.  Owner Name: Corder Randall N.;

        xvi.  Property: .0714 INT 54.18 AC O&G TT FORK

        xvii.  Map: 9999, Parcel: 0669 2956.

    j.   Tax Year 2012:

        xviii.  Ticket No. 63070;

        xix.  Account No. 6692956;

        xx.  Owner Name: Corder Randall N.;

        xxi.  Property: .0714 INT 54.18 AC O&G TT FORK

        xxii.  Map: 9999, Parcel: 0669 2956.

### THE 6.5-ACRE TRACT AND THE 104.75-ACRE TRACT

20.    Plaintiffs own oil and gas interests in that certain 6.5-acre tract (the "6.5-Acre Tract") tract of real property and that certain 104.75-acre tract (the "104.75-Acre Tract" tract of real property both located in Union District, Harrison County, West Virginia, and more particularly described in that certain deed dated April 8, 2018, and of record in the Clerk's Office in Deed Book 1575, at Page 1130:

> Those two (2) certain tracts or parcels of land situate on the waters of Turtletree Fork of Ten Mile Creek, Union District, Harrison County, West Virginia; the first of which two (2) tracts contains One Hundred Four and Three-Fourths (104-3/4) acres, more or less . . . and the second tract which adjoins the first and contains Six and One-Half (6-1/2) acres, more or less, and being the same two tracts of land that were conveyed unto James Corder by Len Yates and Chlora Yates, his wife, by deed dated the 11th day of May, 1970, and of record in the Office of the Clerk of the County Commission of Harrison County, West Virginia, in Deed Book No. 972, at page 296.

21. The relevant chain of title to the 6.5-Acre Tract and the 104.75-Acre Tract is as follows:

    a. Prior to his death, James Corder owned 100% of the surface and 50% of the oil and gas under the 104.75-Acre Tract and 100% of the surface and 25% of the oil and gas under the 6.5-Acre Tract.

    b. By lease dated May 15, 1981, and recorded in Deed Book 1103, at Page 733 in the Clerk's Office, James I. Corder and Pearl T. Corder leased the 104.75-Acre Tract and the 6.5-Acre Tract to J. Robert Horner (collectively, "Horner Lease").

    c. Upon information provided in a deed recital, James I. Corder died October 31, 1987, intestate, and was survived by the following children: Maryln C. Sigmon; Maxine C. Krafft; Garnet C. Cottrill; Janet C. Packard; Gerald Wayne Corder; Randall N. Corder; and Roger M. Corder.

    d. By that deed dated September 5, 1989 and recorded in the Harrison County Clerk's Office ("Clerk's Office") in Deed Book 1206, at Page 364, Maryln C. Sigmon, Maxine C. Krafft, Garnet C. Cottrill, Janet C. Packard, Randall N. Corder, and Gerald Wayne Corder, collectively the grantors, conveyed their interest in the 104.75-Acre Mineral Tract and the 6.5-Acre Tract to Roger M. Corder. However, due to a scrivener's error (the "Scrivener's Error"), this deed failed to reserve an undivided interest in the oil and gas to the grantors. The Scrivener's Error was confirmed in civil action 14-c-104-3, filed in the Circuit Court of Harrison County, West Virginia, and corrected the record chain of title by that certain deed referenced and described in subparagraphs f and g below.

    e. By assignment dated February 28, 2012, and recorded in Deed Book 1486, at

11

Page 478 in the Clerk's Office, Caroline Horner Ramsey, individually, and Barbara Lynn Keith and Leslie Andrews Horner, by Caroline Horner Ramsey, their Attorney in Fact, as assignors, conveyed and assigned J. Robert Horner's rights in the Horner Lease to Antero Resources Appalachian Corporation.

f. By deed dated April 8, 2016, and recorded in the Clerk's Office in Deed Book 1575, at Page 1130, Roger M. Corder corrected the Scrivener's Error in the record title by conveying the following interests in the oil and gas under the 104.75-Acre Tract to the following parties:

    i. Marlyn C. Sigmon – 1/14th oil and gas

    ii. Lorena B. Krafft – 1/70th oil and gas

    iii. Kimberly D. Smith – 1/70th oil and gas

    iv. Cheryl L. Morris – 1/70th oil and gas

    v. Tracey F. Bridge – 1/70th oil and gas

    vi. Angela M. Nicholas – 1/210th oil and gas

    vii. Kevin P. McCall – 1/210th oil and gas

    viii. Brian M. McCall – 1/210th oil and gas

    ix. Garnet C. Cottrill – 1/14th oil and gas

    x. Janet C. Packard – 1/14th oil and gas

    xi. Randall N. Corder – 1/14th oil and gas

    xii. Gerald W. Corder – 1/14th oil and gas

g. By deed dated April 8, 2016, and recorded in the Clerk's Office in Deed Book 1575, at Page 1130, Roger M. Corder corrected the Scrivener's Error in the record title by conveying the following interests in the oil and gas under the 6.5-

Acre Tract to the following parties:

    i.   Marlyn C. Sigmon – 1/28th oil and gas

    ii.   Lorena B. Krafft – 1/140th oil and gas

    iii.   Kimberly D. Smith – 1/140th oil and gas

    iv.   Cheryl L. Morris – 1/140th oil and gas

    v.   Tracey F. Bridge – 1/140th oil and gas

    vi.   Angela M. Nicholas – 1/420th oil and gas

    vii.   Kevin P. McCall – 1/420th oil and gas

    viii.   Brian M. McCall – 1/420th oil and gas

    ix.   Garnet C. Cottrill – 1/28th oil and gas

    x.   Janet C. Packard – 1/28th oil and gas

    xi.   Randall N. Corder – 1/28th oil and gas

    xii.   Gerald W. Corder – 1/28th oil and gas

h.   Notwithstanding the Scrivener's Error, Roger M. Corder's 1/14th (or .0714 or 7.14%) oil and gas interest for the 104.75-Acre Tract was of record and assessed from at least tax year 2004 until present.  By way of example, his 1/14th (or .0714 or 7.14%) oil and gas interest in the 104.75-Acre Tract was assessed for tax years 2004 and 2012 by and through the following assessments:

i.   Tax Year 2004:

    i.   Ticket No. 59644;

    ii.   Account No. 6695427;

    iii.   Owner Name: Corder Roger M.;

    iv.   Property: .0714 INT 104.75 AC O&G

     v.  Map: 9999, Parcel: 0669 5427.

j.  Tax Year 2012:

     i.  Ticket No. 63105;

     ii.  Account No. 6695427;

     iii.  Owner Name: Corder Roger M.;

     iv.  Property: .0714 INT 104.75 AC O&G

     v.  Map: 9999, Parcel: 0669 5427.

k.  Notwithstanding the Scrivener's Error, Roger M. Corder's 1/28th (or .0357 or 3.57%) oil and gas interest for the 6.5-Acre Tract was of record and assessed from at least tax year 2004 until present.  By way of example, his 1/28th (or .0357 or 3.57%) oil and gas interest in the 6.5-Acre Tract was assessed for tax years 2004 and 2012 by and through the following assessments:

l.  Tax Year 2004:

     i.  Ticket No. 59642;

     ii.  Account No. 6692901;

     iii.  Owner Name: Corder Roger M.;

     iv.  Property: .0357 INT 6.5 AC O&G

     v.  Map: 9999, Parcel: 0669 2901.

m.  Tax Year 2012:

     i.  Ticket No. 63103;

     ii.  Account No. 6692901;

     iii.  Owner Name: Corder Roger M.;

     iv.  Property: .0357 INT 6.5 AC O&G

v.   Map: 9999, Parcel: 0669 2901.

## THE 59-ACRE TRACT

22.    Plaintiffs own oil and gas interests in that certain 59-acre tract (the "59-Acre Tract") of real property a located in Union District, Harrison County, West Virginia, and more particularly described in those certain deeds of record in the Clerk's Office in Deed Book 59, at Page 211; Deed Book 59, at Page 212, and Deed Book 62, at Page 290:

50-acre tract

"Beginning at a _____ stake corner to James Harrison land Thence S 56 E 58 ¼ poles to a chestnut oak; Thence S 88 E 27 poles to a stone pile & two Hickory pointers corner to John Days land; Thence N 25 E 83 poles to a Hickory; Thence N 72 W 28 ½ poles to a stone & pointers; thence N 35 W 66 poles to a stone & pointers on ridge; Thence S 25 W 116 374 poles to the Beginning Containing 50 acres more or less."

7-acre tract

"Beginning at a Hickory; thence N 20 W 38 ¼ poles to a Ash; N 76 ½ W 22 ¼ poles to a Dogwood; N 45 W 34 ½ poles to a Stone; S 35 E 64 ½ poles to a stone pile; N 72 E 28 ½ poles to its Beginning Containing Seven acres and eight poles of land."

2-acre tract

"Beginning at a Hickory a _____ to the land of John D. Day thence S 72 E ___ poles to a Gum; N 28 5/4 E 23 ½ to a Stone on the ridge; N 67 W 7 ½ poles to a Hickory; N 54 W 21 ½ poles to an Ash S 20 E 38 ¼ poles to the beginning containing Two acres and 101 poles of land more or less."

23.    The relevant mineral record chain of title to the 59-Acre Tract is as follows:

a.   Pearl Corder and/or James Corder owned an interest in the 59-Acre Tract.

b.   Upon information provided in a deed recitals and estate records in the Clerk's Office, Pearl Corder died August 31, 1981, intestate, and James I. Corder died October 31, 1987, intestate, and both were survived by the following children: Maryln C. Sigmon; Maxine C. Krafft; Garnet C. Cottrill; Janet C. Packard;

15

Gerald Wayne Corder; Randall N. Corder; and Roger M. Corder.

    c.  Maxine C. Krafft died, and was survived by the following heirs: Lorena B. Krafft; Kimberly D. Smith; Cheryl L. Morris; Tracey F. Bridge; and Brenda Kilgore.

    d.  Brenda Kilgore died September 3, 2007, and was survived by the following heirs: Todd A. Kilgore (husband; of record in the Clerk's Office in Book 1521, at Page 950, Todd A. Kilgore renunciates any interest in her estate); Angela M. Nicholas; Kevin P. McCall; and Brian M. McCall.

24.    By lease dated August 20, 1979, and recorded in Deed Book 1084, at Page 203 in the Clerk's Office, Jmaes I. Corder and Pearl T. Corder (as well as other lessors) leased the 59-acre Tract to Doran & Associates, Inc. (the "59-Acre Lease").

25.    The relevant leasehold chain of title for the 59-Acre Lease is as follows:

    a.  By assignment dated October 1, 1988, and recorded in Deed Book 1193, at Page 361 in the Clerk's Office, Doran & Associates, Inc. assigned the 59-Acre Lease to Cabot Oil and Gas Corporation.

    b.  By assignment dated August 1, 1996, and recorded in Deed Book 1279, at Page 894 in the Clerk's Office, Cabot Oil and Gas Corporation assigned the 59-Acre Lease to Tight Sands Investment.

    c.  By assignment dated July 1, 1999, and recorded in Deed Book 1313, at Page 1096 in the Clerk's Office, Tight Sands Investment assigned the 59-Acre Lease to Cabot Oil and Gas Corporation.

    d.  By assignment dated July 1, 1999, and recorded in Deed Book 1314, at Page 1012 in the Clerk's Office, Cabot Oil and Gas Corporation assigned the 59-

Acre Lease to Enervest Appalachia L. P.

e.  By assignment dated February 17, 2012, and recorded in Deed Book 1484, at Page 957 in the Clerk's Office, Enervest Appalachia L. P. assigned the Marcellus Shale formation of the 59-Acre Lease to Antero Resources Appalachia Corporation.

## THE 105-ACRE TRACT

26.  Plaintiffs own oil and gas interests in that certain 105-acre tract (the "105-Acre Tract") tract of real property located in Union District, Harrison County, West Virginia, and more particularly described in that certain deed of record in the Clerk's Office in Deed Book 625, at Page 169:

105-acre tract

Beginning at two chestnut oaks, corner to lands of Wm. Corder and Hannah Evans and running thence N. 57 W 73 poles to a stone B.O. pointers; thence N. 40 E. 45 ½ poles to a stone pile and Locust pointer; thence N. 38 E. 68 ½ poles to two chestnut oaks corner to lands of Hugh Garrett; N. 84 E. 68 poles to chestnut oak corner to lands of Cain Nicholas; thence S. 35 E/ 54 poles to a stone corner to John M. Morris; thence S. 25 W. 1163/7 poles to a stone; thence N. 56 W/ 24 ¼ poles to a hickory; thence W. 33 poles to a stone; thence S. 77 W. 251/2 poles to the beginning, containing 105 acres, more or less.

27.  The relevant mineral chain of title to the 105-Acre Tract is as follows:

a.  Pearl Corder and/or James Corder owned an interest in the 105-Acre Tract.

b.  Upon information provided in a deed recitals and estate records in the Clerk's Office, Pearl Corder died August 31, 1981, intestate, and James I. Corder died October 31, 1987, intestate, and both were survived by the following children: Maryln C. Sigmon; Maxine C. Krafft; Garnet C. Cottrill; Janet C. Packard; Gerald Wayne Corder; Randall N. Corder; and Roger M. Corder.

    c.  Maxine C. Krafft died, and was survived by the following heirs: Lorena B. Krafft; Kimberly D. Smith; Cheryl L. Morris; Tracey F. Bridge; and Brenda Kilgore.

    d.  Brenda Kilgore died September 3, 2007, and was survived by the following heirs: Todd A. Kilgore (husband; of record in the Clerk's Office in Book 1521, at Page 950, Todd A. Kilgore renunciates any interest in her estate); Angela M. Nicholas; Kevin P. McCall; and Brian M. McCall.

28.    By lease dated August 20, 1979, and recorded in Deed Book 1084, at Page 197 in the Clerk's Office, James I. Corder and Pearl T. Corder (as well as other lessors) leased the 105-Acre Tract to Doran & Associates, Inc. (the "105-Acre Lease").

29.    The relevant leasehold record chain of title for the 105-Acre Lease is as follows:

    a.  By assignment dated December 14, 1979, and recorded in Deed Book 1193, at Page 361 in the Clerk's Office, Doran & Associates, Inc. assigned the 105-Acre Lease to Cabot Oil and Gas Corporation.

    b.  By assignment dated August 1, 1996, and recorded in Deed Book 1279, at Page 894 in the Clerk's Office, Cabot Oil and Gas Corporation assigned the 105-Acre Lease to Tight Sands Investment.

    c.  By assignment dated July 1, 1999, and recorded in Deed Book 1313, at Page 1096 in the Clerk's Office, Tight Sands Investment assigned the 105-Acre Lease to Cabot Oil and Gas Corporation.

    d.  By assignment dated July 1, 1999, and recorded in Deed Book 1314, at Page 1012 in the Clerk's Office, Cabot Oil and Gas Corporation assigned the 105-Acre Lease to Enervest Appalachia L. P.

e.  By assignment dated February 17, 2012, and recorded in Deed Book 1484, at Page 957 in the Clerk's Office, Enervest Appalachia L. P. assigned the Marcellus Shale formation of the 105-Acre Lease to Antero Resources Appalachia Corporation.

## THE HARRISON 50-ACRE TRACT

30.  Plaintiffs own oil and gas interests in that certain 50-acre tract (the "Harrison 50-Acre Tract") of real property located in Union District, Harrison County, West Virginia, and more particularly described in that certain deed of record in the Clerk's Office in Deed Book 99, at Page 7:

24 ¾-acre tract

"Beginning at a stone and beech pointers, Matthey's corner in Mowrey's line; thence N. 24 E. 132 poles to W. O. stump, corner to graveyard; S. 70 E. 6 poles to a stone; N. 24 E. 4 poles to a stone; N. 70 w. 6 poles to a stone; N. 24 E. 27 ½ poles to Matthey's corner in Brohard's line; N. 81 E. 13 ½ poles to corner of P. S. Day; S. 16 ½ W. 55 poles to a stone in the county road; S. 62 ¾ E. 9 ½ poles to a stone in the county road; S. 25 W. 134 poles to a stone, corner to P. S. Day in Mowrey's line; N. 19 ¼ W. 36 ½ poles to the beginning, containing 24 ¾ acres. More or less and being the same real estate that was conveyed unto J. W. Welch and Mabel L. Welch, his wife, by Maggie Day, widow, Nellie A. Thomas and C. O. Thomas, her husband, Ethel Matthey and Glen Matthey, her husband, Geneva Bolte and Fred W. Bolte, Jr., her husband, by deed dated 31st day of March, 1954 and of record in the Office of the Clerk of the County Court, Harrison County, West Virginia, in Deed Book No. 746, at pages 303 and 304."

4.68-acre tract

"Beginning at a stone in Brohard's line; thence with the same N. 83 E. 10 ½ poles to a stone in the Coffindaffer line; thence with the same S. 10 ¾ W. 62 ½ poles to a stone in the county road; thence with the same N. 62 ½ W. 16.3 poles in the road to the line of C. A. and Maggie Day; thence with the same N. 16 ½ E. 54 poles to the beginning, containing 4.68 acres and being the same tract or parcel of land that was conveyed unto J. W. Welch and

Mabel L. Welch, his wife, by Maggie Day, widow, Nellie A. Thomas and C. O. Thomas, her husband, Ethel Matthey and Glen Matthey, her husband, Geneva Bolte and Fred W. Bolte, Jr., her husband, by deed dated 31st day of March, 1954 and of record in the Office of the Clerk of the County Court, Harrison County, West Virginia, in Deed Book No. 746, at page 304."

10.32-acre tract

"Beginning at a stone in Summerville line; thence with the same N. 86 ½ W. 8 poles to a chestnut; N. 19-1/8 W. 20 poles to a stone in the line of C. A. and Maggie Day; thence with the same N. 25-1/8 E. 65.6 poles to a stone in said line; thence S. 62 ½ E. 22.2 poles to a stone in A. D. Lawson's line; thence with the same S. 25-1/8 W. 76.6 poles too the place of beginning, containing 10.32 acres and being the same tract or parcel of land that was conveyed unto J. W. Welch and Mabel L. Welch, his wife, by Maggie Day, widow, Nellie A. Thomas and C. O. Thomas, her husband, Ethel Matthey and Glen Matthey, her husband, Geneva Bolte and Fred W. Bolte, Jr., her husband, by deed dated 31st day of March, 1954 and of record in the Office of the Clerk of the County Court, Harrison County, West Virginia, in Deed Book No. 746, at page 304."

9 ¾-acre tract

"Beginning at a stone, corner to other lands of C. A. Day; thence with a line thereof N. 62 ½ W. 22.2 poles to a stone in the line of lands of C. A. and Maggie Day; thence with the same N. 25-1/8 E. 63.4 poles to a stone in county road; thence with the same  S. 62 ½ E. 22.2 poles to a stone in said road and corner to lands of A. D. Lawson; thence with the same S. 25-1/8 W. 63.4 poles to the place of beginning, containing 9 ¾ acres, more or less, being the same tract or parcel of land that was conveyed unto J. W. Welch and Mabel L. Welch, his wife, by Maggie Day, widow, Nellie A. Thomas and C. O. Thomas, her husband, Ethel Matthey and Glen Matthey, her husband, Geneva Bolte and Fred W. Bolte, Jr., her husband, by deed dated 31st day of March, 1954 and of record in the Office of the Clerk of the County Court, Harrison County, West Virginia, in Deed Book No. 746, at page 305."

31.     The relevant mineral record chain of title to the Harrison 50-Acre Tract is as follows:

32.     By lease dated April 8, 1896, and recorded in Deed Book 99, at Page 7 in the Clerk's Office, J.A.L Day and Sarah Day (wife) leased their interest in the Harrison 50-Acre Tract to R.A. Garrett (the "Harrison 50-Acre Lease").

a.  By deeds, dated January 1, 1897, and of record in the Clerk's Office in Deed Book 100, at Page 436, and in Deed Book 100, at Page 438, J.A.L Day conveyed his interest in the Harrison 50-Acre Tract to Porter S. Day, Amanda E. Day, and W.T. Day.

b.  By deed, dated May 5, 1899, of record in the Clerk's Office in Deed Book 107, at Page 292, Porter S. Day, Amanda E. Day, and W.T. Day conveyed an interest in the Harrison 50-Acre Tract to Albro Corder.

c.  Albro Corder died, and was survived by his only child, namely, Oma Corder.

d.  Oma Corder died December 15, 1987, intestate, and according to Deed Book 1278, at Page 1088, of record in the Clerk's Office, her interest passed to her "cousins;" relevant to the Complaint, a portion of her interest in the 50-Acre Tract was inherited by the following: Maryln C. Sigmon; Maxine C. Krafft; Garnet C. Cottrill; Janet C. Packard; Gerald Wayne Corder; Randall N. Corder; and Roger M. Corder.

e.  Maxine C. Krafft died, and was survived by the following heirs: Lorena B. Krafft; Kimberly D. Smith; Cheryl L. Morris; Tracey F. Bridge; and Brenda Kilgore.

f.  Brenda Kilgore died September 3, 2007, and was survived by the following heirs: Todd A. Kilgore (husband; of record in the Clerk's Office in Book 1521, at Page 950, Todd A. Kilgore renunciates any interest in her estate); Angela M. Nicholas; Kevin P. McCall; and Brian M. McCall.

33.  By lease dated April 8, 1896, and recorded in Deed Book 99, at Page 7 in the Clerk's Office, J.A.L Day and Sarah Day (wife) leased their interest in the Harrison 50-Acre Tract to R.A.

21

Garrett (the "Harrison 50-Acre Lease").

34.     The relevant leasehold record chain of title for the 50-Acre Lease is as follows:

a.   By assignment dated May 8, 1897, and recorded in Deed Book 101, at Page 52 in the Clerk's Office, R.A. Garrett assigned the 50-Acre Lease to B.F. Robinson.

b.   By assignment dated December 9, 1898, and recorded in Deed Book 106, at Page 376 in the Clerk's Office, B.F. Robinson assigned the 50-Acre Lease to South Penn Oil Company.

c.   By assignment dated December 9, 1898, and recorded in Deed Book 106, at Page 376 in the Clerk's Office, South Penn Oil Company assigned the 50-Acre Lease to South Penn Natural Gas Company.

d.   Upon information and belief, by mesne assignments made after 1945, South Penn Oil Company assigned the 50-Acre Lease to Antero.  This is supported by an Amended Declaration of Pooling made and effective October 1, 2012, and recorded in Deed Book 1544, at Page 141, wherein Antero asserted that it was the owner of  the 50-Acre Lease, "insofar and only insofar as such [lease covers] depths and formations from the top of the Rhinestreet Formation to one hundred feet (100') below the top of the Onondaga formation."


## THE DODDRIDGE 50-ACRE TRACT

35.     Plaintiffs own oil and gas interests in that certain 50-acre tract (the "Doddridge 50-Acre Tract") of real property located in Greenbrier District, Doddridge County, West Virginia, and more particularly described in that certain oil and gas lease of record in the Clerk's Office in

Oil and Gas Lease Book 143, at Page 291:

> On the North by land of Robert L. Richards, et al . . . On the East by land of Enoch Sommerville (Now James Corder) . . . On the South by lands of Artie Caynor; K. Frashure . . . On the West by lands of A.N. Hinkle . . . containing fifty (50) acres . . . .

36.     The relevant mineral and leasehold record chain of title to the Doddridge 50-Acre Tract is as follows:

a.  Oma Corder owned an interest in the Doddridge 50-Acre Tract.

b.  By lease dated October 3rd, 1985, and recorded in Oil and Gas Lease Book 143, at Page 291 in the Clerk's Office, Oma Corder leased her interest in the Doddridge 50-Acre Tract to Clarence W. Mustchelknaus (the "Doddridge 50-Acre Lease").

c.  Oma Corder died December 15, 1987, intestate, and according to Deed Book 1278, at Page 1088, of record in the Harrison County Clerk's Office, her interest passed to her "cousins;" relevant to the Complaint, a portion of her interest in the 50-Acre Tract was inherited by the following: Maryln C. Sigmon; Maxine C. Krafft; Garnet C. Cottrill; Janet C. Packard; Gerald Wayne Corder; Randall N. Corder; and Roger M. Corder.

d.  Maxine C. Krafft died, and was survived by the following heirs: Lorena B. Krafft; Kimberly D. Smith; Cheryl L. Morris; Tracey F. Bridge; and Brenda Kilgore.

e.  Brenda Kilgore died September 3, 2007, and was survived by the following heirs: Todd A. Kilgore (husband; of record in the Clerk's Office in Book 1521, at Page 950, Todd A. Kilgore renunciates any interest in her estate); Angela M. Nicholas; Kevin P. McCall; and Brian M. McCall.

37.     By lease dated October 3rd, 1985, and recorded in Oil and Gas Lease Book 143, at Page 291 in the Clerk's Office, Omar Corder leased her interest in the Doddridge 50-Acre Tract to Clarence W. Mutschelknaus (the "Doddridge 50-Acre Lease").

38.     By that assignment, dated September 21, 2011, and of record in the Clerk's Office in Assignment Book 262, at Page 74, Clarence W. Mutschelknaus assigned the Doddridge 50-Acre Lease to Antero.

39.     Antero had duties and responsibilities to Plaintiffs and each of them for the development of Plaintiffs' oil and gas interests under the leases for the tracts identified above. These duties and responsibilities include but are not limited to the following:

(A)     Pursuant to the lease for the **48.69** acre tract, Antero is to pay royalties as follows:

    (a)     on oil, One-Eighth (12.5%) (amended to be 15%) of that produced and saved and delivered at the wells or into the pipeline to which the wells may be connected; and

    (b)     on gas, including casinghead gas or other gaseous substance, produced from said land and sold or used beyond the well or for the extraction of gasoline or other product, an amount equal to One-Eighth (12.5%)(amended to be 15%) of the net amount realized by Lessee computed at the wellhead from the sale of such substances.

And further:

all oil, gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements.  However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.

    (c)     The lease documents for this tract are attached hereto as **Exhibit 2.**

(B)     Pursuant to the lease for the **50.82** acre tract (**Exhibit 3**), Antero is to pay royalties as follows:

Lessor to pay the equal one-eighth (1/8) part of all oil produced and saved from the leased premises and second to pay one-eighth (1/8) of the value at the well of gas from each and every gas well from which is marketed and used off the premises…later amended to 1/8 of the value of the gas from each well.

(C)     Pursuant to the lease for the **54.18** acre tract (**Exhibit 4**), Antero is to pay royalties of one-eighth of the value at the well of the gas from each and every well.

(D)     Pursuant to the lease for the **104.75** acres and **6.5** acre tracts (**Exhibit 5**), Antero is to pay 1/8 of the price received by the lessee from the sale of such gas.

(E)     Pursuant to the lease for the **59** acre tract (**Exhibit 6**), Antero is to pay royalties of 1/8 of the gross proceeds received from each and every well drilled on said properties providing natural gas, an amount equal to one-eighth (1/8) of the gross proceeds received from the sale of same at the prevailing price for gas at the well, for all natural gas saved and marketed from the said premises….

(F)     Pursuant to the lease for the **105** acre tract (**Exhibit 7**), Antero is to pay royalties of 1/8 of the gross proceeds received from each and every well drilled on said properties providing natural gas, an amount equal to one-eighth (1/8) of the gross proceeds received from the sale of same at the prevailing price for gas at the well, for all natural gas saved and marketed from the said premises….

(G)     Pursuant to the lease for the **50** acre tract in Harrison County (**Exhibit 8**), Antero is to pay royalties "$100 per year for each and every gas well obtained on the premises."  W. Va. Code § 22-6-8 applies to this lease.

(H)     Pursuant to the lease for the **50** acre tract in Doddridge County (**Exhibit 9**), Antero is to pay royalties of 1/8 of the value at the well of the gas from each and every gas well drilled on the premises.

40.     Plaintiffs' contractual relationships are further reflected in the royalty statements excerpts are attached hereto as **Exhibit 10.**

41.     Plaintiffs' duties were fulfilled under each of these leases upon execution of the original leases and by holding and maintaining their ownership.

42.     Plaintiffs were made parties to a partition lawsuit filed by Antero and others in the Circuit Court of Harrison County, West Virginia on July 15, 2013.

43.     As a result of the claims and defenses which arose in that litigation, all Defendants

in that case and all Plaintiffs in this case, other than Marlyn Sigmon, Garnett Cottrill and Janet Packard and Leroy Packard signed the Settlement Agreement in August 2015. (ECF 50).

44.    The Settlement Agreement provided that it was a confidential agreement and the Plaintiffs in this litigation were not permitted to disclose the terms of the agreement because Antero claims that breach would cause Antero irreparable harm.

45.    The parties in the Partition litigation agreed that they would execute leases and lease modifications, as set forth in paragraph 11 of the Settlement Agreement. Exhibit A of the settlement agreement identifies the leased properties and lessors who agreed to the Settlement Agreement. Exhibit C, is a form lease modification providing for pooling. Exhibit D is a form lease. The Market Enhancement Clause is an exhibit to and made a part of the Exhibit D form lease.  The parties who signed the Settlement Agreement are Angela Nicholson, Kevin McCall, Brian McCall, Kimberly Smith, Cheryl Morris. Tracy Bridge, Gerald Corder, Randall Corder and Lorena Krafft. The Defendant made the Settlement Agreement and its exhibits, an exhibit and part of their answer and defenses to this case.

46.    The "Market Enhancement" clause is an exhibit to the leases which are attached as Exhibits to this Complaint.

47.    The Settlement Agreement and its Market Enhancement Clause do not permit the taking of deductions from Plaintiffs' gas or NGL's.

48.    The Plaintiffs have complied with the terms of the Settlement Agreement.

49.    Antero did not and has not paid Plaintiffs in accordance to the terms of the leases and did not pay in accordance with the terms of the Settlement Agreement set out in Paragraph 14 above; and it did not pay in accordance with the Market Enhancement Clause, in that Defendant took deductions from Plaintiffs' NGL's and Antero, thereby breached the terms and conditions of

its leases, Settlement Agreement and Market Enhancement Clauses.

50.     On April 6, 2018, Antero filed a Motion to Dismiss Plaintiffs' complaint in the subject case based upon the terms of the Settlement Agreement wherein, Antero asserted that the Settlement Agreement released it from any liability in this case.

51.     The Court, Honorable Irene M. Keeley, ruled that the claims for damages were released by those lessors who signed the Settlement Agreement up to the time of the release.

52.     Antero owns and operates various companies and businesses (subsidiaries) which provide for production, gathering systems for transporting of natural gas from gas wells owned and operated by defendants on leases in West Virginia to the point of sale, including Antero Midstream Partners LP (hereinafter "Midstream,") and Antero Resources Pipeline, LLC (hereinafter "Pipeline") which Antero is the general partner and merged with Pipeline.

53.     Midstream is a limited partnership which does business in West Virginia.

54.     Pipeline is a partnership company which does business in West Virginia and on or about 2013 merged into Antero.

55.     At all times complained of herein, Antero was a Delaware corporation with its principal place of business in Denver, Colorado and Antero managed Pipeline and Midstream.

56.     Midstream was formed by Antero to create a seamless and highly effective system of gathering pipelines and compressor stations in the Marcellus and Utica Shales in the United States, including West Virginia.  The system is comprised of gathering pipelines and compressor stations processing and fractation plants and water handling and treatment infrastructures.

57.     Pipeline was created by Antero to provide pipeline services from natural gas wells in the United States and West Virginia, including to transport natural gas from natural gas wells in West Virginia to the point of sale on interstate pipelines, as well as for other purposes, including

to transport natural gas liquids to processing plants like MarkWest.  Pipeline merged into Antero on or about 2013 and Antero is responsible for Pipeline's acts and conduct.

58.     Antero is the general partner of the respective affiliates, including Midstream, Pipeline, Antero Resources, and Investment LLC (hereinafter "Investment,") which owns or owned Antero, the general partner.  Defendants have conflicts of interests and Antero and Investment may favor their own interests over Midstream and Pipeline and their other common unitholders.  Antero Investment owns and controls their general partner and appoints all of the officers and directors of their general partner.  A majority of the officers and directors of their general partner are officers or directors of Investment and Midstream.  Similarly, a majority of the officers and directors of their general partner are also officers of directors of Antero.  Although their general partner has a duty to manage them in a manner that is beneficial to them and their unitholders, the directors and officers of their general partners have a fiduciary duty to manage their general partner in a manner that is beneficial to its owner, Investment.  Further, their general partner's directors and officers who are also directors and officers of Antero claim to have a fiduciary duty to manage subsidiaries in a manner that is beneficial to Antero.  Conflicts of interest will arise between Antero, Investment, Midstream and Pipeline and their general partner.  In resolving these conflicts of interest, the general partner, Antero, may favor its own interests and the interests of Investment or Antero over the other unitholders.  Investments allegedly dissolved in October 2017 but remains liable for its acts and conduct.

59.     Antero, by and through their predecessors, subsidiaries and/or partners, leased properties and acquired the leases of properties in West Virginia and prior to and during the times complained of herein said corporations acquired the leases and rights as lessee of plaintiffs' mineral interests in oil and gas on the property as described above.

60.     Antero and Investment owned, owns, operates and controls its subsidiaries, including Midstream and Pipeline.  Its business segments and subsidiaries follow Antero's and Investment's directions and its subsidiary officers and employees cannot act independently but must coordinate their activities to satisfy Antero.

61.     Antero and Investment, at all times complained of herein, is so organized, managed and operated by and through its subsidiaries, including the defendant subsidiaries, as well as the Midstream and Pipeline companies and so controls its subsidiaries and partnerships that defendants are mere instrumentalities and agents, divisions, departments, groups and segments of Antero and each other.

62.     At all times complained of herein, Antero and Investment were acting for and on their own behalf and by and through their agents, servants and employees and also by and through its agents, Midstream and Pipeline.

63.     At all times complained of herein, Antero subsidiaries, Midstream and Pipeline were acting for and on behalf of Antero and on behalf of themselves, and Antero was the alter ego of same, and Antero is responsible for the acts and conduct of subsidiaries and the partnerships which is complained of in this complaint including, but not limited to, Midstream and Pipeline, the same as if Antero did the acts complained of.

64.     At all times complained of herein, each of defendants undertook to join together and as required to do by Investment and Antero and individually for the purpose of producing, transporting, marketing and selling oil and natural gas and to that end, they combined their property, money, employees, effects, skill and knowledge in order to do all things directly and indirectly by and through each of defendants and their agents, servants and employees.

65.     At all times complained of herein, Antero and all its subsidiaries and the

29

partnerships were engaged in a joint venture with its subsidiaries, including Investment, Midstream, Pipeline and Antero for the venture to lease, explore for, develop, produce, market, transport and hedge and to sell oil and gas from West Virginia properties, including plaintiffs' properties.

66.     The aforesaid joint venture required the defendants and each of them to participate in the acts and conduct of the plan and scheme to not pay plaintiffs for all of the royalty which they were entitled to and to keep the plaintiffs' royalty or parts thereof for themselves.

67.     Upon information and belief, during the times complained of herein:

a.      Investment owned Antero and Antero owned Midstream and Pipeline and/or was the general partner of same and Investment controlled Antero as if Antero was a division or department of Investment and Antero and Investment owned, operated and controlled Midstream and Pipeline as if they were departments of Investment and Antero;

b.      Defendants had common and/or overlapping officers and directors with each other;

c.      Investment financed and/or controlled the finances of Antero, including its loans;

d.      Investment, acting by and through its departments' other subsidiaries, which it owns, operates and controls, including Antero, arranges for payment of or security for Antero's and Midstream's indebtedness, salaries, expenses and losses through shared revenues of all of its subsidiaries;

e.      Except for sale of oil and gas and its by-products, Midstream and Pipeline did or does business primarily with Antero and its other subsidiaries;

f.      Antero's subsidiaries' assets are under the control of Antero and/or Investment;

g.      Upon information and belief, the officers and/or directors of Investment and Antero take direction from Investment and Antero for the interest of Investment and Antero;

h.      Investment's assets consist primarily of the assets of its subsidiaries; and

i.      Investment and Antero finances its subsidiaries and guarantees repayment of its subsidiaries' debt.

68.     At all times complained of herein, Antero was the lessee of oil and gas leases and are liable for performing the duties and responsibilities of West Virginia lessors for leases throughout West Virginia, including the plaintiffs' interests above, and each defendant was and is obligated by their duties under said leases as agent, servant, employee, joint venture and/or alter ego to, among other duties, to pay plaintiffs the amounts required pursuant to the laws of the State of West Virginia under the terms and conditions of said lease.

69.     All defendants, therefore, are liable to plaintiffs for the damages are set forth below and for the acts and conduct of each and all of defendants in participating in the aforesaid scheme.

70.     Antero Investment, hereinafter "Investment," has, pursuant to its own authority and the authority over Antero and Midstream and Pipeline, owns Antero and is the alter ego of Antero, Midstream and Pipeline.

71.     Defendants and each of them receives benefits by sharing in the moneys recovered from taking deductions from plaintiffs and thereby increasing their share of the sales price, proceeds and/or market value of the oil, natural gas and/or the liquid hydrocarbons contained in the natural gas.

72.     At all times complained of herein, Investment was acting for and on its own behalf and on behalf of Antero and the subsidiaries, Midstream and Pipeline, and Antero were acting for and on behalf of themselves and for and on behalf of Investment.

73.     Contrary to their contractual, legal, statutory and common law duties and responsibilities, Investment and Antero and/or defendants' subsidiaries, Midstream and Pipeline, and/or defendants' other subsidiaries have and continue to take deductions, reduce plaintiffs' royalty payments, overcharge plaintiffs for the deductions that they do charge plaintiffs, and otherwise reduce and not pay for plaintiffs' royalty on volume and/or price and/or by taking the liquid hydrocarbons which are part of the natural gas extracted from the said gas and subtracting unauthorized deductions therefrom.

74.     Upon information and belief, defendants, directly and/or indirectly, sold plaintiffs' natural gas liquids for money without compensating plaintiffs for same and/or without paying plaintiffs for all of said liquids, which was part of the gas extracted and deducted moneys from said gas without authority to do so.

75.     Antero and the defendants' subsidiaries and other subsidiaries undertook a design and plan to continue to avoid payment to plaintiff lessors, of all the royalty due them by charging off to lessors' certain expenses and monies which the law of West Virginia does not permit unless the lease specifically provides for the same and then only when the amounts deducted are reasonable and actually incurred.

76.     Antero and the other defendants, contrary to their duty and responsibility, intentionally and in violation of West Virginia state law, directly or indirectly paid or allotted to Antero and Midstream, Pipeline and Investment and other subsidiaries, moneys for gathering and other charges including taxes and deductions, which were not permitted to be taken from plaintiffs'

royalty, all for the purpose of not paying plaintiffs the true and exact royalty that the law of West Virginia requires that they are entitled to and for the express purpose of increasing the defendants' own share of royalty.

77.    Defendants have not paid to plaintiffs the royalties for the value of natural gas including all parts therein, which were extracted from their property, as required pursuant to said leases, and defendants continue to not pay plaintiffs the royalty to which they are entitled.

78.    While not having the right to charge plaintiffs with the described above costs and unilaterally deducting same from their payments, defendants charged plaintiffs with costs and charges which were unreasonably excessive and not actual.

79.    Defendants had and have an affirmative duty to pay to plaintiffs the true and correct royalty due them, either by virtue of the lease agreement, by virtue of W. Va. Code Ann. § 22-6-8, and/or by virtue of the contractual duty of good faith and fair dealing in all contracts and the implied covenants included in the plaintiffs' oil and gas contracts, and by virtue of the fiduciary duty and responsibility of the lessee in any oil and gas lease who assumes the duty of handling the "sales and accounting" functions of the parties.

80.    As part of the legal responsibilities of Antero and the other defendants, it agreed to and/or had the duty to account for all of the sales of gas extracted and/or produced from said wells and to accurately account for all gas, volumes and sales of same from said wells and to act as a fiduciary for plaintiffs' moneys owed to plaintiffs as a result of royalties due to plaintiffs.

81.    Defendants violated said fiduciary responsibility.

82.    Defendants intentionally violated their contractual duty to plaintiffs.

83.    Defendants concealed, suppressed, and omitted material facts with intent that plaintiffs would rely upon same in connection with the bases for charging plaintiffs for specific

services for marketing, transporting and processing and for other service charges associated with the calculation of plaintiffs' royalties and deductions therefrom.

84.    Defendants, acting in concert as agents, servants and employees, each of the other, and as alter egos and joint venturers, provided plaintiffs with statements alleging disclosure of specifics as to the amount of gas extracted from their land, the amount that was received by Antero for the gas and the accurate deductions which were truly actual and reasonable and allowable to be taken from plaintiffs' royalty.

85.    Plaintiffs relied upon defendants to truly, accurately, and properly carry out its contractual and fiduciary duties and responsibilities and to account honestly to plaintiffs for payments due to plaintiffs and for any material deductions or reductions, volume or otherwise, in royalty.

86.    As a result of the aforesaid conduct of defendants, plaintiffs were damaged in that they were deprived of and are owed royalty payments from defendants and are owed interest from said deficiencies in said royalty payments.

87.    The acts and conduct of defendants were willful and wanton and in utter disregard of plaintiffs' rights and West Virginia law.

88.    At all times complained of herein, defendants were acting for and on their own behalf and as agents, ostensible agents, servants and/or employees of others in the course and scope of their employment, agency and/or ostensible agency.

89.    At all times complained of herein, defendants were acting as conspirators with unnamed persons, firms, and corporations in common goals, schemes, and designs for the goals and purposes as herein alleged and complained of.

90.    As a proximate result of defendants' and each of their acts, omissions,

misrepresentations and conduct complained of herein, plaintiffs were damaged as follows:

    a.     Defendants did not pay plaintiffs for all the gas extracted from the plaintiffs' wells;

    b.     Defendants wrongfully reduced plaintiffs' royalty by giving itself credits for costs and expenses when defendants were not authorized to;

    c.     Defendants did not pay for liquid hydrocarbons which was part of the gas which was extracted;

    d.     The deductions defendants did take from plaintiffs were not reasonable and actual as required by West Virginia law;

    e.     Defendants' wrongfully deducted costs and volume from plaintiffs' royalty;

    f.     Plaintiffs lost the use of their money;

    g.     Plaintiffs have been annoyed, inconvenienced and incurred unnecessary costs, expenses and taxation as a consequence of defendants' acts and conduct;

    h.     Plaintiffs are entitled to an accounting for the oil and gas and products sold therefrom;

    i.     Plaintiffs were not paid for all money sold through storage and hedging contracts; and

    j.     Defendants' acts and conduct were intentional and amounted to a violation of plaintiffs' contractual and common law rights to their royalty, were reckless, willful and wanton and with total disregard for the plaintiffs' rights and plaintiffs' are entitled to punitive damages against the defendants.

## COUNT I

Plaintiffs incorporate all allegations above, the same as if fully restated and re-alleged herein.

91.    Defendants violated and intentionally and tortuously breached their contractual duties and responsibilities to plaintiffs, and each of them, for each and every lease identified above, including the duty of good faith and fair dealing, and plaintiffs were damaged as set out above.

92.    Plaintiffs are entitled to recover compensatory and punitive damages be provided, an accounting for all the rents and royalties and other damages as described above which they have

been deprived by defendants' breach of contract and as set forth above.

## COUNT II

Plaintiffs incorporate all allegations above, the same as if fully restated and re-alleged herein.

93.    Defendants violated their fiduciary duties and responsibilities to plaintiffs as aforesaid, and plaintiffs were damaged as described above.

94.    Plaintiffs are entitled to be paid their rents and royalties and for all other damages as described above.

## COUNT III

Plaintiffs incorporate all allegations above, the same as if fully restated and re-alleged herein.

95.    Defendants misrepresented to plaintiffs that defendants were entitled to take deductions from plaintiffs' royalty, that they had the right to take the amount of deductions they took, reduced plaintiffs' royalty payments, misrepresented the amount of volume that was taken from plaintiffs' property, overcharged plaintiffs for services, and/or wrongfully claimed plaintiffs' royalty due was less than the amount actually due, and failed to report to plaintiffs that they were extracting and selling liquids from plaintiffs' natural gas, thereby denying plaintiffs the rents and royalties to which they were due.

96.    Plaintiffs relied and are required to rely on the defendants for the honest accounting and lawful payments to plaintiffs of royalty owed to them on an ongoing basis.

97.    Plaintiffs were damaged as a result of defendants' knowing and unlawful acts and

omissions in continuing to take deductions, both costs and volume, from plaintiffs' royalties, failing to pay plaintiffs the fair value of money owed to them for the gas at the point of sale, not reporting or paying plaintiffs for said liquids and by defendants taking their money and using it for themselves.

98.     As a proximate result of the wrongful, knowing and fraudulent acts and omissions of defendants, plaintiffs were damaged as aforesaid and plaintiffs are entitled to compensatory and punitive damages and for an accounting as set forth below.

## COUNT IV

Plaintiffs incorporate all allegations above and incorporate this allegation in each Count above, the same as if fully restated and re-alleged herein.

99.     The actions of defendants as set forth herein above were done intentionally and with a reckless disregard for the rights of the plaintiffs, entitling the plaintiffs to punitive damages for all causes of action alleged herein.  In particular, defendants entered into a plan, scheme, design and conspiracy to take portions of plaintiffs' royalties, to which defendants were not entitled, and use them for their own business purposes, including the sale of plaintiffs' gas to a subsidiary at less than the value at the point of sale, deducting from plaintiffs' royalty amounts paid to defendants' subsidiaries for transporting and processing the gas to the "point of sale," and for failure to pay plaintiffs for the volume and for portions of their gas which were sold separately for liquids without compensating plaintiffs.

## PRAYER FOR ALL COUNTS

WHEREFORE, plaintiffs demand that they be awarded damages and equitable and affirmative relief against defendants, jointly and/or severally, as follows:

a.      Compensatory damages and punitive damages in an amount to be determined by the Court and jury;

c.      The costs and disbursements of this action, including attorney fees;

d.      Prejudgment and post-judgment interest;

e.      Equitable and injunctive relief, including requiring an accounting and order requiring plaintiffs to be properly paid; and

f.      For such other further and general relief, compensatory, punitive, equitable, or injunctive, as the Court deems just and proper.

PLAINTIFFS DEMAND A TRIAL BY JURY.


GERALD W. CORDER; MARLYN C. SIGMON; GARNET C. COTTRILL; RANDALL M. CORDER; JANET C. PACKARD AND LEROY PACKARD; LORENA KRAFFT; CHERYL MORRIS; TRACY BRIDGE; ANGELA NICHOLSON; KEVIN MCCALL; BRIAN MCCALL,

By Counsel

/s/ Marvin W. Masters
Marvin W. Masters
West Virginia State Bar No. 2359
April D. Ferrebee
West Virginia State Bar No. 8034
The Masters Law Firm lc
181 Summers Street
Charleston, West Virginia  25301
Counsel for Plaintiffs
F:\5\1025\p027.docx