IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

GERALD M. CORDER, *et vir*,

        Plaintiff,

v.                                                                                        Civil Action No. 1:18-cv-30
                                                 Honorable Irene M. Keeley
                                                 Lead Case

ANTERO RESOURCES CORPORATION,

        Defendant.

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

        Plaintiffs, by counsel, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, respectfully move this Court to enter an Order granting Summary Judgment against Defendant Antero Resources Corporation and finding that the plain language of the previous Settlement Agreement entered into between certain Plaintiffs and Defendant and the "Market Enhancement (Gross Proceeds) Clause" attached to the Settlement Agreement as part of Exhibit D to the Agreement, with the heading "Exhibit A," prohibit Defendants from taking costs and deductions from Plaintiffs' natural gas liquids (NGL's) royalties.  There are no genuine issues of material fact relevant to this issue and Plaintiffs are entitled to summary judgment as a matter of law.

## I. FACTS

        The plain language of the previous Settlement Agreement (**Exhibit 1**) entered into between certain Plaintiffs and Defendant and the "Market Enhancement (Gross Proceeds) Clause" (**Exhibit 2**) attached to the Settlement Agreement as part of Exhibit D to the Agreement, with the heading "Exhibit A," prohibit Defendants from taking costs and deductions from Plaintiffs' natural gas

**Exhibit D**

liquids (NGL's) royalties.   The Settlement Agreement and the Market Enhancement (Gross

Proceeds) Clause provide respectively as follows:

> Antero acknowledges that per the terms of said June 29, 1979 leases identified in the preceding two paragraphs, production royalties pursuant to said leases **shall be deemed gross royalties and shall be calculated without regard to any postproduction or market enhancement costs** claimed or incurred by Antero.

**(Emphasis Added) Exhibit 1**, ¶ 14.

> **Market Enhancement (Gross Proceeds) Clause**
> It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil, gas, and other proceeds accruing to the Lessor under this lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and **other products** produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or **other products** to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements.  However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.

**(Emphasis Added) Exhibit 2.**

## II. STANDARD OF REVIEW

Summary judgment is   appropriate   "if   the   pleadings,   depositions,   answers   to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed.R.Civ.P. 56(c). When ruling on a motion for summary judgment, the Court reviews

all the evidence "in the light most favorable" to the nonmoving party. *Providence Square Assocs.,*

*L.L.C. v. G.D.F., Inc.,* 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the

evidence or determining its truth and limit its inquiry solely to a determination of whether genuine

issues of triable fact exist. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion

and of establishing the nonexistence of genuine issues of fact. *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986). Once the moving party has made the necessary showing, the non-moving party

"must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S.

at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of

evidence" favoring the non-moving party will not prevent the entry of summary judgment; the

evidence must be such that a rational trier of fact could reasonably find for the nonmoving

party. *Id.* at 248–52.

## II. APPLICABLE LAW

"In general, West Virginia contract law principles apply equally to the interpretation of

leases. *See Energy Dev. Corp. v. Moss*, 214 W. Va. 577, 591 S.E.2d 135, 143 (2003)." *K&D*

*Holdings, LLC v. Equitrans, L.P.*, 812 F.3d 333, 339 (4th Cir. 2015).[1]

> When deciding a matter involving a contract between parties, this Court first must
> determine whether the language employed by the contract is ambiguous. " 'The question
> as to whether a contract is ambiguous is a question of law to be determined by the court.'
> Syllabus point 1, in part, *Berkeley County Public Service District v. Vitro Corp. of America,*
> 152 W.Va. 252, 162 S.E.2d 189 (1968)." Syl. pt. 4, *Dan's Carworld, LLC v. Serian,* 223
> W.Va. 478, 677 S.E.2d 914 (2009). "The mere fact that parties do not agree to the
> construction of a contract does not render it ambiguous." Syl. pt. 1, in part, *Berkeley County
> Pub. Serv. Dist.,* 152 W.Va. 252, 162 S.E.2d 189. Rather, "[c]ontract language is
> considered ambiguous where an agreement's terms are inconsistent on their face or where
> the phraseology can support reasonable differences of opinion as to the meaning of words
> employed and obligations undertaken." Syl. pt. 6, *State ex rel. Frazier & Oxley, L.C. v.
> Cummings,* 212 W.Va. 275, 569 S.E.2d 796 (2002). *Accord* Syl. pt. 4, *Estate of Tawney v.
> Columbia Natural Res., L.L.C.,* 219 W.Va. 266, 633 S.E.2d 22 (2006) ("The term
> 'ambiguity' is defined as language reasonably susceptible of two different meanings or
> language of such doubtful meaning that reasonable minds might be uncertain or disagree
> as to its meaning.").
>
> If the contractual language is ambiguous, it must be construed before it can be applied. *See
> Estate of Tawney,* 219 W.Va. at 272, 633 S.E.2d at 28 ("[W]hen a contract is ambiguous,
> it is subject to construction."). However,
>
> " '[w]here the terms of a contract are clear and unambiguous, they must be applied and not
> construed.' Syl. Pt. 2, *Bethlehem Mines Corp. v. Haden,* 153 W.Va. 721, 172 S.E.2d 126

---

[1] Pursuant to *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the applicable law in a
diversity case such as this is determined by the substantive law of the state in which a district court sits.

(1969)." Syllabus point 2, *Orteza v. Monongalia County General Hospital,* 173 W.Va. 461, 318 S.E.2d 40 (1984).

Syl. pt. 3, *Waddy v. Riggleman,* 216 W.Va. 250, 606 S.E.2d 222 (2004). In other words,

" '[i]t is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them.' Syllabus Point 3, *Cotiga Development Co. v. United Fuel Gas Co.,* 147 W.Va. 484, 128 S.E.2d 626 (1962)." Syllabus point 1, *Hatfield v. Health Management Associates of West Virginia[, Inc.],* 223 W.Va. 259, 672 S.E.2d 395 (2008) (per curiam).

Syl. pt. 5, *Dan's Carworld, LLC v. Serian,* 223 W.Va. 478, 677 S.E.2d 914. Thus,

" '[a] valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent.' [Syllabus point 1,] *Cotiga Development Co. v. United Fuel Gas Co.,* 147 W.Va. 484, 128 S.E.2d 626 (1962)[.]" Syllabus point 1, *Bennett v. Dove,* 166 W.Va. 772, 277 S.E.2d 617 (1981).

Syl. pt. 6, *Dan's Carworld,* 223 W.Va. 478, 677 S.E.2d 914.

*Benson v. AJR, Inc.,* 226 W. Va. 165, 175–76, 698 S.E.2d 638, 648–49 (2010).

Further,

"As with other contracts, the language of a lease agreement must be considered and construed as a whole, giving effect, if possible, to all parts of the instrument. Accordingly, specific words or clauses of an agreement are not to be treated as meaningless, or to be discarded, if any reasonable meaning can be given them consistent with the whole contract." Syllabus Point 3, *Moore v. Johnson Serv. Co.,* 158 W.Va. 808, 219 S.E.2d 315 (1975). *See also,* Syllabus Point 3, *United Fuel Gas Co. v. Cabot,* 96 W.Va. 387, 122 S.E. 922 (1924) ("[A]ll elements of description and all parts of the lease must be considered and weighed to arrive at the intention of the instrument."); Syllabus Point 2, *Marmet v. Watson,* 106 W.Va. 429, 145 S.E. 744 (1928) ("In a coal mining lease, all of its provisions must be considered in arriving at the intention of the parties ... and the situation of the parties, the surrounding circumstances, and what the parties have done under the contract may be also considered in determining the intention.").

*Chesapeake Appalachia, L.L.C. v. Hickman*, 236 W. Va. 421, 436, 781 S.E.2d 198, 213 (2015).

If a court finds that the language in a contract is ambiguous, the general rule under West Virginia law requires that oil and gas leases be liberally construed in favor of the lessor, and strictly against the lessee. Syl. Pt. 1, *Martin v. Consolidated Coal & Oil Corp.,* 101 W. Va. 721, 133 S.E.

626 (1926); Syl. Pt. 7, *Estate of Tawney v. Columbia Nat. Res., LLC*, 219 W.Va. 266, 633 S.E.2d

22 (2006).  Further, uncertainties in an intricate and involved contract should be resolved against

the party who prepared it. Syl. Pt. 1, *Charlton v. Chevrolet Motor Co.,* 115 W. Va. 25, 174 S.E.

570 (1934); Syl. Pt. 8, *Estate of Tawney v. Columbia Nat. Res., LLC*, 219 W.Va. 266, 633 S.E.2d

22 (2006).

The provisions at issue here are unambiguous, and, accordingly, Plaintiffs are entitled to

summary judgment.  The provisions at issue here provide:

> Antero acknowledges that per the terms of said June 29, 1979 leases identified in the preceding two paragraphs, production royalties pursuant to said leases shall be deemed gross royalties and shall be calculated without regard to any postproduction or market enhancement costs claimed or incurred by Antero.

**Exhibit 1**, ¶ 14.

> **Market Enhancement (Gross Proceeds) Clause**
> It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil, gas, and other proceeds accruing to the Lessor under this lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to **transform the product into marketable form**; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements.  However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.

**(Emphasis Added) Exhibit 2.**

Plaintiffs contend that the relevant language of the above provisions are not ambiguous.

However, in the event the Court would determine that they are ambiguous, as to the issues raised,

plaintiffs contend that the Court should grant Summary Judgement on that basis as well.

Both of these clauses plainly prohibit Defendant from taking costs or deductions of any

kind from Plaintiffs' NGL's.  First, Paragraph 14 of the Settlement Agreement states, with respect

to the June 29, 1979 lease, that the royalties shall be deemed to be gross royalties and shall be

calculated without regard to any post production or market enhancement costs.  Second, the gross

proceeds provision, in the market enhancement clause, that there shall be no costs, direct of indirect

for oil, gas and "other products" produced, includes NGL's.  Also, the "Market Enhancement

clause" language or provision, which may allow deductions, only applies after the products,

including other products (NGL's) including butane, ethane etc., have already been processed and

sold. Lessors are entitled to be paid the gross selling price of the gas and each of the NGL's

produced from mineral estates. The first sentence of the "Market Enhancement Clause" says that

there can be no deductions for the "other products" (NGL's), including deductions for separating,

processing, etc., of the NGL's to put them into a "marketable form".  The enhancement clause

does not apply here because the "other product" includes ethane, butane, etc.

Plaintiffs' position is further supported by West Virginia statutory law.  Under various

West Virginia statutes, the definition of natural gas includes natural gas liquids:

> "Royalty owner" means any owner in place of oil or natural gas and their constituents,
> owners of oil or natural gas leasing rights, and owners vested with any leasehold estate
> less than 25 percent of the total, to the extent that the owners are not an operator
> as defined in this section. A royalty owner does not include a person whose interest is
> limited to: (A) A working interest in a wellbore only; (B) overriding royalties; (C)
> nonparticipating royalty interests; (D) nonexecutive mineral interests; or (E) net profit
> interests.

W. Va. Code § 37B-1-3.

> (p) "Natural gas" means natural gas, natural gas liquids, liquefied natural gas, coalbed
> methane, synthetic gas usable for fuel or mixtures of natural gas and synthetic gas.

W. Va. Code § 22-22-2.

> (8) "Gas" means all natural gas and all other fluid hydrocarbons not defined as oil in
> subdivision (7) of this section.

W. Va. Code § 22C-9-2.

>(12) "Gas" means all natural gas and all other fluid hydrocarbons not defined as oil in subdivision (15) of this section.

W. Va. Code § 22C-8-2.

>(j) "Gas" means all natural gas and all other fluid hydrocarbons not defined as oil in this section.

W. Va. Code § 22-6-1.

>(16) "Natural gas" means a gaseous fossil energy source that formed deep beneath the earth's surface that is a combustible mixture of methane and other hydrocarbons.

>(17) "Natural gas liquids" includes the following separated from raw natural gas: butane, ethane, isobutane, pentane, propane, and similar liquid hydrocarbons and byproducts separated from natural gas.

W. Va. Code § 11-13GG-3.[2]

---

[2] West Virginia is not alone in defining natural gas to include natural gas liquids and constituents. *See, i.e.,* Ark. Code § 23-13-105 ("Gas" means all natural gas, including casing-head gas and all other hydrocarbons not defined as oil in this section.); Idaho Code § 47-310 ("Gas" means natural gas, which is a mixture of hydrocarbons and varying quantities of non-hydrocarbons that exist either in the gaseous phase or in solution with crude oil in natural underground reservoirs.); 225 Ill. Comp. Stat. 725/1 ("Gas" means all natural gas, including casinghead gas, and all other natural hydrocarbons not defined above as oil.); Kan. Stat. § 84-9-339a ("Oil and gas production" means any oil, natural gas, condensate or either, natural gas liquids, other gaseous, liquid or dissolved hydrocarbons, sulfur, or helium, or other substance produced as a by-product or adjunct to their production, or any combination of these, which is severed, extracted or produced from the ground within the jurisdiction of the state of Kansas. Any such substance, including recoverable or recovered natural gas liquids, which is transported to or in a natural gas pipeline or natural gas gathering system, or otherwise transported or sold for use as natural gas, or is transported or sold for the extraction of helium or natural gas liquids is "gas production." Any such substance which is transported or sold to persons and for purposes not included in the foregoing natural gas definition is oil production.); Ky. Rev. Stat. § 353.402(3) ("Gas" is "natural gas or any substitute for natural gas, including synthetic natural gas, liquefied natural gas, coal gas, or other substance usable in lieu of natural gas."); Ky. Rev. Stat. § 353.750(6) ("Gas" is "natural gas, coalbed or other methane gas, carbon dioxide gas, crude oil or petroleum products, or any elements of natural gas or other gas."); Md. Code, Envir. § 14-102 ("Gas" means all natural gas and other fluid hydrocarbons, not defined as oil, which are produced from a natural reservoir.); Miss. Code § 53-1-3 ("Gas" shall mean all natural gas, whether hydrocarbon or nonhydrocarbon or any combination or mixture thereof, including hydrocarbons, hydrogen sulphide, helium, carbon dioxide, nitrogen, hydrogen, casinghead gas, occluded natural gas from coal seams, compressed air and all other hydrocarbons not defined as oil in subsection (c) above.); Mont. Code § 15-36-303 ("Natural gas" or "gas" means natural gas and other fluid hydrocarbons, other than oil, produced at the wellhead.); Mont. Code § 82-1-111 ("Gas" means all natural gases and all other fluid hydrocarbons, including methane gas or any other natural gas found in any coal formation, as produced at the wellhead and not defined as oil in subsection (3).); N.C. Gen. Stat. § 113-389 ("Gas" shall mean all natural gas, including casing-head gas, and all other hydrocarbons not defined as oil in subdivision (7).); N.D. Cent. Code § 38-08-02 ("Gas" means and includes all natural gas and all other fluid hydrocarbons not hereinbelow defined as oil.); N.D. Cent. Code § 38-15-02 ("Gas" means all natural gas and other fluid hydrocarbons not hereinbelow defined as oil.); Tenn. Code § 60-1-101 ("Gas" means all natural gas and all other fluid hydrocarbons not defined as oil, including condensate because it originally was in a gaseous phase in the reservoir.); Wyo. Stat. § 39-14-201 ("Natural gas" means all gases, both hydrocarbon and nonhydrocarbon, that occur naturally beneath the earth's crust and are produced from an oil or gas well. For the purposes of taxation, the term natural gas includes products separated for sale or distribution during processing of the natural gas stream including, but not limited to plant condensate, natural gas liquids and sulfur.). *See also, i.e.,*

Both of the provisions here require Defendant to pay gross proceeds on NGL's and that means the gross selling price of the NGL's, butane, ethane, etc.  The Settlement Agreement requires gross royalties without regard to any post production or market enhancement costs.  The Market Enhancement (Gross Proceeds) Clause prohibits deductions from the settling price of other products (NGL's). It prohibits any costs or deductions to transform the NGL's into a marketable form.  Only if the lessee enhances the value of ethane, butane, etc., may deductions be taken.

Also, Mr. Reineke explained the Settlement Agreement and Enhancement Clause in his report (**Exhibit 3**, p. 8) as follows:

"The Settlement Agreement that is referred to by Antero in the Schopp deposition is dated August 2015. The agreement provided for release of Antero and others up to the date of the agreement. Also, the agreement provided for alteration of earlier leases and added a market enhancement clause to the leases. The market enhancement clause says that notwithstanding any language:

"All oil, gas, or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction, directly or indirectly, for the costs of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas, and other products produced hereunder to transform he product into marketable for; however, any such costs which result in enhancing the value of the marketable gas, oil or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual costs of such enhancements."

The clause plainly provides for no costs or deductions of any kind from plaintiffs' gas or the NGL's which are part of the products included in the gas. The statement that there be no costs, direct or indirect from oil, gas and "other products" produced certainly includes NGL's, which is an "other product". Also, the "enhancement" language also includes "other products", this includes the NGL's. The first sentence says that there can be no deductions for the other products (NGL's), including deductions for separating, processing, etc. of the NGL's to put them into a marketable form. The enhancement clause could not come into play because the "other product" would include ethane, butane, etc. In addition, paragraph 14 of the agreement states that with respect to the June 29, 1979, lease provides that the royalties shall be deemed to be gross royalties and shall be calculated without regard to any

---

*Occidental Permian v. French,* 2012 WL 5351131 (Tex.App. –Eastland) (2012); *Exxon Mobil Corp. v. Wyoming,* 219 P.3d 128, 145 (2009); *Enervest Operating, LLC v. Sebastian Mining, LLC,* 676 F.3d 1144, 1147 (2012) (collectively adopting broad definitions of natural gas).

post production or market enhancement costs. My opinion is that the defendant was not entitled to take deductions from the lessors' gas or liquids, including from those where they directed PRC2 or TRN-3, as I said in my previous report."

Considering these provisions and the West Virginia case law above, the Plaintiffs are entitled to compensation of the leases as identified by the Settlement Agreement (**Exhibit 1**) and which have been identified by the parties and as subject to the "Market Enhancement Clause" (**Exhibit 2**) for royalty for gas and the liquids (NGL's) for the amount the NGL's are sold for without any deductions including after they are processed into their liquid form.

## IV. CONCLUSION

Plaintiffs therefore respectfully move the Court to enter an order granting Plaintiffs' Motion for Summary Judgment and finding that the plain language of the previous Settlement Agreement (**Exhibit 1**) entered into between certain Plaintiffs and Defendant and also, the "Market Enhancement (Gross Proceeds) Clause" (**Exhibit 2**) attached to the Settlement Agreement as part of Exhibit D to the Agreement, with the heading "Exhibit A," prohibit Defendants from taking costs and deductions from Plaintiffs' royalties for the natural gas liquids (NGL's) for those leases which the documents identified as subject to the terms of the subject agreements and for such other further and general relief as the Court deems just and proper.

**GERALD W. CORDER, et al.,**

**By Counsel**

*/s/ Marvin W. Masters*
Marvin W. Masters (WV Bar No. 2359)
April D. Ferrebee (WV Bar No. 8034)
The Masters Law Firm lc
181 Summers Street
Charleston, West Virginia  25301
(304)342-3106
Counsel for Plaintiffs
F:\5\1025\b058.docx

9