CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS

KNOW ALL PERSONS BY THESE PRESENTS:

This Confidential Settlement Agreement and Release of All Claims ("Agreement") is made this _____ day of August 2015, by and between Antero Resources Corporation ("Antero") and Angela Nicholson, Kevin McCall, Brian McCall, Kimberly Smith, Cheryl Morris, Tracy Bridge, Gerald Corder, Randall Corder, and Lorena Krafft ("Certain Defendants")(collectively, "the Parties").

WHEREAS, Antero and others filed a civil action in the Circuit Court of Harrison County, West Virginia on July 15, 2013, seeking allotment or partition of the Unleased Defendants' interests in the Partition Minerals pursuant to West Virginia Code Section 37-4-3, said  civil action being styled as *Antero Resources Corporation, et al., v. Tracy Bridge, et al.,* Civil Action No. 13-C-305-3, and currently pending in Harrison County, West Virginia ("Present Litigation"); and,

WHEREAS, the Parties have engaged in four sessions of negotiations and mediation in an effort to settle the Present Litigation, said settlement discussions occurring on September 24, 2014, October 17, 2014, March 27, 2015, and July 7, 2015; and,

WHEREAS, following mediation on July 7, 2015, counsel for the Parties continued to engage in settlement discussions to resolve the Present Litigation and several additional disputes between Antero and the Certain Defendants; and

WHEREAS, the Certain Defendants also own fractional interests in numerous properties in Harrison and Doddridge Counties, West Virginia as identified in the "Master Property List for Harrison and Doddridge Counties" ("MPL") attached hereto as "Exhibit A"; and

WHEREAS, Antero desires leases and lease modifications from the Certain Defendants covering their interests in all the properties identified on the MPL; and,

WHEREAS, the parties hereto wish to resolve and settle matters at issue in the Present Litigation and other matters at issue regarding Certain Defendants interests in the tracts of realty identified in "Exhibit A" attached hereto.

NOW THEREFORE, in consideration of the foregoing recitals, and the promises and obligations set forth herein, the adequacy of which is acknowledged by

the parties, the Parties agree to settle and release all surface and subsurface claims and potential claims that the Certain Defendants have or may have against Antero relating in any way to the Present Litigation and those properties identified on the MPL on the following terms:

11.    The Certain Defendants agree to execute leases and lease modifications, and memoranda as necessary as detailed in "Exhibit A," the forms of which leases and lease modifications are attached hereto as "Exhibit C" and "Exhibit D," for all the properties identified on the MPL.

12.    Randall Corder, Angela Nicholson, Kevin McCall, Brian McCall, Kimberly Smith, Cheryl Morris, Lorena Krafft, and Tracy Bridge acknowledge that the modification of that oil and gas lease dated June 29, 1979 by James I. Corder and Pearl Corder and of record in the Harrison County Clerk's office at Deed Book 1080, page 677, executed by Gerald W. Corder and Louella M. Corder and dated April 25, 2012, which modification is recorded in the Office of the Clerk of the

County Commission of Harrison County, West Virginia in Deed Book 1489, Page 1035 is valid and will cover any interests they own or may ever own in the property covered by said lease modification.

13.    Gerald Corder, Angela Nicholson, Kevin McCall, Brian McCall, Kimberly Smith, Cheryl Morris, Lorena Krafft, and Tracy Bridge acknowledge that the modification of that oil and gas lease dated June 29, 1979 by James I. Corder and Pearl Corder and of record in the Harrison County Clerk's office at Deed Book 1082, page 565, executed by Randall Corder and dated June 7, 2012, which lease modification is of record in the Harrison County Clerk's office at Deed Book 1493, Page 153 is valid and will cover any interests they own or may ever own in the property covered by said lease modification.

14.    Antero acknowledges that per the terms of said June 29, 1979 leases identified in the preceding two paragraphs, production royalties payable pursuant to said leases shall be deemed gross royalties and shall be calculated without regard to any postproduction or market enhancement costs claimed or incurred by Antero.

15.    Gerald Corder, Randall Corder, Angela Nicholson, Kevin McCall, Brian McCall, Kimberly Smith, Cheryl Morris, Lorena Krafft, and Tracy Bridge acknowledge that the lease modification executed by Roger Corder and Debbie Corder, dated February 24, 2012, and recorded in the Office of the Clerk of the County Commission of Harrison County, West Virginia in Deed Book 1486, Page 476 is valid and will cover any interests they own or may ever own in the property covered by said lease modification.

16.    Gerald Corder and Randall Corder acknowledge that the lease modifications to be executed as part of this Agreement by Angela Nicholson, Kevin McCall, Brian McCall, Kimberly Smith, Cheryl Morris, Lorena Krafft, and Tracy Bridge will be valid as of the date of their execution and will cover any interests they own or may ever own in the 1.25 acre parcel identified by the Harrison County assessor as Union District, Tax Map 361, Parcel 11.1.

The parties hereto acknowledge, however, that this release shall not extend to actions or claims concerning the tracts identified in "Exhibit A" that arise as a result of conduct of Antero or any of the released parties occurring after the date of this agreement.

22.      The Parties agree that all aspects of this Agreement shall remain confidential unless disclosure is required by law or disclosure is made to financial

professionals who have a need to know the terms of this Agreement and have been advised of their obligation to comply with the terms of this Agreement.

23.    The Certain Defendants understand that a breach of this confidentiality obligation may cause Antero irreparable damage incapable of measurement by any known or safe rule and for which money damages alone would be an insufficient remedy. Therefore, the Certain Defendants agree that, in the event they, their attorneys, agents, servants, and others acting with their knowledge and expressly for or on their behalf breach or violate this confidentiality obligation, Antero may resort to and invoke any available remedy at law or in equity. Nothing contained in this Agreement shall limit, abridge, or modify the rights of Antero under any statutes, or common law, or otherwise limit the remedies available to Antero. Breach of this confidentiality obligation by any of the Certain Defendants will result in, not as a penalty, but as liquidated damages payable upon demand to Antero, a payment by the breaching Certain Defendant(s) of REDACTED per disclosure as consideration of this agreement.  This confidentiality obligation is a material term of the Agreement; however, any breach of this confidentiality obligation shall not constitute a breach of this Agreement, which confidentiality obligation the Parties intend to be, and shall be, severable from the other terms of this Agreement.

24.    The consideration exchanged and promises made for this Agreement shall constitute the full and final settlement between the Parties, in satisfaction of any and all claims that any party hereto has against the other party hereto relating

to the Present Litigation or surface and subsurface issues with respect to all the properties identified on the MPL.

27.     If any paragraph or clause hereof shall be held invalid or unenforceable in any jurisdiction, then the meaning of such paragraph or clause shall be construed so as to render it enforceable to the extent permissible. If no permissible interpretation would save such paragraph or clause, it shall be severed from these terms and conditions and the remainder shall remain in full force and effect.

28.     It is hereby agreed by the Parties that this Agreement shall be governed by the laws of the State of West Virginia, regardless of any conflicts of law provision requiring reference to the rules of, decision in, and/or laws of another state or sovereign nation.

29.     The Parties agree to cooperate and take all necessary actions to effectuate the terms of this Agreement.

Counsel for the Parties shall meet on or before September 8, 2015 to exchange all fully executed documents for the settlement proceeds checks, which will be (1) checks totalling REDACTED for the individual payments as set forth in Exhibit E, and (2) a check in the amount of REDACTED for attorney's fees payable to counsel for the Certain Defendants.

32.    This Agreement will be executed in duplicate original.


Gerald Corder           Randall Corder           Angela Nicholson


Kevin McCall            Brian McCall             Kimberly Smith


Cheryl Morris           Lorena Krafft            Tracy Bridge


Antero Resources Corporation
By: Brian A. Kuhn
Its: Vice President – Land

6969060

**MASTER PROPERTY LIST FOR HARRISON AND DODDRIDGE COUNTIES**

| Property Description | District TM/Parcels | Angela Nicholson | Kevin McCall | Brian McCall | Kimberly Smith | Cheryl Morris | Tracy Bridge | Gerald Corder | Randall Corder | Lorena Krafft |
|---|---|---|---|---|---|---|---|---|---|---|
| Allotment/Partition Tracts 32.45 ac | TM 361 P 3, p/o P 5 | Lease | Lease | Lease | Lease | Lease | Lease | Amend Lease | Amend Lease | Amend Lease |
| 61 ac Red Lick Doddridge County | TM 8 P 33, 34 | Lease | Lease | Lease | Lease | Lease | Lease | Lease | No Interest | Lease |
| 20 ac Childers Run, Greenbrier District, Doddridge County | TM 8, P 46 | Lease | Lease | Lease | Lease | Lease | Lease | Lease | Lease | Lease |
| 77 ac Tom's Fork, Greenbrier District, Doddridge County | TM 8 p/o P 14 | Lease | Lease | Lease | Lease | Lease | Lease | Lease | No Interest | Lease |
| 65 ac Stutler Fork, Union District, Harrison County | TM 382 P 13 | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. | Already Signed | No Interest | Already Signed |
| 370 ac Jacob Myers lease, Union District, Harrison County | TM 363 p/o P 43 | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. | No Interest | Lease Mod. |
| 105 ac Nicholson lease, Union District, Harrison County | TM 361 P 1, P 1.1 | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. |
| 59.107 Nicholson lease, Union District, Harrison County | TM 361 P 2 | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. |
| 50 ac JAL Day lease, Union District, Harrison County | TM 362 P 25, 31, 31.1, 31.2, TM 382, P 1 | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. | Already Signed | No Interest | Already Signed |
| 190 ac Stephen Bennet lease, Union District, Harrison County | TM 362 P 35, 35, 16, 17, 36.1, 30, 30.1, 29 | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. |
| 47 ac 137 poles, Greenbrier District, Doddridge County | TM 15 P 8 | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. |

Exhibit A

| Property Description | District TM/Parcels | Angela Nicholson | Kevin McCall | Brian McCall | Kimberly Smith | Cheryl Morris | Tracy Bridge | Gerald Corder | Randall Corder | Lorena Krafft |
|---|---|---|---|---|---|---|---|---|---|---|
| 1.25 ac Krafft Cabin, Harrison County | TM 361 P 11.1 | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. | Lease Mod. | Affirmed Herein | Affirmed Herein | Affirmed Herein |
| Gerald Corder Property 50.82 ac, Union District, Harrison County | TM 362 P 20 | Affirmed Herein | Affirmed Herein | Affirmed Herein | Affirmed Herein | Affirmed Herein | Affirmed Herein | Already Signed | Affirmed Herein | Affirmed Herein |
| Randall Corder Property 54.18 ac, Union District, Harrison County | TM 362 P 21 | Affirmed Herein | Affirmed Herein | Affirmed Herein | Affirmed Herein | Affirmed Herein | Affirmed Herein | Affirmed Herein | Already Signed | Affirmed Herein |
| Roger Corder Property 105 ac, Union District, Harrison County | TM 361 P 11 | Affirmed Herein | Affirmed Herein | Affirmed Herein | Affirmed Herein | Affirmed Herein | Affirmed Herein | Affirmed Herein | Affirmed Herein | Affirmed Herein |

2



**EXHIBIT B**

STATE OF WEST VIRGINIA   )
                             )
COUNTY OF _____   )
                             )
                             )
                             )
                             )

**(Above This Line Reserved For Official Use Only)**

LESSOR:        _____, whose address is:

LESSEE:        **Antero Resources Corporation, whose address is:
1615 Wynkoop Street, Denver, CO 80202**

## MODIFICATION OF OIL AND GAS LEASE

THIS AGREEMENT IS MADE AND ENTERED INTO on this ____ day of _____, ____, by and between _____, party of the first part, hereinafter referred to as "Lessor", and **Antero Resources Corporation, a Delaware Corporation**, parties of the second part, hereinafter referred to as "Lessee".

WHEREAS, heretofore, on the ____ day of _____, ___, _____ as Lessor, executed and delivered to _____, as Lessee, a certain Oil and Gas Lease, covering the following described land situate in _____ District, _____County, State of West Virginia, to-wit:

        ____ acres, more or less in the Greenbrier District, County _____, State of West Virginia, bounded substantially by lands now or formerly owned as follows:

*On the North by lands of* _____
*On the East by lands of* _____
*On the South by lands of* _____
*On the West by lands of* _____

said oil and gas lease being of record in **Lease Book** ____, **Page** _____ of the land records of _____County, West Virginia.

WHEREAS, Lessor has acquired or otherwise owns an interest in all of or a portion of the above lands covered by said Lease and Lessor and Lessee desire to modify the Lease to include certain additional terms and provisions as hereinafter set out.

NOW THEREFORE, in consideration of the sum of One Dollar ($1.00), the mutual desire of the parties to amend said Lease, and other good and valuable consideration, the receipt of all of which is hereby acknowledged, it is hereby agreed and understood that the said Lease is hereby amended to include the following provisions:

**POOLING:**    Lessor grants unto Lessee the right to pool into a separate drilling or production unit(s) (each a "Pooled Area"), as to any one or more formations, said land or any part thereof and the leasehold estates therein in the vicinity of said land, whether contiguous or noncontiguous, held by Lessee or other lessees, when in Lessee's judgment, it is necessary or advisable to develop and operate efficiently such lands. Any such Pooled Area shall not exceed 80 acres for oil and 640 acres for gas; provided, however, that larger Pooled Areas may be created to conform to any well spacing or unit pattern prescribed by any governmental authority. Lessee, alone or with other lessees, may form any Pooled Area before or after completion of a well thereon by recording in the county wherein the pooled land(s) are located, a declaration of such pooling. Neither the pooling nor the provisions hereof shall operate as a transfer of title to any interest in the leased premises. The commencement of a well, the conduct of other drilling operations, the completion of a well or of a dry hole, or the operation of a producing well on the Pooled Area, shall be considered for all purposes (except as to royalties and the use of free gas) as if said well were located on, or such operations were conducted upon, the lands covered by this lease whether or not such well is located upon or such operations are conducted upon said lands. The royalties provided for in the lease shall be tendered or paid to Lessor in the proportion that Lessor's acreage in the Pooled Area(s) bears to the total Pooled Area. Lessee shall have the right but not the obligation, to reduce, enlarge, or modify such Pooled Area(s) at any time. The royalties and such other payments tendered or paid thereafter shall then be based upon the proportionate acreage and interests in the revised Pooled Area. At any time the Pooled Area is not being operated as aforesaid, the declaration of pooling may be

Exhibit C

surrendered and cancelled of record.  Such cancellation or surrender shall not affect a surrender or cancellation of this lease. This Modification of Oil and Gas Lease shall cover and included all depths from the top of the Rhinestreet formation (as seen by the James P. Boring well #11214, API 47-033-00527, at a depth of 5439') to five hundred feet (500') below the top of the Helderberg formation (as seen by the James P. Boring well #11214, API 47-033-00527, at a depth of 7191'); provided, however, if the lessee, its successors or assigns, should be engaged in operations for drilling, deepening, sidetracking, or reworking a well or wells on the leased premises or on lands with which said leased premises or a portion thereof have been pooled or unitized, then this lease shall continue in effect as to all formations and depths until such operations have been completed.

      **NO WARRANTY OF TITLE:** Lessor does not warrant or agree to defend the title to the land and interest described herein.

      <u>**Audit Clause**</u>:    Lessee further grants to Lessor or Lessor's representative the right annually to examine, audit, or inspect books, records, and accounts of Lessee pertinent to the purpose of verifying the accuracy of the reports and statements furnished to Lessor and for checking the amount of payments lawfully due the Lessor under the terms of this agreement. Lessor and/or Lessor's Agent shall be allowed to audit Lessee's records no more than once per year. In exercising this right, Lessor shall give Lessee notice of Lessor's intended audit by certified mail.  Lessee shall schedule a time for Lessor or Lessor's representative to visit the office of Lessee to conduct said audit within thirty (30) days of the notice by Lessor. Lessor agrees to maintain the confidentiality of all records and agrees that it will not provide access to these records to anyone. Lessor further agrees not to publically publish or post such records by any medium. Lessor is solely responsible for the cost of this audit.

      For the same consideration recited above, each of the undersigned does hereby adopt, ratify, and confirm the Lease as amended, and does hereby grant, lease, and let, unto the Lessee therein and its successors and assigns, any and all interest in and to the lands described therein currently owned or that may hereafter be acquired, either by conveyance, devise, inheritance, or operation of law, and whether, vested, expectant, contingent or future, and in accordance with each and all of the provisions contained in the Lease as amended hereby, and each does hereby declare that the Lease is a valid and subsisting oil and gas lease and all of its provisions are binding upon the undersigned  and shall extend to and be binding upon the heirs, executors, administrators, successors, and assigns of each of the undersigned.  Upon the reasonable request to do so, each of the undersigned agrees to execute, acknowledge and to deliver  any additional instruments, notices, division orders, transfer orders and other documents, to provide additional information and to do any other acts and things which may be necessary or desirable to allow payment of any royalties that may be due or that may become due or to more fully and effectively protect the interest of the Lessee, its successors and/or assigns in and to the property intended to be covered hereby.

      **IN WITNESS WHEREOF:**

**SIGNED:**


_____

(Lessor Name Here)



**INDIVIDUAL ACKNOWLEDGEMENT**


**STATE OF West Virginia**

**COUNTY OF _____**


      This instrument was acknowledged before me on the _____ day of_____, 2015, by _____.


**My Commission Expires:**               _____

                                         **Notary Public**

Prepared by:
Antero Resources Corporation
PO Box 410, Bridgeport, West Virginia, 26330

Please return to:
Antero Resources Corporation
PO Box 410, Bridgeport, West Virginia, 26330

6965599.1

Prospect: _____
TR MP: _____
DTO: _____
LM: _____

# OIL AND GAS LEASE
## (PAID-UP)

Lessor:
Lessee: Antero Resources Corporation
Lease Number: _____
Prospect: Tom's Fork
WV - Revised September 2014 – ARC

This Agreement made and entered into this ____ day of August, 2015, by and between, _____, whose address is, _____, hereinafter referred to individually and collectively as "**Lessor**," and **Antero Resources Corporation**, whose address is 1615 Wynkoop Street, Denver, CO 80202, hereinafter referred to as "**Lessee**," WITNESSETH THAT:

1. **Leasing.** Lessor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, and the covenants herein contained, hereby grants, demises, leases and lets exclusively unto Lessee the lands hereinafter described for the purposes of exploring by geological and geophysical and other methods, (including, but not limited to, conducting seismic surveys), drilling either vertically or horizontally, operating for, producing oil or gas or both including methane gas present in or associated with any formations, horizons, strata or zones and/or; together with the right and easement to construct, operate, repair, maintain, resize and remove pipelines, telephone, power and electric lines, tanks, ponds, roadways, plants, equipment and structures thereon to produce, save, store and take care of such substances, and the exclusive right to inject air, gas, water, brine or other fluids into the subsurface strata and any and all other rights and privileges necessary, incident to, or convenient for the economical operation of the lands, alone or conjointly with neighboring lands for these purposes, said lands being situated on the waters of _____ in the District of _____, County of _____, State of West Virginia, and being bounded now or formerly substantially as follows, to wit:

Tract 0-0-0 Containing 0.00000 Gross Acres

On the North by lands of
On the East by lands of
On the South by lands of
On the West by lands of

Said lands being identified for tax purposes as tract or parcel number 00-00-00 as of the date of this lease. Notwithstanding said tax map designation, this lease shall be effective as to the tract actually owned by Lessor whether or not the tax map designation correctly identifies the location of the tract. Being also the same interest acquired by the Lessor in _____ Book dated _____ ____, _____, and recorded in the Clerk's Office in and for _____ County, State of West Virginia, filed in _____ Book ____ at Page _____. It being the purpose and intent of Lessor to lease, and Lessor does hereby lease, all strips or parcels of land now owned by Lessor, or hereafter acquired which adjoin the lands above described, and all interests in the land above described now owned or hereafter acquired by Lessor. For all purposes of this lease, including determining the amount of delay rentals, royalties and shut-in royalties hereunder, said land shall be deemed to contain 0.00000 gross acres whether it actually contains more or less. For all purposes of this lease, references to oil and gas or either or both of them shall mean oil, or gas, or both and all substances which are constituents of or produced with oil or gas, whether similar or dissimilar or produced in a gaseous, liquid, or solid state.

### SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

2. **Term.** Subject to the other provisions hereof, this lease shall remain in force for a term of Five (5) years from this date (herein called "primary term") and as long thereafter as oil and gas, or either of them, is produced from the land or from lands pooled therewith, or drilling operations are continuously prosecuted as hereinafter provided, or this lease is otherwise maintained in effect pursuant to the provisions hereof. As used herein, "drilling operations" include operations for the drilling of a new well, the reworking, deepening or plugging back of a well or hole or other operations conducted in an effort to obtain or reestablish production of oil or gas. Drilling operations shall be considered to be "continuously prosecuted" if not more than 120 days shall elapse between the completion or abandonment of one well or hole and the commencement of drilling operations on another well or hole. *This* lease contains an option to renew this lease once under the same terms and provisions for an additional **five** (5) years from the end of the primary term hereof and as long thereafter as oil and gas is produced from said lands or lands pooled therewith. Lessee may exercise this option by paying to Lessor the sum of the original bonus paid (as bonus and paid up rentals) prior to the expiration of said lease.

3. **Royalties.** The royalties to be paid by Lessee are: (a) on oil, One-Eighth (12.5%) of that produced and saved and delivered at the wells or into the pipeline to which the wells may be connected. Lessee may from time to time purchase any royalty oil in its possession, paying the market price then prevailing for the field where produced, and Lessee may sell any royalty oil in its possession and pay Lessor the price received by Lessee for such oil computed at the well, less One-Eighth of (12.5%) of all Post Production Costs and less the same fractional share of all production, petroleum excise and severance taxes; (b) on gas, including casinghead gas or other gaseous substance, produced from said land and sold or used beyond the well or for the extraction of gasoline or other product, an amount equal to One-Eighth (12.5%) of the net amount realized by Lessee computed at the wellhead from the sale of such substances. On gas sold at the well, the royalty shall be One-Eighth (12.5%) of the amount realized by Lessee from such sale, less One-Eighth (12.5%) of all Post Production Costs and less the same fractional share of all production, petroleum excise and severance taxes.

As used in this provision, "Post Production Costs" shall mean all costs actually incurred by Lessee or its affiliate and all losses of produced volumes whether by use as fuel, line loss, flaring, venting or otherwise from and after the wellhead to the point of sale. Post Production Costs includes, without limitation, all costs of gathering, treating, processing, blending, marketing, compression, dehydration, transportation, removal of liquid or gaseous substances, and/or removal of impurities of or from the affected oil and gas, and costs of any other activities associated with making the oil and gas ready for movement, sale or use. For royalty calculation purposes, Lessee shall never be required to adjust the sales proceeds to account for the purchaser's revenues, receipts, costs or charges, or other activities that occur, beyond and past the point of sale. Lessee or its affiliate shall have the right to construct, maintain and operate any facilities providing some or all of the services identified as Post Production Costs. If Lessee or its affiliate does so, the actual costs of such facilities shall be included in the Post Production Costs as a per barrel or per mcf (or per mmbtu, at Lessee's election) charge, as appropriate, calculated by spreading the construction, maintenance and operating costs for such facilities over the reasonably estimated total production volumes attributable to the well or wells using

Exhibit D

such facilities.

**4.     Delay Rental.**  It is hereby agreed and acknowledged by Lessor and Lessee that this is a Paid-Up Oil and Gas Lease and all delay rentals due and payable under this agreement have been paid in advance and have been included in the consideration paid to Lessor by Lessee for this lease.  It is agreed that Lessee may drill or not drill on the leased premises, as it may elect, and that the consideration and rentals paid constitute adequate compensation for such privilege. No implied covenant shall be read into this lease requiring Lessee to drill or to continue drilling on said land, or fixing the measure of diligence necessary on Lessee's part.

**5.     Dry Hole Clause and Cessation of Production.**  If during the last year of the primary term and prior to the discovery of oil or gas on said land or lands pooled therewith, Lessee should drill a dry hole thereon, or, if after discovery of oil or gas either before or during the last year of the primary term, the production thereof should cease during the last year of said term from any cause, no rental payment or operations are necessary in order to keep this lease in force during the remainder of the primary term. If, at the expiration of the primary term, Lessee has commenced operations for drilling a new well or reworking an old well, this lease shall continue in force as long as such drilling or reworking operations continue, or if after the expiration of the primary term, production on this lease shall cease, this lease shall continue in force if drilling or reworking operations are commenced within 120 consecutive days after such cessation of production; if production is restored or additional production is discovered as a result of any such drilling or reworking operations, conducted without cessation of more than 120 consecutive days, this lease shall continue as long thereafter as oil or gas is produced and as long as additional drilling or reworking operations are continued without cessation for more than 120 consecutive days.

**6.     Shut-In Royalty.**  After expiration of the primary term hereof, when gas is not being so sold or used and the well or wells are shut-in and there is no current production of oil or operations on said leased premises sufficient to keep this lease in force, Lessee shall pay or tender a royalty of Ten Dollars ($10.00) per year per net acre retained hereunder, such payment or tender to be made on or before the anniversary date of this lease next ensuing after the expiration of ninety (90) days from the date such well is shut-in and thereafter on the anniversary date of this lease during the period such well is shut-in, to the royalty owners. When such payment or tender is made it will be considered that gas is being produced within the meaning of the entire lease. Notwithstanding any other provision to the contrary, this lease shall not terminate because of a failure to properly or timely make shut-in gas well payments unless Lessor shall have given Lessee written notice of such failure to properly or timely make such shut-in gas well payment and Lessee shall have failed for a period of sixty (60) days after receipt of such notice to tender such late payment or such payment in the proper amount, together with a late or improper payment penalty of $100.00.

**7.     Interest in Land.**  The parties hereto mutually agree that Lessee shall have the benefit of the doctrine of after-acquired title, and that the Lessee to protect its leasehold interest may, at its option, discharge any tax, mortgage, or other lien on said land in the event of default in payment by Lessor, and be subrogated to the rights of the holder of a mortgage or lien with the right to enforce same and apply royalties and payments accruing under this lease toward satisfying same.  Without impairment of Lessee's implied warranty rights or warranty rights as set forth herein in Paragraph 13, it is agreed that if Lessor owns an interest in the land described in Paragraph 1, less than the entire oil and gas estate covered by this lease, then the rentals, royalties and payments to be paid Lessor shall be reduced proportionately to the actual interest owned by the Lessor.  It is mutually agreed that the Lessee shall have the right to acquire for its own benefit any interest or claim in the lands described in Paragraph 1 which are not covered or leased herein.

**8.     Assignment.**  The rights of either party hereunder may be assigned, in whole or in part, and the provisions hereof shall extend to the heirs, successors and assigns, of the parties hereto, but no change in division of ownership of the land, rentals, royalties, or other payments hereunder, or interest therein, however accomplished, shall operate to enlarge the obligations or diminish the rights of Lessee. No change in the ownership of the land, or any interest herein, shall be binding on Lessee until thirty (30) days after Lessee shall have been furnished by registered U.S. Mail at Lessee's principal place of business with a certified copy of all recorded instruments, all court proceedings and all other necessary evidence of any transfer, inheritance or sale of said rights. In the event of the assignment of this lease as to a segregated portion of said land, the shut-in royalties and other payments payable hereunder shall be apportioned among the several leasehold owners ratably according to the surface areas attributable to each, and default in shut-in royalties or other payments by one such leasehold owner or Lessee shall not affect the rights of the other leasehold owners or Lessees hereunder. In case Lessee assigns this lease, in whole or in part, Lessee shall be relieved of all obligations with respect to the assigned portion or portions arising subsequent to the effective date of assignment.

**9.     Surrender.**  Lessee may, at any time or from time to time, execute and deliver to Lessor or place of record a surrender covering all or any part of the leased premises and thereupon shall be relieved of all obligations thereafter to accrue with respect to the leased premises so surrendered.

**10.     Pooling.**  Lessor grants unto Lessee the right to pool into a separate drilling or production unit(s), as to any one or more formations, said land or any part thereof and the leasehold estates in the vicinity of said land, whether contiguous or non-contiguous, held by Lessee or other mineral owners or lessees under other leases, when in Lessee's judgment, it is necessary or advisable to create such pools to develop and operate efficiently such lands. Any such pool shall not substantially exceed 80 acres each in area for oil and 640 acres each in area for gas, plus, in both instances, a tolerance of ten percent (10%); provided however, that larger pools may be created to conform to any well spacing or unit pattern prescribed by any government authority. The units formed by pooling as to any one or more formations need not conform in size or area with the unit or units into which the lease is pooled or combined as to any formation or formations, and all units need not conform to the area within gas units. Lessee, alone or with other mineral owners or lessees under other leases, may form any pool before or after completion of a well thereon by recording in the county wherein the pooled land(s) are located, a declaration of such pooling. Neither the pooling nor the provisions hereof shall operate as a transfer to title of any interest in the leased premises. The commencement of a well, the conduct of other drilling operations, the completion of a well or dry hole, or the operation of a producing well on the pooled area, shall be considered for all purposes (except as to royalties) as if said well were located on, or such drilling operations were conducted upon the lands covered by this lease whether or not such well is located upon, or such drilling operations are conducted upon, said lands. The royalties provided for in Paragraph 3 hereof shall be tendered or paid to Lessor in the proportion that Lessor's acreage in the pooled area(s) bears to the total pooled area. Lessee shall have the right but not the obligation, to reduce, enlarge, or modify such pool(s) at any time. The royalties and such other payments tendered or paid thereafter shall then be based upon the proportionate acreage and interests in the revised pool. At any time the pool is not being operated as aforesaid, the declaration of pooling may be surrendered and cancelled of record. Such cancellation or surrender shall not affect a surrender or cancellation of this lease.

**11.     Other Rights – Lessee.**  Lessee shall have the right to use, free of cost, oil, gas and water produced on said land for its operations except water from wells of Lessor. Lessee shall have the right at any time to remove all machinery and fixtures placed on said lands, including the right to draw and remove casing. No part of the surface of the leased premises shall, without the written consent of Lessee, be let, granted or licensed by Lessor to any other party for the location, construction or maintenance of structures, tanks, pits, reservoirs, equipment or machinery to be used for the purpose of exploring, developing or operating adjacent lands for oil or gas. Lessee shall also have the right to use, free of cost, any pipeline(s) laid under the terms of this lease for the transportation of gas produced off of the lands leased hereunder. Upon termination or expiration of this lease, Lessee shall

have the option to purchase a pipeline right of way for any existing pipelines laid under the terms of this lease pursuant to paragraph 17 hereof.

12.      **Other Rights – Lessor.**  Lessee shall bury below plow depth its pipelines on the leased premises when requested by a Lessor owning an interest in the surface. No well shall be drilled within 200 feet of any house or barn now on the leased premises without the written consent of the owner of the surface on which such house or barn is located. Lessee shall pay for actual damages to growing crops, merchantable timber and fences caused by its operations on said lands.

13.      ~~Warranties.   Lessor warrants and agrees to defend the title to the land and interest described in Paragraph 1, covenants that Lessee will have quiet enjoyment under this lease,~~

14.      **Force Majeure.**  Should Lessee be prevented from complying with any expressed or implied covenant of this lease, from conducting drilling or reworking operations thereon or from producing oil or gas by reason of scarcity of, or inability to obtain or to use equipment or material, or by operation of force majeure, or because of any federal or state law or any order, rule or regulation of a governmental authority, then while so prevented, Lessee's obligations to comply with such covenant shall be suspended, and Lessee shall not be liable in damages for failure to comply therewith; and this lease shall be extended while and so long as Lessee is prevented by any such cause from conducting drilling or reworking operations on, or from producing oil or gas or other hydrocarbons from the leased premises; and the time while Lessee is so prevented shall not be counted against the Lessee, anything in this lease to the contrary notwithstanding, and, if such cause shall extend within 120 days of the end of the primary term, this lease shall be extended for 120 days after the cessation of such cause and as long thereafter as there are operations on or production from the lease or lands pooled with it.

15.      **Adverse Claim.**  If Lessee receives written notice of an adverse claim to the leased premises, affecting all or any part of the payments due hereunder, Lessee may, at its sole discretion, withhold payment or delivery of same without obligation to pay interest or penalty until such time as Lessor's ownership is determined by compromise, or by final decree of a court of competent jurisdiction, or Lessee may file a petition for interpleader. Lessee shall in no event be liable for interest or penalty for any such amounts withheld.

16.      **Payments.**        All payments are to be mailed to:    _____

_____

_____

who is (are) hereby appointed agent(s), if designated as "Agent" above, to receive and receipt for the same and to receive notices given by Lessee as provided herein. Lessee shall not be obligated to make payments or give notices to more than the number of payees hereinabove designated. Lessee shall not be obligated to make payments to any individual payee or Agent hereunder until payments exceed the sum of Twenty-Five Dollars ($25.00), but in any case, payments shall be made at least once each calendar year. Lessee shall not be obligated to see to the application of any monies paid by Lessee to Lessor or to the Agent(s) designated herein. Until such agent(s) or payee(s) is appointed or designated as above required, Lessee may withhold payment due hereunder without liability for interest or penalty. The depositing of such payments hereunder in any post office addressed as above set forth shall be deemed payment or tender as herein provided. Notwithstanding the death of Lessor, payment or tender to the deceased Lessor shall be binding on the heirs, devisees, executors, administrators and personal representatives of Lessor and his successors in interest.

17.      **Pipeline Option.**  For and in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, at the expiration or termination of this lease, Lessee shall be given the option to purchase pipeline right(s) of way for any existing pipelines laid under the terms of this lease for the price of One Dollar ($1.00) per linear foot. Lessee shall have one (1) year to exercise this option from the later of the expiration or termination of this lease or after receiving written notification from the Lessor stating that this lease has expired or been terminated and demanding that Lessee exercise such option or abandon its pipelines in place.

18.      **Pre-Existing Wells.**  It is mutually agreed between Lessee and Lessor that any and all existing oil and/or gas wells located on the premises are specifically excepted and excluded from the operations of this lease.

19.      **Affidavit of Non-Production.**  Lessor hereby warrants that (i) the property is not encumbered by any enforceable oil or ₂gas use of record or otherwise executed by the Lessor and that (ii) Lessor is not currently receiving any bonus, rental, production royalty or payment, or shut-in royalty as the result of any prior oil and gas lease covering any or all of the subject property, and that there have been no wells drilled upon the subject property or upon any lands with which the property has been combined in a drilling or production unit, with the exception of the well privately owned by Lessor.

20.      **Compliance with Statutes.**  It is agreed between the parties hereto that in the event any provision or portion of this lease is determined by a court of competent jurisdiction, regulatory agency, regulatory body, or legislative body to be in violation of local, state or federal statute, rule or regulation, the relevant portion of the subject provision or portion of this lease which is not in compliance with such statute, rule or regulation shall be severed from this agreement to the extent necessary to comply with such statute, rule or regulation, and this lease shall continue in full force and effect as amended.

21.      **Right of First Refusal.**  If at any time within the primary term of this lease or any continuation or extension thereof, Lessor receives any bona fide offer, acceptable to Lessor, to grant an additional lease ("Top Lease") covering all or part of the above described land, Lessee shall have the continuing option by meeting any such offer to acquire a Top Lease on equivalent terms and conditions. Any offer must be in writing and must set forth the proposed lessee's name, bonus consideration and royalty consideration to be paid for such Top Lease, and include a copy of the lease form and other documents to be utilized reflecting all pertinent and relevant terms and conditions of the Top Lease. Lessee shall have fifteen (15) days (exclusive of Saturdays, Sundays and Federal holidays) after receipt from Lessor of a complete copy of any such offer to advise Lessor in writing of its election to enter into an oil and gas lease with Lessor on equivalent terms and conditions, as to all or any part of the above described land. If Lessee fails to notify Lessor within the aforesaid fifteen (15) day period of its election to meet any such bona fide offer, Lessor shall have the right to accept said offer. If Lessor fails to consummate such Top Lease with the proposed lessee within sixty (60) days after the end of the aforesaid fifteen (15) day period, the provisions of this Paragraph 21 shall thereafter reapply to Lessor.  Any Top Lease granted by Lessor in violation of this provision shall be null and void.

22.      **Option to Extend.**  For the above consideration, Lessee is granted an option to renew this lease under the same terms and provisions for an additional ~~five~~ (5) years from the end of the primary term hereof and as long thereafter as oil and gas is produced from said lands or lands pooled therewith.  Lessee may exercise this option by paying to Lessor the sum of the original bonus paid (as bonus and paid up rentals) prior to the expiration of said lease.

## EXHIBIT "A"

Attached to and made a part of that certain oil and gas lease dated the _____ day of _____, 2015 by and between _____, as Lessors and Antero Resources Corporation, as Lessee, to-wit:

The following provisions shall supplement the printed provisions of the Lease; and, in the event of any conflict between the following supplemental provisions and the provisions of the printed Lease, this Addendum shall prevail and control:

**SUPERSEDE CLAUSE**
All references herein made to One-Eighth (12.5%) royalty are hereby amended to read Nine-Fiftieths (18%) percent royalty.

**Market Enhancement (Gross Proceeds) Clause**
It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil, gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements. However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.

**Marcellus Only DEPTH CLAUSE:** The Modification of Oil and Gas Lease shall cover only those depths insofar and only insofar as to those depths and formations from the top of the Rhinestreet formation (as seen by the James P. Boring well, API number 47033005270000, at a depth of 5439') to five hundred feet (500') below the top of the Helderberg formation (with the top of the Helderberg Formation as seen by the James P. Boring well, API number 47033005270000, at a depth of 7191').

**No Storage Clause:** Lessee shall have no right to use the leased premises or any portion thereof, surface, subsurface, for gas, oil or brine storage purposes.

**Pugh Clause:** Notwithstanding anything to the contrary in this lease, all portions of this lease not included in a unit created either voluntarily under the terms of this lease or by government authority and not producing or upon which drilling operations have not commenced, shall be released one (1) year after the expiration of the primary term of this lease. Should the unit as established either voluntarily under the terms of this lease or by government authority be changed after the expiration of the primary term, all portions of this lease not included in the newly prescribed unit created either voluntarily under the terms of this lease or by government authority will be released.

**Audit Clause:** Lessee further grants to Lessor or Lessor's representative the right annually to examine, audit, or inspect books, records, and accounts of Lessee pertinent to the purpose of verifying the accuracy of the reports and statements furnished to Lessor and for checking the amount of payments lawfully due the Lessor under the terms of this agreement. Lessor and/or Lessor's Agent shall be allowed to audit Lessee's records no more than once per year. In exercising this right, Lessor shall give Lessee notice of Lessor's intended audit by certified mail.  Lessee shall schedule a time for Lessor or Lessor's representative to visit the office of Lessee to conduct said audit within thirty (30) days of the notice by Lessor. Lessor agrees to maintain the confidentiality of all records and agrees that it will not provide access to these records to anyone. Lessor further agrees not to publically publish or post such records by any medium. Lessor is solely responsible for the cost of this audit.

Signed for Identification:

**LESSOR**

_____

This instrument prepared by the following; when recorded, please return to:

Antero Resources Corporation
P.O. Box 410
Bridgeport, WV  26330

6965595.1

**Allocation of Settlement Proceeds**

| Name | Payment |
|------|---------|
| Gerald Corder | REDACTED |
| Lorena Krafft | REDACTED |
| Cheryl Morris | REDACTED |
| Tracy Bridge | REDACTED |
| Randall Corder | REDACTED |
| Kimberly Smith | REDACTED |
| Angie Nicholson | REDACTED |
| Kevin McCall | REDACTED |
| Brian McCall | REDACTED |
| Total Distribution: | REDACTED |

**EXHIBIT E**