```
IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**GERALD W. CORDER,**

    **Plaintiff,**

**v.**                                          **CIVIL ACTION NO. 1:18CV30**
                                                          **(Judge Keeley)**

**ANTERO RESOURCES CORPORATION,**

                                                        **c/w 1:18CV31, 1:18CV32,**
    **Defendant.**                   **1:18CV33, 1:18CV34, 1:18CV35,**
                                                        **1:18CV36, 1:18CV37, 1:18CV38,**
                                                        **1:18CV39, and 1:18CV40**

**MEMORANDUM OPINION AND ORDER GRANTING THE PLAINTIFFS'
MOTION TO AMEND THEIR COMPLAINTS [DKT. NO. 184]**

    These consolidated cases involve claims for breach of contract related to royalty payments for natural gas interests. The plaintiffs are Gerald W. Corder, Marlyn Sigmon, Garnet Cottrill, Randall N. Corder, Janet C. Packard, Leroy Packard, Lorena Krafft, Cheryl Morris, Tracy Bridge, Angela Nicholson, Kevin McCall, and Brian McCall (collectively "the Plaintiffs"). All are owners of several mineral interests in Harrison County and Doddridge County, West Virginia. They allege that the defendant, Antero Resources Corporation ("Antero"), improperly deducted post-production costs from royalty payments due them under certain oil and gas leases ("the Leases") (Dkt. No. 30 at 34).[1] Id. Antero denies these allegations (Dkt. Nos. 39).

---

[1] Unless otherwise noted, citations to docket entries herein refer to Civil Action No. 1:18CV30.

**MEMORANDUM OPINION AND ORDER GRANTING THE PLAINTIFFS' MOTION TO AMEND THEIR COMPLAINTS [DKT. NO. 184]**

Pending is the Plaintiffs' motion to amend their complaints, which the Court now **GRANTS** (Dkt. No. 184).

## I. Background

### A. Factual Allegations

The Plaintiffs allege that they own oil and gas interests that were leased, assigned or otherwise acquired by and presently held by Antero.[2] They also assert that Antero had duties and responsibilities to them pursuant to leases covering the following tracts of land:

(A) 48.69 acres (Deed Book 393, Page 399)

Several leases cover this tract which require Antero to pay a royalty "on gas, including casinghead gas or other gaseous substance, produced from said land and sold or used beyond the well or for the extraction of gasoline or other product, [in] an amount equal to One-Eighth (12.5%) (amended to be 15%) of the net amount realized by Lessee computed at the wellhead from the sale of such substances" (Dkt. No. 30 at 25).

(B) 50.82 acres (Deed Book 839, Page 23)

The lease covering this tract requires Antero "to pay one-eighth (1/8) of the value at the well of gas from each and every gas well from which is marketed and used off the premises." The

---

[2] The recitation of the facts is taken from the second amended complaints (Dkt. No. 30).

**MEMORANDUM OPINION AND ORDER GRANTING THE PLAINTIFFS'
MOTION TO AMEND THEIR COMPLAINTS [DKT. NO. 184]**

Plaintiffs claim that this lease was later amended to require "1/8 of the value of the gas from each well." Id.

(C)   54.18 acres (Deed Book 1082, Page 656)

The lease covering this tract requires Antero to pay "one-eighth of the value at the well of the gas from each and every well." Id. at 25-26.

(D)   104.75 acres (Deed Book 1103, Page 733)

The lease covering this tract requires Antero "to pay 1/8 of the price received by the lessee from the sale of such gas." Id. at 26.

(E)   59 acres (Deed Book 1084, Page 203)

The lease covering this tract requires Antero to pay "1/8 of the gross proceeds received from each and every well drilled on said properties providing natural gas, an amount equal to one-eighth (1/8) of the gross proceeds received from the sale of same at the prevailing price for gas at the well, for all natural gas saved and marketed from the said premises." Id.

(F)   105 acres (Deed Book 1084, Page 197)

The lease covering this tract requires Antero to pay "1/8 of the gross proceeds received from each and every well drilled on said properties providing natural gas, an amount equal to one-eighth (1/8) of the gross proceeds received from the sale of same

at the prevailing price for gas at the well, for all natural gas saved and marketed from the premises." Id.

(G)  44.4 acres (Deed Book 99)

The lease covering this tract requires Antero to pay "$100 per year for each and every gas well obtained on the premises." Id.

(H)  50 acres (Deed Book 143, Page 291)

The lease covering this tract requires Antero to pay "1/8 of the value at the well of the gas from each and every gas well drilled on the premises." Id.

According to the Plaintiffs, in violation of its contractual, statutory and common law duties, Antero

> ha[s] and continue[s] to take deductions, reduce plaintiffs' royalty payments, overcharge plaintiffs for the deductions that they do charge plaintiffs, and otherwise reduce and not pay for plaintiffs' royalty on volume and/or price and/or by taking the liquid hydrocarbons which are part of the natural gas extracted from the said gas and subtracting unauthorized deductions therefrom.

Id. at 31. In addition, the Plaintiffs allege that Antero charged them "with costs and charges which were unreasonably excessive and not actual." Id. at 32.

**B. Procedural History**

On December 6, 2017, the Plaintiffs filed a single complaint in the Circuit Court of Harrison County, West Virginia against

4

**MEMORANDUM OPINION AND ORDER GRANTING THE PLAINTIFFS'
MOTION TO AMEND THEIR COMPLAINTS [DKT. NO. 184]**

Antero Resources Corporation ("Antero"), Antero Midstream Partners LP ("Midstream Partners"), Antero Resources Pipeline LLC ("Pipeline"), and Antero Resources Investment LLC ("Investment") (Dkt. No. 1-1). The state court severed the complaint and assigned eleven separate civil action numbers. On February 12, 2018, Antero and Midstream Partners removed the cases to this Court on the basis of diversity jurisdiction (Dkt. No. 1). Because the cases raised common questions of law and fact, the Court consolidated them under Federal Rule of Civil Procedure 42(a) (Dkt. Nos. 29, 32, 38).

On March 9, 2018, the Plaintiffs amended their complaints to state four causes of action: breach of contract, breach of fiduciary duty, fraud, and punitive damages (Dkt. No. 13). On June 11, 2018, the Court granted a motion to amend their complaints for a second time, which allowed the Plaintiffs to set forth additional allegations pertaining to the relevant chains of title for the Leases (Dkt. Nos. 27, 29). The Court also granted in part the defendants' motion to dismiss the second amended complaints, dismissing Midstream Partners, Pipeline, and Investment as defendants, and dismissing all claims except the Plaintiffs' breach of contract claim (Dkt. No. 29 at 35-37).

Thereafter, Antero answered the Plaintiffs' second amended complaints, denying liability and asserting several affirmative defenses, including payment and release (Dkt. No. 39). Relevant to

**MEMORANDUM OPINION AND ORDER GRANTING THE PLAINTIFFS'
MOTION TO AMEND THEIR COMPLAINTS [DKT. NO. 184]**

the pending motion, Antero attached to its answer a Confidential Settlement Agreement and Release of All Claims ("the Settlement Agreement") executed in August 2015 by Antero and plaintiffs Gerald W. Corder, Randall N. Corder, Lorena Krafft, Cheryl Morris, Tracy Bridge, Angela Nicholson, Kevin McCall, and Brian McCall ("the Settling Plaintiffs")[3] (Dkt. Nos. 39 at 31, 50 at 1). The Settlement Agreement terminated a partition action filed by Antero in the Circuit Court of Harrison County, West Virginia.[4] See Dkt. No. 50 at 1. In addition to the tracts affected by the partition suit, the Settlement Agreement acknowledged that the Settling Plaintiffs owned interests in several other properties located throughout Harrison County, and identified those properties in an attached Master Property List ("MPL"). Id. at 2. Pursuant to the Settlement Agreement, the Settling Plaintiffs released all claims or potential claims relating in any way to the partition action or the properties listed in the MPL that arose prior to the date of the Settlement Agreement. Id. 2-3.

In addition, Paragraph 14 of the Settlement Agreement stated:

---

[3] Plaintiffs Marilyn Sigmon, Garnett C. Cottrill, Janet Packard, and Leroy Packard were not parties to the Settlement Agreement.
[4] Pursuant to W. Va. Code § 37-4-1, et seq., Antero and its co-plaintiff sought allotment or partition of the Settling Plaintiffs' mineral interests in certain tracts of land located in Harrison County, West Virginia (Dkt. No. 50 at 1).

**MEMORANDUM OPINION AND ORDER GRANTING THE PLAINTIFFS'
MOTION TO AMEND THEIR COMPLAINTS [DKT. NO. 184]**

> Antero acknowledges that per the terms of said June 29, 1979 leases identified in the preceding two paragraphs, production royalties payable pursuant to said leases shall be deemed gross royalties and shall be calculated without regard to any postproduction or market enhancements costs claimed or incurred by Antero.

Id. at 5.

Paragraph 11 of the Settlement Agreement, however, required the Settling Plaintiffs to execute lease modifications for all properties identified on the MPL. Id. at 4. These included each of the Plaintiffs' properties at issue here, except for a 50-acre tract located in Doddridge County, West Virginia (Tract H). Id. at 11-12. This lease modification, which was labeled "Exhibit A" to the Settlement Agreement, is attached to the Plaintiffs' Leases regarding a 48.69-acre tract located in Harrison County, West Virginia (Tract A). See Id. at 21; Dkt. No. 30-2 at 6. The modification contains a Market Enhancement (Gross Proceeds) Clause ("the Market Enhancement Clause"), which provides that

> all oil, gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements. However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee

**MEMORANDUM OPINION AND ORDER GRANTING THE PLAINTIFFS'**
**MOTION TO AMEND THEIR COMPLAINTS [DKT. NO. 184]**

(Dkt. No. 30-2 at 6).

Since the inception of this litigation, Antero has contended that the Settlement Agreement bars the Settling Plaintiffs from bringing this breach of contract action. Consequently, it has sought to dismiss all of their claims (Dkt. No. 44). Finding their general release of all potential claims against Antero to be unambiguous, the Court dismissed with prejudice the Settling Plaintiffs' breach of contract claims related to the properties listed on the MPL that arose before the execution of the Settlement Agreement (Dkt. No. 75 at 17).

The Plaintiffs have now moved for summary judgment on their remaining breach of contract claims. They contend that the plain language of the Settlement Agreement and the Market Enhancement Clause included as part of the Settling Plaintiffs' lease modification prohibits Antero from deducting any post-production or market enhancement costs from their royalty payments (Dkt. No. 201-1 at 1). Antero opposes the motion, asserting it is based entirely on Antero's alleged breach of the Settlement Agreement, which the Plaintiffs failed to reference in their second amended complaints (Dkt. No. 180 at 3, 5-6).[5]

---

[5] Although in their second amended complaints the Plaintiffs have alleged that Antero breached its contractual duties under the Leases and the Market Enhancement Clause, they failed to reference

8

**MEMORANDUM OPINION AND ORDER GRANTING THE PLAINTIFFS'
MOTION TO AMEND THEIR COMPLAINTS [DKT. NO. 184]**

Following the full briefing of the parties' motions for summary judgment, the Plaintiffs moved to amend their complaints for a third time to "add specificity to their allegations and clarify that the Settlement Agreement and Market Enhancement Clause were a part of the same agreement" (Dkt. No. 184 at 2-3). This motion is now ripe for review.

## II. Discussion

### A. Applicable Law

Plaintiffs seeking to amend their pleading after the deadline in the scheduling order has passed must satisfy the standards in both Federal Rule of Civil Procedure 16(b) and Federal Rule of Civil Procedure 15(a). Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008).

Pursuant to FRCP 16(b), a motion to amend the complaint filed after the scheduling order deadline shall be granted upon a showing of "good cause." Montgomery v. Anne Arundel Cty., Maryland, 182 F. App'x 156, 162 (4th Cir. 2006); Nourison, 535 F.3d at 298. This standard "focuses on the timeliness of the amendment and the reasons for its tardy submission; the primary consideration is the diligence of the moving party." Montgomery, 182 F. App'x at 162.

---

or attach the relevant Settlement Agreement. See Dkt. No. 30; Dkt. No. 180 at 5-6.

Pursuant to FRCP 15(a), however, leave to amend "shall be freely given when justice so requires." A motion to amend should be granted unless it would be prejudicial to the opposing party, there has been bad faith, or the amendment would be futile. HCMF Corp. v. Allen, 238 F.3d 273, 276-77 (4th Cir. 2001). Whether an amendment is prejudicial depends on the nature of the amendment and its timing. Laber v. Harvey, 438 F.3d 404, 427 (4th Cir. 2006). The further a case progresses, the more likely it is that the defendant will be prejudiced; but mere delay is an insufficient reason to deny leave to amend. Foman v. Davis, 371 U.S. 178, 182 (1962). An amendment is futile if it fails to state a claim upon which relief may be granted. United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008).

**B.   Discussion**

Here, the Plaintiffs seek to amend their complaints to add specificity to their breach of contract allegations and to clarify that the Settlement Agreement and the Market Enhancement Clause were part of the same agreement. Because they filed their motion after the deadline set by the Court's scheduling order, June 30, 2018, they must satisfy both FRCP 16(b) and FRCP 15(a).

**1.   FRCP 16(b)**

Despite failing to incorporate the Settlement Agreement into their second amended complaints, the Plaintiffs sufficiently

**MEMORANDUM OPINION AND ORDER GRANTING THE PLAINTIFFS'
MOTION TO AMEND THEIR COMPLAINTS [DKT. NO. 184]**

pleaded a breach of contract claim premised on their numerous leases with Antero and the Market Enhancement Clause (Dkt. Nos. 209 at 7-8, 30 at 25-26). Although it is undisputed that they signed the Settlement Agreement in August 2015, the Plaintiffs did not inform their current counsel of this fact due to the confidentiality clause contained in the agreement (Dkt. No. 184 at 3). Accordingly, Plaintiffs' counsel never learned of the Settlement Agreement's existence until after Antero made it part of the record in this case and after the Court's deadline to amend pleadings had passed. Id.

Critically, the Settlement Agreement adds no new claims or legal theories to the case, but rather is a part of the Leases that have always been at the forefront of the case. Since their counsel learned of the existence of the Settlement Agreement in August 2018, the Plaintiffs have diligently pursued their breach of contract claim and developed their case around Antero's alleged breach of the Leases, Settlement Agreement, and Market Enhancement Clause. The parties have litigated this case and prepared for trial as if the Plaintiffs had pleaded a breach of the Settlement Agreement in their second amended complaints. Accordingly, no additional discovery or briefing would be necessary if the Plaintiffs are granted leave to file their proposed third amended complaints.

2. **FRCP 15(a)**

The Plaintiffs' request to amend also is not prejudicial to Antero; it has not been made in bad faith, nor is it futile. First, the Plaintiffs' proposed amendment neither unduly delays these actions nor unduly prejudices Antero. Although the Plaintiffs filed their motion to amend after the close of discovery and after the parties have filed cross-motions for summary judgment, delay alone is an insufficient reason to deny their motion to amend. Foman, 371 U.S. at 182. And, although the Plaintiffs could have moved to amend their complaints after Antero disclosed the Settlement Agreement, there is no risk of surprise to Antero because the Plaintiffs' position regarding the impact of the Settlement Agreement on their claims has been well known to Antero throughout this litigation.

Nor will including specific mention of the Settlement Agreement to the Plaintiffs' breach of contract claim add new facts or issues requiring additional discovery. Instead of complicating the case with new causes of action or legal theories, the proposed amendment merely adds specificity to the terms of the parties' contract and the Plaintiffs' breach of contract claim. Because the Market Enhancement Clause and the Settlement Agreement were part of the same settlement and contract, the parties have developed this case as they would have had the Plaintiffs initially included

**MEMORANDUM OPINION AND ORDER GRANTING THE PLAINTIFFS'
MOTION TO AMEND THEIR COMPLAINTS [DKT. NO. 184]**

allegations of Antero's breach of the Settlement Agreement in their second amended complaints. Moreover, both parties have addressed the Settlement Agreement's impact on the Leases and the Plaintiffs' breach of contract claims in their motions for summary judgment. Thus, the nature of the proposed amendment does not prejudice Antero despite the late stage of the proceedings.

Second, the proposed third amended complaints have not been offered in bad faith. The Plaintiffs initially did not incorporate the Settlement Agreement into their breach of contract claim out of fear of being found in breach of its confidentiality clause. The proposed amendment seeks nothing more than to conform the pleadings to the claims the parties have developed over the course of the litigation. Thus, Plaintiffs' desire to amend their claim has not been interposed as a dilatory tactic or a motion made in bad faith.

Finally, the Plaintiffs' amendment would not be futile. As the Court discussed in its Memorandum Opinion and Order granting in part and denying in part Antero's motion to dismiss (Dkt. No. 29 at 19-22), the Plaintiffs have sufficiently pleaded a breach of contract claim based on the Lease and the Market Enhancement Clause. Allowing this amendment would add helpful detail already known to both sides.

Nevertheless, as Antero contends, the Plaintiffs' proposed reassertion of claims against Midstream Partners, Pipeline, and Investment, as well as their claims of breach of fiduciary duty, fraud, and punitive damages is futile for the reasons addressed in the Court's prior order that dismissed with prejudice these defendants and claims. Id. at 7-12, 23-34. Therefore, to the extent the Plaintiffs seek to reassert such claims, the Court's prior dismissal order precludes them from doing so.

### III. Conclusion

For the reasons discussed, pursuant to FRCP 16(b) and FRCP 15(a), the Court **GRANTS** the Plaintiffs' motion to amend and leave to file their complaints (Dkt. No. 184).

It is so **ORDERED.**

The Clerk **SHALL** transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: May 4, 2021.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE