EXHIBIT 5

1103 PAGE 733

THIS LEASE, made and entered into the 15TH day of May, 1981, by and between JAMES CORDER and PEARL CORDER, his wife, parties of the first part, hereinafter sometimes referred to as "Lessors" and J. ROBERT HORNOR, party of the second part, hereinafter sometimes referred to as "Lessee";

WITNESSETH, that for and in consideration of the sum of One and 00/100 Dollar ($1.00), cash in hand paid to the Lessors by the Lessee, the receipt and sufficiency of which is hereby acknowledged, and of the covenants and agreements hereinafter contained, the Lessors do grant, demise, lease and let unto the Lessee for his exclusive possession and use for the purposes of exploring and operating for, producing and marketing oil, gas, natural gasoline, casing-head gas, condensate, related hydrocarbons, and all products produced therewith or therefrom by methods now known or hereafter discovered, all of their right title and interest in and to all those certain tracts or parcels of land situate on the waters of Turtletree Fork in Union District, Harrison County, West Virginia and being the tracts or parcels of land containing 104-3/4 acres, more or less, and 6-1/2 acres, more or less, which were conveyed unto James Corder, one of the Lessors by Len Yates and Chlora Yates, his wife, by deed dated May 11, 1970 and of record in the office of the Clerk of the County Commission of Harrison County, West Virginia, in Deed Book No. 972, at page 296.

Said tracts or parcels of land shall be sometimes hereinafter referred to as the "Leased Premises".

This Lease is upon and subject to the following covenants, terms, royalties, rentals, provisions and conditions:

*[signature]*

1103 PAGE 734

1. COVENANTS OF TITLE: The Lessors covenant and warrant generally their title to an undivided one-half (1/2) interest in and to the Leased Premises and that they will execute and deliver such further assurances, confirmatory leases and other instruments as may be requisite, if any are needed, to vest in the Lessee a good and valid leasehold on and covering the Lessors' interest in the Leased Premises.

2. MINING RIGHTS: The Lessors do also grant unto the Lessee during the term of this Lease the exclusive right to enter upon the hereinabove described tracts or parcels of land to conduct geological and geophysical surveys and explorations, and to operate for, produce, and market oil, gas, natural gasoline, casing-head gas, condensate, related hydrocarbons, and all products produced therewith or therefrom together with the right to inject gas, air, water and other fluids into the sands and formations within and underlying said tracts or parcels of land for the purpose of recovering and producing the minerals referred to above; together also with the right to drill wells, recondition producing wells, redrill and use abandoned wells, and reabandon wells on said tracts or parcels of land; together also with the right of way and servitudes on, over, and through said tracts or parcels of land for roads, pipelines, drips, tanks, stations, houses for gates, meters and regulators, and all other rights and privileges necessary, incident to, and convenient for the economical operation of said tracts or parcels of land for the production and transportation of said minerals; together also with the right to use oil, gas, and water from said tracts or parcels

2.

1103 PAGE 735

of land free of cost to the Lessee for all such purposes; together also with the right of removing either during or after the term hereof all and any property and improvements placed or located on said tracts or parcels of land by the Lessee; and together also with the right of ingress and egress upon and over said tracts or parcels of land for all of the aforesaid purposes.

3. TERM OF LEASE: It is agreed that this Lease shall remain in full force for the term of one (1) year from and after this Lease has been executed by all of the Lessors and by the Lessee and so long thereafter as oil, gas, natural gasoline, casing-head gas, condensate, and related hydrocarbons are produced in paying quantities from the Leased Premises or if Lessee has no market for said products, he maintains a well on the Leased Premises which is capable of producing said products in paying quantities.

4. ROYALTIES TO BE PAID: The Lessee shall pay or deliver to the Lessors their proportionate share (meaning one-half (1/2)) of royalties for oil and/or natural gas produced from the Leased Premises as follows:

(a) Lessee shall deliver to the credit of the Lessors, free of cost in the tanks, pipelines, or other facilities to which the Lessee may connect his well, a royalty of one-eighth (1/8th) of all oil produced and saved from the Leased Premises; and

(b) Lessee shall pay a royalty for all gas produced, saved, and marketed from the Leased Premises equal to one-eighth (1/8th) of the price received by the Lessee from the sale of such gas. Said payments shall be paid to

3.

1103 PAGE 736 Lessors monthly for all natural gas for which Lessee receives payment during the preceding calendar quarter.

It is understood between the parties hereto that by a separate agreement, Lessee has agreed to pay to Lessors additional consideration for the property and right hereby leased to Lessee.

All royalty payments due in accordance with the terms of this paragraph number 4, shall be made by checks payable to James Corder and mailed to him at Route #2 Box 146, Bristol, West Virginia, 26332.

5. FREE GAS: Lessors except and reserve the right to lay a pipeline, at their own expense, to any well producing gas or production pipeline on the Leased Premises, and to take gas produced from such well to an amount not exceeding three hundred thousand (300,000) cubic feet per year free of cost for the Lessors' own use for heat and light in one dwelling house on said Leased Premises at the Lessors' risk, subject to the use, operations, pumping, and right of abandonment of any such well by the Lessee. The Lessors agree that all gas in excess of three hundred thousand (300,000) cubic feet taken and used in each year shall be paid for by the Lessors at the current rates of the Lessee, that the measurement and regulation thereof shall be by meter and regulators set at the valve on the well, that such gas so taken shall be used with economy, in safe and proper pipes and appliances, and that the Lessors shall subscribe to and be bound by the reasonable rules and regulations of the Lessee at that time relating to such taking and use of gas.

6. CONVEYANCE OF PREMISES: In case of a conveyance

4.

1103 PAGE 737

of all or part of the Leased Premises, the Lessee may continue to make all payments to the Lessors until furnished with a certified copy of any such deed of conveyance or other documents as proof to enable the Lessee to identify the land conveyed as being all or part of said land; or on written notice of any such conveyance the Lessee may hold all payments until furnished with such copy of other documents or proof, and in case of any division shall apportion the rental according to acreage.

7. ASSIGNMENT OF LEASE: Except as hereinafter provided, this Lease may not be assigned by Lessee without the consent of Lessors which consent will not be unreasonably withheld by Lessors. Lessee may, without the consent of Lessors, assign this Lease to Stonewall Gas Company, a Virginia corporation, or any drilling partnerships or venturers in which Stonewall Gas Company is a party.

8. EXECUTED IN DUPLICATE: This Lease is executed in duplicate, each copy of which shall be treated as an original and it and all its terms and provisions shall extend to and be binding upon the parties hereto, and their respective personal representatives, heirs, devisees, and assigns.

WITNESS the following signatures and seals:

_____ (SEAL)
James Corder

_____ (SEAL)
Pearl Corder

_____ (SEAL)
J. Robert Hornor

5.

1103 PAGE 728

STATE OF WEST VIRGINIA,
COUNTY OF HARRISON, TO-WIT:

I, J. Wayne Cussey, a notary public of said county, do certify that James Corder and Pearl Corder, his wife, whose names are signed to the writing hereto annexed, bearing date the 15th day of May, 1981, have this day acknowledged the same before me in my said county.

Given under my hand this 15th day of May, 1981.

My commission expires: May 21, 1989

J. Wayne Cussey
Notary Public

STATE OF WEST VIRGINIA,
COUNTY OF HARRISON, TO-WIT:

I, Sheila L. Kidd, a notary public of said county, do certify that J. Robert Bornor, whose name is signed to the writing hereto annexed, bearing date the 15th day of May, 1981, have this day acknowledged the same before me in my said county.

Given under my hand this 19th day of May, 1981.

My commission expires: October 30, 1990

Sheila L. Kidd
Notary Public

This instrument was prepared by:

Steptoe & Johnson
Patrick D. Deem
Clarksburg, West Virginia

This instrument was presented to the Clerk of the County Commission of Harrison County, West Virginia, on 5-19-81 and the same is admitted to record.

Teste: _____ Clerk
Harrison County Commission