See DB 1193/361

3.25

OK
WCN

1-1-77                                    Lease # 547        1084    197
Received for Recording                    Map Ref. Exit # 58
Recorded                                  Renewal #
Book _____ Pg _____                       Expires

## OIL and GAS LEASE

THIS AGREEMENT made and entered into this the **20th** day of **August**, 19**79**, by and between HOWARD D. NICHOLSON and ETHEL NICHOLSON, his wife, CLYDE NUTTER and LUCY M. NUTTER, his wife, WILLIAM S. WEST and BLANCHE G. WEST, his wife, GAIL NICHOLSON, Single, HARRY N. MEEK and MACEL M. MEEK, his wife, RUPERT WEST and HAZEL N. WEST, his wife, and JOHN J. NICHOLSON and JUNE E. NICHOLSON, his wife and MARGARET McGROGAN, Single

hereinafter called Lessor (whether one or more), and DORAN & ASSOCIATES, INC.
728 WASHINGTON ROAD
hereinafter called Lessee, PITTSBURGH, PA 15228

WITNESSETH, that said Lessor, in consideration of the sum of ONE DOLLAR ($1.00), the receipt of which is hereby acknowledged, and of the covenants hereinafter contained on the part of said Lessee, to be paid, kept and performed, has granted, demised, leased and let, exclusively unto Lessee, with covenants of general warranty, for the purpose and with the rights of drilling, producing, and otherwise operating for oil and gas, and of laying pipe lines and building tanks, roads, stations, and electric power lines, houses for valves, meters, regulators and other appliances, with all other rights and privileges necessary, incident to or convenient for the operation of this land alone and cojointly with neighboring lands, all that certain tract of land situate in the ~~Northwest~~ **Harrison** County, West Virginia County of ___, Located on waters of **Turtle Tree Fork of Tenmile Creek** in **UNION DISTRICT**
State of **WEST VIRGINIA**, and bounded substantially as follows:
On the North by lands of **F.M. SADLER, CAIN RICHARDS, E. PROCTOR**
On the East by lands of **JOHN M. MORRIS Hrs. (NOW BILLY JUNIOR DEVERICKS) ROBERT E. RICHARDS**
On the South by lands of **JAMES CORDER**        ( SEE DEED BOOK 1007 PAGE 1021x 1026
On the West by lands of **BENJ. B. RANDALL**     ( FOR DETAILS OF METES AND BOUNDS
and containing, for the purpose of calculating rentals, **105 acres** acres of land whether actually containing more or less; and part of all of said land is described in that certain deed to Lessor from ___ dated ___
recorded in Book ___, Page ___, in the Recorder's Office of said County ~~...~~

1. It is agreed that this lease shall remain in force for a primary term of ~~TWO YEARS~~ **TWO YEARS** years from the date hereof and as long thereafter as the said land is operated by Lessee in the production of oil or gas.
2. (a) Lessee covenants and agrees to deliver to the credit of Lessor, his heirs or assigns, free of costs, in the pipe line to which said Lessee may connect its wells, a royalty of one-eighth (1/8) of native oil produced and saved from the leased premises.
   (b) Lessee covenants and agrees to pay Lessor as a royalty for the native gas from each and every well drilled on said premises producing native gas, an amount equal to one-eighth (1/8) of the gross proceeds received from the sale of same at the prevailing price for gas sold at the well, for all native gas saved and marketed from the said premises, payable quarterly.
3. If Lessee shall not have either begun operations for the commencement of a well on the premises within 30 DAYS from the date hereof Lessee agrees to pay to the Lessor the sum of **TWO DOLLARS PER ACRE**
ANNUALLY _____ DOLLARS ($___) annually, commencing 30 days after lease date ~~...~~ as a rental for ~~so many~~ ___ months such commencement is delayed, subject however to the right of cancellation hereinafter granted to Lessee, and it is understood and agreed that the rental as hereinbefore provided for is the chief consideration until commencement of a well. The commencement of a well shall, however, be and operate as a full liquidation of all rentals thereafter accruing under this provision of this lease during the remainder of the term hereof. In the event of completion of a commercially unproductive well on the Premises the Lessee shall be under no obligation to make delay rental payments for a period of one year following the completion of such well. At the expiration of the primary term free period, Lessee may continue to hold this lease for such further term as it may desire, not to exceed the primary term thereof, upon the payment of the rentals above mentioned. Lessee may, at its option, pay rentals quarterly or annually.
                                                                  ONE HALF TO ~~...~~ **HOWARD D. NICHOLSON**
4. All payments under this lease shall be made by check or voucher to the order of ___
ONE HALF TO MARGARET McGROGAN mailed to **WOLF SUMMIT, WEST VIRGINIA, ROUTE # 1 BOX # 134**
2823 Maryland Hgts Rd. ~~...~~ until the Lessee shall have written notice from the Lessor, its heirs or assigns, accompanied by original or certified copies of deeds or other documents as Lessee may require evidencing such change of ownership directing payments to be made otherwise, and any payments made as above until such direction, and thereafter in accordance with such direction shall absolve the Lessee from any liability to any heir or assign of the Lessor. All payments of royalty are to be made according to Lessor's respective interests therein, as hereafter set forth, and this lease shall not be forfeited for Lessee's failure to pay any rentals or royalties until Lessee has received written notice by registered mail of such default and shall fail, for a period of thirty (30) days after receipt of such notice to pay same.

Corder v. Antero

1064   193

NOTE:
LESSOR'S FREE GAS PROVISION IS HEREBY CHANGED FROM 200,000 to 300,000 cubic feet

5.   Lessor excepts and reserves a total amount of 200,000 cubic feet of gas annually or such part thereof as Lessor may use each year from the gas that Lessee may hereafter produce or otherwise have available from one gas production well completed and operated by Lessee hereunder upon the leased premises, which said amount of 200,000 cubic feet of gas per year Lessor shall be entitled to receive free of cost for heat and light in one dwelling house on the leased premises when and as long as Lessee may elect to produce or operate a well for the aforesaid purposes upon the leased premises, by Lessor laying the necessary lines and making connections at Lessor's cost at such point on the demised premises as may be designated by the Lessee, provided said gas is used with economical appliances and is measured by meter furnished by Lessee. The regulation of such gas will be by regulators furnished by Lessor, and approved by Lessee, placed at a point designated by Lessee, with said gas to be used at Lessor's own risk and Lessee not to be in any way liable for any interruption or insufficient supply of such gas for said domestic use caused by pumping stations, breakage of lines or otherwise, and nothing herein shall prevent the Lessee from abandoning any well or wells or pipelines on the leased premises and removing the pipe therefrom at any time. If more than 200,000 cubic feet per year is used, the excess shall be paid for at the rate charged to domestic consumers in the same area, and in case of default in payment for gas used in excess of said 200,000 cubic feet, Lessee is hereby authorized to deduct the amount thereof from any royalty or other payments that are then due, or may later become due, under the terms of this lease.

6.   In addition to the covenants of general warranty hereinabove contained, Lessor further covenants and agrees, that if Lessor's title to the leased premises shall come into dispute or litigation, or, if, in the judgment of Lessee, there are bona fide adverse claims to the rentals or royalties hereinabove provided for, ther Lessee, at its option, may withhold the payment of said rentals or royalties until final adjudication or other settlement of such dispute, litigation, claim or claims; and that Lessee, at its option, may pay and discharge any taxes, mortgages or other lien or liens, existing, levied, assessed or which may hereafter come into existence or be levied or assessed on or against the leased premises, and, in the event it exercises such option, Lessee shall be subrogated to the lien and any and all rights of any holder or holders thereof, and may reimburse itself by applying to the discharge of any such mortgage, tax, or other lien or liens, any rental or royalty accruing hereunder.

7.   If an when drilling or other operations hereunder are delayed or interrupted by lack of water, labor or material, or by fire, storm, flood, war, rebellion, insurrection, riot, strike, differences with workmen, or failure of carriers to transport or furnish facilities for transportation, or as a result of some order, rule, regulation, requisition or necessity of the government, or as the result of any other cause whatsoever beyond the control of Lessee, the time of such delay or interruption shall not be counted against Lessee, anything in this lease to the contrary notwithstanding. All express or implied covenants of this lease shall be subject to all Federal and State Laws, Executive Orders, Rules or Regulations, and this lease shall not be terminated, in whole or in part, nor Lessee held liable in damages for failure to comply therewith, if compliance is prevented by, or if such failure is the result of any such Law, Order, Rule or Regulation.

8.   Lessee shall have the right at any time during the term of this lease or after the expiration or termination thereof to remove all machinery, fixtures, pipe lines, houses, buildings, and other structures placed on said premises, including the right to pull and remove all casing and tubing.

9.   If the Lessee shall begin operations for the commencement of a well during the term of this lease or any extension thereof, the Lessee shall then have the right to complete the drilling of such wells, and if oil or gas or either of them be found in paying quantities, this lease shall continue and be in force and with like effect as if such well had been completed within the term first herein mentioned.

10.   Lessee shall have the right to assign this lease or any interest and the assignee of Lessee shall have corresponding rights, privileges, and obligations with respect to said royalties and rentals as to the acreage assigned to it.

11.   Lessee shall upon completion of the first productive well upon said premises make a diligent effort to obtain a pipeline connection but any delay shall not be counted against the Lessee provided Lessee shall resume delay rental payments for quarterly periods, beginning one year from the date that the first productive well shall be completed until said first well shall be connected to a pipeline.

12.   Lessee may, at any time during the term hereof, cancel and surrender this lease, and be relieved of any and all obligations, payments and liabilities thereafter to accrue as to the leased premises, by the mailing of a notice of such surrender, and a check covering all rentals, if any, due up to the date of such cancellation or surrender.

13.   It is agreed that said Lessee may drill or not drill on said land as it may elect, and the consideration and rentals paid and to be paid hereunder constitute adequate compensation for such privilege.

14.   It is agreed that said Lessee shall have the privilege of using free of charge sufficient water, oil and gas from the said premises to run all machinery necessary for drilling and operations thereon, and at any time to remove all machinery and fixtures placed on said premises.

15.   No well shall be drilled by Lessee within 200 feet of the dwelling house or barn now on said premises, except by consent of Lessor.

16.   The leased premises may be fully and freely used by Lessor for any purpose, excepting such parts as are used by Lessee in operation hereunder.

17.   Lessee shall pay Lessor for all damages to growing crops, fences or trees caused by Lessee's operations and shall bury all permanent pipelines below plow depth through cultivated areas upon request of Lessor or within a reasonable length of time thereafter.

18.   This instrument may be executed in counterparts each having the same validity as if the original. Should any one or more of the parties named as Lessor fail to execute this lease, it shall nevertheless be binding upon all such parties who do execute it as Lessor.

Corder v. Antero

1084  199

~~For the purpose of conserving the interest of the parties hereto and protecting said premises, and the oil or gas within which the same are included from unnecessary and wasteful drilling and undue depletion of its resources, Lessor further grants to the Lessee, its heirs and assigns, the right to consolidate the above described premises or any part thereof at the option of Lessee with others to form a unit not to exceed 640 acres for development to the same effect as if said premises together with others in the area had been jointly leased by various Lessors to the Lessee as a single undivided tract and in such event Lessor agrees to accept, in lieu of the royalty hereinbefore recited, such proportion of one-eighth (1/8) of the oil or gas marketed from the unitized area as his acreage included therein bears to the total acreage of the unitized area. Lessee may give notice to Lessor of such consolidation by mail to the above address or by filing a declaration of record describing the properties so consolidated or unitized.~~

NOTE: Paragraph 19 above is completely deleted from all force and effect in this lease by agreement of both Lessor and Lessee.

All the terms, conditions, limitations and covenants herein contained shall be binding upon the parties hereto and shall extend to and be binding upon their respective heirs, successors, personal representatives and assigns, but no representations other than those herein contained shall be binding on either party.

IN WITNESS WHEREOF, the parties to this agreement have hereunto set their hands and seals the day and year first above written.

MARGARET McGROGAN _____ Seal
_Margaret M. Grogan_ (Seal)

HOWARD D. NICHOLSON
_Howard D Nicholson_

ETHEL NICHOLSON
_Ethel Nicholson_ (Seal)

CLYDE NUTTER
_Clyde Nutter_

LACY M. NUTTER
_Lacy M Nutter_ (Seal)

DORAN & ASSOCIATES, INC.
_Weldon C. Doran Jr._
Weldon C. Doran, Jr., President

WILLIAM S. WEST
_William S West_ (Seal)

BLANCHE WEST
_Blanche West._ (Seal)

GAIL NICHOLSON
_Gail Nicholson_ (Seal)

HARRY H. MEEK
_Harry H Meek_ (Seal)

MACEL M. MEEK
_Macel M Meek_ (Seal)

RUPERT WEST
_Rupert West_ (Seal)

HAZEL N. WEST
_Hazel N West_ (Seal)

JOHN J. NICHOLSON
_John J. Nicholson_
_June E. Nicholson_ (Seal)
JUNE E. NICHOLSON

_James Corder_
_Pearl T. Corder_

Corder v. Antero

Corder v. Antero

---

**WEST VIRGINIA ACKNOWLEDGMENT**

1084 200

STATE OF WEST VIRGINIA,
COUNTY OF Harrison } To-wit:

I, A. Page Seward, a Notary Public of said County, do hereby certify that Clyde Nutter and Lucy Nutter, whose names are signed to the within writing bearing date the 20th day of August, 19 79, have this day acknowledged the same before me in my said County.

Given under my hand this 20th day of August, 1979.

My Commission Expires March 16, 1987.

A. Page Seward
Notary Public

---

**WEST VIRGINIA ACKNOWLEDGMENT**

STATE OF WEST VIRGINIA,
COUNTY OF Harrison } To-wit:

I, A. Page Seward, a Notary Public of said County, do hereby certify that Rupert West & Hazel M. West, whose names are signed to the within writing bearing date the 20th day of Aug., 1979, have this day acknowledged the same before me in my said County.

Given under my hand this 20th day of Aug., 1979.

My Commission Expires March 16, 1987.

A. Page Seward
Notary Public

Corder v. Antero

STATE OF PENNSYLVANIA ) SS:     1084    201
COUNTY OF ALLEGHENY )

On this the 21st day of September, 1979, before me, the undersigned officer, personally appeared Weldon C. Doran, Jr. who acknowledged himself to be the President of Doran & Associates, Inc., a corporation, and that he as such President _____, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself as President.

In witness whereof, I hereunto set my hand and official seal.

M. Laurie Cecchini, Notary Public
Mt. Lebanon Township, Allegheny County
My Commission Expires July 11, 1983
Member, Pennsylvania Association of Notaries

M. Laurie Cecchini
Notary Public

_____ hereunto set my hand and official seal.

_____
Notary Public

STATE OF WEST VIRGINIA
COUNTY OF Harrison } TO WIT:

I, A. Page Seward, a Notary Public in and for the County of Harrison and State aforesaid, do certify that Howard D. Nicholson and Ethel Nicholson, whose name same signed to the writing above, bearing date the 20th day of August, 1979, has this day acknowledged the same before me in my said County and State aforesaid.

Given under my hand and Official Seal this 20th day of August 1979.
My Commission Expires March 16, 1987

A. Page Seward (Seal)

STATE OF OHIO West Virginia }
COUNTY OF Harrison } SS:

On this 20th day of August A.D. 1979 before me a Notary Public in and for said county, personally appeared the above named Margaret McShogue to me personally known to be the party _____ named in and who executed the within agreement as free and voluntary act and acknowledged to be her act and deed for the uses and purposes therein expressed and mentioned.

WITNESS my hand and 20th day of Aug. 1979 seal the day and year aforesaid.

My Commission Expires March 16, 1987

A. Page Seward (Seal)

Corder v. Antero

Case 1:18-cv-00030-IMK-MJA   Document 240-7   Filed 05/06/21   Page 6 of 6   PageID #: 3753

Corder v. Antero

1084   202

**WEST VIRGINIA ACKNOWLEDGMENT**

STATE OF WEST VIRGINIA
COUNTY OF Harrison } To-wit:

I, _____, a Notary Public of said County, do hereby certify that _____ S. West and _____ West whose names are signed to the within writing bearing date the 20th day of August, 1979, have this day acknowledged the same before me in my said County. Given under my hand this 20th day of August, 1979.

My Commission Expires March 16, 1987.

**WEST VIRGINIA ACKNOWLEDGMENT**

STATE OF WEST VIRGINIA
COUNTY OF Harrison } To-wit:

I, A. Page Lockard, a Notary Public of said County, do hereby certify that _____ Nickoloan whose name is signed to the within writing bearing date the 20th day of Aug., 1979, has this day acknowledged the same before me in my said County. Given under my hand this 20th day of Aug., 1979.

My Commission Expires March 16, 1987.

**WEST VIRGINIA ACKNOWLEDGMENT**

STATE OF WEST VIRGINIA
COUNTY OF Harrison } To-wit:

I, A. Page Lockard, a Notary Public of said County, do hereby certify that Harry H. Miller and Macil M. Miller whose names are signed to the within writing bearing date the 20th day of August, 1979, have this day acknowledged the same before me in my said County. Given under my hand this 20th day of August, 1979.

My Commission Expires March 16, 1987.

**WEST VIRGINIA ACKNOWLEDGMENT**

STATE OF WEST VIRGINIA
COUNTY OF Harrison } To-wit:

I, _____, a Notary Public of said County, do hereby certify that John J. Nicholson and June E. Nicholson whose names are signed to the within writing bearing date the 20th day of Aug., 1979, have this day acknowledged the same before me in my said County. Given under my hand this 20th day of Aug., 1979.

My Commission Expires March 16, 1987.

**WEST VIRGINIA ACKNOWLEDGMENT**

STATE OF WEST VIRGINIA
COUNTY OF Harrison } To-wit:

I, A. Page Lockard, a Notary Public of said County, do hereby certify that James Corder and Pearl Corder whose names are signed to the within writing bearing date the 20th day of Aug., 1979, have this day acknowledged the same before me in my said County. Given under my hand this 20th day of Aug., 1979.

My Commission Expires March 16, 1987.

This instrument was presented to the Clerk of the County Commission of Harrison County West Virginia, on and the same is admitted 10-1-79 to record.

Teste: _____   CLERK
Harrison County Commission

Corder v. Antero