IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


GERALD W. CORDER,

        Plaintiff,

v.                           CIVIL ACTION NO. 1:18CV30
                                 (Judge Keeley)

ANTERO RESOURCES CORPORATION,
                               c/w 1:18CV31, 1:18CV32,
        Defendant.            1:18CV33, 1:18CV34, 1:18CV35,
                               1:18CV36, 1:18CV37, 1:18CV38,
                               1:18CV39, and 1:18CV40


MEMORANDUM OPINION AND ORDER GRANTING IN PART THE
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND
DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]

These consolidated cases involve claims for breach of contract related to royalty payments for natural gas interests. The plaintiffs, Gerald W. Corder, Marlyn Sigmon, Garnet Cottrill, Randall N. Corder, Janet C. Packard, Leroy Packard, Lorena Krafft, Cheryl Morris, Tracy Bridge, Angela Nicholson, Kevin McCall, and Brian McCall (collectively "the Plaintiffs"), own several mineral interests in Harrison County and Doddridge County, West Virginia which have been leased, assigned, or otherwise acquired by the defendant, Antero Resources Corporation ("Antero"). They contend that Antero has improperly deducted post-production costs from royalty payments due them under certain oil and gas leases ("the

CORDER, ET. AL V. ANTERO RESOURCES CORP.                    1:18CV30

**MEMORANDUM OPINION AND ORDER GRANTING IN PART THE
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND
DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]**

Leases") (Dkt. No. 240 at 35).[1] Id. Antero denies these allegations (Dkt. No. 39).

Pending before the Court are the parties' cross-motions for summary judgment. As the Court turns to the issues raised in these motions, it is important to emphasize that, at its core, this case raises questions about whether the language of the parties' various leases is specific enough under West Virginia law to permit Antero to allocate a portion of the costs it incurs to manufacture natural gas and valuable natural gas liquids ("NGLs") to the Plaintiffs, or if Antero is solely responsible for bearing such costs. For the reasons that follow, the Court **GRANTS IN PART** the Plaintiffs' Motion for Summary Judgment (Dkt. No. 210), and **DENIES** Antero's Motion for Summary Judgment (Dkt. No. 207).

## I.   Background

### A.   Factual History

#### 1.   The Leases

The Plaintiffs and Antero are parties to several leases covering the following tracts of land, each of which contains a separate royalty provision (Dkt. No. 240 at 24-26).[2]

---

[1] Unless otherwise noted, citations to docket entries herein refer to Civil Action No. 1:18CV30.

[2] These leases are attached to the Plaintiffs' third amended complaints as Exhibits 2 through 9 (Dkt. Nos. 240-2, 240-3, 240-4, 240-5, 240-6, 240-7, 240-8, 240-9).

CORDER, ET. AL V. ANTERO RESOURCES CORP.                    1:18CV30

**MEMORANDUM OPINION AND ORDER GRANTING IN PART THE
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND
DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]**

**(A)   48.69 acres — Lease 2**

There are several leases covering this tract, which all require Antero to pay the Plaintiffs royalties

> on gas, including casinghead gas or other gaseous substance, produced from said land and sold or used beyond the well or for the extraction of gasoline or other product, [in] an amount equal to One-Eighth (12.5%) (amended to be 15%) of the net amount realized by Lessee computed at the wellhead from the sale of such substances

(Dkt. No. 240-2).

**(B)   50.82 acres — Lease 3**

The lease covering this tract requires Antero "to pay one-eighth (1/8) of the value at the well of gas from each and every gas well from which is marketed and used off the premises" (Dkt. No. 240-3).

**(C)   54.18 acres — Lease 4**

The lease covering this tract requires Antero "to pay one-eighth (1/8) of the value at the well of the gas from each and every well drilled on said premises, the product from which is marketed and used off the premises, said gas to be measured at a meter set on the farm" (Dkt. No. 240-4).

**(D)   104.75 acres — Lease 5**

The lease covering this tract requires Antero to pay royalties for "all gas produced, saved, and marketed from the Leased Premises

CORDER, ET. AL V. ANTERO RESOURCES CORP.                    1:18CV30

**MEMORANDUM OPINION AND ORDER GRANTING IN PART THE
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND
DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]**

equal to one-eighth of the price received by the Lessee from the
sale of such gas. Said payments shall be paid to Lessors monthly
for all natural gas for which Lessee receives payment during the
preceding calendar quarter" (Dkt. No. 240-5).

### (E)  59 acres – Lease 6

The lease covering this tract requires Antero to pay

1/8 of the gross proceeds received from each and every
well drilled on said properties providing natural gas,
an amount equal to one-eighth (1/8) of the gross proceeds
received from the sale of same at the prevailing price
for gas at the well, for all natural gas saved and
marketed from the said premises

(Dkt. No. 240-6).

### (F)  105 acres – Lease 7

The lease covering this tract requires Antero to pay

1/8 of the gross proceeds received from each and every
well drilled on said properties providing natural gas,
an amount equal to one-eighth (1/8) of the gross proceeds
received from the sale of same at the prevailing price
for gas at the well, for all natural gas saved and
marketed from the premises

(Dkt. No. 240-7).

CORDER, ET. AL V. ANTERO RESOURCES CORP.                    1:18CV30

**MEMORANDUM OPINION AND ORDER GRANTING IN PART THE
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND
DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]**

**(G)  44.4 acres – Lease 8[3]**

The lease covering this tract requires Antero to pay "$100 per year for each and every gas well obtained on the premises" (Dkt. No. 240-8).

**(H)  50 acres – Lease 9[4]**

The lease covering this tract requires Antero

to pay MONTHLY Lessors' proportionate share of the one-eighth (1/8th) of the value at the well of the gas from each and every gas well drilled on the premises, the product from which is marketed and used off the premises, said gas to be measured at a meter set on the farm, and to pay monthly Lessors' proportionate share of the one-eighth (1/8th) of the net value at the factory of the gasoline and other gasoline products manufactured from casing head gas

(Dkt. No. 240-9).

**2.  The Settlement Agreement**

Several of these Leases have been amended by a Confidential Settlement Agreement and Release of All Claims ("the Settlement Agreement"), which Antero and the plaintiffs, Gerald W. Corder, Randall N. Corder, Lorena Krafft, Cheryl Morris, Tracy Bridge, Angela Nicholson, Kevin McCall, and Brian McCall ("the Settling

---

[3] Randall Corder's interest in this tract was sold by tax sale deed dated January 29, 2002 (Dkt. No. 39-1).
[4] Janet and Leroy Packard's interests in this tract was sold by tax sale deed dated October 29, 2009 (Dkt. No. 39-2).

CORDER, ET. AL V. ANTERO RESOURCES CORP.                    1:18CV30

**MEMORANDUM OPINION AND ORDER GRANTING IN PART THE PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]**

Plaintiffs"),[5] entered into in August 2015 (Dkt. Nos. 47 at 7-10; 50). The Settlement Agreement terminated a partition action filed by Antero against the Settling Plaintiffs in the Circuit Court of Harrison County, West Virginia.[6] See Dkt. No. 50 at 1.

In addition to the tracts affected by the partition suit, the Settlement Agreement acknowledged that the Settling Plaintiffs owned interests in numerous other properties located throughout Harrison County. Id. at 2. Those properties were identified on a Master Property List ("MPL") attached to the Settlement Agreement. Id. Pursuant to the Settlement Agreement, the Settling Plaintiffs released all claims and potential claims against Antero relating in any way to the partition action, or to the properties listed on the MPL, that arose prior to the execution of the Settlement Agreement. Id. 2-3, 6-7.

Paragraph 14 of the Settlement Agreement provides:

Antero acknowledges that per the terms of said June 29, 1979 leases identified in the preceding two paragraphs, production royalties payable pursuant to said leases shall be deemed gross royalties and shall be calculated without regard to any postproduction or market enhancements costs claimed or incurred by Antero.

---

[5] Plaintiffs Marilyn Sigmon, Garnett C. Cottrill, Janet Packard, and Leroy Packard were not parties to the Settlement Agreement.
[6] Pursuant to W. Va. Code § 37-4-1, et seq., Antero and its co-plaintiff sought allotment or partition of the Settling Plaintiffs' mineral interests in certain tracts of land located in Harrison County, West Virginia (Dkt. No. 50 at 1).

CORDER, ET. AL V. ANTERO RESOURCES CORP.                    1:18CV30

**MEMORANDUM OPINION AND ORDER GRANTING IN PART THE
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND
DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]**

Id. at 5.

Paragraph 11 of the Settlement Agreement, however, required the Settling Plaintiffs to execute the same lease modifications for all of the properties identified on the MPL. Id. at 4. These included each of the Plaintiffs' properties at issue here, except for the 50-acre tract located in Doddridge County, West Virginia, identified in this case as Tract H (Dkt. Nos. 47 at n.7; 210-2). Accordingly, the lease modification, labeled "Exhibit D" to the Settlement Agreement, applies to the Settling Plaintiffs' leases related to Tracts A though G (hereinafter "Leases 2 through 8"), and its terms are relevant to the issues in dispute here. Id.

Included in the modification of these leases is a Market Enhancement (Gross Proceeds) Clause ("the Market Enhancement Clause") that provides as follows:

> It is agreed between the Lessor and Lesee that notwithstanding any language herein to the contrary, all oil, gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements. However, in no event shall Lessor

CORDER, ET. AL V. ANTERO RESOURCES CORP.                    1:18CV30

**MEMORANDUM OPINION AND ORDER GRANTING IN PART THE
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND
DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]**

receive a price that is less than, or more than, the
price received by Lessee

(Dkt. Nos. 50 at 21).[7]

### 3.   Flow of Plaintiffs' natural gas and NGLs

Under the Leases, Antero produces natural gas from nine (9)
wells located on the Plaintiffs' properties (Dkt. No. 180-2 at 5).
After the minerals are drawn to the surface, they stream into a
production unit where they are separated into oil, gas, and water.
Id. at 3. Well meters gauge the volume and chemical composition of
the gas stream before it enters gathering pipelines and is
aggregated for delivery into larger pipelines (Dkt. Nos. 180-2 at
3; 210-4 at 3). The Plaintiffs' gas may flow into one of two larger
pipelines, either (1) the ECT Bobcat pipeline, an interstate
pipeline that transfers unprocessed gas to downstream markets, or
(2) a pipeline that transfers unprocessed gas to the Sherwood Gas
Processing Plant.[8] Id.

Gas from the Plaintiffs' properties contains NGLs, which can
be extracted from the gas (Dkt. No. 180-2 at 5-6). If Antero
processes the Plaintiffs' gas, it is transported to the Sherwood
Gas Processing Plant, where the NGLs are separated from the

---

[7] This lease modification is also attached to the Plaintiffs'
Leases regarding Tract A (Dkt. No. 240-2).
[8] The Sherwood Gas Processing Plant is owned by MarkWest Liberty
Midstream & Resources (Dkt. No. 180-2 at 11).

CORDER, ET. AL V. ANTERO RESOURCES CORP.                    1:18CV30

**MEMORANDUM OPINION AND ORDER GRANTING IN PART THE
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND
DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]**

"residue gas"[9] (Dkt. No. 180-2 at 9, 14; 210-4 at 4). The NGLs are

then fractionated into individual products and sold on the market

(Dkt. No. 180-2 at 6-7; 210-4 at 3-4).

The parties dispute whether the gas from the Plaintiffs'

properties must be processed before it may enter an interstate

pipeline and be transported to the point of sale. According to

Antero, it may elect to sell the Plaintiffs' gas on the market in

its raw form or to process the gas if the processed gas and by

products would be more profitable (Dkt. No. 180-2 at 10). The

Plaintiffs, however, deny that their gas can be sold in its raw

form and contend it must be processed to separate the NGLs before

it is sold on the market (Dkt. No. 185 at 9).

The parties disagree about whether Antero has ever sold the

Plaintiffs' gas in its raw form, or if it has consistently

processed their gas and sold both the residue gas and NGLs for

profit. Antero concedes that, prior to August 2018, it had

processed some or all of the Plaintiffs' gas to manufacture NGLs

(Dkt. No. 180-2 at 9). Since then, however, it has sold the

Plaintiffs' gas only in its raw form (Dkt. No. 180 at 12). The

---

[9] Antero asserts that, even if the Plaintiffs' gas enters the
pipeline leading to the Sherwood Gas Processing Plant, it is not
necessarily processed because the unprocessed gas may bypass the
processing plant and pass directly to the market (Dkt. No. 180-2
at 9).

CORDER, ET. AL V. ANTERO RESOURCES CORP.                    1:18CV30

**MEMORANDUM OPINION AND ORDER GRANTING IN PART THE
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND
DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]**

Plaintiffs vigorously dispute this contention and assert that Antero has continued to process their gas and manufacture NGLs for sale (Dkt. No. 210-4 at 9-10).

### 4.   Antero's calculation of royalty payments

According to Antero, when the gas is sold in its unprocessed form, the Plaintiffs are not charged any processing costs and it does not deduct the costs for dehydrating, compressing, or gathering the unprocessed gas for delivery into the ECT Bobcat pipeline (Dkt. No. 180-2 at 10-12). In these circumstances, the Plaintiffs receive no NGL revenue (Dkt. No. 180 at 12). Rather, Antero calculates their royalty payments based on the "weighted average sales price [("WASP")] for the unprocessed gas produced from Plaintiffs' wells." Id.

However, when it does process the Plaintiffs' gas, Antero may charge them a portion of the processing costs depending on the relevant lease's royalty provision. Id. at 11-12. Antero computes its royalty payments on the greater of (1) the revenues it receives from the sale of NGLs attributable to each well minus a proportionate share of the related processing and fractionation costs (net factory value), or (2) the value of the MMBtu content of the Plaintiffs' raw gas converted to NGLs in the processing and fractionation at the WASP it receives for its sale of residue gas

CORDER, ET. AL V. ANTERO RESOURCES CORP.                    1:18CV30

**MEMORANDUM OPINION AND ORDER GRANTING IN PART THE
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND
DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]**

(shrink value) (Dkt. Nos. 207-8 at 3-4, 180 at 13). When the net factory value exceeds the shrink value, Antero pays royalties on the net factory value, which includes a deduction for the Plaintiffs' proportionate share of processing and fractionation costs ("PRC2 costs"). Id. But if the shrink value exceeds the net factory value, Antero pays royalties on the shrink value. Id. According to Antero, this calculation results in the Plaintiffs being "paid on the greater of the net factory value or the shrink value on a well by well and month by month basis" (Dkt. No. 180 at 13).

Antero also sells the Plaintiffs' residue gas at markets that are either in-basin or out-of-basin. Id. at 17. To determine whether it will allocate to the Plaintiffs a portion of the costs of transporting residue gas to out-of-basin markets, Antero compares the in-basin and out-of-basin price indexes to determine if the out-of-basin sale resulted in a higher price. Id. at 14. If the out-of-basin WASP exceeds the in-basin WASP, Antero deducts transportation costs ("TRN3 costs") up to the limit of the more favorable price in calculating the netback price paid to the Plaintiffs. Id. If the in-basin WASP exceeds the out-of-basin WASP, and Antero could have received more money by selling the

CORDER, ET. AL V. ANTERO RESOURCES CORP.                    1:18CV30

**MEMORANDUM OPINION AND ORDER GRANTING IN PART THE
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND
DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]**

Plaintiffs' residue gas in-basin, it does not include TRN3 costs in its calculation of the Plaintiffs' royalty payments. <u>Id.</u>

The Plaintiffs' case is much more straightforward. Neither the Settlement Agreement nor the Leases permit Antero to deduct any post-production costs under any formula from their natural gas or NGL royalty payments (Dkt. No. 210-1 at 1-2).

## II. <u>Discussion</u>

### A. **Standard of review**

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." <u>Jacobs v. N.C. Admin. Office of the Courts</u>, 780 F.3d 562, 568 (4th Cir. 2015) (quoting 10A CHARLES A. WRIGHT ET AL., FEDERAL PRAC. & PROC. § 2728 (3d ed. 1998)). Therefore, courts "view the evidence in the light most favorable to the non-moving party" and refrain from "weighing the evidence or making credibility determinations." <u>Lee v. Town of Seaboard</u>, 863 F.3d 323, 327 (quoting <u>Jacobs</u>, 780 F.3d at 568-69).

CORDER, ET. AL V. ANTERO RESOURCES CORP.                    1:18CV30

**MEMORANDUM OPINION AND ORDER GRANTING IN PART THE
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND
DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]**

A motion for summary judgment should be granted if the nonmoving party fails to make a showing sufficient to establish the existence of an essential element of his claim or defense upon which he bears the burden of proof. Celotex v. Catrett, 477 U.S. 317, 323 (1986). That is, once the movant shows an absence of evidence on one such element, the nonmovant must then come forward with evidence demonstrating there is indeed a genuine issue for trial. Id. at 323-24. The existence of a mere scintilla of evidence supporting the nonmovant's position is insufficient to create a genuine issue; rather, there must be evidence on which a jury could reasonably find for the nonmovant. Anderson v. Liberty Lobby, 477 U.S. 242, 252 (1986). Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950)).

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris Inc. v. Harshbarger, 122 F.3d

**MEMORANDUM OPINION AND ORDER GRANTING IN PART THE
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND
DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]**

58, 62 n.4 (1st Cir. 1997)). "When considering each individual motion, the court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." Id. (quoting Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996)).

**B.    Applicable Law**

"A federal court exercising diversity jurisdiction is obliged to apply the substantive law of the state in which it sits." Volvo Const. Equip. N. Am. v. CLM Equip. Co., Inc., 386 F.3d 581, 599-600 (4th Cir. 2004) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 79 (1938)). Under West Virginia law, "[a]n oil and gas lease is both a conveyance and a contract." Syl. Pt. 2, Ascent Res. - Marcellus, LLC v. Huffman, 851 S.E.2d 782 (W. Va. 2020). Thus, contract law principles also apply to oil and gas leases. K&D Holdings, LLC v. Equitrans, L.P., 812 F.3d 333, 339 (4th Cir. 2015) (citing Energy Dev. Corp. v. Moss, 591 S.E.2d 135, 143 (W. Va. 2003). In West Virginia, a claim for breach of contract requires proof of the formation of a contract, a breach of the terms of that contract, and resulting damages. Sneberger v. Morrison, 776 S.E.2d 156 (W. Va. 2015).

In order to prevail on their breach of contract claims, the Plaintiffs must establish:

CORDER, ET. AL V. ANTERO RESOURCES CORP.                    1:18CV30

**MEMORANDUM OPINION AND ORDER GRANTING IN PART THE PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]**

(1)  The existence of a valid, enforceable contract;
(2)  That it performed under the contract;
(3)  That the opposing party breached or violated its duties or obligations under the contract; and
(4)  That it was damaged or injured as a result of the breach or violation.

Richards v. EQT Production Co., 2018 WL 3321441 (N.D.W. Va. July 5, 2018). Antero, on the other hand, must establish the inverse of at least one of these elements. Id.

The parties' motions address four categories of claims: (1) the Settling Plaintiffs claims related to Leases 2 through 7, the leases for the tracts listed on the MPL and thereby subject to the Settlement Agreement;[10] (2) the Non-Settling Plaintiffs claims related to Leases 2 through 7, which are unencumbered by the Settlement Agreement; (3) all of the Plaintiffs' claims related to Lease 9, the tract not included on the MPL and not subject to the Settlement Agreement's terms or the Market Enhancement Clause; and (4) all of the Plaintiffs' claims related to Lease 8, the flat rate lease.

Common to each category is the question whether the parties' contract permits Antero to deduct post-production or market

---

[10] Although the tract related to Lease 8 is included in the MPL and arguably is also subject to the Settlement Agreement, the Court will address the claims arising from this lease separately because, as a flat rate lease, it raises substantially different questions from those involving the leases governed by the Settlement Agreement.

CORDER, ET. AL V. ANTERO RESOURCES CORP.                    1:18CV30

**MEMORANDUM OPINION AND ORDER GRANTING IN PART THE
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND
DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]**

enhancement costs from the Plaintiffs' royalty payments for natural gas and NGLs. Each category, however, raises separate questions of law and fact.[11]

With regard to the first category of claims, the parties dispute what effect, if any, the Settlement Agreement has on the royalty provisions contained in Leases 2 through 7. To resolve this issue, the Court must first address whether the terms of the parties' agreement, as contained in Leases 2 through 7, the Settlement Agreement, and the Market Enhancement Clause, unambiguously state the parties' intent. If the terms in these three documents can be reconciled to show the parties' unambiguous agreement, the Court must determine whether the contract is governed by the decisions of the West Virginia Supreme Court of Appeals in Tawney v. Columbia Natural Resources, 633 S.E.2d 22 (W. Va. 2004), and Wellman v. Energy Resources, Inc., 557 S.E.2d 254 (W. Va. 2001). If this is so, the Court must determine if the parties' contractual language specifically permits Antero to deduct costs from the Plaintiffs' royalty payments.

To resolve the second and third categories of claims, the Court similarly must address whether the Leases that were unaltered

---

[11] Notably, the Plaintiffs have moved for judgment only on the first category of claims, while Antero has sought judgment on all four categories.

CORDER, ET. AL V. ANTERO RESOURCES CORP.                    1:18CV30

**MEMORANDUM OPINION AND ORDER GRANTING IN PART THE**
**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND**
**DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]**

by the Settlement Agreement are governed by and comply with the requirements of <u>Wellman</u> and <u>Tawney</u>.

Regarding the fourth category of claims, the Court must determine whether West Virginia law governing flat rate leases allows Antero to deduct post-production costs from the Plaintiffs' royalty payments. And if so, the question then arises whether Antero actually deducted reasonable post-production costs.

**C.    Settling Plaintiffs' royalty interests under Leases 2**
**       through 7**

The Plaintiffs contend that the Settlement Agreement and the Market Enhancement Clause that modified Leases 2 through 7 prohibit Antero from deducting post-production costs or market enhancement costs from their natural gas and NGL royalty payments (Dkt. No. 210-1). Antero asserts that the Leases authorized any deductions it has taken from the Plaintiffs' royalties (Dkt. No. 207 at 8-23). Alternatively, it contends that the Plaintiffs have suffered no damages because it has overpaid them for their natural gas and NGL royalties. <u>Id.</u> at 24-25.

**1.    The terms of the parties' leases are ambiguous.**

The Court must first determine whether any terms of the parties' leases are ambiguous. "A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation

17

CORDER, ET. AL V. ANTERO RESOURCES CORP.                    1:18CV30

**MEMORANDUM OPINION AND ORDER GRANTING IN PART THE
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND
DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]**

but will be applied and enforced according to such intent." Syl. Pt. 1, <u>Contiga Dev. Co. v. United Fuel Gas Co.</u>, 128 S.E.2d 626 (W. Va. 1962). Where contractual language is ambiguous, however, it must be construed before it can be applied. <u>Haynes v. Daimler Chrysler Corp.</u>, 720 S.E.2d 564, 569 (W. Va. 2011). Whether a contract is ambiguous is a question of law determined by the court. Syl. Pt. 1, <u>Berkeley County Pub. Serv. Dist. v. Vitro Corp. of Am.</u>, 162 S.E.2d 189 (W. Va. 1968).

"Contract language is considered ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of words employed and obligations undertaken." Syl. Pt. 6, <u>State ex rel. Frazier & Oxley, L.C. v. Cummings</u>, 569 S.E.2d 796 (W. Va. 2002); see also <u>Williams v. Precision Coil, Inc.</u>, 459 S.E.2d 329, 342 n.23 (W. Va. 1995) ("A contract is ambiguous when it is reasonably susceptible to more than one meaning in light of the surrounding circumstances and after applying the established rules of construction.").

"The overriding endeavor in the judicial construction of a lease agreement is to ascertain and give effect to the mutual intent of the signatory parties." <u>Bruce McDonald Holding Co. v. Addington, Inc.</u>, 825 S.E.2d 779, 785 (W. Va. 2019). In doing so,

CORDER, ET. AL V. ANTERO RESOURCES CORP.                    1:18CV30

**MEMORANDUM OPINION AND ORDER GRANTING IN PART THE
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND
DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]**

courts rely on several canons of construction. First, an oil and gas lease is interpreted and construed as of the date of it is executed. Syl. Pt. 4, <u>Ascent</u>, 851 S.E.2d at 783. It is also generally "construed in favor of the lessor, and strictly as against the lessee." Syl. Pt. 5, <u>Energy Dev. Corp.</u>, 591 S.E.2d 135. As with other contracts, leases are "not to be construed in a vacuum, but are to be read in their context." <u>Chesapeake Appalachia, L.L.C. v. Hickman</u>, 781 S.E.2d 198, 213 (W. Va. 2015). And the construing court must consider the language of the lease as a whole, "giving effect, if possible, to all parts of the instrument. Accordingly, specific words or clauses of an agreement are not to be treated as meaningless, or to be discarded, if any reasonable meaning can be given them consistent with the whole contract." Syl. Pt. 3, <u>Moore v. Johnson Serv. Co.</u>, 219 S.E.2d 315 (W. Va. 1975).

If there is ambiguity in the contract, the court may consult extrinsic evidence "to discern what the parties intended the rights and obligations of the agreement to include." <u>Covol Fuels No. 4, LLC v. Pinnacle Min. Co.</u>, LLC, 785 F.3d 104, 112 (4th Cir. 2015) (citing <u>Payne v. Weston</u>, 466 S.E.2d 161, 166 (W. Va. 1995)). Determining the parties' intent "through extrinsic evidence become[s] a question of fact, rather than a question of law." <u>Id.</u>

CORDER, ET. AL V. ANTERO RESOURCES CORP.                    1:18CV30

**MEMORANDUM OPINION AND ORDER GRANTING IN PART THE
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND
DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]**

Here, the Court must determine whether the royalty provisions in Leases 2 through 7, the terms of the Settlement Agreement, and the language in the Market Enhancement Clause, when construed as a whole, can be interpreted to form an unambiguous contract between the parties. As discussed above, the August 2015 Settlement Agreement specifically altered the parties' previous agreements as to Leases 2 through 7. The original royalty provisions in those leases were silent as to post-production costs. See Dkt. Nos. 240-2, 240-3, 240-4, 240-5, 240-6, 240-7. In Paragraphs 12, 13, and 14 of the Settlement Agreement, Antero concedes that Leases 3 and 4 "shall be deemed" gross royalty leases and the Plaintiffs' royalty payments "shall be calculated without regard to any post-production or market enhancement costs claimed or incurred by Antero" (Dkt. No. 50 at 4-5).

Paragraph 11 of the Settlement Agreement, however, requires the Settling Plaintiffs to modify the leases for all of the properties listed on the MPL, except for Tract H (Dkt. Nos. 50 at 4; 47 at n.7). Accordingly, the lease modification applies to Leases 2 through 7. This modification contains the Market Enhancement Clause, which clearly states that, despite any other term of the parties' agreement, its provisions are controlling

20

CORDER, ET. AL V. ANTERO RESOURCES CORP.                    1:18CV30

**MEMORANDUM OPINION AND ORDER GRANTING IN PART THE
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND
DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]**

(Dkt. No. 50 at 21). Both parties assert that this clause is unambiguous, but they interpret it differently.

As a threshold matter, the Court notes that the Market Enhancement Clause actually includes two distinct provisions. The first prohibits Antero from deducting any costs incurred to "transform[] [oil, gas, and other products] into marketable form" ("the Gross Proceeds Provision"). Id. The second permits Antero to deduct costs for enhancing a product already in marketable form ("the Enhancement Provision"). Id.

According to the Plaintiffs, the Market Enhancement Clause requires Antero to pay royalties on the "gross selling price of the gas and each of the NGLs produced from [their] mineral estates" (Dkt. No. 210-1 at 6). Specifically, they assert (1) that the Gross Proceeds Provision requires Antero to bear the costs of getting "other products" in the Plaintiffs' raw gas "into marketable form;" (2) that NGLs are "other products" as the term is used within the Gross Proceeds Provision; and (3) that NGLs reach their "marketable form" only after they are separated from the residue gas and become individual purity products. Id. at 8. The Plaintiffs therefore contend that the Gross Proceeds Provision prohibits Antero from deducting any costs it incurs to extract NGLs and fractionate them into individual purity products. Accordingly, they contend the

Enhancement Provision is inapplicable to their NGL royalty payments because it is only triggered if Antero increases the value of NGLs once in their marketable form. Id. at 8-9.

Antero, in contrast, contends that the Market Enhancement Clause allows it to deduct a portion of the costs incurred to manufacture NGLs from the Plaintiffs' NGL royalty payments (Dkt. No. 180 at 8-9). According to Antero, "other products," as that term is used in the Gross Proceeds Provision, is a catch-all term that does not encompass NGLs. Id. at 10-11. Rather, the NGLs are part of the Plaintiffs' raw gas that is already marketable in its unprocessed form, and any effort by Antero to increase the price of the Plaintiffs' raw gas, including separating and fractionating the NGLs, is an "enhancement" for which the Plaintiffs must share a portion of the costs under the Enhancement Provision. Id.

That the Plaintiffs and Antero disagree as to the meaning of the Market Enhancement Clause does not render it ambiguous if the parties' intent is clear when its provisions are read in pari materia. Syl. Pt. 3, Moore, 219 S.E.2d 315. Taken together, these two provisions unambiguously distinguish between costs arising from actions taken to transform the product into marketable form, which are not deductible, and costs resulting in enhancing the value of the gas to receive a better price, which are deductible.

CORDER, ET. AL V. ANTERO RESOURCES CORP.                    1:18CV30

**MEMORANDUM OPINION AND ORDER GRANTING IN PART THE**
**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND**
**DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]**

Although the parties clearly intended to differentiate between these costs, the Market Enhancement Clause fails to indicate when Antero's efforts become enhancing rather than transforming. This transition hinges on what the parties intended to include as "oil, gas, and other products," and when those products become marketable. Neither "other products" nor "marketable form" are defined in either the Settlement Agreement or the Market Enhancement Clause. To Antero, NGLs are not "other products" and the Plaintiffs' raw gas is marketable. To the Plaintiffs, NGLs are "other products" and only residue gas and NGLs are marketable. Whether the parties intended to include NGLs as "other products" within the Market Enhancement Clause for which Antero bears the manufacturing costs, or intended to exclude NGLs as "other products" and thereby require the Plaintiffs to share the cost of extracting and fractionating NGLs, are material questions of fact that remain unclear. The Market Enhancement Clause therefore is ambiguous in material respects.

**2.    _Wellman_ and _Tawney_ apply to Leases 2 and 7.**

To analyze the impact of the Market Enhancement Clause on the leases at issue, the Court must weigh the applicability, if any, of _Wellman_ and _Tawney_. Under West Virginia law, oil and gas lessees have an implied duty to market the gas produced. _Wellman_, 577

CORDER, ET. AL V. ANTERO RESOURCES CORP.                    1:18CV30

**MEMORANDUM OPINION AND ORDER GRANTING IN PART THE**
**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND**
**DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]**

S.E.2d at 265. Included in this duty is "the responsibility to get the oil or gas in marketable condition and actually transport it to market." Tawney, 633 S.E.2d at 27. Accordingly, unless a lease for royalty payments "provides otherwise, lessees must deliver the gas to the market, in a marketable condition, free of all costs of production." W.W. McDonald Land Co. v. EQT Prod. Co., 983 F. Supp. 2d 790, 803-04 (S.D.W. Va. 2013), opinion clarified (Jan. 21, 2014).

For the lessee to deduct any post-production costs from a lessor's royalty payments, the lease must expressly allocate such costs to the lessor and the lessee must prove that the costs were actually incurred and reasonable. Wellman, 577 S.E.2d at 265. To rebut the presumption that the lessee bears all post-production costs, the lease must (1) "expressly provide that the lessor shall bear some part of the costs incurred between the wellhead and the point of sale;" (2) "identify with particularity the specific deductions that the lessee intends to take from the lessor's royalty;" and (3) "indicate the method of calculating the amount to be deducted from the royalty for such post-production costs." Tawney, 633 S.E.2d at 30.

Antero concedes that Leases 2 and 5 are gross proceeds leases to which Wellman and Tawney apply (Dkt. No. 207-1 8, 22). But, as

CORDER, ET. AL V. ANTERO RESOURCES CORP.                    1:18CV30

**MEMORANDUM OPINION AND ORDER GRANTING IN PART THE
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND
DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]**

it did in its earlier motion to dismiss, Antero again asserts that

Wellman's presumption and Tawney's heightened specificity

requirements do not apply to Leases 3, 4, 6, or 7. These leases

appear to require royalty payments based on the market price

received by Antero from the sale of the Plaintiffs' minerals due

to either of the following clauses: (a) "value at the well," or

(b) "gross proceeds received from the sale of the same at the

prevailing price." Antero argues that the holdings in Wellman and

Tawney do not apply because the royalty provisions at issue are

based on "market value" rather than "proceeds" (Dkt. No. 207-1 at

20). In support, it relies on Imperial Colliery Co. v. Oxy USA

Inc., 912 F.2d 696 (4th Cir. 1990), where the Fourth Circuit

reasoned that post-production deductions are a permissible way to

arrive at the "wholesale market value at the well."

    As this Court has previously observed,[12] however, the Supreme

Court of Appeals in Tawney rejected a similar argument. The

defendant in Tawney had asserted that "wellhead-type language

clearly called for allocation of post-production expenses" when

read in conjunction with language such as "gross proceeds," "market

price," or "net of all costs." Tawney, 633 S.E.2d at 28-29. Due to

inherent ambiguities, the Supreme Court of Appeals concluded that

---

[12] See Dkt. No. 29 at 21-22.

CORDER, ET. AL V. ANTERO RESOURCES CORP.                    1:18CV30

**MEMORANDUM OPINION AND ORDER GRANTING IN PART THE
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND
DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]**

none of these modifiers was sufficient to overcome <u>Wellman's</u>
presumption that the lessee must bear post-production costs. <u>Id.</u>
Following that reasoning, this Court concludes that the "market
value" provisions in Leases 3, 4, 6, and 7 are not sufficient to
escape the dictates of <u>Wellman</u> and <u>Tawney</u>.[13]

> ### 3.   The Market Enhancement Clause does not permit Antero to take deductions.

According to Antero, the language of the Market Enhancement
Clause meets the heightened specificity requirements under <u>Tawney</u>
for allocating to the Plaintiffs a portion of the costs incurred
to enhance their gas to receive a better price on the market. The
Market Enhancement Clause clearly satisfies <u>Tawney's</u> first prong
by providing that costs incurred by Antero to enhance the products
extracted from the Plaintiffs' property to receive a better price
"may be deducted" from the Plaintiffs' royalty payments (Dkt. No.
50 at 21).

It also appears to satisfy <u>Tawney's</u> third prong, as it states
that enhancement costs "may be deducted from Lessor's share of

---

[13] The Court also observes that this conclusion is supported by the
decision in <u>Leggett v. EQT Production Co.</u>, 800 S.E.2d 850 (W. Va.
2017). There, while distinguishing between flat rate oil and gas
leases governed by statute and all other oil and gas leases
governed by common law, the Supreme Court of Appeals noted that
"freely-negotiated leases . . . remain subject to the holdings of
<u>Wellman</u> and <u>Tawney</u>." <u>Id.</u> at 869.

CORDER, ET. AL V. ANTERO RESOURCES CORP.                    1:18CV30

**MEMORANDUM OPINION AND ORDER GRANTING IN PART THE
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND
DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]**

production so long as they are based on Lessee's actual cost of such enhancements. However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee." Id. In Young v. Equinor USA Onshore Properties, Inc., 982 F.3d 201 (4th Cir. 2020), the Fourth Circuit recently concluded that Tawney's third prong merely requires the lessor to identify "how much of [the post-production costs] will be deducted from the lessor's royalties." Id. at 208. It then held that this standard may be satisfied through the use of the "work-back method" where the actual and reasonable post-production costs are subtracted from the gross proceeds received by the lessee to arrive at the net amount realized, which is then adjusted for the lessor's fractional share of the total acreage and royalty rate. Id.

According to Antero, its enhancement deductions under the Market Enhancement Clause are calculated using this work-back method (Dkt. No. 180 at 15-16). It explains that it deducts the identifiable, reasonable, and actual post-production costs from the gross proceeds it receives from the Plaintiffs' enhanced product. Id. The amount realized is then adjusted for the Settling Plaintiffs' fractional share of the total pooled acreage and

27

CORDER, ET. AL V. ANTERO RESOURCES CORP.                    1:18CV30

**MEMORANDUM OPINION AND ORDER GRANTING IN PART THE
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND
DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]**

royalty rate.[14] Pursuant to _Young_, therefore, the Market
Enhancement Clause satisfies _Tawney's_ third prong.

The Market Enhancement Clause does not satisfy _Tawney's_
second prong, however, because it does not identify with
particularity the costs that Antero may deduct from the Settling
Plaintiffs' royalty payments. Although the Market Enhancement
Clause enumerates types of post-production costs,[15] it does not
unambiguously identify the products from which those costs may be
deducted. Unlike the parties in _Young_, the Settling Plaintiffs and
Antero have failed to set out "the pool from which" enhancement
costs are to be deducted. _Young_, 982 F.3d at 208-09.

Moreover, key terms of the parties' contract are ambiguous.
It is unclear whether they intended to include NGLs as "other
products," or what efforts must be undertaken to get oil, gas, and
other products into their "marketable form." Under _Tawney_, such

---

[14] The Plaintiffs do not seriously dispute this methodology.
[15] The Gross Proceeds Provision of the Market Enhancement Clause
provides that costs associated with the cost of producing,
gathering, storing, separating, treating, dehydrating,
compressing, processing, transporting, and marketing to get oil,
gas, or other products into its marketable form cannot be deducted
directly or indirectly from the Plaintiffs' royalty payments (Dkt.
No. 50 at 21). The Enhancement Clause then also states that "such
costs" may be deducted if they enhance the value of an already
marketable product. _Id._

CORDER, ET. AL V. ANTERO RESOURCES CORP.                    1:18CV30

**MEMORANDUM OPINION AND ORDER GRANTING IN PART THE
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND
DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]**

ambiguities preclude a finding that the enhancement costs to be
deducted have been stated with sufficient specificity.

This conclusion complies with the Court's duty to construe
any ambiguities in the parties' Market Enhancement Clause against
its drafter, Antero. Syl. Pt. 5, <u>Energy Dev. Corp.</u>, 591 S.E.2d
135. Had Antero intended that the Settling Plaintiffs bear a
portion of the costs to enhance their gas, Antero was obligated to
use "specific language which clearly informed the [Settling
Plaintiffs] . . . what deductions were to be taken." <u>Tawney</u>, 633
S.E.2d at 29-30.

This conclusion also comports with the principles espoused in
<u>Wellman</u> and <u>Tawney</u>, as well as the "long-established expectation
of lessors in [West Virginia], that they would receive one-eighth
of the sale price received by the lessor." <u>Wellman</u>, 557 S.E.2d at
265. Under <u>Wellman</u> and <u>Tawney</u>, the Settling Plaintiffs were
entitled to know the specific costs Antero could deduct from their
royalty payments, and Antero bore the burden of stating those
deductions with specificity.

The Court therefore grants summary judgment to the Settling
Plaintiffs as to their claim that Leases 2 through 7 are subject
to the dictates of <u>Wellman</u> and <u>Tawney</u> because the language of the
Market Enhancement Clause is insufficient to permit Antero to take

CORDER, ET. AL V. ANTERO RESOURCES CORP.                    1:18CV30

**MEMORANDUM OPINION AND ORDER GRANTING IN PART THE**
**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND**
**DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]**

post-production or market enhancement deductions from their royalty payments. However, genuine questions of material fact remain regarding the Settling Plaintiffs claim for damages, specifically whether Antero has deducted any costs from their royalty payments since August 2018, and if so, whether the Settling Plaintiffs have suffered any injury.

   **D.   Non-Settling Plaintiffs' interests under Leases 2**
        **through 7**

   The Court must determine whether, under Wellman and Tawney, Leases 2 through 7 in their unmodified form allow Antero to allocate post-production or market enhancement costs to the Non-Settling Plaintiffs. Although the royalty provisions of these leases outline Antero's royalty payment obligations to the Non-Settling Plaintiffs, none reference post-production costs, much less expressly provide that the Non-Settling Plaintiffs shall bear a proportional share of either post-production or market enhancement costs. See Dkt. Nos. 240-2, 240-3, 240-4, 240-5, 240-6, 240-7.

   The unmodified Leases 2 through 7 therefore fail to satisfy Tawney's first prong and do not permit Antero to deduct any post-production costs from the Non-Settling Plaintiffs' royalty payments. The Court therefore denies summary judgment to Antero as

30

CORDER, ET. AL V. ANTERO RESOURCES CORP.                    1:18CV30

**MEMORANDUM OPINION AND ORDER GRANTING IN PART THE
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND
DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]**

to its royalty obligations to the Non-Settling Plaintiffs under
Leases 2 through 7.

### E.   All Plaintiffs' interests under Lease 9

Nor does Lease 9 reference post-production costs or attempt
to allocate costs to the Plaintiffs. See Dkt. No. 240-9. Because
Antero must bear the costs of production under Lease 9, any
deductions for post-production costs taken from the Plaintiffs'
royalty payments would violate West Virginia law. The Court
therefore denies summary judgment to Antero as to its royalty
obligations under Lease 9.

### F.   All Plaintiffs' interests under Lease 8

Lease 8 is a flat rate lease requiring Antero to pay "$100
per year for each and every gas well obtained on the premises"
(Dkt. No. 240-8). Under West Virginia law, flat rate leases are
not subject to Wellman's presumption and Tawney's heightened
specificity requirements. Leggett v. EQT Prod. Co., 800 S.E.2d
850, 862 (W. Va. 2017). Instead, they are governed by West Virginia
Code § 22-6-8, which the West Virginia Legislature amended in 2018.

Section 22-6-8, enacted in 1982 and first amended in 1994,
stated that no permit for a flat rate well would be issued unless
the lessee swore by affidavit that it would pay the lessor "no
less than one-eighth of the total amount paid to or received by or
allowed to [the lessee] at the wellhead for the oil and gas so

CORDER, ET. AL V. ANTERO RESOURCES CORP.                    1:18CV30

**MEMORANDUM OPINION AND ORDER GRANTING IN PART THE**
**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND**
**DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]**

extracted, produced or marketed." Leggett, at 854 (quoting W. Va.

Code § 22-6-8(e) (1994)) (emphasis and alteration in original). In

Leggett, the Supreme Court of Appeals interpreted this language as

follows:

> [R]oyalty payments pursuant to an oil or gas lease
> governed by West Virginia Code § 22-6-8(e) (1994) may be
> subject to pro-rata deduction or allocation of all
> reasonable post-production expenses actually incurred by
> the lessee. Therefore, an oil or gas lessee may utilize
> the "net-back" or "work-back" method to calculate
> royalties owed to a lessor pursuant to a lease governed
> by West Virginia Code § 22-6-8(e).

Syl. Pt. 8, Id. at 868.

Following Leggett, the West Virginia Legislature amended §

22-6-8 in 2018 to state that

> no such permit shall be hereafter issued for the drilling
> of a new oil or gas well, or for the redrilling,
> deepening, fracturing, stimulating, pressuring,
> converting, combining or physically changing to allow
> the migration of fluid from one formation to another, of
> an existing oil or gas production well, where or if the
> right to extract, produce or market the oil or gas is
> based upon a lease or leases or other continuing contract
> or contracts providing for flat well royalty

W. Va. Code § 22-6-8(d) (2018). The amended statute further

provided that a lessee can nevertheless obtain a permit by an

affidavit swearing it will pay the lessor

> not less than one eighth of the gross proceeds, <u>free
> from any deductions for post-production expenses</u>,
> received at the first point of sale to an unaffiliated
> third-party purchaser in an arm's length transaction for
> the oil or gas so extracted, produced or marketed before

CORDER, ET. AL V. ANTERO RESOURCES CORP.                    1:18CV30

**MEMORANDUM OPINION AND ORDER GRANTING IN PART THE
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND
DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]**

> deducting the amount to be paid to or set aside for the
> owner of the oil or gas in place, on all such oil or gas
> to be extracted, produced or marketed from the well.

W. Va. Code § 22-6-8(e) (2018) (emphasis added).[16]

The Plaintiffs argue that the 2018 amendment applies
retroactively to prohibit Antero from taking post-production
deductions from their royalty payments under Lease 8 (Dkt. No. 181
at 15-19). Antero disagrees, contending that the statute in effect
when the Plaintiffs' wells were permitted governs Antero's royalty
obligations.

"The presumption is that a statute is intended to operate
prospectively, and not retrospectively, unless it appears, by
clear, strong and imperative words or by necessary implication,
that the Legislature intended to give the statute retroactive force
and effect." Syl. Pt. 2, Martinez v. Asplundh Tree Expert Co., 803
S.E.2d 582 (W. Va. 2017). A law applies retroactively if it

---

[16] In amending § 22-6-8(e), the West Virginia Legislature responded
to the court's call to act in Leggett:

> Nevertheless, this Court recognizes the inherent tension
> between holders of leases subject to our interpretation
> of West Virginia Code § 22-6-8 and those freely-
> negotiated leases which remain subject to the holdings
> of Wellman and Tawney. We therefore implore the
> Legislature to resolve the tensions as it sees fit
> inasmuch as this Court may only act within the confines
> of our constitutional charge.

Leggett, 800 S.E.2d at 869.

CORDER, ET. AL V. ANTERO RESOURCES CORP.                    1:18CV30

**MEMORANDUM OPINION AND ORDER GRANTING IN PART THE
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND
DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]**

"operates upon transactions which have been completed or upon rights which have been acquired or upon obligations which have existed prior to its passage." Syl. Pt. 3, Sizemore v. State Workmen's Comp. Comm'r, 219 S.E.2d 912 (W. Va. 1975). There is a long-standing principle under West Virginia law that "[n]o statute, however positive, is to be construed as designed to interfere with existing contracts, rights of action, or suits, and especially vested rights, unless the intention that it shall so operate is expressly declared." Syl. Pt. 3, Rogers v. Lynch, 29 S.E. 507 (W. Va. 1897).

As the Plaintiffs concede, the amended statute does not state in "clear, strong[,] and imperative words" that it applies retroactively (Dkt. No. 181 at 19). Nor does it specify any intent by the legislature to clarify the existing law on flat rate leases or to overrule the holding of the Supreme Court of Appeals in Leggett. Rather, the amendment prohibits the issuance of any new permit for "drilling ... a new oil or gas well, or ... redrilling, deepening, fracturing, stimulating, pressuring, converting, combining or physically changing to allow the migration of fluid from one formation to another, of an existing oil or gas production well" without the lessee first agreeing to pay the lessors royalties free from any deductions for post-production expenses.

CORDER, ET. AL V. ANTERO RESOURCES CORP.                    1:18CV30

**MEMORANDUM OPINION AND ORDER GRANTING IN PART THE
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND
DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]**

W. Va. Code § 22-6-8(d). Based on this, the 2018 amendment clearly does not apply retroactively.

That the amendment does not apply retroactively does not lead inevitably to the conclusion that <u>Leggett</u> applies to Antero's royalty payment obligations under Lease 8. In 2012, Antero obtained permits to operate three flat rate wells on the Plaintiffs' property (Dkt. No. 183 at 11-12). The record is silent as to whether, since 2012, Antero has altered any of its activities on the Plaintiffs' properties that would require a new permit, such as "drilling ... a new oil or gas well, or ... redrilling, deepening, fracturing, stimulating, pressuring, converting, combining or physically changing to allow the migration of fluid from one formation to another" any of the three existing flat rate wells. W. Va. Code § 22-6-8(d). Because the Court is unable to ascertain whether, post-2018, Antero was required to obtain a new permit for any of these purposes, it cannot determine whether <u>Leggett</u> or the 2018 amendment to § 22-6-8 governs Antero's royalty obligations under Lease 8.

**G.   Genuine questions of material fact exist as to whether
      Antero is liable for damages.**

Although the Court has found that none of the royalty provisions in the leases governed by <u>Wellman</u> and <u>Tawney</u> allow Antero to deduct post-production or market enhancement costs from

the Plaintiffs' royalty payments, genuine questions of material fact exist as to whether the Plaintiffs have suffered any damages as a consequence of Antero's alleged breach. In West Virginia, damages are an essential element of a breach of contract claim and must be proved to a reasonable certainty. Sneberger, 776 S.E.2d at 156; Sellaro, 214 S.E.2d at 828.

Antero asserts that the Plaintiffs have not been damaged because its payments to them have exceeded its royalty obligations under the Leases (Dkt. No. 180 at 24-25). It contends that it has actually overpaid the Plaintiffs by $21,126.40, and has calculated all their royalties based on the volume of the gas at the wellhead rather than the volume sold, thereby paying royalties on unsold volumes of gas despite having no obligation to do so. Id. Moreover, according to Antero, it has not processed any of their gas or taken any deductions on their NGLs since August 2018. Id.

The Plaintiffs contend that Antero has underpaid them $165,427.97 in NGL royalties, and has deducted $6,169.19 in post-production costs from their natural gas royalties (Dkt. No. 185 at 21). They also dispute Antero's contention that it has not processed any of their natural gas since August 2018, and maintain they are owed royalties free of deductions for the sale of NGLs

CORDER, ET. AL V. ANTERO RESOURCES CORP.                    1:18CV30

**MEMORANDUM OPINION AND ORDER GRANTING IN PART THE
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND
DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]**

manufactured from the gas extracted from their property. Id. 21-22.

Several contested facts are material to the parties' dispute over damages, among which are whether Antero has extracted and sold NGLs from the Plaintiffs' gas since August 2018; whether the Plaintiffs' gas is marketable in its raw form; and, depending on the answers to these questions, whether Antero is liable for damages to the Plaintiffs based on the way it calculates its royalty payments. These genuine questions of material fact preclude summary judgment to either party.

### III. Conclusion

For the reasons discussed, the Court:

(1) **GRANTS IN PART** the Plaintiffs' motion for summary judgment as to the applicability of the holdings in Wellman and Tawney to Leases 2 through 7, and the failure of the Market Enhancement Clause to meet the heightened specificity required to permit post-production deductions under West Virginia law, and **DENIES** the remainder of their motion (Dkt. No. 210); and

(2) **DENIES** Antero's motion for summary judgment (Dkt. No. 207).

**CORDER, ET. AL V. ANTERO RESOURCES CORP.**                    **1:18CV30**

**MEMORANDUM OPINION AND ORDER GRANTING IN PART THE
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 210] AND
DENYING ANTERO'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 207]**

The case shall proceed to trial as scheduled on all remaining issues (Dkt. Nos. 159, 166).

It is so **ORDERED**.

The Clerk **SHALL** transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: May 12, 2021.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE